1  Alan M. Mansfield (SBN 125998)
   alan@clgca.com
2  THE CONSUMER LAW GROUP
   9466 Black Mountain Rd., Suite 225
3  San Diego, CA 92126
   Tel: (619) 308-5034
4  Fax: (888) 341-5048

5  John Mattes, Esq. (Fla. SBN 0468150)
   1666 Garnet Avenue, #815
6  San Diego, CA 92109
   Tel: (858) 412-6081
7
8  Attorneys for Plaintiffs

9  [Additional Counsel Appear on Signature
   Page]

10
                **UNITED STATES DISTRICT COURT**
11
                **SOUTHERN DISTRICT OF CALIFORNIA**
12

13  VLASTIMIL SAJFR AND DAVID          Case No.:   **'10 CV 2341 JLS  WVG**
    KEEPORTS, on behalf of themselves and
14  all others similarly situated,     CLASS ACTION

15              Plaintiffs,            COMPLAINT FOR:

16          v.                         1)  Violation of Business and
                                           Professions Code §17200, *et seq*.;
17  BBG COMMUNICATIONS, INC., and      2)  Breach of Contract;
    DOES 1-10 INCLUSIVE,               3)  Violation of Consumers Legal
18                                         Remedies Act;
                Defendants.            4)  Declaratory Relief;
19                                     5)  Common Counts (Money Had and
                                           Received, Money Paid and
20                                         Restitution/Unjust Enrichment);
                                       6)  Violation of Penal Code § 632
21
                                       DEMAND FOR JURY TRIAL
22

23

24          Plaintiffs, by and through their attorneys, allege as follows against the above-named

25  defendants (hereinafter referred to collectively as "BBG" or "defendants").  Except as otherwise

26  noted, such allegations are made on information and belief, formed after an inquiry reasonable

27  under the circumstances, which allegations are likely to have evidentiary support after appropriate

28  investigation and discovery.

                                       1

CLASS ACTION COMPLAINT

# I. SUMMARY OF COMPLAINT

1.      Plaintiffs and other similarly situated individuals have used BBG's telephone services primarily for personal, family or household use while in domestic and international locations, including airports and train stations, where BBG has a virtual monopoly on pay telephones.  Even the ubiquitous red telephone boxes in London are operated by BBG, although nowhere is there any indication that is the case.

2.      At all times relevant to this Complaint, the exact time of which shall be determined during the course of discovery, but believed to be at least beginning in November 2006, defendants operated pay phone telephone service in both domestic and international locations, including airports, subway systems and train stations.  Even if the pay telephone advertisements indicate services are provided by BBG (and that is rarely the situation), on the pay telephone itself BBG either says nothing about the rate that would be charged for making a credit card or debit card call, or advertises in large print that domestic or international calls would only be at the rate of a euro or dollar per minute with pictures of credit card logos, with a tiny fine print disclosure saying to call for such rates.  True and correct copies of examplars of these statements are attached hereto as Exhibit 1 and incorporated herein by this reference.  In addition, when a call is dialed or connected, at no time are consumers automatically advised what fees defendants will charge for such calls.

3.      None of these statements advise or disclose to consumers what the fees will be if the consumer uses a credit or debit card to make a telephone call.  BBG uniformly failed to disclose, or by the statements that are made misrepresented, that in fact, such calls are typically billed by BBG at fees over $10.00 *per minute* based on the undisclosed minimum per minute connection charges.   Because these charges are not disclosed in advance and appear later on a credit card bill, customers do not know what these unconscionable fees are until after they have been imposed.  And since these charges are imposed at airports, subway stations, train stations and other locations where individuals are normally making such calls based on exigent circumstances, and BBG is the exclusive service provider of these pay phones, consumers have

CLASS ACTION COMPLAINT

little if any available alternatives.  BBG rakes in millions of dollars in profits as a result of this practice, as they handle over 350,000 payphones (including the iconic London telephone booths) and process 300 million minutes of calls per month.  Even if only a small percentage of those minutes are calls made using a credit or debit card, based on the outrageous per minute charges this can still add up to well over $15 million each month.

4.     If anyone tries to dispute such charges by calling the telephone number listed on their credit card statement, BBG then attempts to obfuscate who is the responsible company.  BBG's address does not appear on the credit card statement, BBG operators are instructed not to volunteer the company name or where the company is located or to clarify if the caller has called the responsible company that billed him or her unless the customer gives his or her credit card number, tell consumers as they told plaintiffs) to contact BBG Zurich, a shell company with no real business location, or say that the company name is  Call International, Call To International, Faircall, International Calling Services, International Satellite Communications, National Telephone Collection Services, NTCS or other names.   Many customers that have already been charged are obviously reluctant to provide their confidential credit card information to BBG representatives over the phone, preventing many consumers from filing a written complaint.

5.     BBG is fully aware of this unconscionable conduct.  Thousands of complaints documenting this exact same practice have been lodged with the company's Customer Service Representatives ("CSRs") who are all located and supervised in a centralized call center in Tijuana, Mexico, by complaints on-line, or by complaints to the Better Business Bureau or with MasterCard or Visa.   BBG keeps electronic records of these complaints.   In fact, BBG's complaint levels are so high that they have been given an "F" rating from the BBB, and if a customer calls MasterCard or Visa to complain about charges from BBG, the card companies three-way call through to BBG's California offices and they are directed by the company to specific individuals to handle such complaints.  For those consumers who persevere through these obstacles, BBG instructs its operators to give an automatic 30% refund of the unconscionable charges they impose.  However, in violation of California law, BBG records such confidential communications without such customers' advance authorization or consent.

CLASS ACTION COMPLAINT

6.      Apparently deciding that it is easier to overcharge consumers systematically and provide refunds if customers work hard enough to obtain them, BBG has engaged in a uniform business practice of  improperly charging customers for calls at unconscionable fees, do not disclose these fees or charge much higher fees  than disclosed.  This practice has resulted in BBG reaping substantial benefits for monies not properly retained.  Defendants are thus being unjustly enriched as a result of their deceptive billing practices.  In reply to plaintiffs' pre-litigation demand, BBG claimed that even though the calls are processed through California, complaints are handled through California and refunds are made by CSR's based in California, such demands had to be made to the shell company BBG Zurich and thus refused to provide any relief.  Thus, despite having collected what is in all likelihood well over $50 million from consumers for such charges over the past four years and having retained and benefitted from the use of such monies, BBG has failed to refund and still refused to refund such charges to all persons who paid them, with interest, or give full, timely and complete notice to its customers.  This action seeks such relief, as well as declaratory and injunctive relief to ensure this problem does not recur and that appropriate charges are disclosed by BBG.

7.      No state or federal regulatory agency has either authorized this conduct or has primary, exclusive or any jurisdiction over the wrongful conduct at issue herein nor can provide the complete relief prayed for in this matter, as the relevant state and federal regulatory agencies possess neither exclusive nor primary jurisdiction over the billing or disclosure methods of such charges, or have "de-tariffed" the regulatory scheme for such telephones such that there is no basis or reason to refer this matter to either the FCC or any state regulatory agency.

## II.  JURISDICTION AND VENUE

8.      This Court has jurisdiction over the claims asserted and all the defendants because each are individuals, associations or corporations that are either based in, authorized or registered to conduct, or in fact do conduct, substantial business in the State of California, or have sufficient minimum contacts with California, or otherwise intentionally avail themselves of the markets within California through the collection of monies, the location of their offices, employees, officers and directors, and the distribution of their services in California to render the exercise of

4

CLASS ACTION COMPLAINT

jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.   Jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. §1332(d), as the class members and defendants are from different states and the amount in controversy over at least the past four years exceeds $5 million.  This action challenges BBG's failure to fully and fairly disclose that the fees in question were improperly imposed on and collected from class members and to provide appropriate refunds.  The courts are the sole means available to obtain class-wide relief, as the focus of this litigation is defendants' uniform deceptive billing practices and their uniform method of non-disclosure and misrepresentation of the reasons and bases for charging these fees to customers, and the resulting injury to BBG customers.

9.     Venue is proper in this District as the acts upon which this action is based occurred in part in this District.  Defendants' officers and directors developed their scheme in California, their principal headquarters and offices are located in San Diego, California, Defendants provide pay phone services like the ones complained of in this District, Defendants engaged in transactions in this District, and defendants received substantial compensation and profits from the sale of their services in this District, caused misrepresentations to be disseminated, entered into agreements and transactions and/or breached agreements in this District.  Thus, defendants' liability arose in substantial part in this District.

### III. <u>PARTIES</u>

10.     (a)   On personal knowledge, Plaintiff Vlastimil Sajfr is a resident of Mountain View, California.   He has been adversely affected by the defendants' acts and practices in question and has suffered injury in fact and lost money or property or had his rights infringed upon as a result of such acts and practices in that he was charged and required by defendants to pay the fees at issue without any advance disclosure, and had to expend significant time and effort only to obtain a partial refund.  Plaintiff used BBG's pay telephones in Frankfurt Germany on or about June 17, 2010 and was charged $54.33 *for a one minute telephone call*.  There were no disclosures on the payphone about per the minute charges or minimum fees that would be imposed to make a debit or credit card call.  He initially inserted coins consistent with the

CLASS ACTION COMPLAINT

advertised amount on the phone, but then received an automated message prompting him to use a credit card because not enough money was inserted.  He called a domestic telephone number directly and did not receive any operator assistance for making the call, and entered his credit card number based on an automated voice prompt.  At no time did this voice prompt disclose the fees for making a credit card call; as a result he did not know the amount of the charge until he received his credit card statement with this charge.  When he called Visa to complain, they automatically routed him to a BBG representative, who disclosed for the first time there was a five minute minimum connection fee, which is why he was charged over $50.00 for a one minute phone call.   The BBG CSR also did not advise him his confidential communications with BBG were being recorded without his authorization, and there was no advance recording or message. He was only offered 30% of the amount of the telephone call billed, despite the fact none of these fees or terms were ever disclosed.  A true and correct copy of a redacted version of a bill reflecting his BBG charges is attached hereto as Exhibit 2 and incorporated herein by reference. The material information either misrepresented or not disclosed as detailed herein about such fees and minimum connection charges would be a substantial factor in deciding to use such services, since if the true facts had been fully and adequately disclosed prior to making such phone calls, plaintiff would not have utilized BBG's pay telephone services or used a credit or debit card to make such calls.  In response to his pre-litigation demand dated August 31, 2010, BBG has failed and reused to offer him any affirmative relief, either individually or on behalf of other affected consumers.

(b)     On personal knowledge, Plaintiff David Keeports is a resident of Hercules, California.  As a result of making a telephone call in Frankfurt, Germany and being charged $150 for two calls totaling seven minutes, he has suffered injury in fact and lost money or property or had his rights infringed upon as a result of the acts and practices here at issue in that he was charged and/or required to pay the fees here at issue and/or not having had full monies refunded with interest without having received any advance disclosure.  When plaintiff contacted BBG over the phone to complain, the BBG CSR also did not advise him and his wife their confidential communications with BBG were being recorded without their advance authorization or consent,

CLASS ACTION COMPLAINT

nor was there any recording advising them their calls may be recorded.  Similar to other reported incidents, after protesting he was not offered a full refund, he was only credited a 40% refund.  A true and correct copy of a redacted version of a bill reflecting his BBG charges is attached hereto as Exhibit 3 and incorporated herein by reference.   The material information either misrepresented or not disclosed as detailed herein regarding such fees and minimum connection charges would be a substantial factor in deciding to use such services, since if the true facts had been fully and adequately disclosed prior to making such phone calls, plaintiffs would not have utilized BBG's pay telephone services using a credit or debit card.  In response to his pre-litigation demand dated August 31, 2010, BBG has failed and reused to offer him any affirmative relief, either individually or on behalf of other affected consumers.

11.     Defendant BBG Communications, Inc. is a corporation with its alleged principal place of business for consumer purposes being located at 511 E. San Ysidro Blvd., #1770, San Ysidro, California, but its official corporate headquarters and principal place of business registered with the California Secretary of State is located at 1658 Gailes, Blvd. Suite B, San Diego, California.  BBG and its affiliated companies are part of a privately held company owned and operated by the Galicot family, either directly or through alter ego shell corporations they control.

12.     DOES 1-10 are individuals, associations or corporations that are affiliated or related to BBG, who will be specifically identified and named as discovery progresses and their roles in the wrongdoing at issue is revealed.  At all times mentioned in the Causes of Action alleged herein, each and every defendant was an agent, representative, affiliate, or employee of each and every other defendant, and in doing the things alleged in the Causes of Action stated herein, each and every defendant was acting within the course and scope of such agency, representation, affiliation, or employment and was acting with the consent, permission and authorization of the other defendants.  During the relevant time period, defendants agreed to misrepresent to the Class members the material facts at issue herein and/or not to notify Class members about the scope and nature of the illegal business practices as detailed herein, thus engaging in a conspiracy that resulted in injury in fact to members of the Class, which conspiracy

7

is still on-going.  All actions of each defendant, as alleged in the Causes of Action stated herein, were ratified and approved by the other defendants or their respective directors, officers and/or managing agents, as appropriate for the particular time period alleged herein.

13.     Whenever this Complaint refers to any act or acts of defendants, the reference also is to mean that the directors, officers, employees, affiliates, or agents of the responsible defendant authorized such act while actively engaged in the management, direction or control of the affairs of defendants and/or by persons who are the alter egos of defendants, or to the extent this Complaint refers to the actions of individuals, while such persons were acting within the scope of their agency, affiliation, or employment.   Whenever this Complaint refers to any act of defendants, the reference shall be deemed to be the act of each defendant, jointly and severally.

## IV.  **CLASS ACTION ALLEGATIONS**

14.     This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure, Rule 23.  Plaintiffs bring this action both individually and on behalf of all other persons similarly situated as representative members of the following proposed class (the "Class"): All individual persons or entities in California and all such other states and locations as the Court may determine to be appropriate who have obtained and were billed for pay telephone services operated by BBG from a domestic or international payphone using a credit or debit card at any time during the relevant time period (which shall be the subject of discovery but at least starting in November 2006 and continuing to date).  This Class is also derived of a sub-class of persons who contacted BBG by telephone and whose telephonic confidential communications were recorded by BBG without advising such persons within the sub-class (the "sub-Class") that the telephone call was being recorded.

15.     Specifically excluded from the proposed Class and sub-Class are the Court and its staff, defendants and any entity in which any of them have a controlling interest, and any of their officers, directors, affiliates, legal representatives, successors, subsidiaries, and/or assigns.

### A.     **NUMEROSITY OF THE CLASS**

16.     The proposed Class is so numerous that the individual joinder of all its members in one action is impracticable.  While the exact number and the identities of Class members are

CLASS ACTION COMPLAINT

unknown at this time and can only be ascertained through appropriate investigation and discovery, defendants conduct business throughout the United States and the world, operating over 350,000 payphones in, for example, San Diego, San Francisco, Portland, Detroit, Charlotte, London, Milan, Amsterdam, and Frankfurt, and employ over a dozen Customer Service Representatives whose sole job is to handle customer complaints about being overcharged for making such calls.   As BBG bills consumers by credit card for such charges and keeps complaint records, BBG will have an electronic record that can be used to identify Class members and how much each were charged for the telephone calls in question.  BBG also maintains copies of records of e-mail or facsimile complaints, and electronic records of complaints or credits.  Also, if a customer insists that their call did not connect BBG opens an investigation, for which a paper record is created and maintained.

**B.**      **EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT**

17.      Plaintiffs seek common equitable relief, including declaratory, injunctive, restitutionary and other equitable monetary relief, and common measures of economic, compensatory, exemplary and/or statutory damages as set forth more fully below to the extent consumers are entitled to such relief under the law.  This includes, but is not limited to, full credits for and/or repayment of the improperly charged fees or any other monies that were improperly required to be expended as a result of defendants' wrongdoing, plus interest thereon.

18.      Common questions of law and fact arising out of the claims here at issue exist as to all members of the Class and predominate over any potential individual issues.  These common legal and factual questions include, but are not limited to, the following:

a.      Whether defendants misrepresented the bases and reasons for imposing such fees on members of the Class;

b.      Whether the uniform communications between Class members and defendants as detailed below included misleading and inaccurate statements about the nature of certain charges imposed on Class members by BBG, or provided no disclosures at all;

/ / /

9

CLASS ACTION COMPLAINT

c.     Whether defendants' uniform course of conduct of imposing these outrageous charges and recording confidential communications was illegal, unreasonable and unconscionable or constitutes acts of unfair competition, misleading or deceptive acts or practices or concealment of material facts;

d.     Whether defendants' statements about such fees in the context of the minimal disclosure they do make constitute a material misrepresentation or omission of material fact;

e.     Whether defendants intentionally, recklessly, negligently or otherwise misrepresented to Class members the facts as detailed below, or omitted to disclose material facts necessary in order to make defendants' other statements not misleading for want of disclosure of such omitted facts;

f.     Whether defendants knew, recklessly disregarded or reasonably should have known about the material misstatements and omissions in their uniform statements regarding the facts as set forth below;

g.     Whether defendants improperly recorded confidential communications with members of the sub-Class without receiving customers' advance authorization or consent, and if so, whether California law prohibits such recording;

h.     Whether defendants continued to retain the monies here at issue despite their awareness of the true facts and the pre-litigation demands made by plaintiffs;

i.     Whether the uniform statements and billing language utilized by defendants to identify or describe the charges here at issue were untrue, unclear and misleading;

j.     Whether defendants improperly imposed certain charges that were not to be imposed upon the Class members;

k.     Whether defendants acted in concert in misrepresenting or concealing the true facts at issue in this action;

l.     When defendants initiated this scheme to mislead Class members;

m.     The amount of revenues and profits defendants received and/or the amount of monies or other obligations imposed on or lost by Class members as a result of such wrongdoing;

///

10

CLASS ACTION COMPLAINT

n.      Whether Class members are threatened with irreparable harm or are otherwise entitled to injunctive and other equitable relief; and

o.      Whether Class members are entitled to payment of equitable monetary relief, actual, incidental, consequential, exemplary and/or statutory damages, plus interest thereon as detailed in the causes of action detailed below.

C.      **TYPICALITY OF CLAIMS**

19.      Plaintiffs' claims are typical of the claims of members of the Class. Plaintiffs were victims of the illegal practices in question by being wrongfully charged the fees here at issue, not receiving accurate information from defendants, having their confidential communications recorded, and not receiving reimbursement of such charges plus interest thereon, as well as an agreement by defendants to provide a clear and conspicuous corrective notice and not to impose such charges in the future. Plaintiffs and all Class members have similarly had their legal rights infringed upon, sustained injuries, losses and damages as described herein and/or are facing irreparable harm arising out of defendants' common course of conduct. The right of each member of the Class to payment of any actual, incidental, consequential, exemplary and/or statutory damages or equitable monetary relief resulting therefrom equally arise from and are attributable to defendants' wrongful conduct in violation of the laws alleged herein, as these claims arise from the same core set of common facts.

D.      **ADEQUATE REPRESENTATION**

20.      Plaintiffs will fairly and adequately protect the interests of the members of the Class in that they have no irreconcilable conflicts with or interests materially antagonistic to those of the other Class members. The interests of the plaintiffs are aligned with the interests of the absent Class members and are focused in the same direction. Plaintiffs understand the nature of these allegations and their responsibilities as class representatives to represent the interests of those persons who have been improperly charged by defendants and who had their confidential communications recorded without receiving any prior advice or consent that BBG was doing so.

21.      Plaintiffs have retained attorneys experienced in the prosecution of class actions, specifically including telecommunications class and private Attorney General actions, who have

11

done significant work investigating or identifying potential claims in this litigation, who have extensive knowledge of the applicable law, and who have committed and will continue to commit substantial resources to representing the Class.

### E.   SUPERIORITY AND MANAGEABILITY OF CLASS LITIGATION

22.   To the extent an element for class certification, a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy and possesses substantial benefits, as there is no other available method for handling this litigation on a group-wide basis on behalf of all affected persons that has greater practical advantages. Individual joinder of all members of the Class is impracticable as Class members are dispersed throughout the country and elsewhere, and no other group method of adjudication of all claims asserted herein is more efficient and manageable while at the same time providing all the remedies available to ensure the full purpose of the relevant laws at issue are effectuated. Furthermore, as the individual damages suffered by each individual member of the Class are relatively insubstantial, the liability issues detailed herein predominate and the relief sought is discrete, the expense and burden of individual litigation in order to obtain such relief would make it difficult or impossible for individual members of the Class to redress the wrongs done to them on an individual case-by-case basis, and the cost to the court system of adjudicating such litigation on an individual basis would be substantial.  Because of the amounts at stake, Class members would have little interest in individually controlling the prosecution of separate actions, and thus the likelihood of an individual Class member preferring to take control of their individual litigation is remote; to counsel's knowledge there has not been any substantial litigation concerning this controversy commenced against the parties; and it is not anticipated that there will be any difficulties in the management of this litigation due to the focus of the wrongdoing on defendants' conduct and the level of their awareness of the true facts, and few choice of law issues based on BBG's substantial presence in California and the absence of any applicable choice of law provisions.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  Proceeding on an

12

individual basis would thus be grossly inefficient, costly and time-consuming because the parties, witnesses and court would be forced to endure unnecessarily duplicative litigation. The conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each Class member as compared to other methods for the group-wide adjudication of this controversy. A class action is therefore the only feasible way for plaintiffs and the Class to cost-effectively pursue such claims. Both the Class and the court system achieve substantial benefits by the prosecution of this action on a class-wide basis by avoiding the burden of multiple litigation involving identical claims, as well as by aiding legitimate business enterprises in curtailing illegitimate competition and ensuring a therapeutic and deterrent effect on companies such as defendants that indulge in misleading practices.

23.     As the contact information for the Class members would be accessible through a computer database under defendants' control or by accessing computerized data records, notice of the pendency of and any resolution of this action can be provided to the Class members by defendants through publication and/or individual mailed or electronic notice, and such costs are properly imposed on defendants and/or can be accomplished by including notice by e-mail by defendants, as appropriate.

24.     This action is also properly certified to proceed on a class-wide basis under Fed. R. Civ. Proc Rule 23(b)(1) and (b)(2) because:

a.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for defendants;

b.     Because of the nature of the relief sought, the prosecution of separate actions by individual Class members would create a risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or would substantially impair or impede the ability of such Class members to protect their interests; and

/ / /

13

c.      Defendants have acted or refused to act in respects generally applicable to the Class, thereby making appropriate final injunctive relief with regard to the members of the Class as a whole in terms of the equitable relief sought.  Such relief, when compared to the amounts individual Class members would or could receive depending on the outcome of this litigation, is a significant or predominant form of relief in this action.

## V.  <u>FACTUAL ALLEGATIONS</u>

25.     Defendants hold themselves out as possessing superior knowledge regarding their services, particularly in the telecommunications markets they serve.  Defendants provide their payphone telecommunications for use in transportation facilities throughout California, the United States and the world.  Defendants generate hundreds of millions of dollars each year by providing such services, with over 40 employees processing over a thousand telephone call complaints each day at a minimum charge of on average at least $25.00 per call.  BBG claims that is it presently provides services for over 350,000 payphones (including the famous red London telephone booths operated by British Telecom) and processes 300 million minutes of calls per month.

26.     Since at least November 2006 and potentially earlier, BBG began to operate pay telephones in airports, subway stations and train stations around the world.  On the phones in bold print they uniformly advertise low fees, such as a euro a minute for local and international calls (rarely disclosing their name).  They provide no disclosures of the fees for using a credit card but post pictures of all major credit card signs on their advertisements.  True and correct copies of examples of the advertisements are attached as Exhibit 1.  While some fees are listed for local or coin calls, there are no other disclosures concerning the much higher credit or debit card prices, just a general statement buried in the middle of fine print disclosures that they will vary.  Nor does any automated voice prompt or operator come on the line to advise consumers what the price will be for completing the telephone call as soon as the number is dialed, such as the prompt one receives when using a payphone and dialing a number.  BBG's operators are instructed not to volunteer such information unless specifically requested.  BBG's software also blocks calls using telecommunications cards or toll-free access from companies such as from Sprint and AT&T,

14

which would charge significantly lower fees, thus depriving consumers of reasonable, less expensive alternatives.

27. Pay phone customers who dial a phone number are automatically prompted to provide a credit card number or insert a debit or credit card, even if they try to use the correct coins. No operator comes on the call first for assistance, and many Class members never talk to an operator or customer service representative in the course of using these pay phones. Yet claiming these are operator-assisted telephone calls, BBG bills for such calls by including fees for unconnected telephone calls or minimum per minute fees that make the calls cost unconscionable amounts. And since the first thing BBG acquires is a credit or debit card number, there is little a customer can do to stop these charges once the process is started. As a few examples, consumers have reported the following common abuses by BBG:

a. A customer in Puerto Vallarta, Mexico made five telephone calls to the United States from BBG operated payphones, three of which were unanswered and two each less than two minutes. The customer was charged $34 for each telephone call, or over $150.

b. A customer who called the United States from Brussels was billed $181 for two calls – one that did not go through and a 16 minute phone call. When he complained to BBG they reduced the bill by $72, and only agreed to provide a refund after he filed a complaint with the BBB.

c. A customer called the United States from the Milan airport. No operator was involved in the call and the customer used a credit card. He made one call for less than six minutes and later received a charge for $46.90. When he called to complain he was offered $14.70 for a refund by BBG.

d. A customer called the United States from the Frankfurt airport and inserted a debit card to make a telephone call using a BBG pay phone. He was charged $55.85 for a one minute telephone call. When he contacted BBG to complain the bill was reduced to $35.00.

e. A customer called the United States from Frankfurt airport, and used her debit card to make two telephone calls. Upon returning to the United States, she found out her debit card

/ / /

CLASS ACTION COMPLAINT

was billed $157.00 – over $100 for the first call that lasted approximately five minutes, and then $55 for a second call that lasted less than two minutes.

f.      A class member lost her cell phone at Los Angeles International Airport and needed to use a payphone to make 4 phone calls and used a credit card at a BBG payphone near the departure gate. The first two calls were to the lost cell phone, and one was a local call.  For each of these calls she was charged roughly $9.00, even though two of the calls did not connect. She made two subsequent calls, one to Orange County and one to San Francisco.  Both lasted roughly 5-8 minutes and were billed by BBG at $25.00 per call.  When she saw she had been charged $70.00 for four short phone calls, she complained to BBG, and the representative stated they would give her a $20 credit.  When she called back to complain, she was told that because they had "agreed" to the refund, the representative could do nothing more for her and could not give her the company's mailing address.

28.      When faced with inquiries over such charges, BBG representatives are uniformly instructed to either claim they cannot reveal who the collecting company is or where they are located.  For example, when plaintiffs contacted BBG  about this issue to try to informally resolve the situation based on being billed over $40.00 for a call lasting a couple of minutes, they were both informed that such charges could not be reversed or stopped.  They were then, after being put on hold, offered a 30% credit.  This appears to be the standard credit offered by BBG, since customers consistently state that if they have the wherewithal to stay on the phone this is the amount BBG representatives automatically offer.   BBG thus appears to concede that its fees are excessive by at least this amount.  BBG has a record of all partial refunds provided from which the average refund can be calculated, as customers are given a credit to their credit card accounts for such charges.  The level of calls is so high that Visa and MasterCard have direct BBG contacts in the United States to call when customers complain of such charges.

29.      The apparent reason BBG does not disclose such fees in advance is, as the above examples demonstrate, they are unconscionable.  What is even more capricious, the rate charged can depend on what credit card a consumer uses or whether the customer has a credit card on file with BBG.  For example if a call is made with a VISA credit card, the cost is $24.31 for the first

16

five minutes and $3.89 for every additional minute; with Amex, Discover or Diner´s Club, $23.15 for the first five minutes and $3.89 for every additional minute; with a Mastercard from $20.25 to $21.41 for the first five minutes and $3.89 for every additional minute.  If a call gets dropped or is disconnected, the five minute charge is imposed again.  Some consumers report being charged up to $60 for the five minute minimum.  BBG operators are instructed not to mention the rates unless the customer asks for them.

30.     While if customers such as Plaintiffs notice the charges and complain they may be credited by BBG.  However, this procedure requires customers to spend time on the phone repeatedly with Customer Service Representatives explaining why such charges are unauthorized.  BBG also instructs its employees to make obtaining a refund as hard as practicable.  When a customer calls inquiring about charges made to their credit card they are told nothing unless they give their credit card number again – if they refuse, they will receive no relief.  Operators are also instructed not to disclose the actual name of the company; if a customer asks they are told to say International Operator Services.  They are also forbidden to disclose the location of the company, but are allowed to say that it is an "America-based company".  Operators are encouraged to use fake names to disguise the fact their operations are largely located in Mexico.  If a customer asks for a supervisor, CSRs are instructed to say that he or she is attending other calls and is not available at the moment.  If a customer wants the physical address so they can write a letter to the company, the CSR is instructed to not give a credit and as soon as the address is given hang up or say the maximum time permitted to be on a call is over.

31.     BBG's purported excuse or justification for imposing the disputed charges in question is that these are operator assisted telephone calls.  However, consistently there is no operator assisting consumers making these calls.  The other pretext BBG uses is that the calls are made through a satellite system, which is more expensive.  However, because these are pay phones located in airports, train terminals, subway stations and telephone booths, that claim is untrue or misleading because these are hard wired land-line phones.  Land line telephone calls from Europe to the United States are typically very inexpensive – typically a few cents and

/ / /

CLASS ACTION COMPLAINT

substantially less than a dollar per minute.  Even an international telephone call using a cellular telephone, which might actually access satellite technology, is less than $1.50 per minute.

32.     In an attempt to informally resolve this issue, prior to the initiation of this action both plaintiffs submitted these issues for resolution on behalf of themselves all other affected persons by sending pre-litigation demand letters to BBG.  Rather that address these claims, BBG claimed that only BBG Global AG in Switzerland, its supposed parent company, could do so. However, BBG Global AG is a shell company used primarily for funneling money out of Europe. Its address is in an apartment building with a BBG Global AG sign taped to the door.  When customers call to complain they talk to representatives located in either California or Mexico who work for BBG.  When Visa or MasterCard puts them into contact with BBG, or investigates BBG, they are in contact with California representatives who work for BBG.  And if a credit is provided, it is approved by BBG.  Thus, this reference to BBG Global AG appears to simply be part of the shell game that BBG operates to use different corporate names to obfuscate its liability and avoid providing any substantive relief to consumers.

33.     As a result of its inaction, BBG has failed and refused to provide any notice to customers why such charges are so high, why they provide 30% credits to any customer who complains hard enough, by how much their accounts will be credited.  BBG is also unwilling to explain to Class members the purpose of such charges unless they specifically ask for an explanation.  In addition, BBG has consistently failed to provide credits of all charges wrongfully imposed and has failed to correct its non-disclosure practices, making it difficult if not impossible for customers to figure out who they are even dealing with.

34.     The uniform information presently being made available by BBG does not disclose that the amounts detailed herein were improperly imposed on and collected from Class members. In fact, BBG represents material facts to the contrary, as detailed above.  BBG should post the notice of its fees and the company's method for determining the amount of the fees in advance to ensure full notification to all customers, even if it is the simple method of saying there will be minimum connection fees or providing automatic advance notice of how much the call will cost prior to making the call, as is typically done with coin operated telephone calls.

18

CLASS ACTION COMPLAINT

35.     These representations and amounts at issue are material, since these charges are in the range of at least $25.00 for each phone call made, even if it lasts one or two minutes, and sometimes substantially more.   The amount of money made by BBG by imposing these unconscionable charges is in the tens of millions of dollars annually, as it employs approximately 15 operators every shift, 24 hours a day, seven days a week, processing at least 20 to 35 collect calls and 15 to 25 credit card call complaints at the above rates each day.  If imposed uniformly, this would likely total in the tens of millions of dollars of bottom line profits to BBG each year based on the 350,000 pay telephones it operates and the hundreds of millions of minutes it processes monthly through its pay phone system.

36.     Considering the circumstances in which such calls are made (in airports, subway stations, train stations and other locations where normally consumers are calling for a specific important purpose), getting simple information to consumers as to the fees that will be imposed if they complete such a call using a credit card or debit card is both critical and material.  However, even if a consumer interacts with a live person, BBG operators do not give out rates unless affirmatively asked by the customer – likely because since few customers will go through with a call if they are told in advance what the call will cost them.  Class members have been injured as a result of such business acts and practices.

37.     The communications provided by BBG's Customer Service Representatives and operators are based on a memorized script using a written manual provided to BBG employees. These CSRs receive extensive training by BBG and are expected to have memorized the manual, and are tested to give uniform answers by being asked to provide random scripted answers from the manual.  The answers to most commonly asked questions may vary slightly, but are the same in terms of substance.  Mistakes are reprimanded with one to three day suspensions.  Thus, BBG intends for its CSR's to provide the same, memorized scripted information to all customers.

38.     Evidence of the substance of these calls are maintained by BBG for a period of time, as all customer calls are recorded by BBG and have been for at least a year.  However, BBG does not warn or advise consumers that these calls are recorded in any way, even though they involve confidential communications where the CSRs ask for credit card numbers and personal

19

CLASS ACTION COMPLAINT

telephone call information -- presumably because it would make customers reluctant to give out their credit card information over the phone if they knew the call was being recorded.  Such calls are listened to by administrative personnel at BBG, either live or by listening to tape recordings of the confidential conversations.  Because the operators and CSRs are aware they are being recorded and are expected to follow the scripted answers, BBG is able to ensure all customers receive the same misleading responses.  However, by not advising members of the sub-Class in any way that such confidential communications are being recorded by BBG and being listened to by supervisory personnel, BBG has engaged and is still engaging in conduct that violates California Penal Code § 632.

39.    Class members have been exposed to one or more of defendants' uniform business acts or practices set forth above.  Due to the use of uniform standardized BBG advertisements and other forms of communication and routine procedures for making such calculations and representations, as well as the use of memorized scripted information, such representations and omissions of material fact were uniformly made to all members of the Class.  The acts of continuing to make calls were consistent with customers basing their decision to act as a result of such misrepresentations and omissions of material fact, and thus formed a material and substantial part of the basis for the transactions at issue.  In addition, either Class members did or it can be reasonably presumed that Class members affirmatively acted in response to defendants' representations and omitted material facts.

40.    Most persons possess limited knowledge of such a potential for misleading statements and would not reasonably expect that their credit card bills would include items that are not properly charged to them under the law or are unconscionable.

41.    Class members have paid such amounts and/or have not received a return, credit or cancellation of the fees detailed herein and of any improperly paid or retained monies with interest thereon, and thus are currently owed such amounts.

42.    Defendants' failure to abide by their legal obligations and to properly disclose the true facts, as well as their infringement of the legal rights of Class members, was ongoing throughout the class period.

20

CLASS ACTION COMPLAINT

43.     Such conduct continues to date, as BBG is still not disclosing the true facts to Class members or offering full refunds or credits.  Nor has BBG provided a clear and conspicuous corrective notice of the fees and charge at issue.  Defendants still refuse to this day to take full responsibility for their actions despite being aware that such conduct has taken place, and despite demand therefor having been made prior to the initiation of this action.

44.     Any applicable statutes of limitation have either not fully accrued or are equitably tolled by defendants' affirmative acts of fraudulent concealment, suppression, and denial of the true facts regarding the existence of the practices at issue herein.  Such acts of fraudulent concealment include covering up and refusing to fully and directly disclose to Class members the material facts set forth in detail above.  Through such acts of fraudulent concealment, defendants were able to actively conceal from the Class the truth about defendants' practices, thereby tolling the running of any applicable statutes of limitation.

## VI.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Violation of Business and Professions Code 17200, *et seq*.)**

45.     Plaintiffs hereby incorporate by reference all allegations contained in paragraphs 1-44 hereof and further allege as follows.

46.     Defendants' acts and practices as detailed above constitute acts of unfair competition.  Defendants have engaged in an unlawful, unfair or fraudulent business act and/or practice within the meaning of California Business & Professions Code §17200, *et seq.*

47.     Defendants have engaged in "unlawful" business acts and practices by demanding payment from customers for amounts that are not properly imposed on Class members' accounts and/or for misleading customers about the nature of these charges and why they were imposed, and for members of the sub-Class, for recording confidential communications without first receiving direct, unequivocal and advance consent for recording such communications.

48.     These business acts and practices violated numerous provisions of law, including, *inter alia*, California Civil Code § 1670.5, California Civil Code§ 1770, *et seq.*, and Penal Code

/ / /

21

CLASS ACTION COMPLAINT

§ 632, and also operate as a systematic breach of agreements.  Plaintiffs reserve the right to identify additional violations of law as further investigation warrants.

49.     Through the above-described conduct, defendants have engaged in an "unfair" business act or practice in that the justification for such actions, and defendants' refusal to notify all affected persons of their rights and of the true facts based on the business acts and practices described above, is outweighed by the gravity of the resulting harm, particularly considering the available alternatives and/or offends public policy, is immoral, unscrupulous, unethical and offensive, or causes substantial injury to persons who have used such services.

50.     By engaging in the above-described conduct, defendants have engaged in a "fraudulent" business act or practice in that the business acts and practices described above had a tendency and likelihood to deceive persons to whom such conduct was and is targeted by claiming either expressly or impliedly the charges in question were imposed and collected by Class members at levels permitted by law, when in fact neither is the case.  The material information either misrepresented or not disclosed would be a substantial factor in deciding to use such services, since if the true facts had been fully and adequately disclosed prior to making such phone calls, plaintiffs and others would not have utilized BBG's pay telephone services.

51.     Defendants need only to have violated one of the three provisions set forth above to be held strictly liable under this Cause of Action.

52.     The above-described unlawful, unfair or fraudulent business acts and practices engaged in by defendants continue to this day and present a threat to the public.  Defendants have failed to provide the complete relief required by this statute, and continue to improperly mis-describe and collect the charges as detailed above.

53.     Pursuant to California Bus. & Prof. Code § 17203, plaintiffs seek an order of this Court prohibiting defendants from refusing to continue to engage in the unlawful, unfair, or fraudulent business acts or practices set forth in this Complaint and from failing to fully disclose the true facts as set forth herein, provide appropriate advance notice to consumers and ordering defendants to engage in a corrective informational campaign by clearly and conspicuously correcting the misperceptions created by their prior misconduct, as well as stop any collection

22

CLASS ACTION COMPLAINT

activities or impose any additional charges relating to the payment of such fees. Plaintiffs also request the Court order all appropriate equitable monetary relief to ensure defendants do not retain any improperly obtained or collected monies, with interest, and that an asset freeze or constructive trust be imposed over all monies that defendants unfairly obtained from and/or that rightfully belong to the persons who have a vested ownership interest in such monies, all with interest thereon.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

54.     Plaintiffs hereby incorporate by reference all allegations contained in paragraphs 1-53 hereof and further allege as follows.

55.     Defendants entered into a series of standardized express or implied-in-fact agreements or incurred obligations through implied-in-law contracts where they contracted and warranted that certain charges imposed by BBG were properly disclosed and imposed, not labeled or described in a way that could mislead Class members, and were permitted to be charged. In fact, defendants have imposed the above-identified fees in a manner that is not legally proper and that were not properly claimed as due and owing from the Class members. Such uniform agreements also contained an implied covenant of good faith and fair dealing that is imposed as a matter of law in all agreements that also prohibit imposing such charges. Defendants' own reasons for refusing to comply with such contractual obligations here at issue could not reasonably be discovered by members of the Class at the time they entered into these agreements.

56.     As alleged above, defendants breached these contracts by misrepresenting that the above described fees, were due and owing when in fact they were not under the law. Defendants also breached these contracts by failing to timely provide full notice of the nature of charges imposed or by interpreting the agreements in such a way as to make them unconscionable and therefore void or voidable. The affected customers either are or were willing to abide by all conditions legally imposed upon them under the agreements, and have paid such monies. Timely notice of this breach has been provided to defendants.

///

CLASS ACTION COMPLAINT

57.     Defendants' breach of these contracts caused the members of the Class to suffer damages in an amount to be proven at trial.  In addition, defendants were unjustly enriched as a result of imposing and collecting such improper charges and thus must restore Class members to their original position by returning such monies and paying restitution or damages.  Members of the Class are also entitled to an order of the Court requiring defendants pay pre-judgment interest and to comply with their legal contractual obligations and/or voiding such agreements as being unconscionable as interpreted and applied by defendants.

## THIRD CAUSE OF ACTION

### (Violation of the California Consumers Legal Remedies Act)

58.     Plaintiffs hereby incorporate by reference all allegations contained in paragraphs 1-57 hereof and further allege as follows.

59.     The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), has adopted a comprehensive statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property or services to consumers primarily for personal, family or household purposes. This cause of action is asserted by both plaintiffs in their capacity as a consumer on behalf of all Class members who are consumers under the law.

60.     The transactions, policies, acts and practices engaged in by defendants and alleged herein were intended to and/or did result in the continued sale of the services here at issue to a significant number of members of the Class who use such services primarily for personal, family or household purposes.

61.     BBG uniformly represented the charges detailed above were due and owing from Class members and failed to disclose, misrepresented and/or mislabeled such fees and consumers' rights and obligations under the law.  Plaintiffs and the Class members responded positively thereto as evidenced by the making and completing of such calls.  In so doing, defendants violated, and continued to violate, the CLRA in at least the following respects:

a.      In violation of California Civil Code § 1770(a)(2), defendants misrepresented the approval or certification of services;

24

b.      In violation of California Civil Code § 1770(a)(5), defendants' acts and practices constitute misrepresentations that the services in question have characteristics, benefits or uses that they do not have;

c.      In violation of California Civil Code § 1770(a)(9), defendants advertised the services at issue with the intent not to sell them as advertised or represented;

d.      In violation of California Civil Code § 1770(a)(14), defendants have misrepresented that a transaction confers or involves legal rights, obligations, or remedies of certain members of the Class concerning the services at issue when it does not or which are prohibited by law;

e.      In violation of California Civil Code § 1770(a)(16), defendants represented that the services were supplied in accordance with previous representations when they were not; and

f.      In violation of California Civil Code § 1770(a)(19), defendants attempted to insert an unconscionable provision in an agreement by imposing the fees at issue.

62.     Members of the Class who are entitled to relief under the CLRA have suffered irreparable harm, entitling them to both injunctive relief and restitution.

63.     In compliance with the provisions of California Civil Code § 1782, plaintiffs gave written notice to BBG of the intention to seek damages under California Civil Code § 1750, *et seq.*, unless BBG timely provided an appropriate correction or refund plus interest and other appropriate relief to all Class members entitled to relief under the CLRA.

64.     BBG failed within 30 days of receipt of such notices to provide such relief and adequately respond to the demand to stop charging all the fees identified herein, provide clear and unambiguous notice of the change, pay refunds plus interest, and otherwise rectify the wrongful conduct described above on behalf of all Class members who may be entitled to relief under the CLRA, claiming it was not responsible for doing so.  The Class members are entitled to and plaintiffs seek, pursuant to California Civil Code § 1780(a)(2), an order enjoining the above-described wrongful acts and practices of defendants, providing restitution to all members of the Class who are so entitled, ordering the payment of costs and attorneys' fees, and such other relief as deemed appropriate and proper by the Court under California Civil Code § 1780.  Based on

CLASS ACTION COMPLAINT

defendants' failure to properly respond to plaintiffs' pre-litigation CLRA demand, Plaintiffs also seek an award of all actual damages permitted for violation of the CLRA, including for statutory damages of $1,000 and/or up to $5,000 per consumer who qualifies as a "senior citizen" under the CLRA.   In addition, based on the above facts BBG's conduct appears to have been willful, oppressive or fraudulent based upon the circumstances in which such telephone calls were made, with defendants intending to take advantage of the circumstances in which plaintiffs and Class members were making such calls.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief)

65.    Plaintiffs hereby incorporate by reference all allegations contained in paragraphs 1-64 hereof and further allege as follows.

66.    There currently exists between the parties an actual and on-going controversy regarding the respective rights and liabilities of the parties regarding, *inter alia*, the need for defendants to accurately disclose or correct disclosure of the fees in question as detailed above, the obligation of Class members to pay some of the charges in question,   and/or the need of defendants to stop charging these amounts and restore some or all amounts that were not required to be paid by Class members based on these misrepresentations, as alleged in detail above.

67.    Plaintiffs, members of the Class and the general public may be without adequate remedy at law, rendering declaratory relief appropriate in that:

a.    Damages may not adequately compensate the Class members for the injuries suffered, nor may other claims permit such relief;

b.    The relief sought herein in terms of ceasing such practices, providing a full and complete corrective disclosure and/or declaring there is no obligation of Class members to pay such monies may not be fully accomplished by awarding damages; and

c.    If the conduct complained of is not enjoined, harm will result to Class members because defendants' wrongful conduct is continuing, claims are unresolved, persons are entitled to the direct monies taken from them, and the obligation for many Class members or members to continue to pay such sums may still be allegedly outstanding.

CLASS ACTION COMPLAINT

68.    Class members may suffer irreparable harm if a determination of the parties' rights and obligations is not ordered.

69.    Accordingly, plaintiffs request the Court issue an order granting the following declaratory relief:

a.     That a judicial determination and declaration be made of the rights of Class members and the corresponding responsibilities of defendants;

b.     That defendants be ordered to provide notice in clear and conspicuous language to customers of all fees they impose, and the true nature of such charges, and to make such charges consistent with their representations or legal obligations; and/or

c.     An order declaring defendants are obligated to pay restitution to all members of the Class as appropriate and/or otherwise pay over all funds BBG wrongfully acquired either directly or indirectly as a result of imposing improper fees under false pretenses and by which defendants were unjustly enriched.

## FIFTH CAUSE OF ACTION

**(Common Counts -- Money Had and Received, Money Paid and Restitution/Unjust Enrichment)**

70.    Plaintiffs hereby incorporate by reference all allegations contained in paragraphs 1-69 herein and further allege as follows.

71.    As the result of defendants' implied in law agreements, misrepresentations and statements, and in consideration thereof, during the relevant time period set forth above during which such amounts were charged, the Class members paid money to and conferred a benefit upon defendants in connection with services provided to Class members, which monies were originally in the Class members' possession.  Defendants demanded payment of such monies under compulsion or mistake of fact or law.  Defendants received, retained or appropriated these benefits under such circumstances that it would be inequitable and unjust to permit defendants to retain such monies at the expense of the Class members.  Defendants, as a result of such conduct, became indebted to the Class members for the specific sums improperly demanded and paid to defendants as set forth in detail above, with interest thereon.  Not all of such sums have been re-

27

paid to the Class members.  No violation of law or public policy would be promoted by such relief.  In fairness, all such monies, including all interest BBG has earned on such monies while in wrongful possession thereof, should be disgorged by defendants and paid to members of the Class under principles of restitution and unjust enrichment.

72.     As a direct and proximate result of defendants' conduct resulting in their unjust enrichment, plaintiffs and Class members suffered injury and damage, and therefore seek an order directing defendants to return the amount each of them improperly were required to pay to defendants, plus interest thereon, as well as impose a constructive trust over such monies.

<u>**SIXTH CAUSE OF ACTION**</u>

**(For Statutory Damages and Injunctive Relief Under
Calif. Penal Code § 637.2(a)-(b) Based on Violations
of Calif. Penal Code § 632)**

73.     Plaintiffs incorporate by reference all of the above paragraphs of this Class Action Complaint as though fully stated herein.  This Cause of Action is asserted on behalf of the Sub-Class.

74.     At all times relevant herein, defendants' collection personnel and CSRs have routinely communicated by telephone with Plaintiffs and other sub-Class members.

75.     At all times relevant herein, defendants have made use of a software system that enables them to secretly record telephone conversations between defendants' representatives and sub-Class members.

76.     Defendants' telephone communications with plaintiffs and sub-Class members were secretly recorded by defendants without any advisory that the telephonic communication could be monitored and/or recorded, and without obtaining either express or implied advance consent to record such conversations from plaintiffs and members of the sub-Class, in violation of Cal. Pen. Code § 632.

77.     All calls that have been surreptitiously recorded by defendants were "confidential communications" within the meaning of Cal. Penal Code § 632(c) in that plaintiffs and sub-Class members desired the telephone communications to be confined to the parties thereto and not

/ / /

28

CLASS ACTION COMPLAINT

publicly disseminated based on the fact credit card information was being demanded from them, and they were disputing the amounts of charges billed for personal telephone calls.

78.     Without advising plaintiffs and sub-Class members that these telephonic communications could be or were being recorded in any manner, defendants recorded their telephone conversations with plaintiffs and the sub-Class members in violation of Cal. Pen. Code § 632(a).

79.     Pursuant to Cal. Pen. Code § 637.2(a)(1), plaintiffs and sub-Class members are entitled to recover statutory damages in the amount of $5,000 per violation for each telephone call recorded during the relevant time period.

80.     Pursuant to Cal. Pen. Code § 637.2(b), plaintiffs also seek a preliminary and permanent injunction to restrain defendants from committing further violations of §632(a) of California's Invasion of Privacy Act.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, jointly and severally, as follows and as appropriate to the particular Causes of Action:

(1)     An Order certifying the plaintiff Class and sub-Class and appointing plaintiffs and their counsel to represent the Class and sub-Class;

(2)     For declaratory, equitable, injunctive and/or monetary relief as requested in the Causes of Action as appropriate for the particular Causes of Action;

(3)     For actual, direct, incidental, consequential, statutory and exemplary damages, as appropriate for the particular Causes of Action as set forth above;

(4)     For pre- and post-judgment interest;

(5)     For attorneys' fees and costs of suit pursuant to, *inter alia,* the common fund and private Attorney General doctrines, California Code of Civil Procedure § 1021.5 and/or the applicable statutory Causes of Action asserted herein, as may be appropriate; and

(6)     For such other and further relief as this Court may deem just and proper.

/ / /

/ / /

29

CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

      Plaintiffs demand a trial by jury on all claims so triable and an advisory jury for a factual

3

determination on all equitable claims.

4

Dated:  November 12, 2010        CONSUMER LAW GROUP OF CALIFORNIA

5

          By:    S/Alan M. Mansfield

6

               Alan M. Mansfield
               alan@clgca.com

7

          9466 Black Mountain Road, Suite 225
          San Diego, CA 92126

8

          Tel: (619) 308-5034
          Fax: (888) 341-5048

9

          John Mattes, Esq. (Fla. SBN 0468150)

10

          1666 Garnet Avenue, #815
          San Diego, CA 92109

11

          Tel: (858) 412-6081

12

          WHATLEY DRAKE & KALLAS LLC
          Joe R. Whatley, Esq.

13

          Edith M. Kallas, Esq.
          Patrick J. Sheehan, Esq.

14

          1540 Broadway, 37th Floor
          New York, NY  10036

15

          Tel: (212) 447-7070
          Fax: (212) 447-7077

16

          Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

EXHIBIT 1

Remove creditcard from reader to activate payphone

The creditcard service is provided by BBG, for information contact info@bbgcomm.com, for price information ask operator.

The select service is provided by BBG, for information contact info@bbgcomm.com, for price information ask operator.

# Internationale landnummers
## International country codes

| | | | |
|---|---|---|---|
| UK | 0044 | Italy | ... |
| USA+Canada | 001 | Sweden | ... |
| Germany | 0049 | Japan | 0080 |
| France | 0033 | Turkey | 0090 |
| Norway | 0047 | Switzerland | 0041 |
| Spain | 0034 | Poland | 0048 |
| Marocco | 0212 | Denmark | 0045 |

Landcode + Netnummer (-0) + Abonneenummer
Country code + Area code (-0) + Subscriber number

Bijvoorbeeld / For example  001 + 8555 + 3456

Celnummer / Payphone id
## AD 8473

Storingsmelding  0800 0407

KPN is niet aansprakelijk voor het niet goed functioneren van diensten die via deze telefoon worden aangeboden. KPN is not liable for services offered by third parties.

...len of 0800 nummers kunnen van dit toestel bellen gebeld, gebruik hiervoor de rode toestellen. Voor exacte locaties kunt u terecht bij de informatie balie.
Voor 09-nummers geldt een toeslag van €1,30 per gesprek.

*No calling cards or 0800 numbers can be dialed from this phone. Use red phones for that purpose. The airport information desk can inform you about the exact locations.*
*For 09-numbers a surcharge applies of €1.30 per call.*

Kosten per tik
Cost per pulse  **€0,20**

Alarm Druk op knop 'special services' knop, ga door menu heen en druk op emergency button.
*Emergency Press the 'Special services' button, scroll trough menu and push the emergency button.*



# BT Payphones Directory Enquiries

UK Inland **118 141** – Only available for cash calls. Cash calls cost 90p for the first minute, then 50p per minute thereafter.

International **118 060** – Cash calls cost £2.40p for the first minute, then £2.00p per minute thereafter. Credit/Debit Card calls cost £3.00p for the first minute, then £2.00p per minute thereafter.

Directory Enquiry services are available from other suppliers.











# Telephone prices

Coins – From 1st June 2010 the minimum fee is 60p (includes 40p connection charge). Local & Nati
first 30 minutes, then 10p for each subsequent 15 minutes or portion thereof.

Payment by Euro = Minimum fee 1 Euro. Length of call depends on current exchange rate. For the cu
payphone, please call 100 and request the BT Payphones Customer Services Team.

Credit/Debit Cards – 20p per minute. Minimum fee £1.20 (includes £1 connection charge) for Local
Please call 100 and request the BT Payphones Customer Services Team for current prices for your call.

*Excludes non-geographic numbers (e.g. 0845, 0870), Directory Enquiry calls, calls to premium rate numb
personal numbering, paging services and calls made via the Operator. Other restrictions apply.

## Payment

Accepted payment methods may vary between payphones. **Coin accepting payphones accept 10p, 20p**
payphones accept £2 coins. Some coin accepting payphones accept 50c and 1 Euro coins, some also ac
**Payphones operate and display in £ Sterling. See the payphone display for details.**

Where coins are accepted, only unused coins will be returned.

Calls to Emergency Services and freefone numbers are free. **Incoming calls accepted and can be charge**

**Calls using a Credit/Debit Card** – To make a call using a Credit/Debit Card, please swipe the card throug
If there is no card reader on this phone, please call **0800 032 0023** and follow the voice prompts to com



For general information about
BT Payphones, offers and
products please visit:

# www.bt.com/payphones

This phone is

(01293)
NR. ESt
SOUTH
GATWI(

# International codes



| | | |
|---|---|---|
| Australia 00 61+ | Bangladesh 00 880+ | France 00 33+ |
| India 00 91+ | Ireland Republic 00 353+ | Italy 00 39+ |
| Pakistan 00 92+ | Poland 00 48+ | Spain 00 34+ |

Germany 00 49+
Netherlands 00 31+
USA 00 1+

## SOS emergency ca
# dial 999 or 11

For Police, Ambulance,
Coastguard, Mountain R
and Cave Rescue.

EXHIBIT 2

06/13/10 | : | $0.00

Account number:

$ _____

Make your check payable to:
Chase Card Services
Please write amount enclosed.
New address or e-mail? Print on back.

13525 8EX Z 19710 D



CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

## CHASE ◯

Manage your account online:
www.chase.com/creditcards

Additional contact information
conveniently located on reverse side

| ACCOUNT SUMMARY | |
|---|---|
| Account Number: | |
| Previous Balance | |
| Payment, Credits | |
| Purchases | |
| New Balance | |
| Opening/Closing Date | 05/17/10 - 07/16/10 |
| Credit Access Line | |
| Available Credit | |
| Cash Access Line | |
| Available for Cash | $ |

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $ |
| Payment Due Date | 08/13/10 |
| Minimum Payment Due | $19.00 |

Late Payment Warning: If we do not receive your minimum payment by the date listed above, you may have to pay up to a $39.00 late fee and your APRs will be subject to increase to a maximum Penalty APR of 29.99%.

Minimum Payment Warning: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 12 years | |
| $34 | 3 years | (Savings=$664) |

If you would like information about credit counseling services, call 1-866-797-2885.

| REWARDS SUMMARY | |
|---|---|

Previous Points Balance
Points Earned On Purchases
Points Expired This Period
Current Points Total

Thank you for using the credit card that rewards you points for your purchases! We appreciate you choosing Chase for your financial needs - we are here to serve you. If you have any questions, do not hesitate to call us!

1,015 Points Due To Expire on Statement in August, 2010

Your Free Cash credit card earns 1 point for every eligible $1 you spend on purchases. Earn additional points - as much as 10 points per $1 shopping online through www.chase.com/rewardsplus. Add authorized users, and sign up to have your monthly bills charged to your card. Why not get points for all those purchases too? Redeem your points anytime, or just check out new offers at www.chase.com/rewards.

| ACCOUNT ACTIVITY | | |
|---|---|---|
| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
| 06/17 | | |
| 07/10 | Payment Thank You Electronic Chk | |
| 06/16 | | |
| 06/15 | | |
| 06/17 | | |
| 06/16 | | |
| 06/17 | TELECOM GERMANY BBG 800-606-0575 | 64.30 |
| 06/19 | | |
| 06/22 | | |
| 06/21 | | |
| 06/22 | | |
| 06/22 | | |

**This Statement is a Facsimile - Not an original**

EXHIBIT 3

**WELLS FARGO**   Wells Fargo Online®

## Account Activity

Irina's Checking XXXXXX4583

### Activity Summary

Ending Balance as of 11/09/10

Available Balance

### Transactions

Show:  All Transactions for  Last 18 Months

| Date | Description | Deposits / Additions | Withdrawals / Subtractions |
|------|-------------|---------------------|---------------------------|
| Posted Transactions | | | |

| | 08/20/09 | CHECK CRD PURCHASE 08/19 TELECOM GERMANY JUL 12 800-608-0575 LU 446024XXXXXX7503 232940012852357 ?MCC=4814 121042882DA01 | | $79.00 |
| | 08/20/09 | CHECK CRD PURCHASE 08/19 TELECOM GERMANY JUL 12 800-608-0575 LU 445024XXXXXX7503 232940012852369 ?MCC=4814 121042882DA01 | | $93.85 |

Wells Fargo Account Activity

https://online.wellsfargo.com/das/channel/account...

| | 09/21/09 | CHECK CRD PUR RTRN 08/19 TELECOM GERMANY JUL12 800-608-0575 LU 446024XXXXXX7503 263940015490948 7MCC=4814 121042882DA01 | $31.60 | |
| --- | --- | --- | --- | --- |
| | 09/21/09 | CHECK CRD PUR RTRN 08/19 TELECOM GERMANY JUL12 800-608-0575 LU 446024XXXXXX7503 263940015490949 7MCC=4814 121042882DA01 | $37.54 | |

11/10/10 11:34 PM

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| VLASTIMIL SAJFR; DAVID KEEPORTS | BBG COMMUNICATIONS, INC. |

(b) County of Residence of First Listed Plaintiff   Santa Clara
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE. IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Alan M. Mansfield/THE CONSUMER LAW GROUP
[SEE ATTACHMENT]

Attorneys (If Known)

**'10CV2341 JLS  WVG**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)
CAFA, 28 U.S.C. Section 1332(d)
Brief description of cause.
SEE ATTACHMENT

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
In excess of $5 million

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
Nov. 12, 2010

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

ATTACHMENT TO CIVIL COVER SHEET

**I.(c)  Attorney's (Firm name, etc.) Cont'd:**

THE CONSUMER LAW GROUP
Alan M. Mansfield (SBN 125998)
alan@clgca.com
9466 Black Mountain Rd., Suite 225
San Diego, CA 92126
Tel: (619) 308-5034
Fax: (888) 341-5048

John Mattes, Esq. (Fla. SBN 0468150)
investigativeguy@gmail.com
1666 Garnet Avenue, #815
San Diego, CA 92109
Tel: (858) 412-6081

WHATLEY DRAKE & KALLAS LLC
Joe R. Whatley, Esq. (*To Apply as Pro Hac Vice*)
jwhatley@wdklaw.com
Edith M. Kallas, Esq. (*To Apply as Pro Hac Vice*)
ekallas@wdklaw.com
Patrick J. Sheehan, Esq. (*To Apply as Pro Hac Vice*)
psheehan@wdklaw.com
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
Fax: (212) 447-7077

**VI. CAUSE OF ACTION (Cont'd):**

Consumer Class Action for injunctive and monetary relief against company for charging illegal
fees and recording conversations without consent.