1  FRED R. PUGLISI, Cal. Bar No. 121822
   NORMA V. GARCIA, Cal. Bar No. 223512
2  VALERIE E. ALTER, Cal. Bar No. 239905
   ELIZABETH S. BERMAN, Cal. Bar No. 252377
3  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
4     Including Professional Corporations
   1901 Avenue of the Stars, Suite 1600
5  Los Angeles, California  90067-6017
   Telephone:   310-228-3700
6  Facsimile:    310-228-3701
   fpuglisi@sheppardmullin.com
7  ngarciaguillen@sheppardmullin.com
   valter@sheppardmullin.com
8  eberman@sheppardmullin.com

9  Attorneys for Defendant,
   BBG Communications, Inc.

10

11            UNITED STATES DISTRICT COURT

12           SOUTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  VLASTIMIL SAJFR AND DAVID KEEPORTS, on behalf of themselves and 15  all others similarly situated, | Case No. 10-CV-2341-H-NLS |
| | **DEFENDANT BBG COMMUNICATIONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS COMPLAINT** |
| 16                          Plaintiffs, | |
| 17          v. | |
| 18  BBG COMMUNICATIONS, INC.,  a Delaware CORPORATION, and DOES 1 - 19  10, | |
| | Date:   February 28, 2011 |
| 20                          Defendant. | Time:  10:30 a.m. |
| | Courtroom:  13 |
| 21 | |
| | Complaint filed: November 12, 2010 |
| 22 | Trial Date:  None Set |

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. FACTS ........................................................................................................... 2

    A.    Plaintiffs' Complaint ............................................................................ 2

          1.    Plaintiff Sajfr's Phone Call While In Germany. ................................... 2

          2.    Plaintiff Keeports' Alleged Phone Calls While Allegedly In
              Germany. .......................................................................................... 3

          3.    Plaintiffs' Claims Against BBG Communications. ............................. 3

    B.    Actual Facts And Applicable Law. ................................................... 3

          1.    Plaintiffs Named The Wrong Defendant............................................. 3

          2.    The Deutsche Telekom Designed Call Flow Procedures
              Provided Every Caller The Opportunity To Obtain Rate
              Information With The Push Of A Button............................................. 4

          3.    Sajfr's Call. ........................................................................................ 5

          4.    Keeports' Alleged Call. ...................................................................... 5

          5.    The German Telecommunications Act And Relevant
              Authority. .......................................................................................... 5

          6.    Relevant Mexican Authority. ............................................................. 6

III. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
      PLAINTIFF KEEPORTS' SWIPE CARD CALL CLAIMS .................................. 7

    A.    Standard For A Rule 12(b)(1) Motion To Dismiss For Lack Of
          Standing............................................................................................. 7

    B.    Keeports Did Not Place The Alleged Calls In Germany. ................. 8

IV. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
      CLAIMS BASED UPON CONDUCT OCCURRING ENTIRELY IN, AND
      GOVERNED BY, SOVEREIGN NATIONS. ....................................................... 8

    A.    Standard For A Rule 12(b)(1) Motion To Dismiss. ......................... 8

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

B.   The Presumption Against Extraterritoriality Bars Plaintiffs' Claims. ............ 9

   1.   The Conduct Complained Of By Plaintiffs Occurred In Germany And Mexico, Implicating The Presumption Against Extraterritoriality. ............................................................................... 11

   2.   Plaintiffs Cannot Overcome The Fact That California's Legislature Not Only Never Intended For Its Statutes To Apply Extraterritorially, But That Even If It Did, The Statutes Would Be Unconstitutional. .......................................................................... 12

C.   The Doctrine Of International Comity Also Mandates Dismissal of Plaintiffs Complaint With Prejudice. .......................................................... 12

D.   Choice-of-Law Also Warrants Dismissal Of Plaintiffs' Complaint. ............. 13

   1.   The Alleged Deceptive Practices Most Impair The Laws Of Germany. ....................................................................................... 14

   2.   The Alleged Recorded Calls Most Impair The Laws Of Mexico. .......................................................................................... 14

V. IN THE ALTERNATIVE, PLAINTIFFS CLAIMS SHOULD BE DISMISSED AS THEIR CLAIMS FAIL UNDER FRCP RULE 12(b)(6) ................................. 17

A.   Standard For A Rule 12(b)(6) Motion To Dismiss. ..................................... 17

B.   Plaintiff's Claim For Violation Of Section 17200 Fails. ............................. 17

   1.   International Calling Rates Were Adequately Disclosed. .................. 17

      a.   BBG Communications Did Not Have Exclusive Knowledge About The Alleged Charges. ............................. 18

      b.   BBG Communications Did Not Make Partial Representations Or Suppress Material Facts .......................... 19

   2.   BBG Communications' Alleged Business Practices Are Not Unfair. ............................................................................................ 19

   3.   Plaintiffs Do Not Sufficiently Allege Justifiable Reliance. .............. 20

   4.   The UCL "Safe Harbor" Rule Bars Plaintiffs UCL Claim ................ 21

C.   Plaintiffs' Claim For Breach Of Implied Contract Fails. ............................. 22

-ii-

1     1. Plaintiffs' Claim For Breach Of An Implied-In-Fact Contract
2      Fails. ............................................................................. 22

3     2. To The Extent Plaintiffs' Claim Is For Breach Of An Implied-
      In-Law Contract, It Also Fails............................................. 22
4
   D. Plaintiffs California Consumers Legal Remedies Act Claim Also
5    Fails. ........................................................................................... 23

6   E. Plaintiffs' Claim For Declaratory Relief Fails................................. 24

7   F. Plaintiffs Claim For Money Had And Received / Unjust Enrichment
8    Also Fails..................................................................................... 24

9 VI. CONCLUSION ......................................................................................... 25

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

<u>TABLE OF AUTHORITIES</u>

Page(s)

3

<u>Federal Cases</u>

4

5

*Allstate Ins. Co. v. Hague*
    449 U.S. 302, 101 S. Ct. 633, 66 L. Ed. 2d 521 (1981) .......................................................... 13

6

*Argentine Republic v. Amerada Hess Shipping Corp.*
    488 U.S. 428.......................................................................................................................... 16

7

8

*Ashcroft v. Iqbal*
    ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..................................................... 21

9

10

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 969 (9th Cir. 1988)................................................................................................. 21

11

12

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................................................... 21

13

*Colwell v. Dept. of Health & Human Services*
    558 F.3d 1112 (9th Cir. 2009)............................................................................................... 12

14

15

*Doe v. Wal-Mart Stores, Inc.*
    No. 05-7307, 2007 U.S. Dist. LEXIS 98102 (March 30, 2007) ............................................. 14

16

*Dorcient v. American Airlines, Inc.*
    1993 WL 437670 (D.Mass. 1993).......................................................................................... 13

17

18

*Janda v. T-Mobile*
    No. C 05-03729, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009) .............................................. 22

19

20

*Lozano v. AT&T Wireless Services, Inc.*
    504 F.3d 718 (9th Cir. 2007).................................................................................................. 23

21

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ....................................................................................................... 11, 12

22

23

*In re Maxwell Communication Corp., et al. v. Societe General PLC*
    186 B.R. 807 (SDNY 1995) ..................................................................................... 13, 14, 15, 16

24

25

*Morgan v. Harmonix Music Sys. Inc.*
    No. 08-5211, 2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009)................................... 14

26

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ....................................................... 14

27

28

*Priyanto v. MS/Amsterdam*
    No. 07-3811, 2009 U.S. Dist. LEXIS 7849 (C.D. Cal. Jan. 23, 2009) ................................... 14

-iv-

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

*Renne v. Geary*
   501 U.S. 312 (1991) ................................................................ 11

*Riensche v. Cingular Wireless LLC d.b.a. AT&T Wireless*
   2009 U.S. Dist. LEXIS 95802 (W.D. Wash. Oct. 2, 2009)..................... 22

*Safe Air For Everyone v. Meyer*
   373 F.3d 1035 (9th Cir. 2004)................................................ 11

*Smale v. Cellco Partnership d.b.a. Verizon Wireless*
   547 F. Supp. 2d 1181 (W.D. Wash. 2008) ................................. 22

*Speigler, 552 F.Supp.2d at 1045* ............................................... 23

*Thornhill Pub. Co. v Gen. Tel. & Elec. Corp.*
   594 F.2d 730 (9th Cir. 1979)................................................ 12

*Tidenberg v. Bidz.com, Inc.*
   No. 08-5553, 2009 U.S. Dist. LEXIS 21916 (C.D. Cal. March 4, 2009) ............. 14

*Whitmore v. Arkansas*
   495 U.S. 149 (1990) ....................................................... 11

State Cases

*Berryman v. Marit Prop. Mgmt., Inc.*
   152 Cal. App. 4th 1544 (2007).............................................. 21

*Buckland v. Threshold Enterprises, Ltd.*
   155 Cal.App. 4th 798 (2007)............................................... 28

*Cardellini v. Casey*
   181 Cal. App. 3d 389 (1986)............................................... 28

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
   *20 Cal.4th 163 (1999)* ............................................ 23, 24, 25

*Durell v. Sharp Healthcare*
   183 Cal.App.4th 1350 (2010)............................................... 27

*Farmers Ins. Exchange v. Zerin*
   53 Cal.App.4th 445 (1997)............................................. 28, 29

*Frio v. Superior Court*
   203 Cal. App. 3d 1480 (1988).............................................. 19

*Gomez v. Lincare*
   173 Cal.App.4th 508 (2009)................................................ 26

*Hannon v. Western Title Co.*
   211 Cal. App. 3d 1122 (1989)..................................................................... 28

*Heliotis v. Schuman*
   181 Cal. App. 3d 646 (1986)....................................................................... 22

*Kahn v. Lischner*
   128 Cal. App. 2d 480 (1954)....................................................................... 24

*Kearny v. Salomon Smith Barney, Inc.*
   39 Cal.4th 95 (2006)........................................................................ 17, 18, 19

*McBride v. Boughton*
   123 Cal.App.4th 379 (2004)............................................................. 27, 28, 29

*Melchior v. New Line Productions, Inc.*
   106 Cal. App. 4th 779 (2003)...................................................................... 29

*Motors, Inc. v. Times Mirror Co.*
   *102 Cal. App. 3d 735 (1980)* ..................................................................... 23

*Otworth v. Southern Pac. Transp. Co.*
   166 Cal.App.3d 452 (1985).......................................................................... 26

*People v. Duz-Mor Diagnostic Lab.*
   68 Cal.App.4th 654 (1998).......................................................................... 25

*In Re Tobacco II Cases*
   46 Cal.4th 298 (2009)................................................................................. 24

*Washington Mutual Bank, FA v. Sup. Court*
   24 Cal.4th 906 (2001)................................................................................. 17

*Weitzenkorn v. Lesser*
   40 Cal.2d 778 (1953)................................................................................... 26

*Wilhelm v. Pray, Price, Williams & Russell*
   186 Cal.App.3d 1324 (1986)........................................................................ 24

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rules of Civil Procedure, Rule 12(b)(1) .......................................... 4, 10, 11, 12

FRCP RULE 12(b)(6) .................................................................................. 20

U.S. Const. Article III, § 2 ........................................................................... 11

Article III of the United States Constitution ................................................. 11, 12

State: Statutes, Rules, Regulations, Constitutional Provisions

CAL. BUS. & PROF. CODE § 17200 ............................................................ 7, 21

Cal. Civ. Code § 1770(a)............................................................................ 27

German Telecommunications Act of 2004 ................................................... 9

Cal. Penal Code § 632 ................................................................. 7, 18, 19, 20

Other Authorities

Mex. Const., Article 16, ¶ 12 .......................................................... 10, 17, 18

## MEMORANDUM OF POINTS & AUTHORITIES

## I.      INTRODUCTION

Although they will never admit it, by their complaint Plaintiffs seek to have this Court regulate the telecommunication industry in Germany and around the globe using California's consumer protection laws for a foundation.  Because this motion challenges this Court's jurisdiction to do so under Federal Rules of Civil Procedure, Rule 12(b)(1), evidence has been submitted that demonstrate the improper nature of Plaintiffs' request.

More specifically, the lack of disclosures complained of in this case by Plaintiffs are not just applicable to BBG Global, the real company that provided the payphone services complaint of by Plaintiffs, but to Deutsche Telekom AG too, the partially government owned telecommunication company of Germany.  In fact, it was Deutsche Telekom that dictated the call flow design, including prompts and rate disclosures, that were to be made by both itself and BBG Global for credit/debit card services at the Frankfurt Germany airport.  Stated differently, BBG Global's disclosures are not only proper under German law, a fact not challenged by Plaintiffs, they are the same disclosures, made in the same way, using the same payphones as Deutsche Telekom itself.  Plaintiffs had a choice -- they could have selected either Deutsche Telekom's services or BBG Global's services when they allegedly placed there calls.  No matter which service provider they selected, however, they would have received the same disclosures, including the same ability to obtain rate information with the push of a single button.  Plaintiffs cannot, and do not, deny this choice of service providers or the ability to obtain rate information at the push of a button.

Rather than take advantage of these designed disclosures, Plaintiffs apparently decided to rely on their own preconceived notions of what the call should cost and declined to obtain the readily available rate information.  Now, having learned their alleged preconceived notions were wrong, and having selected BBG Global as their service provider, they have decided to file a class action lawsuit requesting that this court

1    apply California consumer protection laws to mandate a change in the disclosures made to

2    a long distance payphone user in Germany.

3            Not surprisingly, established principles of extraterritoriality, international comity,

4    choice of law, due process, and many others do not allow for such an intrusive injection of

5    California law into Germany. Thus, for the reasons set forth below, BBG Communications

6    requests that this Court grant its motion to dismiss and deny Plaintiffs request for the court

7    to regulate international telecommunication services using California's inapplicable

8    consumer protection laws.

9                              **II.    FACTS**

10   **A.    Plaintiffs' Complaint**

11           **1.    Plaintiff Sajfr's Phone Call While In Germany.**

12           Plaintiff Sajfr alleges that he used a BBG Communications payphone while in

13   Frankfurt, Germany. [Complaint, ¶ 10.]  Sajfr further alleges that he was charged $54.33

14   for a one minute telephone call.  [*Id.*]  He also alleges that there were no disclosures about

15   rates or fees on the payphone, and that he initially inserted coins to make his call, but then

16   received an automated message prompting him to use a credit card because he had not

17   inserted sufficient coins. [*Id.*]  Sajfr further alleges that "at no time did this voice prompt

18   disclose the fees for making a credit card call; as a result he did not know the amount of

19   the charge until he received his credit card statement with this charge."  [*Id.* ¶ 10(a).]

20           Sajfr admits, however, that there is a disclosure on the phone advising callers how

21   to obtain rate information.  [Complaint ¶ 2: 13:16.]  He fails to allege that he sought such

22   rate information pursuant to the disclosure.

23           Sajfr further alleges that when he called BBG Communications to complain of the

24   $54.33 charge, "they automatically routed him to a BBG representative, who disclosed for

25   the first time there was a five minute minimum connection fee, which is why he was

26   charged over $50.00 for a one minute phone call." [Complaint, ¶ 10(a).]  Sajfr also alleges

27   that BBG Communications failed to advise him that the telephone call would be recorded.

28   [*Id.*]  Plaintiff admits, however, that the customer services representatives who handled his

call are located in Tijuana, Mexico, and that the calls are therefore being recorded in a different country. [Complaint, ¶ 5.]

**2.   Plaintiff Keeports' Alleged Phone Calls While Allegedly In Germany.**

Plaintiff Keeports alleges he used a BBG Communications payphone to make two phone calls totaling seven (7) minutes while he was in Frankfurt, Germany.  [Complaint, ¶ 10(b).]  Keeports claims that he was charged $150 for the two telephone calls.  [*Id.*]

Keeports also alleges that when he and his wife called BBG Communications to complain of the $150 charge, their call was recorded without notice or consent. [Complaint, ¶ 10(b).]  Keeports admits, however, that the calls were recorded from call centers located in Tijuana, Mexico.  [*Id.* ¶ 5.]

**3.   Plaintiffs' Claims Against BBG Communications.**

Based on these general allegations, Plaintiffs assert the following causes of action against BBG Communications: (i) violation of *California's* Business and Professions Code section 17200, *et seq.*; (ii) breach of contract; (iii) violation of *California's* Consumers Legal Remedies Act; (iv) declaratory relief; (v) common counts for money had and received, money paid, restitution/unjust enrichment; and (vi) violation of *California's* Penal Code section 632.

**B.   Actual Facts And Applicable Law.**

**1.   Plaintiffs Named The Wrong Defendant.**

While Plaintiffs allege that BBG Communications services the payphones at the Frankfurt Airport, this is simply untrue.  BBG Global, A.G. ("BBG Global"), a Swiss corporation headquartered in Baar, Switzerland, actually entered into the agreement with Deutsche Telekom A.G. ("Deutsche Telekom")[1] to provide card-swipe calling services at Deutsche Telekom's payphones at the Frankfurt airport.  [von Klocke Decl., ¶¶ iv, vi.]

---

[1]   Deutsche Telekom is a German corporation headquartered in Germany, and is the principal telephone carrier in Germany. [von Klocke Decl., ¶ iii, Ex. "A."]  The Federal Republic of Germany owns 14.8% of Deutsche Telekom. [*Id.*]

It was also BBG Global that in 2007 entered into an agreement with Ferdinand von ("Klocke") to act as BBG Global's independent agent.  [von Klocke Decl., ¶¶ iv, v.].  It was Klocke who was responsible for establishing and managing BBG Global's long distance payphone operator-assisted calling services at the Frankfurt airport.  [*Id.*, ¶ v.]  As BBG Global's independent agent, Klocke negotiated the 2007 BBG Global—Deutsche Telekom agreement, in which BBG Global would provide long distance operator-assisted calling services to payphones located at the Frankfurt airport. [*Id.*, ¶¶ v, vi]  Klocke and Deutsche Telekom heavily negotiated the terms of the agreement over the course of several months and almost every detail in connection with the services provided by BBG Global, including the details and specifications of the call flow design, prompts, and disclosures, was determined by, reviewed by, and subject to the approval of Deutsche Telekom. [*Id.*]

      **2.**     **The Deutsche Telekom Designed Call Flow Procedures Provided Every Caller The Opportunity To Obtain Rate Information With The Push Of A Button.**

As stated briefly above, in order for BBG Global to service the phones at the Frankfurt airport, Deutsche Telekom ultimately dictated everything from the call flow design to disclosures. [von Klocke Decl., ¶¶ vi, xvi.]  Importantly, the call flow design as dictated by Deutsche Telekom is the same call flow design followed by Deutsche Telekom itself with respect to card swipe calls.  [*Id.*, ¶ 7.]  The call flow was designed to provide every caller, whether using Deutsche Telekom's or BBG Global's services, the ability to obtain rate information before incurring any charge for a telephone call, by simply following the prompts and pressing a single number on the call pad – "9" for BBG Global serviced calls or "1" for Deutsche Telekom serviced calls.  [*Id.*, ¶¶ xi, xii.]  Additionally, every payphone located at the Frankfurt airport contains a disclosure stating that a caller can call to get rates.  [Complaint ¶ 5.]  If the caller does not request a rate quote, or does not hang up after receiving a rate quote, then the call is connected to the destination. [*Id.*, ¶ xiv.]  Only then are any charges incurred by the caller.  [*Id.*.]

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

### 3.     Sajfr's Call.

Plaintiff Sajfr's call followed the same call flow described above.  He placed his call on June 17, 2010 from Frankfurt, Germany to the Czech Republic.  [Galicot Decl., ¶ 3, Ex. "C".]  Sajfr cannot, and does not, deny that he was prompted to dial "9" to receive rate and fee information for his call.  [von Klocke Decl., ¶ xi.]  Also, he expressly admits there was a disclosure on the payphone advising callers such as himself to get specific rate and fee information for his call. [Complaint ¶ 5.]  Sajfr could have easily obtained the applicable rates and fees for his call *before* being assessed any charge if he had simply pressed "9" when prompted to do so.  Having chose not to do so, however, he cannot now be allowed to complain of BBG Global's alleged failure to disclose rates.

### 4.     Keeports' Alleged Call.

Keeports did not actually place the calls he complains of.  To the contrary, it was his wife, Irina Smirnova, that was in the Frankfurt airport while returning from Russia on July 14, 2010, who made the two alleged phone calls.  [Galicot Decl., ¶ 4, Ex. "D."]  Thus, by his own admission, Keeports lacks standing to seek any recovery related to the alleged telephone calls.

### 5.     The German Telecommunications Act And Relevant Authority.

Under German law, BBG Global is not required to make any rate disclosures on its public payphones regardless of what method of payment is used (coins or credit or debit cards). [Prof. Holznagel Decl., ¶ ¶ 1-4, Annex.]  The only section in the German Telecommunications Act of 2004 that regulates public payphones is section 78(2) No. 3-5, which is silent on disclosure of rates related to public payphones.  [*Id.*]  While section 66a of the German Telecommunications Act does provide for rate disclosures for phone calls, it is very specific as to which types of calling services the regulations apply to, and it excludes long distance end-user to end-user calls like the ones Plaintiffs complain of, and subject of this lawsuit:

> "any person offering or promoting premium rate services, directory enquiry services, mass calling services, services on service numbers, innovative services or short code services for

1
2
3
4

> end-users must indicate the price payable for the service, per
> minute or for each occasion of use, value added tax and any
> other price components included.  The price is to be indicated
> clearly, prominently and in direct relation to the telephone
> number.  When the telephone number is shown the price may
> not indicated for a shorter length of time than that for which
> the number is shown."

5   [Prof. Holznagel Decl., ¶ 1, Annex.]  Moreover, the German Telecommunications act does

6   not require that public payphone servicers announce the rates to callers before the caller

7   places his or her call, again, regardless of the payment method used, i.e., whether paying

8   with coins or a credit or debit card.  [Prof. Holznagel Decl., ¶ ¶ 2-3.]

9          This would explain why Deutsche Telekom itself, which is partially owned by the

10  German government, makes the exact same disclosures, in the exact same manner, as BBG

11  Global, for swipe card calls at the Frankfurt, Germany airport.  [von Klocke Decl., ¶ vii.]

12         **6.     Relevant Mexican Authority.**

13         The Mexican Constitution allows a party to a call to record that telephone

14  conversation without first obtaining the other caller's consent.  [Mexican Constitution, Art.

15  16, ¶ 12; Puglisi Decl., ¶ 3; Ex. "H"; Request for Judicial Notice, Ex. "F."]  Indeed, Article

16  16, Paragraph 12 of the Mexican Constitution provides, in relevant part, that:

17
18
19
20

> "Private communications are inviolable.  The law will
> criminally punish any act prejudicial to their freedom and
> privacy, *except when voluntarily provided by any of the
> individuals involved therein*.  The judge will evaluate their
> scope, provided they contain information related to the
> commission of a crime.  In no case shall communications that
> violate the duty of confidentiality as provided by law be
> admitted."

21  (emphasis added); *see also*, *Amparo Civil 3191/97, Esteban Gonzalo Arias Pérez, Oct. 23,*

22  *1997,  Collegiate Fifth Civil Court of the First Circuit, Seminario Judicial de la*

23  *Federacion, Vol. VI, Thesis I.5o.C.9K, p. 656* ("since in this case it is a civil  matter and

24  especially there was no act of federal authority intercepting the telephone communication

25  between the complainant and the spouse of the appellant injured third party, but rather the

26  interception was made by the latter through the recording made on the telephone installed

27  in his  home, i.e., on his own telephone line, with the device commonly called an

28  answering machine or message recorder, it is not true that the admission of documentary

-6-

1 evidence of audio tapes and their judicial inspection offered by the appellant, as well their

2 reception and material reproduction, violate to the detriment of the plaintiff the guarantee

3 of the inviolability of private conversations enshrined in Article 16 of the Federal

4 Constitution."). [*Id.*]

5 **III.     THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER**

6 **PLAINTIFF KEEPORTS' SWIPE CARD CALL CLAIMS**

7 **A.     Standard For A Rule 12(b)(1) Motion To Dismiss For Lack Of Standing.**

8 To maintain his lawsuit, the burden is on Keeports to show that he meets the

9 standing requirements imposed by Article III of the United States Constitution.  *See Lujan*

10 *v. Defenders of Wildlife*, 504 U.S. 555, 551-562 (1992) (party invoking federal jurisdiction

11 bears burden of establishing standing); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)

12 (plaintiff must "clearly and specifically" set forth facts sufficient to satisfy Article III

13 standing requirements).

14 Article III standing requirements arise out of the constitutional mandate that federal

15 courts decide actual "cases" and "controversies" as well as prudential concerns addressing

16 the wisdom of submitting certain disputes to the court.  U.S. Const. Art. III, § 2; *Renne v.*

17 *Geary*, 501 U.S. 312, 316 (1991).  Article III requires a plaintiff to establish, at a

18 "constitutional minimum": (1) an injury in fact that is "concrete and particularized" and

19 "actual or imminent" as opposed to "conjectural" or "hypothetical"; (2) a causal connection

20 between the injury and the conduct complained of; and (3) that the injury will likely be

21 redressed by a favorable decision.  *Lujan*, 504 U.S. at 560-561.

22 A motion to dismiss brought under Rule 12(b)(1) of the FEDERAL RULES OF CIVIL

23 PROCEDURE challenges the Court's subject matter jurisdiction over the claim.  A

24 jurisdictional attack pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) may be

25 facial or factual.  *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004).

26 "In a facial attack, the challenger asserts that the allegations contained in a complaint are

27 insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the

28 challenger disputes the truth of the allegations that, by themselves, would otherwise invoke

1   federal jurisdiction."  *Id.*  Where a defendant mounts a factual attack on subject matter

2   jurisdiction, "the district court may review evidence beyond the complaint without

3   converting the motion to dismiss into a motion for summary judgment" and "[t]he court

4   need not presume the truthfulness of the plaintiff's allegations."  *Id.*  The plaintiff must

5   then "furnish affidavits or other evidence necessary to satisfy its burden of establishing

6   subject matter jurisdiction."  *Id.  See also Assoc. of Am. Med. Colleges*, 217 F.3d at 778;

7   *Thornhill Pub. Co. v Gen. Tel. & Elec. Corp.*, 594 F.2d 730 (9th Cir. 1979); *Colwell v.*

8   *Dept. of Health & Human Services*, 558 F.3d 1112, (9th Cir. 2009).

9   **B.**     **Keeports Did Not Place The Alleged Calls In Germany.**

10          Plaintiff Keeport cannot satisfy the first of the three elements required to

11   demonstrate standing: an injury in fact (*Lujan*, 504 U.S. at 560-561) because Keeports did

12   not actually suffer the alleged injury, as he did not place the call he complains of. [Galicot

13   Decl., ¶ 4, Ex., "D."]  By his own admission, Keeports was not even in Germany when the

14   calls were placed.  [*Id.*]  His wife, Irina Smirnova, made the call from the Frankfurt airport

15   in Germany. [*Id.*]  As such, only she has standing to assert any claim related to placing the

16   alleged calls.

17          At best, Keeports has a "generalized grievance" which he asserts on behalf of a

18   proposed class, but as established by the Supreme Court, this is simply not enough to

19   confer standing. *Warth*, 422 U.S. at 499 (holding that a plaintiff must have a personal stake

20   in the litigation; a "generalized grievance" asserted on behalf of "a large class of citizens"

21   is not enough to confer standing).  Thus, Keeports has not been injured by the conduct he

22   alleges in his Complaint within the meaning of Article III, and, therefore, lacks standing to

23   seek redress for the damages allegedly stemming from the calls made from Germany.

24   **IV.     THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER**

25   **CLAIMS BASED UPON CONDUCT OCCURRING ENTIRELY IN, AND**

26   **GOVERNED BY, SOVEREIGN NATIONS.**

27   **A.**     **Standard For A Rule 12(b)(1) Motion To Dismiss.**

28

-8-

As discussed above in section III.A., in support of a motion to dismiss under Rule 12(b)(1), the moving party may submit "'affidavits or any other evidence properly before the court….'" *Colwell v. Dept. of Health & Human Services*, 558 F.3d 1112, (9th Cir. 2009), *quoting, St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

**B.      The Presumption Against Extraterritoriality Bars Plaintiffs' Claims.**

Plaintiffs ask this Court to reach extraterritorially to conduct occurring entirely beyond the borders of the United States in allowing this action to stand against BBG Communications.  The presumption against extraterritoriality, however, is a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, ***is meant to apply only within the territorial jurisdiction of the United States***.'" *In re Maxwell Communication Corp., et al. v. Societe General PLC,* 186 B.R. 807, 815 (SDNY 1995) (emphasis added), *quoting*, *Equal Employment Opp. Comm. v. Arabian American Oil Co. ("Aramco")*, 499 U.S. 244, 248 (1991) (holding Title VII did not apply to regulate employment practices of U.S. employers who employ U.S. citizens abroad).

Importantly, while "federal laws sometimes have extraterritorial reach, this feature has been attributed to Congress's constitutional powers to conduct affairs with foreign nations"***—but states do not enjoy such powers***.  *Dorcient v. American Airlines, Inc.*, 1993 WL 437670 (D.Mass. 1993).  Here, Plaintiffs ask this Court to apply California state common law and consumer protection statutes (the UCL, CLRA, and California's Penal Code) to payphones and services obtained in Germany, and calls recorded in Mexico.  [Complaint ¶ ¶ 2-6.]  It was never the California's legislature's intent for these statutes to apply extraterritorially. *In re Maxwell* at 818 ("An act of Congress will not be found to apply to conduct occurring outside the U.S. unless 'the affirmative intention of the Congress' to apply the law extraterritorially is 'clearly expressed' in the statute."), *quoting*, *Aramco*, 499 U.S. at 248.  Absent ***clear*** intent from the legislature that these statutes will apply to conduct occurring in foreign nations, these claims cannot survive.

But even if California had expressly stated that its statutes had extraterritorial reach, they would be stricken as unconstitutional, as California's legislature is preempted from

-9-

1   regulating any conduct relating to foreign affairs.  The Due Process Clause limits the

2   states' ability to apply their laws to out-of-state conduct.  The Supreme "Court has

3   invalidated the choice of law of a State which has had no significant contact or significant

4   aggregation of contacts, creating state interests, with the parties *and* the occurrence or

5   transaction." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308, 101 S. Ct. 633, 66 L. Ed. 2d

6   521 (1981) (emphasis added).  A state's choice of law may "violate the Constitution

7   because it is so totally arbitrary or . . . fundamentally unfair to a litigant that it violates the

8   Due Process Clause. *If the forum court has no connection to the lawsuit other than its*

9   *jurisdiction over the parties, a decision to apply the forum State's law might so*

10  *frustrat[e] the justifiable expectations of the parties as to be unconstitutional.*" *Phillips*

11  *Petroleum Co. v. Shutts*, 472 U.S. 797, 837, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985)

12  (internal citations and quotations omitted and alterations in original). (Emphasis added.)

13         Here, Plaintiffs' alleged phone calls were initiated in Frankfurt, Germany to the

14  Czech Republic and the United States. [Galicot Decl., ¶¶ 3-4.]  Those calls are regulated

15  by the jurisdiction in which they were initiated:  Germany.  Not California.  California has

16  no interest in regulating calls initiated in Germany- and certainly has no interest in

17  regulating calls between Germany and the Czech Republic.  Moreover, Plaintiffs complain

18  that BBG Communications subsequently recorded their customer service calls without

19  their consent.  But, these calls were recorded in Mexico by a third party, B-Tel. [von

20  Klocke, ¶ xvii.]  The conduct of the customer representatives and the recording of the calls

21  is governed by the laws of Mexico, not the laws of California.  California thus has no

22  connection whatsoever to the transactions (or entities) forming the basis of Plaintiffs'

23  Complaint and, as a matter of constitutional principle, California's laws do not apply.  *See*

24  *Morgan v. Harmonix Music Sys. Inc.*, No. 08-5211, 2009 U.S. Dist. LEXIS 57528 (N.D.

25  Cal. July 7, 2009) (plaintiff failed to show what conduct of defendant, if any, that violated

26  state law took place in California, or how plaintiff was injured in California); *Tidenberg v.*

27  *Bidz.com, Inc.*, No. 08-5553, 2009 U.S. Dist. LEXIS 21916 at * 10 (C.D. Cal. March 4,

28  2009); *Priyanto v. MS/Amsterdam*, No. 07-3811, 2009 U.S. Dist. LEXIS 7849 at *6 (C.D.

-10-

1   Cal. Jan. 23, 2009); *Doe v. Wal-Mart Stores, Inc.*, No. 05-7307, 2007 U.S. Dist. LEXIS

2   98102 (March 30, 2007).

3          Even assuming, *arguendo*, however, that California could legislate over conduct

4   occurring in a foreign jurisdiction, Plaintiffs could not overcome the presumption against

5   extraterritoriality.  A two-fold inquiry is required when attempting to apply the

6   presumption against extraterritoriality in a specific factual setting.  *In re Maxwell*

7   *Communication Corp., et al. v. Societe General PLC,* 186 B.R. 807, 815.  First, the court

8   "must determine if the presumption applies at all: after identifying the conduct proscribed

9   or regulated by the particular legislation in question, a court must consider if that conduct

10  occurred outside of the borders of the U.S." *Id.* at 816.  Next, if the presumption against

11  extraterritoriality is implicated, the court must determine whether "Congress intended to

12  extend the coverage of the relevant statute to such extraterritorial conduct." *Id.* at 816,

13  *citing*, *Kollias,* 29 F.3d at 72.

14        **1.      The Conduct Complained Of By Plaintiffs Occurred In Germany And**

15                **Mexico, Implicating The Presumption Against Extraterritoriality.**

16         As described in detail in the von Klocke declaration and attached call flow diagram

17  (Ex. "B"), as related to the calls placed from the Frankfurt airport this matter arises out of

18  conduct completely occurring in Germany.  It was von Klocke who admittedly negotiated

19  the contract on behalf of BBG Global with Deutsche Telekom in Germany.  [von Klocke

20  Decl., ¶¶ iv-vi.]  It was Deutsche Telekom that dictated the call flow design, including how

21  and when rate information would be made available to a caller.  [*Id.*, ¶¶ vi, vii, xvi.]

22  Based on these facts, and given the calls in question were made from Germany, it would be

23  wrong to apply California law to this controversy.

24         Similarly, the allegedly recorded telephone calls are being recorded in Mexico, by

25  non-party B-Tel, and are governed by Mexican law.  The only connection to California is

26  that Sajfr and Keeports allegedly reside in California.  If Plaintiffs' theory holds true, then

27  any California resident could drag a defendant into court for an alleged injury that it

28  sustained overseas, even though its conduct is entirely governed by the laws of that nation.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

2. **Plaintiffs Cannot Overcome The Fact That California's Legislature Not Only Never Intended For Its Statutes To Apply Extraterritorially, But That Even If It Did, The Statutes Would Be Unconstitutional.**

Legislative intent is also a factor to be considered in deciding whether the presumption against extraterritorial reach has been overcome.  "An act of Congress will not be found to apply to conduct occurring outside the U.S. unless 'the affirmative intention of the Congress' to apply the law extraterritorially is 'clearly expressed' in the statute." *Id*. at 818, *quoting*, *Aramco*, 499 U.S. at 248; *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 440.

Here, neither the UCL, nor the CLRA, or California's Penal Code have been enacted with any intent that they apply beyond California's borders, let alone the nation's borders. There's also no precedent for Plaintiff's common law claims for breach of contract, declaratory relief, and money had and received to apply to conduct governed by sovereign nations.  Holding otherwise, would be an affront to the sovereignty of Germany and Mexico.

C. **The Doctrine Of International Comity Also Mandates Dismissal of Plaintiffs Complaint With Prejudice.**

Even assuming that Plaintiffs have overcome the presumption against extraterritoriality, which they have not, principles of international comity mandate dismissal of Plaintiffs' complaint.  "Comity is a canon of statutory construction providing that 'an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains.'"  *In re Maxwell Communication Corp., et al. v. Societe General PLC,* 186 B.R. 807, 822 (SDNY 1995), *quoting, Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993).  "[C]omity is the 'recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.'" *Id*., *quoting, Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895).

-12-

1   Here, Germany regulates the payphones and telephone services located within its
2   jurisdiction. [Prof. Holznagel Decl., ¶¶ 1-4.]  Its laws govern the telecommunication
3   services offered by BBG Global in Germany, just as the U.S. laws regulate all
4   telecommunication services offered within its borders.  If a German resident is visiting the
5   United States and makes a call using a payphone in the United States, that German resident
6   cannot, in good faith, expect German laws to apply to the call he or she makes while in the
7   United States.  Likewise, a California resident who travels abroad and uses a local
8   payphone cannot, in good faith, reasonably expect that the laws of the United States will
9   govern the phone calls made using payphones located in a foreign jurisdiction.  If carriers
10  were expected to comply with the laws of every jurisdiction of every possible calling
11  party, they simply could not function.

12  Additionally, Plaintiffs complain of the calls recorded by B-Tel's call centers
13  located in Mexico.  As discussed above, the call center representatives are located in
14  Mexico, the calls are recorded in Mexico, and the laws of Mexico govern the operation of
15  the call center.  Under Mexican law, a party to a call can record the phone call without
16  obtaining consent from the other caller. [Mex. Const., Art. 16, ¶ 12; Puglisi Decl., Ex. "H";
17  Request for Judicial Notice ("RJN"), Ex. "F."]  The doctrine of international comity
18  demands that both German and Mexican sovereignty be respected; that we not try to
19  regulate conduct occurring in other nations and governed by the laws of those nations.  As
20  such, Plaintiffs Complaint should be dismissed with prejudice.

21  **D.**    **Choice-of-Law Also Warrants Dismissal Of Plaintiffs' Complaint.**

22  A federal district court sitting in diversity applies the law of the state in which it
23  sits.  *Klaxon Co. v. Stentor Electric Mfg.*, 313, U.S. 487, 496 (1941).  Under California
24  law, the following three-step governmental interest analysis is used in resolving choice-of-
25  law issues. *Kearny v. Salomon Smith Barney, Inc.,* 39 Cal.4th 95 (2006); *Washington*
26  *Mutual Bank, FA v. Sup. Court,* 24 Cal.4th 906 (2001).  First, the court determines whether
27  the relevant law of each of the potentially affected jurisdictions with regard to the
28  particular issue in question is the same or different. *Kearny* at 107-108.  Second, if there is

-13-

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1  a difference, the court examines each jurisdiction's interest in the application of its own

2  law under the circumstances of the particular case to determine whether a true conflict

3  exists. *Id.*  Finally, if the court finds that there is a true conflict, it carefully evaluates and

4  compares the nature and strength of the interest of each jurisdiction in the application of its

5  own law to determine which state's interest would be more impaired if its policy were

6  subordinated to the policy of the other state, and then ultimately applies the law of the state

7  whose interest would be more impaired if its law were not applied. *Id.*  If there is no true

8  conflict, then the forum is entitled to apply its own law. *Id.*, *citing, Rivera v. Southern*

9  *Pacific Transp. Co.*, 217 Cal.App.3d 294, 299 (1990).

10          **1.      The Alleged Deceptive Practices Most Impair The Laws Of Germany.**

11          As discussed above, the payphone calls at issue were initiated in Frankfurt,

12  Germany.  German law does not require any type of disclosures for long distance calls at

13  public payphones.  [Prof. Holznagel Decl.,¶¶ 1-4.]  As such, BBG Global's disclosures,

14  rates, and billing practices are in compliance with German law. [*Id.*]  Plaintiffs contend

15  (and BBG Communications disputes) that the disclosures provided by BBG Global are

16  improper under California law.  Assuming, *arguendo,* that Plaintiffs' interpretation is

17  correct, then the laws of Germany and California are in conflict.

18          Certainly, Germany has as legitimate interest in ensuring that its laws regulate the

19  payphones located and operated in its jurisdiction.  Further, Germany has a legitimate

20  interest in ensuring that the owners and operators of payphones in Germany can operate

21  under a single, predictable legal regime.  Germany's laws would be most impaired if this

22  Court ruled that California's laws applied to payphones located and serviced in Germany.

23  California's interest in protecting California consumers will not be impaired, as California

24  can continue to protect consumers who are allegedly aggrieved in California.  To hold

25  otherwise, would open the floodgates and result in having any entity dragged into Court in

26  the United States for conduct occurring entirely beyond the borders of this country.

27          **2.      The Alleged Recorded Calls Most Impair The Laws Of Mexico.**

28

-14-

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
                                                       IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1    The calls recorded in Mexico are governed by Mexican Law.  Mexican law allows

2  for one party to a call to record that phone call without consent. [Mex. Const., Art. 16,

3  ¶ 12; Puglisi Decl., Ex. "H"; RJN, Ex. "F."]  Whereas, in California, as held by the

4  California Supreme Court in *Kearny v. Solomon Smith Barney, Inc.*, section 632 of

5  California's Penal Code "generally prohibits any person from recording a telephone

6  conversation without the consent of *all* parties to the conversation …." 39 Cal.4th 95, 99

7  (2006).  Hence, the laws of Mexico and California are in conflict.

8    BBG Communications respectfully submits that *Kearny* is distinguishable from this

9  action, and that taken together with the doctrine of international comity and the

10  presumption against extraterritoriality, section 632 cannot apply to calls recorded in other

11  nations.  In *Kearny*, defendant had its employees located in Georgia call *into* California

12  and record the calls without first obtaining consent. *Id.*  In Georgia, no such consent was

13  required. *Id.*  Here, we have California residents initiating the calls and calling a call center

14  located in a different country.  When Plaintiffs initiated their calls to complain of the

15  alleged deceptive billing practices, they had no reason to believe they were calling a U.S.

16  call center, or any reason to *expect* that their calls would be protected or governed by either

17  California or U.S. law for that matter.

18    Plaintiffs are sure to contend that the California Supreme Court in *Kearny* held that

19  section 632 applies to confidential communications that take place in part in California and

20  in part in another U.S. state. *Id.* at 120.  *Kearny*, however, does not address a situation such

21  as this one, where the California resident initiates a customer service call abroad.

22    Moreover, BBG Communications urges this Court to consider section 632's

23  legislative history, which militates in favor of finding that under choice of law, Mexican

24  law applies.  The courts have repeatedly looked to the legislative history of Penal Code

25  section 632 for assistance in interpreting its provisions.  *See, e.g., Frio v. Superior Court*,

26  203 Cal. App. 3d 1480, 1487 (1988); *see also Flanagan*, 27 Cal.4th at 772.

27    The California Legislature reveals that "service-observing," (*i.e.*, calls to businesses

28  that are recorded for quality assurance purposes) were never intended to be covered by the

-15-

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1  Penal Code.  [RJN, Ex. "E," pp. 15-19, 192-193, 200-202, 310-312 and 321-322.]  While

2  the Amendment to AB860 that the Legislature developed to assure exclusion from

3  coverage is rather archaic in today's modern telecommunication industry, it cannot be

4  disputed that "service-observing" was to be unimpeded by Penal Code section 632.  [RJN,

5  Ex. "E," Digest of Senate Amendments to Bill.]  Indeed, then-Speaker of the Assembly,

6  Jesse M. Unruh – the author of the Bill in response to the editor of the San Francisco

7  Examiner on a June 30, 1967, assured the editor that "*under my bill, it would continue to*

8  *be perfectly legal to monitor business calls, to insure proper service of customers by*

9  *employees*." RJN, Ex. "E" (emphasis added).][2]  BBG Communications urges the Court to

10 follow the legislative history of Penal Code section 632, and dismiss Plaintiffs' claim under

11 same.

12         Mexico's interests would be most impaired over California's if this Court rules that

13 Mexico cannot govern and regulate calls and recordings conducted in its own country.

14 While Plaintiffs will likely argue that California has a legitimate interest in protecting its

15 citizens from recordings without their consent, it is impossible for California to regulate

16 (nor can it) calls made from Californians into other countries.  By doing so, California

17 would be legislating conduct taking place in any part of the world – which it cannot do.

18 Section 632 of the Penal Code was never intended to apply to conduct beyond this nation's

19 borders.

20         All the conduct Plaintiffs complain of occurred either in Germany or in

21 Mexico, with BBG Global reasonably expecting that the payphones and services it offered

22 were governed by German law, and that its agreement with B-Tel for the call centers were

---

[2]    Similarly, in a July 31, 1967, letter to Governor Ronald Reagan expressing the Assembly's support for AB860, and asking for the Governor's signature, Mr. Unruh wrote, "[i]t should be mentioned that Assembly Bill 860 has been written carefully so as to avoid any hardship upon law enforcement officers . . . .  *Likewise, we have exempted from coverage under the measure, normal business telephone monitoring, and known as 'service-observing', which is essential in modern business practices to insure employee efficiency*." [*Id.*; (emphasis added.).]

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
                                      IN SUPPORT OF MOTION TO DISMISS COMPLAINT

governed by Mexican law.  Accordingly, under traditional notions of choice-of-law, Plaintiffs Complaint should be dismissed.

## V.   IN THE ALTERNATIVE, PLAINTIFFS CLAIMS SHOULD BE DISMISSED AS THEIR CLAIMS FAIL UNDER FRCP RULE 12(b)(6)

### A.   Standard For A Rule 12(b)(6) Motion To Dismiss.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of claims asserted in a complaint.  A claim should be dismissed where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 969, 699 (9th Cir. 1988).  A plaintiff must do more than allege "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929  (2007).  A complaint must at least allege sufficient facts "to raise a right to relief above a speculative level." *Id.  See also Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

### B.   Plaintiff's Claim For Violation Of Section 17200 Fails.

The UCL prohibits any unlawful, unfair, or fraudulent business practice in California.  CAL. BUS. & PROF. CODE § 17200.  Plaintiffs claim that BBG Communications, which was not involved in these calls, violated the UCL and engaged in "unfair" business practices because it (i) engaged in "deceptive billing" and (ii) recorded the "complaint" calls in Mexico without their consent.  [Complaint ¶¶ 45-53.]

In addition to failing for the above stated reasons, Plaintiffs' claims under the UCL fail for four independent reasons: (i) Plaintiffs' alleged "deceptive billing practices" claims fail because even if the calls had been carried by BBG Communications, which they were not, BBG Communications had no duty to disclose its rates any differently than was admittedly done; (ii) Plaintiffs' claims fail the "unfair" prong test under the UCL; (iii) Plaintiffs do not adequately plead justifiable reliance; and (iv) the "safe harbor" rule bars Plaintiffs' UCL claims.

#### 1.   International Calling Rates Were Adequately Disclosed.

-17-

1    Plaintiffs do not challenge the reasonableness of the fees imposed on them for the

2  international calls allegedly made from the Frankfurt airport.  Rather the issue is a simple

3  one of disclosure – were the rates charged for the international telephone call adequately

4  disclosed or made available to Plaintiffs.

5    Absent a legal requirement or other basis that would give rise to a duty to disclose,

6  an alleged non-disclosure is not actionable under the UCL.  *See Berryman v. Marit Prop.*

7  *Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) (to state a UCL claim based on a failure

8  to disclose, a plaintiff must allege that the defendant owes a duty to disclose to the

9  plaintiff).  A duty to disclose arises under four circumstances:

10    (1) when the defendant is in a fiduciary relationship with the
      plaintiff; (2) when the defendant had exclusive knowledge of
11    material facts not known to the plaintiff; (3) when the
      defendant actively conceals a material fact from the plaintiff;
12    and (4) when the defendant makes partial representations but
      also suppresses some material facts.

13  *Heliotis v. Schuman*, 181 Cal. App. 3d 646, 651 (1986).  Here, Plaintiffs do not allege that

14  they are in a fiduciary relationship with BBG Communications, nor do they allege that

15  BBG Communications actively concealed the exact amount of its charges from Plaintiffs.

16  Thus, they must intend to rely on either the second or fourth circumstances set forth in

17  *Heliotis* to allege that a duty to disclose exists.  The Complaint, however, fails to allege

18  facts to support the existence of a duty to disclose under either circumstance.

19        a.    **BBG Communications Did Not Have Exclusive Knowledge About**

20              **The Alleged Charges.**

21    Plaintiffs knew that they would be assessed charges because they used a

22  "payphone" and swiped their card before placing each of the three calls that form the basis

23  of the Complaint.  [Complaint ¶¶ 10(a), (b).]  They also knew based on disclosures made at

24  the telephone that rates were available by simply inquiring.  [Complaint, ¶ 5.]

25    Despite having the information they now complain of available at the touch of a

26  single button, Plaintiffs admittedly failed to inquire as to the rates applicable to their

27  alleged calls.  No court has allowed a consumer who intentionally declined to obtain

28

-18-

readily available information sue for fraud under the UCL.  To the contrary, several district courts in this Circuit have considered and rejected just such a theory.  *See, e.g., Janda v. T-Mobile*, No. C 05-03729, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009); *Smale v. Cellco Partnership d.b.a. Verizon Wireless*, 547 F. Supp. 2d 1181 (W.D. Wash. 2008); *Riensche v. Cingular Wireless LLC d.b.a. AT&T Wireless*, 2009 U.S. Dist. LEXIS 95802 (W.D. Wash. Oct. 2, 2009).

### b.   BBG Communications Did Not Make Partial Representations Or Suppress Material Facts.

By Plaintiffs' own admission, callers using payphones in the Frankfurt airport are instructed to inquire for specific rate information relating to card swipe calls.  [Complaint, ¶ 5.]  It was Plaintiffs that admittedly decided not to do so.  They should not now be allowed to seek relief based on their own decisions.

### 2.   BBG Communications' Alleged Business Practices Are Not Unfair.

The correct test under the "unfair" prong in a consumer case is an unsettled question in California.  *Spiegler v. Home Depot U.S.A., Inc*., 552 F. Supp. 2d 1036, 1045 (2008); *Lozano v. AT&T Wireless Services, Inc.* 504 F.3d 718, 735 (9th Cir. 2007) ("California's unfair competition law, as it applies to consumer suits, is currently in flux.").  Ninth Circuit courts, however, are limited to two possible definitions of an unfair business practice from which to choose: (i) a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer (*Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980)), or (ii) a practice that undermines a legislatively declared policy or threatens competition (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 185 (1999)).  *Lozano*, 504 F.3d at 736 (leaving district courts only two options in a consumer case: the balancing test noted in *Motors, Inc*. or the Cel-Tech test).[3]

---

[3]   Even under the unfairness test set forth in *Camacho v. Automobile Club of Southern California,* 142 Cal. App. 4th 1394, 1400 (2006) (which is generally not used by District courts), Plaintiffs' claim would fail because, as set forth above, their alleged

1    Plaintiffs' allegations are wholly insufficient to meet either test.  Plaintiffs fail to

2  meet the *Motors, Inc.* test because the only impact on them was that (i) they were surprised

3  that the charges allegedly assessed for their three calls were more expensive than they

4  expected, and (ii) they called a call center in Mexico and expected California law to apply.

5  Moreover, exact fee information is not posted in advance by any card swipe service

6  provider at the Frankfurt airport.  Rather, callers are directed to inquire about the rates if

7  placing a card swipe call. [Complaint, ¶ 5.]  BBG Communications cannot be held liable

8  for Plaintiffs' decision to not make the posted inquiry.

9    Likewise, a party making a service call to a foreign country cannot reasonably

10  expect that their call will be governed by United States laws.  Plaintiffs cannot allege that

11  their injury was greater than the reasons for B-Tel's reasons for recording the calls — for

12  quality assurance — especially when B-Tel was acting in conformance with its

13  jurisdiction's laws.  It is also unreasonable, and nearly impossible, for a foreign call center

14  to follow the laws of every jurisdiction that calls into the center.  Certainly, a U.S. based

15  call center could not be bound by the laws of every foreign country that may place calls

16  *into* the center.

17    Plaintiffs similarly fail to meet the *Cel-Tech* test because they do not allege that the

18  alleged practices (billing practices and recording calls) threaten competition.  Thus,

19  Plaintiffs' UCL claims should be dismissed.

20    **3.    Plaintiffs Do Not Sufficiently Allege Justifiable Reliance.**

21    Plaintiffs asserting UCL causes of action based upon an alleged misrepresentation

22  or omission "must demonstrate actual reliance on the allegedly deceptive or misleading

23  statements, in accordance with well-settled principles regarding the element of reliance in

24  ordinary fraud actions."  *In Re Tobacco II Cases*, 46 Cal.4th 298, 306 (2009).  Not only

25  must the plaintiff allege reliance, he must also allege facts that demonstrate his reliance

26

27    injury is one that they could have reasonably avoided if they had simply asked how
     much they would be charged before they authorized the connection.

28

was reasonable, "i.e. circumstances were such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332 (1986).  "If the conduct of the complaining party in light of his own intelligence and information, ***or ready available information***, was manifestly unreasonable, he will be denied recovery." *Kahn v. Lischner*, 128 Cal. App. 2d 480, 489, (1954) (emphasis added).

Absent from Plaintiffs' 53 paragraphs which they incorporate into their UCL claim is any allegation on how Plaintiffs justifiably relied on the alleged misrepresentation(s) or omission(s).  Accordingly, Plaintiffs' claim is fatally defective.

**4.      The UCL "Safe Harbor" Rule Bars Plaintiffs UCL Claim.**

The "safe harbor" rule was articulated by the Supreme Court in *Cel-Tech Com. Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 183.  Pursuant to this rule, no UCL claim can be stated if the complained of conduct was permitted by other applicable law.  *Id.* Thus, if "the Legislature considered certain activity in certain circumstances and determined it to be lawful, courts may not override that determination under the guise of the unfair competition law."  *Id.*  In other words, "***courts may not use the unfair competition law to condemn actions the Legislature permits***."  *Id.* at 184 (emphasis added).

Here, there is no doubt that the German legislature has looked at the issue of rate disclosures and specifically excluded swipe card calls from the disclosures Plaintiffs now wish to impose based on the UCL.  In essence, Plaintiff is attempting to say that while the German Legislature may have decided that swipe card calls carriers do not have to make advance disclosures, the UCL should be used to amend German law and force such carriers to make the same disclosures as other service providers.  This is precisely what *Cel-Tech* held a court should not do under the UCL.

Further, in *People v. Duz-Mor Diagnostic Lab.*, 68 Cal.App.4th 654, 662 (1998), which pre-dates *Cel-Tech*, the court agreed with the trial court's finding that "Duz-Mor engaged in the very same practices engaged in by other independent clinical laboratories,

-21-

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1   practices which were known to and accepted as appropriate by the federal and state

2   regulatory agencies."  The Court therefore concluded that "there is no reason for the Court

3   to conclude that the practices offended public policy, were unethical, oppressive,

4   unscrupulous, or otherwise injurious . . . to consumers." *Id.*  Here, there is no dispute that

5   every swipe card carrier, including Deutsche Telekom, which is partially owned by the

6   German government, provides the exact same disclosures in the exact same way.  As such,

7   no action exists under the UCL.

8   **C.     Plaintiffs' Claim For Breach Of Implied Contract Fails.**

9          Plaintiffs have attempted to plead a claim for "breach of implied contract" for the

10   alleged deceptive billing practices without specifying whether they seek damages for an

11   implied-in-fact contract, or an implied-in-law contract, otherwise known as a quasi

12   contract.  In either case, Plaintiffs' claim fails.

13          **1.     Plaintiffs' Claim For Breach Of An Implied-In-Fact Contract Fails.**

14          To the extent that Plaintiffs intends to plead a claim for breach of an implied-in-fact

15   contract, they must plead the elements of a cause of action for breach of express contract.

16   *Gomez v. Lincare*, 173 Cal.App.4th 508, 525 (2009).  Those elements are:  (i) the existence

17   of a contract, (ii) their performance under the contract or excuse for non-performance, (iii)

18   the defendant's breach, and (iv) the resulting damages.  *Otworth v. Southern Pac. Transp.*

19   *Co.*, 166 Cal.App.3d 452, 458 (1985).  Plaintiffs have not attempted to provide any

20   information about any alleged contract between them and BBG Communications,

21   including the terms of any such contract or their performance thereof.  Thus, they have not

22   pled a claim for breach of an implied-in-fact-contract, and their claim for breach of implied

23   contract should be dismissed.

24          **2.     To The Extent Plaintiffs' Claim Is For Breach Of An Implied-In-*Law***

25                 **Contract, It Also Fails.**

26          Plaintiffs' have also failed to plead a claim for "breach of implied contract,"

27   otherwise known as a quasi contract,

28

-22-

> The so-called "contract implied in law" in reality is not a contract. Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice. Quasi-contractual recovery is based upon benefit accepted or derived for which the law implies an obligation to pay..

*Weitzenkorn v. Lesser*, 40 Cal.2d 778, 794 (1953) (internal citations and quotations omitted).  A cause of action for quasi-contract does not create a contract or other rights where none existed, and as such, a quasi-contract remedy rises and falls with the other claims asserted in his complaint.  *See McBride v. Boughton,* 123 Cal.App.4th 379 (2004).

Plaintiffs have not pled that BBG Communications accepted an unrequited benefit. On the contrary, Plaintiffs allegedly sought and paid for an international telephone call, which is exactly what they admit they got.  Thus, Plaintiffs' claim for breach of contract fails, and should be dismissed.

### D.      Plaintiffs California Consumers Legal Remedies Act Claim Also Fails.

The CLRA prohibits certain unfair acts, practices and methods of competition, "undertaken by any person in a transaction intended to result or which results in ***the sale or lease of goods or services*** to any consumer."  Cal. Civ. Code § 1770(a) (emphasis added). "Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof.  Accordingly, 'plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm.'" *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1366-1367 (2010), *quoting, Buckland v. Threshold Enterprises, Ltd.,* 155 Cal.App. 4th 798, 809 (2007) (internal citations omitted).

In the instant action, Plaintiffs allege that BBG Communications "uniformly represented the charges detailed above were due and owing from Class members and failed to disclose, misrepresented and/or mislabeled such fees and consumers' rights and obligations under the law."  [Complaint ¶ 61.]  Despite these general allegations, however, Plaintiffs specifically admit that payphones at the Frankfurt airport have stickers advising

1  callers to call for specific rate information. [Complaint ¶ 5.]  Hence, Plaintiffs' general

2  allegations of deception fail in light of their specific admission.

3        Moreover, Plaintiffs failed to allege that but for the alleged misrepresentation they

4  would not have acted as they did.  All Plaintiffs' allege is that "Plaintiffs and Class

5  members responded positively thereto by making and completing of such calls."

6  [Complaint ¶ 61.]  This is insufficient to rise to an allegation of reliance, or that "without

7  the misrepresentation, the plaintiff would not have acted as he did." *Buckland* at 810.

8  Accordingly, Plaintiffs CLRA claim should be dismissed.

9  **E.**     **Plaintiffs' Claim For Declaratory Relief Fails.**

10        The objective of the declaratory relief is to afford a new form of equitable relief

11  where needed and not to furnish a litigant with an additional cause of action for

12  determination of identical issue.  *Hannon v. Western Title Co.*, 211 Cal. App. 3d 1122,

13  1128-29 (1989).  Therefore, "an action for declaratory relief will not lie where the relief

14  sought anticipates an issue which could be determined in the main action."  *Id.* at 1129.

15        Here, Plaintiffs' claim for declaratory relief not only fails to set forth allegations

16  sufficient to pursue an independent cause of action, but also fails to set forth allegations to

17  establish that this is more than a claim for "past wrongs, that a money judgment will fully

18  resolve the dispute, and that no continuing relationship exists to justify a declaration of

19  future rights." *Cardellini v. Casey*, 181 Cal. App. 3d 389, 396-97 (1986).  Plaintiffs fail to

20  describe how these claims can be distinguished from the relief sought in their other causes

21  of action.  As such, Plaintiffs' claim is nothing more than a duplication of other alleged

22  causes of action and should be dismissed.

23  **F.**     **Plaintiffs Claim For Money Had And Received / Unjust Enrichment Also Fails.**

24        A claim for money had and received is known as a common count.  It "is a

25  simplified form of pleading normally used to aver the existence of various forms of

26  monetary indebtedness, including that arising from an alleged duty to make restitution

27  under an assumpsit theory." *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004).  To

28  adequately plead the common count of money had and received under California law, a

-24-

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1  plaintiff must allege facts sufficient to establish that (i) the defendant received money that

2  was intended to be used for the benefit of the plaintiff; (ii) the money was not used for the

3  benefit of the plaintiff; and (iii) the defendant has not given the money to the plaintiff.  *Id.*;

4  *see also Farmers Ins. Exchange v. Zerin,* 53 Cal.App.4th 445, 460 (1997).

5      Where a common count is pleaded as an alternative way of seeking the same relief

6  demanded in a specific cause of action, and is based on the same facts, the common count

7  fails if the underlying cause of action fails.  *McBride*, 123 Cal.App.4th at 394; *Farmers*

8  *Ins. Exchange v. Zerin*, 53 Cal.App.4th at 460; *Farmers Ins. Exchange*, 53 Cal.App.4th at

9  460 (holding that where the common count is premised on an invalid equitable lien claim,

10  the common count also fails).

11      Here, Plaintiffs' claim is fatally defective because Plaintiffs do not, and cannot,

12  plead that they did not receive a benefit for the payment made.  In fact, by Plaintiffs' own

13  admission, Plaintiffs received a benefit, they placed, and completed, three telephone calls

14  from the Frankfurt airport. [Complaint ¶¶ .10(a), (b).]  Thus, Plaintiffs do not and cannot

15  plead the necessary elements of a claim for money had and received.

16      Further, to the extent Plaintiffs common count is pled as a claim for unjust

17  enrichment, Plaintiff's claim for unjust enrichment fails because under California law,

18  unjust enrichment does not constitute a cause of action or theory of recovery upon which a

19  party may sue.  *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003)

20  Thus, there is no "claim" for unjust enrichment, and it should be dismissed.

21                    **VI.    CONCLUSION**

22      For the reasons explained above, BBG Communications respectfully requests that

23  the Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

24  Dated:  January 12, 2011          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

25                    By    _____
                                        s/Fred R. Puglisi

26                              FRED R. PUGLISI
                              Attorneys for Defendant,

27                            BBG Communications, Inc.

28

-25-

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
                                        IN SUPPORT OF MOTION TO DISMISS COMPLAINT