1  Alan M. Mansfield (SBN 125998)
   alan@clgca.com
2  THE CONSUMER LAW GROUP
   9466 Black Mountain Rd., Suite 225
3  San Diego, CA 92126
   Tel: (619) 308-5034
4  Fax: (888) 341-5048

5  WHATLEY DRAKE & KALLAS LLC
   Joe R. Whatley, Esq.
6  Patrick J. Sheehan, Esq. (Admitted *Pro Hac Vice*)
   psheehan@wdklaw.com
7  1540 Broadway, 37th Floor
   New York, NY 10036
8  Tel: (212) 447-7070
   Fax: (212) 447-7077
9
   Attorneys for Plaintiffs
10
   [*Additional Counsel Listed on Signature Page*]
11

12                    **UNITED STATES DISTRICT COURT**

13                    **SOUTHERN DISTRICT OF CALIFORNIA**

14  VLASTIMIL SAJFR and DAVID          CASE NO.: 10-cv- 2341-H (NLS)
    KEEPORTS, on behalf of themselves and  **Related to Case No.: 10-cv-0542-H (NLS)**
15  all others similarly situated,
                                       **CLASS ACTION**
16            Plaintiffs,
                                       **PLAINTIFFS' MEMORANDUM OF**
17       v.                            **POINTS AND AUTHORITIES IN**
                                       **OPPOSITION TO DEFENDANT BBG**
18  BBG COMMUNICATIONS, INC., and      **COMMUNICATIONS, INC.'S MOTION TO**
    DOES 1-10 INCLUSIVE,               **DISMISS PLAINTIFFS' COMPLAINT**
19
              Defendants.             **Date:        February 28, 2011**
20                                                  **[UNDER SUBMISSION]**
                                      **Time:        N.A.**
21                                    **Courtroom:  13**
                                      **Judge:       Hon. Marilyn L. Huff**
22

23

24

25

26

27

28

OPPOSITION TO DEFENDANT HSBC'S MOTION          CASE NO.: 10-CV-0857-WQH (RBBx)
TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

II.   SUMMARY OF FACTUAL ALLEGATIONS OF COMPLAINT ...................................2

III.  RULE 12(B)(1) IS NOT APPLICABLE SINCE DEFENDANT'S
      ARGUMENTS THAT THE COURT DOES NOT HAVE SUBJECT
      MATTER JURISDICTION ARE BASED ON DISPUTED FACTS OUTSIDE
      THE COMPLAINT AND ARE IMPROPER FOR A MOTION TO DISMISS ................5

      A.    Plaintiffs' Claims are Not Barred by the Presumption Against
            Extraterritoriality...............................................................................................7

      B.    The Doctrine of International Comity Does Not Mandate Dismissal
            of Plaintiffs' Claims .........................................................................................8

      C.    Choice of Law Does Not Warrant Dismissal of Plaintiffs' Complaint .................8

IV.   PLAINTIFFS HAVE STANDING TO ASSERT A UCL CLAIM AND THE
      OTHER CLAIMS AT ISSUE SINCE THEY PROPERLY ALLEGE INJURY
      IN FACT FOR ALL PURPOSES ...................................................................................9

V.    PLAINTIFFS PROPERLY ASSERT EACH OF THEIR CAUSES OF ACTION..........11

      A.    Plaintiffs State Claims for Violation of the UCL.................................................11

      B.    Plaintiffs Properly Allege "Fraudulent" Acts and Practices .................................12

      C.    Plaintiffs Properly Allege "Unfair" Acts and Practices........................................14

      D.    Plaintiffs Properly Allege "Unlawful" Acts and Practices ...................................15

      E.    Plaintiffs Properly State a Claim for Violation of the CLRA ...............................16

      F.    Plaintiffs Properly State a Claim for Common Counts and Unjust
            Enrichment, as Well as the Independent Claim For Declaratory Relief...............17

      G.    Plaintiffs Have Properly Asserted Contract Claims..............................................18

      H.    Plaintiffs May Properly Assert a Penal Code Section 632 Claim No
            Matter Where the Call Center is Located Based on the Presence of the
            Sub-Class Members in California ........................................................................19

VI.   LEAVE TO AMEND SHOULD BE GRANTED IF NECESSARY ..............................24

VII.  CONCLUSION............................................................................................................24

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Alaska Packers Assn. v. Industrial Accident Comm'n*, 294 U.S. 532 (1935) ................................7

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) ..............................................................7

*AR Int'l Anti-Fraud Sys. v. Pretoria Nat'l Central Bureau of Interpol*, 2009 U.S. Dist. LEXIS 60543 (E.D. Cal., July 15, 2009) ...............................................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................1

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) .............................................................24

*Cahill v Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ............................................1

*Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469 (1947) ...............................................7

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) ......................................1, 19

*Citizens for Better Forestry v. USDA*, 341 F.3d 961 (9th Cir. 2003) ..................................9

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997).........................................................5, 7

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099 (9th Cir. 2007) .....................15

*De La Cruz v. Tormey*, 582 F.2d 45 (9th Cir. 1978).......................................................9

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007)...........8

*Environmental Defense Fund v. Massey*, 986 F.2d 528 (D.C. Cir. 1993) ..............................7, 8

*Falk v. General Motors, Inc.*, 496 F.Supp.2d 1088 (N.D. Cal. 2007) ..................................16

*H.K. & Shanghai Banking Corp. v. Simon (in Re Simon)*, 153 F.3d 991 (9th Cir. 1998) .............7

*Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir. 1995)................................5

*Hilton v. Gilot*, 159 U.S. 113 (1895)..........................................................................8

*In re 3Com Sec. Litig.*, No. C-97-21083 JW, 1999 WL 1039715 (N.D. Cal. July 8, 1999)...........2

*In re Adaptive Broadband Sec. Litig.*, No. C 01-1092 SC, 2002 WL 989478 (N.D. Cal. Apr. 2, 2002) ..........................................................................7

*In re Connectics Corp. Sec. Litig.*, No. C 07-02940 SI, 2008 U.S. Dist. LEXIS 62515, (N.D. Cal. Aug. 14, 2008).....................................................................1

*In re Network Equip. Techs. Inc. Litig.*, 762 F.Supp. 1359 (N.D. Cal. 1991) ..........................5

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004) ....................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>FEDERAL CASES (Cont'd)</u>

*Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) .................... 17

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ............................................. 2

*Lazar v. Trans Union LLC*, 195 F.R.D. 665 (C.D. Cal. 2000) ....................................... 1

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ............................................ 2

*Lippett v. Raymond James Fin. Servs.*, 340 F.3d 1033 (9th Cir. 2003) [*amended* 2003 U.S. App. LEXIS 19524 (9th Cir. 2003)] ................................................. 11, 14

*Lodge 1380, Bhd, of Ry., Airline & S.S. Clerks v. Dennis*, 625 F.2d 819 (9th Cir. 1980) .............. 1

*Mack v. South Bay Beer Distrib.*, 798 F.2d 1279 (9th Cir. 1986) ................................... 2

*Membrila v. Receivables Perf. Mgt. LLC*, 2010 WL 1407274 (S.D. Cal., Apr. 10, 2010) ........... 23

*Microsoft Corp. v. A-Tech Corp.*, 855 F.Supp. 308 (C.D. Cal. 1994) ........................... 15

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ...................... 24

*North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578 (9th Cir. 1983) ...................... 1

*Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066 (9th Cir. 2006) ........................ 7

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1988) ...........................................2, 19

*Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d 1200 (S.D. Cal. 2007) ....................... 18

*Qarbon.com Inc. v. eHelp Corp.*, 315 F.Supp.2d 1046 (N.D. Cal. 2004) ...................... 12

*Rosenthal v. Warren*, 475 F.2d 438 (2nd Cir. 1973) ......................................... 7

*Shum v. Intel Corp.*, 499 F.3d 1272 (9th Cir. 2007) ......................................... 17

*Thorn Hill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730 (9th Cir. 1979) ................ 5

*Villager Franchise Syst., Inc. v. Dhami, Dhami & Virk*, 2006 WL 224425 (E.D. Cal. Jan. 26, 2006) .............................................................. 17

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016 (9th Cir. 2009) ........... 24

*Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667 (9th Cir. 1993) ...................... 1

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .........................1, 9, 11, 13

*Witriol v. LexisNexis Group*, 2006 U.S. Dist. Lexis 26670 (N.D. Cal., Feb. 10, 2006) .............. 10

1

## **TABLE OF AUTHORITIES** (Cont'd)

2
**Page**

3

## **STATE CASES**

4 *Aron v. U-Haul Co. of California*, 143 Cal.App.4th 796 (2006) .................................... 10

5 *Buckland v. Threshhold Enterprises*, 155 Cal.App.4th 798 (2007) ............................... 11

6 *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999) ........ 11, 14, 15

7 *Chandler v. Roach*, 156 Cal.App.2d 435 (1958) ........................................ 18

8 *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163 (2000) ............................... 11, 15

9 *Davies v. Krasna*, 12 Cal.App.3d 1049 (1970) ........................................ 19

10 *Forest E. Olson, Inc. v. Superior Court*, 63 Cal.App.3d 188 (1976) ........................... 19

11 *Gomez v. Lincare, Inc.*, 173 Cal.App.4th 508 (2009) ........................................ 18

12 *Hall v. Time Inc.*, 158 Cal.App.4th 847 (2008) ........................................ 9

13 *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
   129 Cal.App.4th 1228 (2005) ........................................ 10

14

15 *Hurtado v. Superior Court*, 11 Cal.3d 574 (1974) ........................................ 9, 22

16 *In re Tobacco II Cases*, 46 Cal.4th 298 (2009) ........................ 9, 10, 11, 12, 13

17 *Jogani v. Superior Court*, 165 Cal.App.4th 901 (2008) ........................................ 17

18 *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95 (2006) ........................ 20, 21, 22, 23

19 *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003) ......................... 15

20 *Kwikset v. Superior Court*, 2011 Cal. LEXIS 532 (Op. dated Jan. 27, 2011) ............................ 11

21 *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115 (2007) ...................... 9

22 *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal.4th 1057 (1994) [overruled on other
   grounds *In re Tobacco II Cases*, 41 Cal.4th 1247 (2007) .................................... 2

23 *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282 (2002)............. 13, 16

24 *McAdams v. Monier, Inc.*, 182 Cal.App.4th 174 (2010) ........................................ 16

25 *McBride v. Boughton*, 123 Cal.App.4th 379 (2004) ........................................ 19

26 *Meyer v. Sprint Spectrum*, 45 Cal.4th 634 (2009) ........................................ 10, 17

27 *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735 (1980)................................... 14

28

1

## TABLE OF AUTHORITIES

2                                                                                                    **Page**

3                                    ### STATE CASES (Cont'd)

4   *Nelson v. Pearson Ford*, 186 Cal.App.4th 983 (2010) ............................................................ 11, 12

5   *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214 (1999) ...................................... 8

6   *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30 (1975) ...................................... 16

7   *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal.App.4th 654 (1998) ...................................... 14

8   *People v. Robles*, 23 Cal.4th 1106 (2000) ............................................................................... 22

9   *Progressive West Ins. Co. v. Superior Court*, 135 Cal.App.4th 263 (2005) ................................ 10

10  *Saunders v. Superior Court*, 27 Cal.App.4th 832 (1994) ........................................................ 15

11  *Shulman v. Group W Productions*, 18 Cal.4th 200 (1998) .................................................. 19, 20

12  *Vasquez v. Superior Court*, 4 Cal.3d 800 (1971) ............................................................... 14, 16

13  *Wang v. Massey Chevrolet*, 97 Cal.App.4th 856 (2002) ........................................................ 16

14  *Weitzenkorn v. Lesser*, 40 Cal.2d 778 (1953) ...................................................................... 19

15  *Yari v. Producers Guild of America, Inc.*, 161 Cal.App.4th 172 (2008) .................................... 18

16  *Yu v. Signet Bank/Virginia*, 69 Cal.App.4th 1377 (1999) ........................................................ 8

17                             ### FEDERAL RULES AND STATUTES

18  Federal Rules of Civil Procedure

19          Rule 12(b) ........................................................................................................... 5, 7
            Rule 15 ................................................................................................................. 24
20

Federal Rules of Evidence

21
            Rule 201 ............................................................................................................. 2, 6
22

23                              ### STATE RULES AND STATUTES

California Business and Professions Code
24
            Section 17200, *et seq.* ................................................................................................. 4
25          Section 17200 ..................................................................................................... 11, 12

26  California Civil Code

27          Section 1760............................................................................................................ 16
            Section 1770............................................................................................................ 16
28

# TABLE OF AUTHORITIES

**Page**

## STATE RULES AND STATUTES (Cont'd)

California Penal Code

     Section 632..................................................................................................................*passim*

## OTHER

1 Witkin, Summary of California Law

     Contracts, §91, p. 122 ...................................................................................... 19

1    Representative Plaintiffs Vlastimil Sajfr and David Keeports ("Plaintiffs") hereby oppose

2  the Motion to Dismiss Plaintiffs' original Complaint ("Complaint") filed by Defendant BBG

3  Communications, Inc. ("BBG") [Docket #10].

4  **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

5    It should be without dispute that for purposes of this motion, this Court must accept all

6  "well-plead" facts as true. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.

7  1993). Further, when considering a motion to dismiss under Rule 12(b), a court must draw all

8  inferences in plaintiffs' favor. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.

9  1996). Because Plaintiffs are the masters of their Complaint, the Court should not involve itself

10  in tampering with the Complaint absent a strong reason for doing so. *Lazar v. Trans Union LLC*,

11  195 F.R.D. 665, 668 (C.D. Cal. 2000). "The question presented by a motion to dismiss is not

12  whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer

13  evidence in support of the claim." *In re Connectics Corp. Sec. Litig.*, No. C 07-02940 SI, 2008

14  U.S. Dist. LEXIS 62515, at *8 (N.D. Cal. Aug. 14, 2008).

15    A complaint also does not "require heightened fact pleading of specifics, but only enough

16  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

17  544, 570 (2007). Such a motion can only be granted if plaintiff's claims are purely speculative

18  and unsupported by the alleged facts and circumstantial evidence. *Id*. at 557 n.5. Thus, so long

19  as Plaintiffs allege a set of facts that supports a facially plausible theory, the Court should deny

20  this Motion. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (reversing

21  trial court's grant of motion to dismiss California consumer protection claims).

22    In addition, the Court cannot consider arguments for dismissing a Complaint based upon

23  evidence brought in from outside of the operative Complaint. *See Cervantes v. City of San*

24  *Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993); *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d

25  578, 581 (9th Cir. 1983) (citing *Lodge 1380, Bhd, of Ry., Airline & S.S. Clerks v. Dennis*, 625

26  F.2d 819, 824 (9th Cir. 1980)). Only in two limited circumstances may courts consider

27  documents not attached to, or specifically incorporated by reference in, the complaint. The first

28  is when the authenticity of the extrinsic document is not questioned *and* the complaint

"necessarily relies" on the document. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706-07 (9th Cir. 1988); *AR Int'l Anti-Fraud Sys v. Pretoria Nat'l Central Bureau of Interpol*, 2009 U.S. Dist. LEXIS 60543 (E.D. Cal., July 15, 2009), at *26. The second is when the document is a "matter of public record" of which the court may take judicial notice under Fed. R. Evid. 201. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

In addition, a request for judicial notice of certain information only can be used to establish that the particular item exists. It cannot be used or considered for purposes of this Motion to contradict facts alleged in the Complaint based on the supposed truth of the statements contained therein. The extraneous information presented by BBG thus cannot be considered for the truth of their contents. *See, e.g., In re 3Com Sec. Litig.*, No. C-97-21083 JW, 1999 WL 1039715, at *4 (N.D. Cal. July 8, 1999); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal.4th 1057, 1063-64 (1994); *overruled on other grounds In re Tobacco II Cases*, 41 Cal.4th 1257, 1276. (2007);

Despite these well-known requirements based on a consistent line of Ninth Circuit and other appellate authority, BBG improperly bases its Motion on statements and assumptions contained in four separate Declarations and a Request for Judicial Notice containing numerous factual averments outside the four corners of the operative Complaint, then makes arguments that attempt to negate or ignore the well-pled facts in the operative Complaint by basing their legal defenses on such information  Applying the proper standards for a motion to dismiss, and based on the relevant law that applies to these claims, this motion must be denied, or alternatively leave granted to satisfy any concerns the Court may have relating to the Complaint.

## II.   SUMMARY OF FACTUAL ALLEGATIONS OF COMPLAINT

This action is brought as a class action against San-Diego based BBG on behalf of all persons in the United States who since November 2006 used a credit card to pay for a telephone call from a payphone where BBG or its controlled affiliates provided the telephone connection service. Complaint, ¶¶ 14-24. The Complaint alleges BBG uniformly advertised low fees for domestic and international calls to the United States from payphones at airports, train stations

1    and subway stations located in the United States and around the world, but either misrepresented

2    or did not disclose the significant disparity between calls made with coins and those made with

3    credit cards -- averaging $25.00, whether or not it actually connected. BBG did so by charging

4    undisclosed and unconscionable fees in connection with those calls and blocking consumers

5    from using reasonably available alternative calling methods, by charging different rates based on

6    the credit card used or by making it difficult if not impossible to readily determine what the

7    relevant fees were. Complaint, ¶¶ 2, 3, 26, 29, 35. While claiming these are operator assisted

8    calls, in fact no operator is involved in making the call as it is an automated process where the

9    charges are not affirmatively disclosed at any time during the telephone call process, such as

10   typically occurs when a consumer uses a pay phone. Complaint, ¶¶ 27, 31.

11         The Complaint specifically alleges how even though these are in many cases international

12   calls, the conduct at issue was controlled by BBG and the Galicot family based in California,

13   how the conduct at issue was part of a scheme emanating from California, and how complaints

14   over such calls -- which resulted in BBG's "F" rating from the Better Business Bureau -- are

15   processed in or through California. Complaint, ¶¶5, 6, 8, 9, 11, 25, 28, 30, 32, 38. The problem

16   for consumers is that they have no reason to even determine BBG's consumer rating until after

17   they have already been injured by BBG's conduct. The Complaint also specifically alleges all

18   decisions regarding the company's operations are made by BBG in California, is dominated by

19   the same family operation and is part of an alter ego shell game designed to avoid liability for

20   such practices by not revealing who is actually involved. Complaint ¶¶13, 33, 43, 44. For

21   example, while BBG claims the proper entity is BBG Global AG, nowhere does that company's

22   name appear. To the contrary, attached as Ex. 1 to the Complaint is a series of photographs of

23   BBG's advertisements, including on page 2, one of a payphone in Frankfurt, Germany. On the

24   pay telephone itself BBG states "credit card calls are routed and priced by: direct

25   communications to: BBG Communications Inc., 5111 E. San Ysidro Blvd., #1770, San Ysidro,

26   CA, 92173. 1-800-576-5402." Thus, Defendant's argument that such services are "wholly

27   foreign" transactions provided by some company other than BBG Communications, Inc., or that

28   customers would not reasonably expect to be talking to a call center located in California,

1  contradicts not only the allegations of the Complaint, but BBG's own signage!  To further

2  obfuscate their identity, BBG also institutes a program to have its representatives use memorized

3  scripts to disguise their identity, not provide rates, refuse to state where they are located, and

4  only provide refunds to those consumers who spend significant effort to complain.  Complaint,

5  ¶¶ 4, 5, 28, 30, 36, 37.

6          Plaintiffs suffered injury in fact at the hands of BBG, being charged $54.00 for a one

7  minute phone call and $150 for a 7-minute phone call based on numerous undisclosed fees.  Both

8  the Plaintiffs and thousands of other consumers complained to BBG and after significant effort

9  were only offered a 30-40% refund, as is apparently BBG's standard practice.  Complaint at ¶¶

10  10, 27.  Plaintiffs' pre-litigation letters were ignored as BBG's counsel claimed the appropriate

11  entity to resolve the claims was BBG Global AG or BBG Zurich (a company that may not

12  actually exist), which Plaintiffs specifically allege is only a shell company with no real presence

13  that is not responsible for the conduct in question.  *Id*.

14          In addition, the Complaint alleges that BBG Customer Service Representatives and their

15  supervisors, who claim to be located in California, secretly record all customer communications

16  even though they immediately ask for confidential information such as a credit card number at

17  the initiation of every call, but do not first obtain the consent of California consumers to tape

18  such conversations, in violation of Cal. Penal Code § 632.  Contrary to BBG's claims, consumers

19  are mislead into believing these call centers are located in California and disguise their true

20  location, saying they are not authorized to provide such basic information as the location of their

21  office but that they are an "American based" company.  Complaint, ¶¶ 5, 6, 30, 38, Ex. 1.

22          The Complaint alleges causes of action for violations of Cal. Bus. & Prof. Code § 17200,

23  *et seq.* ("UCL") (Complaint, ¶¶ 45-53); violation of the Consumers Legal Remedies Act

24  (Complaint, ¶¶ 58-64); breach of contract (Complaint, ¶¶ 54-57); declaratory relief (Complaint,

25  ¶¶ 65-69); common counts, assumpsit and unjust enrichment (Complaint, ¶¶ 70-72); and

26  violation of Cal. Penal Code § 632 on behalf of California consumers (Complaint, ¶¶ 73-80).

27  / / /

28  / / /

**III.   RULE 12(B)(1) IS NOT APPLICABLE SINCE DEFENDANT'S ARGUMENTS THAT THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION ARE BASED ON DISPUTED FACTS OUTSIDE THE COMPLAINT AND ARE IMPROPER FOR A MOTION TO DISMISS**

Defendant's motion to dismiss is a procedural motion that simply decides whether, drawing all inferences in favor of Plaintiffs, they have set forth a legally cognizable claim. The time for resolving factual disputes comes later, after both sides have had an opportunity to conduct discovery. A facial challenge, like the one BBG brings here, that argues that the Complaint does not set forth grounds for federal subject matter jurisdiction based on lack of standing, is governed by the same rules that govern Rule 12(b)(6) motions -- the Court must assume the factual allegations in the complaint are true and construe them in the light most favorable to plaintiff. See *Thorn Hill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Despite this unambiguous requirement, Defendant submits evidence that directly contradicts the allegations of the Complaint and then asserts, based on that evidence, the Court does not have subject matter over the claims at issue -- even though this Court in the related action *Evans v. BBG*, Case No. 3:10-cv-00542-H (NLS), Dkt. No. 27 (Order dated Nov. 17, 2010) already found that similar claims asserted could proceed in this Court based on the allegations of BBG's substantial California contacts to the controversy.

As set forth in the accompanying Objection to Declarations and Request for Judicial Notice filed herewith, Plaintiffs specifically object to the consideration of the four Declarations and Request for Judicial Notice that attempt to both contradict the allegations of the Complaint and as a basis for claiming Plaintiffs do not have standing to assert such claims in this Court. It is axiomatic under Rule 12(b) and the law of the Ninth Circuit that in deciding a motion to dismiss, the Court may not consider material outside the Complaint. Fed. R. Civ. P. 12(b); *See Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997). For a fact to be judicially noticed, "indisputability is a prerequisite." *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995). Indeed, "[c]ourt[s] should not use judicial notice to generate an evidentiary record and then weigh evidence . . . to dismiss [a] complaint." *In re Network Equip. Techs. Inc. Litig.*, 762 F.Supp. 1359, 1363 (N.D. Cal. 1991). The claims in the Declarations are disputed by

1  Plaintiffs as they contradict the allegations of the Complaint, are not cited in the Complaint, and

2  do not contain information "(1) generally known . . . or (2) capable of accurate and ready

3  determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

4  Evid. 201(b).

5       The relevance and/or authenticity of the information contained in the Declarations

6  submitted by BBG in support of its motion is questioned.  For example, while Mr. Von Klocke

7  attempts to explain how the BBG operator call system is supposed to work, Plaintiffs allege that

8  is not how the system operates, what the disclosures that exist actually state, or what is hidden

9  from consumers.  Complaint at ¶¶2, 10, 26, 29, 31, 34, 36.  Moreover, the Complaint does not

10 rely upon or reference such information.

11      Similarly, BBG's assertion that consumers had no reason to believe they were talking to a

12 call center located in California, while irrelevant, is particularly inappropriate since there is no

13 allegation anywhere that Plaintiffs were dealing with any entity other than BBG.  To the

14 contrary, as set forth in the summary of allegations above, the Complaint alleges the customer

15 calls went to BBG, credit card calls were handled by BBG out of San Ysidro, credits were

16 offered by BBG, and to the best of Plaintiffs' knowledge they were dealing with BBG

17 representatives.  The Complaint further alleges that BBG Global AG is a shell company, that all

18 of the corporate decisions are made by the Galicot family that run BBG, and that BBG

19 representatives specifically are instructed to say they are not a foreign based company, all

20 expressly contradicting BBG's Declarations.

21      In addition, Plaintiffs specifically allege how the exorbitant fees for such calls are not

22 disclosed and are difficult if not impossible to access.  Putting aside for the moment that

23 Plaintiffs dispute the claim that all rates can be determined with the push of a button, as asserted

24 in the Mr. Von Klocke's Declaration  whether BBG disputes this allegation is not a proper basis

25 for a motion to dismiss.  While Plaintiffs believe they can specifically rebut these assertions at

26 the appropriate time and after appropriate discovery, they will not put in evidence on this issue

27 so that defendant can try to convert this matter to a summary judgment motion.  "If the parties

28 dispute its authenticity or the form is not referenced in a plaintiff's complaint, it will not be

1  noticed."  *In re Adaptive Broadband Sec. Litig.*, No. C 01-1092 SC, 2002 WL 989478, at *20

2  (N.D. Cal. Apr. 2, 2002).

3         Since these Declarations are improper and the extraneous information they submit  are

4  not suitable for consideration on a motion to dismiss, they cannot properly form a basis for

5  Defendant's subject matter jurisdictional argument.  *See Cooper, supra*, 137 F.3d  at 622-23.

6  Thus, a Rule 12(b) motion claiming a lack of standing based on disputed factual evidence is

7  improper and must be summarily denied.

8         **A.    Plaintiffs' Claims are Not Barred by the Presumption Against**
              **Extraterritoriality.**

9

10        Even assuming that the conduct alleged by Plaintiffs occurred overseas, which is not the

11 case as described herein and in the Complaint, BBG's argument that Plaintiffs' claims should be

12 barred by the presumption against extraterritoriality because Plaintiffs have asked the court to

13 apply California common law and consumer protection statutes extraterritorially to conduct

14 occurring beyond the borders of the United States is misplaced.  "Numerous cases have applied

15 the law of a jurisdiction other than the situs of the injury where there existed some other link

16 between that jurisdiction and the occurrence."  *Allstate Ins. Co v. Hague,* 449 U.S. 302, 315

17 (1981).[1]  Moreover, it is well-established that courts may apply various laws and statutes to

18 conduct that has occurred beyond the borders of the United States.  *See, e.g.*, *Pakootas v. Teck

19 Cominco Metals, Ltd.*, 452 F.3d 1066, 1071 (9th Cir. 2006) (the court applied the Comprehensive

20 Environmental Response, Compensation, and Liability Act to conduct that occurred in Canada

21 because the "failure to extend the scope of the statute to a foreign setting will result in adverse

22 effects within the United States"); *H.K. & Shanghai Banking Corp. v. Simon* (*in Re Simon*), 153

23 F.3d 991, 996 (9th Cir. 1998) (a court may apply a law to conduct occurring outside the United

24 States where "the regulated conduct is intended to, and results in, substantial effects within the

25 United States") (internal quotations omitted); *Environmental Defense Fund v. Massey*, 986 F.2d

26

27 [1] *See, also, Cardillo v. Liberty Mutual Ins.* Co., 330 U.S. 469 (1947); *Alaska Packers Assn. v.
   Industrial Accident Comm'n*, 294 U.S. 532 (1935); *Rosenthal v. Warren*, 475 F.2d 438 (2d. Cir.
28 1973), cert. denied, 414 U.S. 856 (1973).

1  528, 531 (D.D.C. 1993) (a court may apply a law to conduct occurring outside the United States

2  "where the failure to extend the scope of the statute to a foreign setting will result in adverse

3  effects within the United States").

4        Further, California courts have stated that California state laws, including claims alleged

5  by Plaintiffs, presumptively apply extraterritorially in cases where the plaintiff is a resident of

6  California, such as the case here. *See, e.g.*, *Norwest Mortgage, Inc. v. Superior Court*, 72

7  Cal.App.4th 214, 222 (1999) (allowed UCL to apply to claims by "California residents

8  regardless of where the Norwest Mortgage's conduct of purchasing FPI occurred"); *Yu v. Signet*

9  *Bank/Virginia*, 69 Cal.App.4th 1377, 1391 (1999) (court allowed a claim under the UCL by a

10 California resident who was allegedly harmed by out-of-state misconduct). As such, BBG's

11 argument that the Court does not have subject matter jurisdiction because the conduct occurred

12 beyond the borders of the United States is flawed and therefore should be rejected.

13      **B.**    **The Doctrine of International Comity Does Not Mandate Dismissal of**

14             **Plaintiffs' Claims.**

15       BBG's argument that principles of comity mandate dismissal of Plaintiffs' complaint is

16 similarly flawed. "Comity is 'the recognition which one nation allows within its territory to the

17 legislative, executive or judicial acts of another nation, having due regard both to international

18 duty and convenience.'" *Dependable Highway Express, Inc. v. Navigators Ins. Co*., 498 F.3d

19 1059, 1067 (9th Cir. 2007) (quoting *Hilton v. Gilot*, 159 U.S. 113, 164 (1895)). Extension

20 of comity is not "a matter of absolute obligation." *Id*. Here, as stated in Plaintiffs' Complaint,

21 Plaintiffs are residents of California (Complaint, ¶ 10), BBG is incorporated in and

22 headquartered in California (Complaint, ¶ 11), and the conduct primarily occurred in California

23 (Complaint, ¶¶ 24-44). As such principles of comity do not apply in this case and California is

24 the proper state to litigate this action based on the allegations of the Complaint. To accept

25 Defendant's theory is to ignore these factual allegations.

26      **C.**    **Choice of Law Issues Do Not Warrant Dismissal of Plaintiffs' Complaint.**

27      California courts follow the rule requiring an analysis of the respective interests of the

28 states involved (the "governmental interest" approach) the objective of which is "to determine

1   the law that most appropriately applies to the issue involved." *Hurtado v. Superior Court*, 11

2   Cal.3d 574, 579 (1974). Moreover, when laws of more than one venue are implicated, then

3   "clearly the law of the interested state should be applied." *Id.* at 580. Here, as set forth in detail

4   above, California is the interested state as Plaintiffs are residents of California (Complaint, ¶ 10),

5   BBG is incorporated in and headquartered in California (Complaint, ¶ 11), and the conduct

6   occurred in California (Complaint, ¶¶ 24-44). As such, California law can properly be applied

7   to litigate the claims in this action.

8   **IV.     PLAINTIFFS HAVE STANDING TO ASSERT A UCL CLAIM AND THE
          OTHER CLAIMS AT ISSUE SINCE THEY PROPERLY ALLEGE INJURY IN
9          FACT FOR ALL PURPOSES**

10      BBG's motion runs afoul of the well-settled Ninth Circuit precedent holding "that

11  whether a business practice is deceptive will usually be a question of fact not appropriate for

12  decision on demurrer." *Williams v. Gerber Prods. Co., supra*, 552 F.3d at 938 (citing *Linear

13  Technology Corp. v. Applied Materials, Inc.,* 152 Cal.App.4th 115, 134-35 (2007)). On a motion

14  to dismiss, "[t]he issue is not whether a plaintiff is likely to succeed on the merits but rather

15  whether the claimant is entitled to proceed beyond the threshold in attempting to establish his or

16  her claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

17      It is enough to plead under the UCL and Article III that Plaintiffs were in the zone of

18  persons sought to be protected by the statutes in question and were exposed to such practices.[2]

19  "To satisfy the injury in fact requirement, a plaintiff asserting a procedural injury must show that

20  the procedures in question are designed to protect some threatened concrete interest of his that is

21  the ultimate basis of his standing." *Citizens for Better Forestry v. USDA*, 341 F.3d 961, 969 (9th

22  Cir. 2003).

23      Plaintiffs specifically include such allegations in the Complaint at ¶¶10, 35, 36, 39, 41,

24  50. As noted in *Hall v. Time Inc*., 158 Cal.App.4th 847 (2008), cases decided since Proposition

25  64 changed the language of the UCL have concluded a plaintiff suffers an injury in fact for

26

27  [2]  *See In re Tobacco II Cases,* 46 Cal.4th 298, 325 n.16 (2009) (noting that Proposition 64's
    Legislative History indicated intent of amendment was to apply U.S. Constitution Article III
28  standing requirements, as compared to the "any person" standard that existed at the time).

purposes of standing when he or she has: (1) expended money due to the defendant's acts of unfair competition (*Aron v. U-Haul Co. of California*, 143 Cal.App.4th 796, 802–803 (2006) (plaintiff alleged he was required to purchase excess fuel from gas station when returning rental truck); *Witriol v. LexisNexis Group*, 2006 U.S. Dist. Lexis 26670, *18–*19 (N.D. Cal., Feb. 10, 2006) (plaintiff incurred third-party costs to monitor and repair damage to his credit caused by defendants' unauthorized release of private information)); (2) lost money or property (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1240, 1262 (2005) (plaintiff's home and car were vandalized by animal rights protestors)); or (3) been denied money to which he or she has a cognizable claim (*Progressive West Ins. Co. v. Superior Court*, 135 Cal.App.4th 263, 269–270, 285, fn. 5 (2005) (insurance company paid insured's medical bills, then sued to recover that money when insured collected damages from the third party who caused his injuries; insured had standing to bring UCL claim against insurance company)). *Cf.*, *Meyer v. Sprint Spectrum,* 45 Cal.4th 634, 640 (2009) (in discussing the concept of "damage" for standing purposes under the Consumers Legal Remedies Act, a consumer who had to expend transaction costs or opportunity costs in order to avoid unconscionable conduct may suffer remediable loss). Notably, in most of the above instances the courts did not need the money to have been paid to the defendant directly in order to find plaintiffs had standing to assert such claims, but just allegations of a loss or payment of money or property in general – which is what Plaintiffs have alleged in ¶10 of the Complaint.[3] There is no indication a more limited interpretation was the intent of Proposition 64. Indeed, as such a holding under these circumstances would eviscerate significant substantive rights under the UCL, such a holding would be contrary to *Tobacco II, supra*, since if a person had to be

---

[3] Contrary to the suggestion in Mr. Galicot's Declaration (which can only be used to establish CLRA letters were sent and received, nor to contradict the allegations of the Complaint), Plaintiff Keeports properly alleges in the Complaint that the calls in question were made from Frankfurt, Germany to California. He and his wife are jointly responsible for the credit card obligations as community property under California law; he called BBG's California offices to complain -- which calls were made from California, not Frankfurt -- he was the one that talked to BBG and was refused a full refund, and BBG's counsel responded to his letter and claimed his pre-litigation demands were to be directed at BBG Global AG. Complaint at ¶10(b). Defendant cannot properly assert that such allegations are not correct for purposes of a motion to dismiss.

1  financially injured in the way Defendant asserts, it would negate the concept of being able to

2  assert such a claim. *In re Tobacco II Cases, supra*, 46 Cal.4th at 320 ("An injunction would not

3  serve the purpose of prevention of future harm if only those who had already been injured by the

4  practice were entitled to that relief").

5      Defendant asserts Plaintiffs do not adequately allege that they suffered "injury in fact and

6  a loss of money or property." However, payment of money by a plaintiff as wrongfully required

7  by a defendant is sufficient to allege injury in fact. *Nelson v. Pearson Ford*, 186 Cal.App.4th

8  983, 1014 (2010). *Kwikset v. Superior Court*, 2011 Cal. LEXIS 532 (Op. dated Jan. 27, 2011),

9  decided by the California Supreme Court after BBG filed its motion to dismiss, also disposes of

10  that assertion, since as in *Kwikset* Plaintiffs allege if the true facts had been disclosed or not

11  misrepresented they would not have paid the prices that they did, which is all that needs to be

12  plead to confer standing to assert the UCL claim. *Id*. at *36-37; Complaint, ¶10, 36, 39, 41. In

13  *Kwikset,* the Supreme Court expressly overruled at *55 the case of *Buckland v. Threshhold*

14  *Enterprises,* 155 Cal.App.4th 798, 817 (2007), cited and relied on by BBG in its moving papers.

15  Thus, Plaintiffs would expect that in light of this decision, BBG would now withdraw this

16  argument on reply.

17  **V.  PLAINTIFFS PROPERLY ASSERT EACH OF THEIR CAUSES OF ACTION**

18      **A.  Plaintiffs State Claims for Violation of the UCL.**

19      The UCL defines "unfair competition" to include "any unlawful, unfair or fraudulent

20  business act or practice." Cal. Bus. & Prof. Code § 17200. These are three independent

21  categories of practices that constitute unfair competition, such that a plaintiff need only plead

22  one category sufficiently for the claim to be upheld. *Cel-Tech Commc'ns, Inc. v. Los Angeles*

23  *Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999); *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d

24  1033, 1043 (9th Cir. 2003), *amended*, No. 01-17049, 2003 U.S. App. LEXIS 19524 (9th Cir.

25  2003). It is "the rare situation in which granting a motion to dismiss [a UCL claim] is

26  appropriate." *Williams*, 552 F.3d at 939.

27      The UCL imposes strict liability where an act that violates the UCL has been sufficiently

28  alleged. *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 180-181 (2000). The

focus of the UCL is "on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Nelson v. Pearson Ford*, *supra*, 186 Cal.App.4th at 1015. As the Supreme Court held in *In Re Tobacco II Cases, supra*, 46 Cal.4th at 312:

> The substantive right extended to the public by the UCL is the """right to protection from fraud, deceit, *and unlawful conduct*""" (*Prata v. Superior Court*, 91 Cal.App.4th 1128, 1137 (2001)), and the focus of the statute is on the defendant's conduct. As we have already observed, the proponents of Proposition
>
> 64 told the electorate that the initiative would not alter the statute's fundamental purpose of protecting consumers from unfair businesses practices. Rather, the purpose of the initiative was to address a specific abuse of the UCL's generous standing provision by eliminating that provision in favor of a more stringent standing requirement. That change, as we observed in *Mervyn's*, did not change the substantive law. ([*Californians for Disability Rts. v*]. *Mervyn's,* 39 Cal.4th 223, 232 [2006].)

(Emphasis added).

### B.     Plaintiffs Properly Allege "Fraudulent" Acts and Practices.

"[T]he term 'fraudulent' in [Section 17200] does not refer to the common law tort of fraud." *Qarbon.com Inc. v. eHelp Corp.,* 315 F.Supp.2d 1046, 1052 (N.D. Cal. 2004). Instead, the universal test for determining what conduct constitutes a violation of the "fraudulent" prong of the UCL is whether "the public is likely to be deceived." *Id.* In *In re Tobacco II Cases, supra,* 46 Cal.4th at 312 and n. 2, the Supreme Court of California reaffirmed only the plaintiff need allege that the statements at issue were or would have been a "substantial factor" in the decision-making process, and that this prong of the UCL is distinct from the elements of common law fraud. Plaintiffs satisfy this standard by alleging how BBG's misleading conduct caused them injury. Contrary to the assertion that Plaintiffs did not allege reasonable reliance, they both specifically allege had the true facts been adequately disclosed, they would not have used a credit card, been billed for the amounts in question and/or paid the amounts they did. Complaint ¶¶10, 29, 35, 39 and 50.

BBG claims that as a matter of law it adequately disclosed all fees and rates (or did not need to do so), contrary to the allegations of the Complaint. As stated above, they do so based exclusively on extraneous evidence that is improper to consider. But placing that issue aside,

such a claim is contrary to the conclusion of the Court in *Williams*. The defendants in *Williams* manufactured a product called "Fruit Juice Snacks" that the plaintiff alleged violated the UCL and CLRA because the product contained no juice from any of the fruits on the packaging. *Id.* at 939. Given that the product was called "Fruit Juice Snacks" and the packaging included pictures of fruits, the Ninth Circuit reversed the district court's decision dismissing these claims as a matter of law and stated that "[t]he facts of this case . . . do not amount to the rare situation in which granting a motion to dismiss is appropriate" and the features of the packaging "could likely deceive a reasonable consumer." *Id.* Here, similar to *Williams*, Plaintiffs have alleged that the statements provided by BBG, specific examples of which are attached to the Complaint, could likely deceive a reasonable consumer as they fail to disclose any of the fees and charges BBG automatically imposes, and instead would reasonably lead consumers to believe the amounts charged would be comparable to what are disclosed.

Moreover, reliance is at most only an element for the "fraudulent" prong of the UCL, not the other UCL prongs. While Defendant tries to assert there must be some type of reliance/causation element for UCL standing purposes in all instances, the Supreme Court in *In Re Tobacco II Cases supra*, 46 Cal.4th at 325, n. 17, noted that:

> We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers. The UCL defines "unfair competition" as "include[ing] any unlawful, unfair or fraudulent business act or practice . . . ." (§ 17200.) There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application.

This is the type of situation envisioned in *Tobacco II* when it reiterated at page 326: "Moreover, as noted, before Proposition 64, California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury. (*Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1288 (2002)." Based on the Court's conclusion in *Tobacco II*, as set forth *supra*, that Proposition 64 did not change the substantive elements of a UCL claim, for a court to impose the type of reliance/causation and financial injury requirements asserted by Defendant where one previously did not exist would alter the substantive law of the UCL that such elements are not required to

1   assert a UCL claim. Accordingly, Plaintiffs' claim for violation of the fraudulent prong of the

2   UCL should be upheld.

3         **C.     Plaintiffs Properly Allege "Unfair" Acts and Practices.**

4         A business practice is "unfair" under the UCL if it "offends an established public policy

5   *or* when the practice is immoral, unethical, oppressive, unscrupulous *or* substantially injurious to

6   consumers." *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal.App.4th 654, 662 (1998)

7   (citations omitted, emphasis added). Whether a business practice is "unfair" involves weighing

8   the utility of the defendant's conduct against the gravity of the harm ascribed to the alleged

9   victims, which cannot properly be resolved on a motion to dismiss. *Lippitt*, 340 F.3d at 1043;

10  *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740 (1980).

11
12       [T]he Legislature . . . intended by this sweeping language to permit tribunals to
    enjoin on-going wrongful business conduct in whatever context such activity
    might occur. Indeed . . . the section was intentionally framed in its broad,
13  sweeping language, precisely to enable judicial tribunals to deal with the
    innumerable " 'new schemes which the fertility of man's invention would
14  contrive.'

15  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., supra*, 20 Cal.4th at 181.

16        False advertising has no utility and never constitutes a justified business practice.

17  *Vasquez v. Superior Court*, 4 Cal.3d 800, 808 (1971). As Plaintiffs have alleged in detail that

18  BBG engaged in false advertising, they have properly stated a claim for unfair business acts and

19  practices under the UCL. BBG's assertion that, as a matter of law, its conduct was not unfair,

20  therefore fails.

21        The "safe harbor" exemption upon which BBG relies is also improperly construed, and

22  only applies to the "unfair" prong of the UCL. In order to assert such a defense under *Cel-Tech*,

23  there must be a specific law that protects the misleading conduct in question. BBG fails to cite

24  any such "safe harbor", as all it claims (improperly based on information in the Holznagel

25  Declaration that is extraneous to the allegations of the Complaint) is that no specific disclosures

26  are expressly required. As the Supreme Court stated in *Cel Tech, supra*, 20 Cal.4th at 182-83:

27
28       "The rule does not, however, prohibit an action under the unfair
    competition law merely because some other statute on the subject does not, itself,
    provide for the action or prohibit the challenged conduct. To forestall an action

under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct.  There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful.  For example, Penal Code §211, which defines robbery, does not make murder unlawful.  Most assuredly, however, that section does not also make murder lawful.  Acts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law, but acts may, if otherwise unfair, be challenged under the unfair competition law even if the Legislature failed to proscribe them in some other provision."

Since BBG fails to cite to any law that specifically makes all of the conduct at issue immune from suit or specifically expressly permits the conduct at issue, but simply says there is nothing that specifically prohibits it, it can claim no "safe harbor" exemption as a matter of law. And it certainly cannot claim no such exemption exists as to the surreptitious recording practices, since California law applies for the reasons detailed *infra*.

**D.      Plaintiffs Properly Allege "Unlawful" Acts and Practices.**

To allege an "unlawful" business practice under the UCL, a plaintiff need only allege the law violated and the facts showing the underlying violation. *See*, *e.g.*, *Microsoft Corp. v. A-Tech Corp.*, 855 F.Supp. 308, 313 (C.D. Cal. 1994).  As the Ninth Circuit explains: "The UCL covers a wide range of conduct.  It embraces anything that can properly be called a business practice and that at the same time is forbidden by law. . . .  Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003)).  In *Korea Supply*, the California Supreme Court reaffirmed the long-standing principle that "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, *statutory,* regulatory, *common law*, or other determinable legal standard." *Id*. at 1159 (emphasis added).

As set forth herein, the Complaint alleges BBG's acts and practices are independently unlawful under Penal Code §632, the CLRA, and breach of contract.  Such allegations establish a *per se* violation of the UCL.  Since, for the reasons stated herein, each of those claims are validly plead, the UCL claim must be upheld.  *Cortez v. Purolator Air Filtration Products, Co., supra,* 23 Cal.4th at 173-74; *Saunders v. Superior Court*, 27 Cal.App.4th 832, 845 (1994).

/ / /

1    **E.    Plaintiffs Properly State a Claim for Violation of the CLRA.**

2        The CLRA prohibits twenty-three specified "unfair methods of competition and unfair or

3    deceptive acts or practices" in transactions for the sale of services to consumers.  Cal. Civ. Code

4    § 1770(a).  The Legislature has directed, pursuant to Cal. Civ. Code § 1760, that the CLRA be

5    "liberally construed" to "protect consumers."  Cal. Civ. Code § 1760.  Plaintiffs allege that

6    BBG's unlawful acts or practices violate at least six of these prohibitions.  Complaint, ¶61.

7        Plaintiffs' detailed allegations of BBG's deceptive acts and practices, and the impact

8    these acts and practices had on Plaintiffs, are sufficient to state violations of these provisions of

9    the CLRA.  The specific statements at issue and the omitted material facts identified in detail in

10   the Complaint and in the accompanying Exhibits violate the above provisions of the CLRA.

11   *McAdams v. Monier, Inc*., 182 Cal.App.4th 174, 187 (2010) (citing *Outboard Marine Corp. v.*

12   *Superior Court*, 52 Cal.App.3d 30, 36-37 (1975)).  The materiality of an omitted fact is a factual

13   determination based on the point of view of the reasonable consumer.  *Falk v. General Motors,*

14   *Inc*., 496 F.Supp.2d 1088, 1094-95 (N.D. Cal. 2007) (materiality under the CLRA determined

15   from the perspective of reasonable consumer; finding that "[c]ommon experience supports

16   plaintiffs' claim that a potential buyer would view as material a defective speedometer").  These

17   are not issues that can properly be resolved on a motion to dismiss.

18       Likewise, BBG's contention that Plaintiffs failed to plead reliance with specificity

19   ignores several facts, including: (1) the CLRA is not a fraud-based claim (*see e.g. Wang v.*

20   *Massey Chevrolet,* 97 Cal.App.4th 856, 870 (2002)) (2) the specific allegations of their exposure

21   to BBG's representations and their materiality and impact, and (3) Plaintiffs' specific allegations

22   that they were mislead by such conduct.  *See also Mass. Mut. Life Ins. Co. v. Super. Ct. of San*

23   *Diego*, 97 Cal.App.4th at 1293 ("an inference of reliance arises if a material false representation

24   was made to persons whose acts thereafter were consistent with reliance upon the

25   representation"); *Vasquez v. Superior Court, supra*, 4 Cal.3d at 814 ("Where representations

26   have been made in regard to a material matter and action has been taken, in the absence of

27   evidence showing the contrary, it will be  presumed that the representations were relied on")

28   (internal citation omitted).  Plaintiffs also allege how they were damaged, that they sent a letter

1    under the CLRA asking for reimbursement for such damages, and that BBG ignored that

2    demand, necessitating this claim for damages.  Complaint, ¶¶2, 6, 10, 35-43, 63 and 64.  *See*

3    *Meyer v. Sprint Spectrum L.P., supra*, 45 Cal.4th at 646 ("a consumer who has had to expend

4    transaction costs in order to avoid the unconscionable term has suffered 'damage' within the

5    meaning of [the CLRA]").  Plaintiffs have properly stated claims for violation of the CLRA.

6        **F.    Plaintiffs Properly State a Claim for Common Counts and Unjust**
         **Enrichment, as Well as the Independent Claim For Declaratory Relief.**
7

8        BBG's assertion that Plaintiffs' claim for unjust enrichment is not cognizable as a cause

9    of action is incorrect.  *Shum v. Intel Corp.*, 499 F.3d 1272, 1279 (9th Cir. 2007) ("[u]nder

10   California law, unjust enrichment claims can exist as a separate cause of action. . . .") (internal

11   quotations omitted); *Villager Franchise Syst., Inc. v. Dhami, Dhami & Virk*, No. CVF046393,

12   2006 WL 224425, at *7 (E.D. Cal. Jan. 26, 2006) ("California law recognizes a cause of action

13   for unjust enrichment").  "Courts have recognized that state claims of unjust enrichment are

14   universally recognized causes of action. . . ."  *In re Terazosin Hydrochloride Antitrust Litig.*, 220

15   F.R.D. 672, 697 n. 40 (S.D. Fla. 2004) (quotations omitted).

16       Moreover, claims for common counts have long been recognized in California –so much

17   so that Judicial Council Form No. PLD-C-001(2) (entitled "Cause of Action – Common

18   Counts") expressly recognizes such a claim.  *See Jogani v. Superior Court*, 165 Cal.App.4th 901,

19   906 (2008) ("California has long permitted the pleading of common counts").[4]

20       BBG also argues that Plaintiffs fail to properly state a claim for declaratory relief

21   because Plaintiffs do not allege the existence of a contract or the existence of the legal rights and

22   / / /

23   _____

24   [4]  Although there is a split of authority whether unjust enrichment exists as a free-standing cause
     of action or as a subset of a claim for restitution under California law, it is inappropriate at this
25   juncture to determine whether other remedies available to Plaintiffs render the claim for unjust
     enrichment superfluous, particularly in light of the common counts claim. *See Keilholtz v.*
26   *Superior Fireplace Co.*, No. 08-00836, 2009 WL 839076, at *4-*5 (N.D. Cal. Mar. 30, 2009)
     ("[a]lthough this claim may ultimately be superfluous to Plaintiffs' restitution claim under the
27   UCL, it is inappropriate at this early stage in the litigation to determine whether other remedies
     available to Plaintiffs are adequate").
28

1   duties of the parties.  However, as this Court held in *Patent Trust v. Microsoft Corp.*, 525

2   F.Supp.2d 1200, 1218 (S.D. Cal. 2007):

3       "The sole requirement for a district court to have subject matter jurisdiction over a
        claim brought pursuant to the DJA is an 'actual controversy.' " *See Teva Pharms.*
4       *USA, Inc. v. Novartis Pharms. Corp.,* 482 F.3d 1330, 1338.  An "actual
        controversy" within the meaning of the DJA is the same as an Article III case or
5       controversy.  *See id.*  Therefore, a party bringing a declaratory judgment claim is
        only required to show that under "all the          circumstances," there is an actual or
6       imminent injury that was caused by the opposing party, is redressable by judicial
        action, and is of "sufficient immediacy and reality to warrant the issuance of a
7       declaratory judgment. [Citations omitted.]"

8       In addition, in *Patent Trust* this Court stated: "This argument, however, presumes facts

9   contrary to Defendant's pleadings and is therefore unpersuasive on a motion to dismiss.  The

10  essence of Defendant's allegations is that MPT is a sham entity and that Lucent remained the real

11  owner of the Patents-in-Suit and controlled the allegedly fraudulent sequence of events leading

12  to this litigation.  Taking these allegations as true for purposes of this motion, there is an actual,

13  redressable, and immediate controversy between the Defendants and Lucent.   The Court

14  therefore denies these motions."  *Id.*  In addition to plaintiffs' detailed standing allegations as set

15  forth above, the Complaint contains similar allegations as those set forth above at ¶¶13, 33, 43,

16  44, 66, 67 and Ex. 1.  Therefore, plaintiffs' declaratory relief claim should properly be upheld.

17      **G.      Plaintiffs Have Properly Asserted Contract Claims**

18      "A cause of action for breach of implied contract has the same elements as does a cause

19  of action for breach of contract, except that the promise is not expressed in words but is implied

20  from the promisor's conduct."  *Gomez v. Lincare, Inc.*, 173 Cal.App.4th 508, 525 (2009); *Yari v.*

21  *Producers Guild of America, Inc.*, 161 Cal.App.4th 172, 182 (2008).  "The essential elements of

22  an implied-in-fact contract and an express contract are the same, namely, mutual assent and

23  consideration.  In a case such as the one before us, the assent of the writer is found in his

24  submission of the idea or material to the producer, with the reasonable expectation of payment

25  which  can  be  inferred from the facts and circumstances."  *Chandler v. Roach*, 156  Cal.App.2d

26  435, 440-441 (1958).  Plaintiffs include such allegations in ¶¶55-58 of the Complaint.  As

27  detailed above and as set forth throughout the Complaint, the breach of these contracts occurred

28  / / /

1  when BBG charged and unjustifiably retained sums of money through charging undisclosed fees

2  and charges in connection with their payphone service.

3        "The so-called 'contract implied in law' in reality is not a contract. Quasi-contracts,

4  unlike true contracts, are not based on the apparent intention of the parties to undertake the

5  performances in question, nor are they promises. They are obligations created by law for reasons

6  of justice. Quasi contractual recovery is based upon benefit accepted or derived for which the

7  law implies an obligation to pay." *Weitzenkorn v. Lesser*, 40 Cal.2d 778, 794 (1953); *Davies v.*

8  *Krasna*, 12 Cal.App.3d 1049, 1054 (1970) (citation and emphasis omitted.) This is an

9  "obligation created by the law without regard to the intention of the parties, and is designed to

10  restore the aggrieved party to his former position by return of the thing or its equivalent in

11  money." *McBride v. Boughton*, 123 Cal.App.4th 379, 388 n. 6 (2004) citing 1 Witkin, Summary

12  of Cal. Law, Contracts, § 91, p. 122, italics omitted. As all the elements of this claim have been

13  properly plead, it must also be upheld.

14       **H.**    **Plaintiffs May Properly Assert a Penal Code Section 632 Claim No Matter Where the Call Center is Located Based on the Presence of the Sub-Class Members in California**

15

16       As set forth above, Defendant's Declarations attempt to introduce evidence outside of the

17  allegations of the Complaint as to contradictory facts and the applicable law in order to defeat

18  this claim, which is improper for a motion to dismiss. *See Cervantes v. City of San Diego, supra*,

19  5 F.3d at 1274. And neither exception for considering such evidence on a motion to dismiss

20  applies. *Parrino v. FHP, Inc., supra,* 146 F.3d at 706-07. BBG's Declarations that contradict

21  the allegations of the Complaint must therefore be disregarded for purposes of this Motion.[5]

22       A person violates Penal Code §632(b) if it records a confidential communication without

23  the knowledge of all participants to the communication and without giving all parties' notice at

24  the outset of the conversation that it is doing so. *Forest E. Olson, Inc. v. Superior Court*, 63 Cal.

25  App.3d 188, 191 (1976). The California Supreme Court in *Shulman v. Group W Productions,*

26

27  [5] See discussion of Plaintiffs' objections to the Puglisi Declaration in the accompanying Objection to Declarations and Request for Judicial Notice as to why the information submitted

28  by Defendant is not properly considered in addressing the Section 632 claim.

*Inc.*, 18 Cal.4th 200, 234-235 (1998), vigorously enforced the broad protections provided by Cal. Penal Code §632 for California consumers, stating that it:

> "…provides legal recognition of the individual's reasonable expectation of privacy against unauthorized interception and recording of confidential conversations: 'While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device. . . . Such "'secret monitoring denies the speaker an important aspect of privacy of communication – the right to control the nature and extent of the firsthand dissemination of his statements.'"

Even if this Court considered the merits of BBG's assertions, which assertions contradict the allegations of the Complaint that BBG representatives uniformly are instructed to disguise their identity, not reveal their location and claim to be an "American-based company" or in fact are located in California (Complaint at ¶¶4, 30, 32), the Supreme Court has found the location of the call center is irrelevant for purposes of Penal Code §632.

Contrary to BBG's spin on the decision, in *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95 (2006), the California Supreme Court addressed the same situation -- a call center that was not located in California (in that case, Georgia) recording calls involving confidential information to California consumers. The California Supreme Court found even if there was a conflict between the law of a venue that permits such a recording and California law that does not, so long as there are significant contacts with this state (such as both Defendant, the Plaintiffs and class members residing here), California's prohibition against recording telephone calls without first obtaining consent at the outset of the telephone call controls. The Court specifically rejected BBG's argument that the Legislature did not intend such a broad construction of the statute:

> The language of section 632 does not explicitly address the issue whether the statute was intended to apply when one party to a telephone call is in California and another party is outside California. The legislatively prescribed purpose of the 1967 invasion-of-privacy statute, however, is 'to protect the right of privacy of the people of this state' (§630), and that purpose certainly supports application of the statute in a setting in which a person outside California records, without the Californian's knowledge or consent, a telephone conversation of a California resident who is within California.

1    *Id.* at 119. The Court also rejected the argument that customers would have no reason to believe

2    their calls were not being recorded, explaining that Defendants' customers would *not* know or

3    have reason to know that their telephone calls were being recorded absent an explicit advisement

4    at the outset of a telephone call:

5               In one passage in its opinion, the Court of Appeal suggested that even in the
                absence of an explicit advisement, clients or customers of financial brokers such
6               as SSB "know or have reason to know" that their telephone calls with the brokers
                are being recorded. The Court of Appeal, however, did not cite anything in the
7               record or any authority establishing such a proposition as a matter of law, and in
                light of the circumstance that California consumers are accustomed to being
8               informed at the outset of a telephone call whenever a business entity intends to
                record the call, *it appears equally plausible that, in the absence of such an*
9               *advisement, a California consumer reasonably would anticipate that such a*
                *telephone call is not being recorded, particularly in view of the strong privacy*
10              *interest most persons have with regard to the personal financial information*
                *frequently disclosed in such calls.*
11

12   *Id.* at 118, n. 10 (emphasis added).

13           The Court rejected the other argument made by BBG here that the out-of-state law where

14   the call center was located immunized defendant from suit:

15              Accordingly, because we have found that the interests of California would be
                severely impaired if its law were not applied in this context, whereas Georgia's
16              interest would not be significantly impaired if California law rather than Georgia
                law were applied, we conclude that, with the one exception we discuss below,
17              California law should apply in determining whether the alleged secret recording
                of telephone conversations at issue in this case constitutes an unlawful invasion of
18              privacy.

19   *Id.* at 128. The exception the Court referenced was that defendants in that case would not be

20   held liable for past violations of the statute but only for injunctive relief, because it was not on

21   notice that California law might apply to its out-of-state recordings of conversations with

22   California consumers. However, the Supreme Court in July 2006 said that on an on-going basis

23   companies could not take advantage of this alleged uncertainty -- specifically rejecting the

24   assertion made by BBG that there is a difference when the call is being made from California by

25   a California consumer, as compared to being received in California by the same person:

26              In light of our decision, of course, out-of-state companies that do business in
                California now are on notice that, with regard to future conduct, *they are subject*
27              *to California law with regard to the recording of telephone conversations made*
                *to or received from California*, and that the full range of civil sanctions
28              afforded by California law may be imposed for future violations.

1    *Id.* at 130-31 (emphasis added). Since the California Supreme Court's position on this issue is

2    unambiguous and has been the law for over four years, BBG's attempt to contradict this ruling

3    by submitting excerpts from the legislative history of Section 632 is objectionable and irrelevant,

4    since legislative history is only relevant where there is an ambiguity that needs clarification.

5    *People v. Robles*, 23 Cal.4th 1106, 1111 (2000).

6        The situation here is even worse for BBG. The Complaint alleges that: (i) BBG is based

7    in California, (ii) BBG controls all of its global operations out of California, (iii) BBG's own

8    signage directs inquiries to BBG's offices in California, (iv) the call center is at a minimum

9    controlled from California and the representatives either are or claim to be based here, (v) BBG

10   operators are instructed not to reveal their location but to say they are an "American-based"

11   company, and (vi) that Plaintiffs and the sub-Class members -- all California residents -- would

12   have no reason to believe their calls were admittedly being recorded, let alone being recorded

13   outside of California. Complaint, ¶¶9, 11, 30, 32, Ex. 1 at 2. Defendant cannot contradict such

14   allegations by simply making the unsupported assertion that consumers "had no reason to believe

15   they were calling a U.S. call center" or would not have any reason to believe their calls were

16   being protected under California law. Such an allegation contradicts the specific factual

17   allegations of the Complaint.

18        Even if BBG may have contracted with a call center allegedly in Mexico (an assertion

19   extraneous to the allegations of the Complaint), this does not change the analysis of *Kearney,*

20   since Mexican law would not apply to this controversy under such facts (even if such law had

21   been properly submitted to this Court) as California law applies to calls made to or received from

22   California. *See, e.g., Hurtado v. Superior Court, supra,* 11 Cal.3d at 580 and n.2 (California's

23   choice-of-law governmental interest analysis is the same for choice of application between

24   California and Mexican law as between two states; court rejected application of Mexican law as

25   Mexico had no interest to be protected). In fact, *Kearney* cited *Hurtado* in undertaking its choice

26   of law analysis. BBG Communications, Inc. -- a California-based company -- is allegedly the

27   responsible entity for purposes of this claim. With whom it might have subcontracted to handle

28   / / /

1    call center operations or where that center is located does not control the outcome of this analysis

2    based on the above factual allegations of the Complaint.

3    Moreover, in *Kearney*, the California Supreme Court stated that for purposes of a

4    pleadings motion, it could not assume that the telephone conversations at issue were not

5    "confidential communications" within the meaning of Penal Code §632. *Id.* Here, the

6    Complaint alleges that Plaintiffs believed the telephonic communications would be treated as

7    confidential communications "based on the fact credit card information was being demanded

8    from them" and without any advance advisory such calls were being monitored or recorded.

9    Complaint, ¶77. See *also Membrila v. Receivables Perf. Mgt. LLC*, 2010 WL 1407274 (S.D.

10   Cal., Apr. 10, 2010) (denying motion to dismiss on grounds plaintiff was aware call was being

11   recorded; company that does not adequately advise individual at the inception of a telephone call

12   that call is being recorded can be held liable for violation of Penal Code §632, citing *Kearney*).

13   This Court cannot assume as a matter of law, contrary to the allegation of the Complaint,

14   that the telephonic communications between Plaintiffs and sub-Class members and Defendant

15   where confidential financial situations are being discussed were not confidential

16   communications. Nor can it conclude that whether a California-based company may have

17   outsourced customer calls to its domestic "1-800" number to a call center to Mexico and told no

18   one about it -- indeed instructed its representatives to advise consumers to the contrary -- means

19   that California law does not apply. If that were the case, companies could simply evade the

20   requirements of Section 632, and the protections provided to California consumers under

21   *Kearney*, simply by contracting with companies located outside the United States, or even

22   California, and then claim the law did not apply because that is where the call center is based.

23   There is no indication in the text of the law, or in the legislative history cited by BBG, that the

24   Legislature intended to create such a huge loophole. The Supreme Court in *Kearney* specifically

25   rejected that claim over four years ago when it stated companies are subject to California law

26   when they involve confidential telephone calls with California residents. And what Plaintiffs --

27   both California residents -- allege is not that they called BBG from abroad, but that they called

28   / / /

1    BBG after they received their credit card statement in California. Complaint, ¶10. The Court

2    must uphold the Section 632 claim.

3    **VI.    LEAVE TO AMEND SHOULD BE GRANTED IF NECESSARY**

4            Finally, as Plaintiffs have not previously amended the Complaint, if the Court grants

5    BBG's Motion in any respect, Plaintiffs request leave to amend to cure any alleged identified

6    deficiencies, particularly with regard to Plaintiffs' communications with BBG and the

7    Defendant's assertions that BBG does not operate overseas or that consumers have no reason to

8    believe they are talking with California-based representatives of BBG. *Broam v. Bogan*, 320

9    F.3d 1023, 1028 (9th Cir. 2003) ("Dismissal without leave to amend is proper only in

10   'extraordinary' cases."). Unless it is clear that the Complaint could not be saved by amendment

11   -- and since the only basis for Defendant's assertions to the contrary are improperly submitted

12   Declarations -- dismissal without leave to amend is not appropriate. Fed. R. Civ. Proc. 15(a)(2)

13   ("The court should freely give leave when justice so requires"). The Ninth Circuit requires this

14   policy favoring amendment be applied with "extreme liberality." *Morongo Band of Mission*

15   *Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)*; Von Saher v. Norton Simon Museum of Art*

16   *at Pasadena*, 578 F.3d 1016, 1031 (9th Cir. 2009). Moreover, Plaintiffs have a motion for

17   consolidation pending that, if granted, would result in an amended Complaint being filed in any

18   event. Thus, leave to amend should be granted.[6]

19   **VII.   CONCLUSION**

20           For all of the above reasons, Defendant's motion to dismiss should be denied and

21   Defendant ordered to file an Answer to the operative Complaint (or the Consolidated Amended

22   / / /

23   / / /

24   / / /

25   / / /

26

27   [6] To the extent Declarations are required to show what information could be added, some of the
     detail that would be added is set forth in the Declarations submitted in Opposition to the Motion
28   for Summary Judgment, being filed on this date in the related *Evans* action.

OPPOSITION TO DEFENDANT HSBC'S MOTION          - 24 -          CASE NO.: 10-CV-0857-WQH (RBBx)
TO DISMISS FIRST AMENDED COMPLAINT

1   Complaint) so that this matter can proceed to the merits, or Plaintiffs given leave to amend their

2   Complaint to cure any deficiencies the Court may find.

3   Dated: February 14, 2011                CONSUMER LAW GROUP OF CALIFORNIA

4                                           By:   S/Alan M. Mansfield
                                                  Alan M. Mansfield
5                                                 alan@clgca.com
                                            9466 Black Mountain Road, Suite 225
6                                           San Diego, CA 92126
                                            Tel: (619) 308-5034
7                                           Fax: (888) 341-5048

8                                           John Mattes (FL SBN 0468150)
                                            investigativeguy@gmail.com
9                                           1666 Garnet Avenue, #815
                                            San Diego, CA 92109
10                                          Tel: (858) 412-6081

11                                          WHATLEY DRAKE & KALLAS LLC
                                            Joe R. Whatley, Esq.
12                                          jwhatley@wdklaw.com
                                            Patrick J. Sheehan, Esq. (Admitted *Pro Hac Vice*)
13                                          psheehan@wdklaw.com
                                            1540 Broadway, 37th Floor
14                                          New York, NY  10036
                                            Tel: (212) 447-7070
15                                          Fax: (212) 447-7077

16                                          Attorneys for Plaintiffs Vlastimil Sajfr and David
                                            Keeports
17

18

19

20

21

22

23

24

25

26

27

28