```
 1  FRED R. PUGLISI, Cal. Bar No. 121822
    NORMA V. GARCIA, Cal Bar No. 223512
 2  VALERIE E. ALTER, Cal. Bar No. 239905
    ELIZABETH S. BERMAN, Cal. Bar No. 252377
 3  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
 4    Including Professional Corporations
    1901 Avenue of the Stars, Suite 1600
 5  Los Angeles, California  90067-6017
    Telephone:  310-228-3700
 6  Facsimile:  310-228-3701
    fpuglisi@sheppardmullin.com
 7  ngarcia@sheppardmullin.com
    valter@sheppardmullin.com
 8  eberman@sheppardmullin.com

 9  Attorneys for Defendant
    BBG COMMUNICATIONS, INC.
10
```

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| VLASTIMIL SAJFR AND DAVID KEEPORTS, on behalf of themselves and all others similarly situated, | Case No. 10-CV-02341-AJB (NLS) |
|---|---|
| Plaintiff, | The Honorable Anthony J. Battaglia |
| v. | **DECLARATION OF IRENE FEDIER IN SUPPORT OF DEFENDANT BBG COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| BBG COMMUNICATIONS, INC., and DOES 1-10 INCLUSIVE, | |
| Defendant. | [*Notice of Motion and Motion for Summary Judgment; Declarations of Susan Freeman, Ferdinand Von Klocke, Gregorio Galicot, Vania Monge, Brian Rhys, Gaurav Malhotra, Urs Manetsch and Anton Mueller, Prof. Dr. Bernd Holznagel, LLM, and Isaac Guakil-Chaiyo; Separate Statement of Undisputed Facts; Request for Judicial Notice; and Certificate of Service Filed Concurrently herewith*] |
| | Date: December 16, 2011<br>Time: 1:30 p.m.<br>Courtroom: 12 |
| | [Complaint Filed: November 12, 2010] |

# DECLARATION OF IRENE FEDIER

I, IRENE FEDIER, declare as follows:

1.  I am the Managing Director of BBG Global AG. ("BBG Global"). I make this declaration based on my personal knowledge, my review of the records available to me as they are kept in the ordinary course of BBG Global's business, information obtained from other employees upon whom I regularly rely in the ordinary course of BBG Global's business, or my general knowledge of the business practices of BBG Global, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2.  This declaration is submitted in support of BBG Communications, Inc. ("BBG Communications") Motion for Summary Judgment.

3.  I have been the General Manager of BBG Global since July 6, 2009 when I joined the company. My duties as General Manager of BBG Global include managing the day-to-day activities of the company's worldwide operations, managing the relationships with our agents, and reviewing and executing all agreements on behalf of BBG Global.

**BBG Global's Business**

4.  BBG Global is a Swiss corporation with its principal place of business in Baar, Switzerland. I keep my offices at BBG Global's office in Baar. The offices are not located in an apartment complex, but rather in a multi-use building, whose first level is dedicated exclusively to commercial use, which is where BBG Global's office is located. We occupy 460 square feet on the first level and have three offices, a kitchen, a conference room and a supply room, and generally fully furnished office space. The offices contain BBG Global's files, including agreements, corporate documents and other relevant

information, including my own office and files. Moreover, BBG Global has had a company car under lease for the past four years, which is kept at our office in Baar.

5. BBG Global provides services worldwide in 50 different countries, but it does *not* have any presence (or provide any services) in the United States. Indeed, BBG Global has more than 300 agents, more than 100 technicians, and more than 50 administrative personnel who operate 50 international offices on its behalf (BBG Global reimburses its agents for expenses incurred in connection with those offices). The local agents— who speak the local languages and are familiar with local telecommunications practices—typically negotiate agreements on behalf of BBG Global in their home countries and oversee BBG Global's operations by region. A substantial portion of BBG Global's administrative and all corporate functions are conducted out of the Baar office.

6. BBG Global does not provide any services in North America. It does not have any officers, offices, or employees in California. BBG Global does not generate any revenue from California, nor does it pay or collect taxes in California. It is not licensed to do business in California, nor does it solicit or engage in business in California. We also do not have an agent for service of process in California.

7. BBG Global's Board of Directors (the "Board") meets regularly in Switzerland. While I have been employed at BBG Global, it has not once held a Board meeting in the United States. Currently, the Board is comprised of the following directors: Gregorio Galicot (who resides in California); Daniel Hirsig (who resides in Basel, Switzerland); and myself (I also reside in Switzerland). In preparation for our Board meetings, I forward financials and other company documents to Mssrs. Hirsig and Galicot, but none of our company business is handled by the Board outside of Switzerland or outside of our Board meetings.

8. At each of these Board meetings, the Board reviews and ratifies each of BBG Global's contracts.

9. Generally speaking, the agreements BBG Global enters into provide that either Swiss law will govern said agreement *or* the law of the jurisdiction of where the services are being provided will govern the relationship. Moreover, BBG Global negotiates and enters into the vast majority of its agreements with its agents in Switzerland or in their countries of residence.

**BBG Global's Relationship With BBG Communications**

10. While I run the day-to-day activities of BBG Global, the back office administrative duties have been outsourced to BBG Communications, Inc. ("BBG Communications"). BBG Global does not conduct such back office duties for itself, nor does it perform them on behalf of any third parties. BBG Global and BBG Communications entered into the Telecommunications Services and Royalty Agreement (the "BBG Global—BBG Communications Agreement") on February 1, 2007. The agreement was executed by Pilar Urbino on behalf of BBG Global as Managing Director at the time, and by Rafael Galicot on behalf of BBG Communications as Vice President of BBG Communications, Inc. The terms of the agreement were determined to be at arm's-length by Wright Economics, a transfer pricing specialist. Indeed, the pricing specialist actually set the rates for the agreement between BBG Global and BBG Communications. On February 1, 2008, BBG Global and BBG Communications entered into an Addendum to Telecommunications Services and Royalty Agreement (the "Addendum"). The original BBG Global-BBG Communications remained unchanged by the Addendum.

11. Pursuant to the BBG Global—BBG Communications Agreement, BBG Communications provides certain billing-related, accounting bookkeeping, and database management services to BBG Global.

-3-

12.     As to the billing-related services, essentially, the call centers with which BBG Global contracts to manage and connect its calls forward billing related information—Call Detail Records ("CDRs")— to BBG Communications on a daily basis. BBG Communications formats that information and then forwards it to financial institutions who ultimately bill the end user.[1] BBG Communications does *not* bill the end user for BBG Global's card swipe services.

13.     For instance, for credit card billed calls originating in Frankfurt, Germany, third party Centris provides CDRs to BBG Communications. BBG Communications then formats that information and forwards it to BBG Financial Services Luxembourg ("BBG Luxembourg") who transmits it to Royal Bank of Scotland who actually charges the end user.

14.     BBG Communications also provides accounting bookkeeping services and arranges for payment of some of BBG Global's bills.

15.     When a new point of purchase is established, BBG Global's agent (who negotiates these terms) sends the terms of the agreement (e.g., rates, etc.) to BBG Global for approval. If approved, the agent then sends rate information, wire instructions, the breakdown in commissions, and other financial information for each point of purchase to BBG Communications. BBG Communications then simply inputs this information into the database to establish the same. BBG Communications then requests that an Automatic Number Identification ("ANI") be assigned to that specific point of purchase, which allows BBG Global's call center to identify the point of purchase.

---

[1] Notably, BBG Communications does not determine the rates for each call placed. Rather, the rates are determined by the BBG Global's agents for each respective territory and/or customer.

16. The payment structure for BBG Communications' services to BBG Global is set forth in detail in Article II, sections 2.1 and 2.2 of the BBG Global-BBG Communications Agreement. Section 2.2 provides that:

> "At the end of each month, BBG Communications shall invoice BBG Global for the fees and reimbursement due for the services rendered under this Agreement during such month. Payments shall be due within 30 days of invoices. BBG Communications shall be entitled to retain, from the gross revenues billed and collected on behalf of BBG Global, the fees due it pursuant to this Agreement and any other amounts resulting from amounts assessed against BBG Communications by LEC's or acquiring banks on account of uncollectible calls or chargebacks."

17. Importantly, section 2.5 of the BBG Global-BBG Communications Agreement requires a monthly reconciliation of expenses and transactions:

> "All payments made by BBG Communications to BBG Global, all fees due to BBG Communications for the services rendered pursuant to this Agreement, and all uncollectible amounts or chargebacks which BBG Communications has paid to LECs and/or acquiring banks, shall be reconciled at the end of each month and the difference, if any, shall be added to or subtracted from the next following payment from BBG Communications to BBG Global. BBG Global shall pay interest on any amounts not paid at the applicable federal rates set by the United States Internal Revenue Service."

18. Although BBG Global pays BBG Communications for the services described above, it does not dictate how BBG Communications performs those services. BBG Communications determines how to perform its obligations set forth in the agreement between it and BBG Global. Simply, BBG Global plays no role in BBG Communications'

W02-WEST:3NVG1\403631389.1                                                     FEDIER DECLARATION

1 | operations. It does not control BBG Communications or otherwise dictate how that entity
2 | operates.

4 | 19.     The type of services provided by BBG Communications to BBG Global can
5 | be provided by any capable entity in any part of the world. These are not highly
6 | specialized services; they are no more than very basic administrative services.

10 |         I declare under penalty of perjury under the laws of the United States of America
11 | that the foregoing is true and correct.

13 |         Executed June 29th, 2011 at Baar, Switzerland.

_____
IRENE FEDIER