1  FRED R. PUGLISI, Cal. Bar No. 121822
   NORMA V. GARCIA, Cal. Bar No. 223512
2  VALERIE E. ALTER, Cal. Bar No. 239905
   ELIZABETH S. BERMAN, Cal. Bar No. 252377
3  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
4      Including Professional Corporations
   1901 Avenue of the Stars, Suite 1600
5  Los Angeles, California  90067-6017
   Telephone:     310-228-3700
6  Facsimile:     310-228-3701
   fpuglisi@sheppardmullin.com
7  ngarciaguillen@sheppardmullin.com
   valter@sheppardmullin.com
8  eberman@sheppardmullin.com

9  Attorneys for Defendant,
   BBG Communications, Inc.

10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13  VLASTIMIL SAJFR AND DAVID KEEPORTS, on behalf of themselves and all 14  others similarly situated, | Case No. 10-CV-02341-AJB (NLS) |
| 15              Plaintiffs, | The Honorable Anthony J. Battaglia |
| 16          v. | **DEFENDANT BBG COMMUNICATIONS, INC.'S MEMORANDUM OF POINTS** |
| 17  BBG COMMUNICATIONS, INC.,  a Delaware CORPORATION, and DOES 1 - 10, | **AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND** |
| 18              Defendant. | *[Declarations and Request For Judicial Notice Submitted Concurrently Herewith]* |
| 19 | |
| 20 | Date:   December 16, 2011 |
| 21 | Time:  1:30 p.m. Courtroom:  12 |
| 22 | [Complaint Filed: November 12, 2010] Trial Date:  None Set |
| 23 | |

24

25

26

27

28

3:10-CV-02341-AJB –NLS

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................... 1

II.     STATEMENT OF MATERIAL FACTS & PROCEDURAL HISTORY ................ 2

    A.      BBG Global's Business And Lack Of Minimum Contacts With California. ........................................................................................ 2

    B.      BBG Communications And BBG Global Are Not Alter Egos. ...................... 4

    C.      The Conduct At Issue In Plaintiff's Complaint Took Place In Germany And In Mexico, And Involves BBG Global, Not BBG Communications ................................................................................ 6

    D.      Procedural History ................................................................ 6

        1.      Plaintiff's Complaint And BBG Communications' Motion To Dismiss ................................................................ 6

        2.      BBG Communications' Motion For Summary Judgment ................... 7

        3.      The Magistrate Judge's Scheduling Order........................... 7

        4.      Plaintiff's Motion For Leave To Amend ............................ 7

        5.      Oral Argument In The *Wood* Action................................. 8

III.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED ........ 9

    A.      Legal Standard Governing A Motion For Leave To Amend. ........................ 9

    B.      Plaintiffs Cannot Request To Amend Their Complaint In Order To Avoid Summary Judgment. .......................................................... 10

    C.      Amendment Would Be Futile Because There Is No Personal Jurisdiction Over BBG Global. .................................................... 12

        1.      There Is No General Jurisdiction Over BBG Global Because It Does Not Have Continuous And Systematic Contacts With The State Of California.............................................. 13

        2.      There Is No Specific Jurisdiction Over BBG Global ...................... 15

            a.      BBG Global Has Not Purposefully Directed Any

Activities At Forum Residents. ................................................. 16

b. Plaintiff's Claims Do Not Arise Out Of Defendants' Activity In California. ............................................................ 17

c. Exercise Of Personal Jurisdiction Over Defendants Would Be Unreasonable.......................................................... 18

3. Alter Ego, The *Only* Basis That Could Give Rise To Jurisdiction Over BBG Global, Does Not Exist Here........................ 19

a. No Unity Of Interest Between BBG Communications And BBG Global Exists. ......................................................... 19

b. No Inequitable Result Would Follow Without An Alter Ego Finding. ............................................................................. 21

IV. CONCLUSION ............................................................................................ 22

1

## TABLE OF AUTHORITIES

2

Page(s)

3

<u>Federal Cases</u>

4

*Abrams Shell v. Shell Oil Co.*
   165 F.Supp.2d. 1096 (C.D. Cal. 2001) ................................................................. 12

5

6

*Arandell Corp. v. Xcel Energy, Inc.*
   605 F. Supp. 2d 1118 (D. Nev. 2009) ................................................................. 15

7

*AT&T v. Compagnie Bruxelles Lambert*
   94 F.3d 586 (9th Cir. 1996) ................................................................................ 12

8

9

*Bancroft & Masters, Inc. v. Augusta National*
   223 F.3d 1082 (9th Cir. 2000) ............................................................................ 15

10

11

*Burger King Corp. v. Rudzewicz*
   471 U.S. 462 (1985) .................................................................................... 12, 16

12

*Cowen v. Bank United of Texas, FSB*
   70 F3d 937 (7th Cir. 1995) ........................................................................ 1, 9, 10

13

14

*Cramer v. Consol. Freightways, Inc.*
   255 F.3d 683 (9th Cir. 2001) ................................................................................ 9

15

16

*Cubbage v. Merchent*
   744 F.2d 665 (9th Cir. 1984) .............................................................................. 13

17

*Doe v. Unocal Corp.,*
   248 F.3d 915, 925 (9th Cir. 2001) ...................................................................... 18

18

19

*El Pollo Loco, Inc. v. Hashim*
   316 F.3d 1032 (9th Cir. 2003) ............................................................................ 11

20

*Foman v. Davis*
   371 U.S. 178 (1962) ............................................................................................. 9

21

22

*Glow Indus., Inc. v. Lopez*
   252 F. Supp. 2d 962 (C.D. Cal. 2002) ................................................................ 11

23

24

*Hanson v. Denckla*
   357 U.S. 235, 78 S. Ct. 1228 ............................................................................. 16

25

26

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
   466 U.S. 408 (1984) .................................................................................... 13, 15

27

*Hirsch v. Blue Cross, Blue Shield Of Kans*
   800 F.2d 1474 (9th Cir. 1986) ............................................................................ 13

28

*Hollinger v. Titan Corp.*
    914 F.2d 1564 (9th Cir. 1990) ................................................... 21

*International Shoe Co. v. Washington*
    326 U.S. 310, 66 S. Ct. 154 ....................................................... 13

*JJCO, Inc. v. Isuzu Motors America, Inc.*
    2009 U.S. Dist. LEXIS 105643 (D. Haw. Nov. 12, 2009) ................................. 9, 10

*Johnson v. Multidata Systems Intern. Corp.*
    523 F.3d 602 (5th Cir. 2008) ....................................................... 14, 15

*Omeluk v. Langsten Slip & Batbyggeri A/S*
    52 F.3d 267 (9th Cir. 1995) ........................................................ 12, 18

*Orloff v. Allman*
    819 F.2d 904 (9th Cir. 1987) ....................................................... 21

*Pacific Maritime Freight, Inc. v. Foster*
    2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) ......................................... 21

*Panavision International, L.P. v. Toeppen*
    141 F.3d 1316 (9th Cir. 1998) ...................................................... 17

*Parish v. Frazier*
    195 F3d 761 (5th Cir. 1999) ........................................................ 9

*Provenz v. Miller*
    102 F.3d 1478 (9th Cir. 2003) ...................................................... 11

*Ritzer v. Gerovicap Pharmaceutical Corp.*
    162 F.R.D. 642 (D. Nev. 1995) ...................................................... 10

*Schlacter-Jones v. Gen. Tel. of Cal.*
    936 F.2d 435 (9th Cir. 1991) ....................................................... 9

*Schwarzenegger v. Fred Martin Motor Co.*
    374 F.3d 797 (9th Cir. 2004) ....................................................... 13, 15, 16, 17

*Sher v. Johnson*
    911 F.2d 1357 (9th Cir. 1990) ...................................................... 13, 15

*Siskiyou Properties, L.L.C. v. Bennett Holdings L.C.*
    1999 WL 1038729 (D. Or. Nov. 15, 1999) ........................................... 9

*Terracom v. Valley Nat'l Bank*
    49 F.3d 555 (9th Cir. 1995) ........................................................ 12

*Tuazon v. R.J. Reynolds Tobacco Co.*
    433 F.3d 1163 (9th Cir. 2006) ...................................................... 14

-iv-

*Tungjunyatham v. Johanns*
  2011 WL 1363924 (E.D. Cal. Apr. 11, 2011) .................................................................. 9

*Wady v. Provident Life & Accident Ins. Co.*
  216 F. Supp.2d 1060 (C.D. Cal. 2002) ....................................................................... 21

*Wood v. BBG Communications*
  Case No. 11-cv-0227 AJB (NLS) ................................................................. 2, 4, 8, 19, 20

*World-Wide Volkswagen Corp. v. Woodson*
  444 U.S. 286 (1980) .............................................................................................. 16

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*
  433 F.3d 1199 (9th Cir. 2006) (en banc) ............................................................... 16, 17

*Zeigler v. Indian River County*
  64 F.3d 470 (9th Cir. 1995) ..................................................................................... 12


State Cases

*Acree v. Gmac*
  92 Cal.App.4th 385 (2001) ...................................................................................... 17

*Associated Vendors, Inc. v. Oakland Meat Co.*
  210 Cal. App. 2d 825 (1962) ............................................................................... 19, 21

*Gordon v. Greenview Hosp.*
  300 S.W.3d 635 (Tenn. 2009) ................................................................................. 14

*Laird v. Capital Cities/ABC Inc.*
  68 Cal.App.4th 727 (1998) .................................................................................. 21, 22

*Morrison Knudsen Corp. v. Hancock*
  69 Cal.App.4th 223 (1999) ...................................................................................... 19

*Sammons Enterprises, Inc. v. Superior Court*
  205 Cal.App.3d 1427 (1988) ................................................................................... 19


Federal: Statutes, Rules, Regulations, Constitutional Provisions

FED. R. CIV. P. 15(a) ................................................................................................. 9

State: Statutes, Rules, Regulations, Constitutional Provisions

California Code of Civil Procedure § 410.10 ................................................................. 12

1   I.   **<u>INTRODUCTION</u>**

2       Plaintiffs Vlastimil Sajfr ("**Sajfr**") and David Keeports ("**Keeports**") (collectively

3   "**Plaintiffs**") filed a lawsuit against BBG Communications, Inc. ("**BBG Communications**")

4   arising out of phone calls that Safjr made at the airport in Frankfurt, Germany to the Czech

5   Republic and customer service phone calls that were allegedly recorded in Mexico by a Mexican

6   entity.  From the inception of this lawsuit, BBG Communications repeatedly told Plaintiffs that

7   they sued the wrong party.  It explained that BBG Global, A.G. ("**BBG Global**"), and not BBG

8   Communications, provided the phone service at the Frankfurt airport and that the customer service

9   calls at issue were handled by customer service representatives acting on behalf of BBG Global,

10  and not BBG Communications.

11      Plaintiffs ignored BBG Communications, likely because they believed—relying on the

12  bald allegation in their Complaint that BBG Global is both a shell corporation and BBG

13  Communications' alter ego—that they could hale BBG Communications into court based on the

14  actions of BBG Global.  [ECF Doc. # 1 (Complaint ¶¶ 11, 32).]  BBG Communications, however,

15  dealt a fatal blow to Plaintiffs' claim in connection with its motion for summary judgment, filed on

16  June 30, 2011, by providing conclusive evidence that (1) BBG Communications had nothing to do

17  with the conduct that forms the basis of Plaintiffs' Complaint and (2) BBG Global *is not* BBG

18  Communications alter ego.  [ECF Doc. # 45.]

19      Faced with the loss of their case, Plaintiffs attempt a procedural "Hail Mary" and seek to

20  amend their Complaint to add BBG Global as a defendant, claiming that doing so would address

21  "some of the arguments made" in BBG Communications' motion for summary judgment.  [Motion

22  2:14-16.]  In other words, Plaintiffs seek to amend their Complaint to add BBG Global in an

23  attempt to defeat BBG Communications' motion for summary judgment.  Plaintiffs' motion should

24  be denied for two reasons.

25      First, in order to amend a complaint in the face of a motion for summary judgment, this

26  Court may require Plaintiffs to meet a heightened standard and to provide "substantial and

27  convincing evidence" supporting the requested amendment.  *Cowen v. Bank United of Texas, FSB*,

28

    -1-
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR LEAVE TO AMEND

70 F3d 937, 944 (7th Cir. 1995).  Plaintiffs have made no such showing here.  On the contrary, Plaintiffs filed a cursory four-page motion, without any evidentiary support whatsoever.

Second, amendment would be futile.  As this Court recently recognized at oral argument in *Wood v. BBG Communications*, Case No. 11-cv-0227 AJB (NLS), there is no general personal jurisdiction over BBG Global and no specific personal jurisdiction over BBG Global arising out of conduct that occurred in a foreign country.  On the contrary, the Court recognized that it could assert jurisdiction over BBG Global **only if it is BBG Communications' alter ego**.  [*See* RJN Ex. A (transcript of September 23, 2011 hearing).]  BBG Communications has proven conclusively in its pending motion for summary judgment that it does not have an alter ego relationship with BBG Global.  Plaintiffs have no admissible, relevant evidence to the contrary, and with the discovery cutoff set for Monday, October 10, 2011 [ECF Doc. # 50]), this issue is positioned for timely resolution by the Court.  The new allegations in Plaintiffs' proposed amended complaint ("**PAC**") are just that – allegations – that cannot defeat BBG Communications' prior pending motion for summary judgment.  Thus, there is no basis for this Court to assume personal jurisdiction over BBG Global, and Plaintiffs' motion for leave to amend should be denied as futile.  In the alternative, at the very least, a decision on Plaintiffs' motion for leave to amend should be deferred until after this Court has ruled on BBG Communications' prior pending motion for summary judgment.[1]

## II.   STATEMENT OF MATERIAL FACTS & PROCEDURAL HISTORY

### A.   BBG Global's Business And Lack Of Minimum Contacts With California.

BBG Global is a Swiss corporation that operates an extensive telecommunications business outside of the United States and North America more broadly.  [Declaration of Gregorio Galico In Support of BBG Global's Motion To Dismiss in the *Wood* matter ("**Galicot MTD Decl.**") ¶ 9; Declaration of Irene Fedier In Support of BBG Communications' Motion For Summary Judgment

---

[1] BBG Communications' motion for summary judgment was filed June 30, 2011.  [ECF Doc. # 45.]  Plaintiffs' motion for leave to amend was filed two months later, on August 31, 2011.  [ECF Doc. # 53.]  Despite BBG Communications' earlier filing, Plaintiffs were able to obtain an earlier hearing date.

1   ("**Fedier MSJ Decl.**") ¶ 4.]  It contracts with more than 300 agents, more than 100 technicians,

2   and more than 50 administrative personnel, all of whom perform telecommunications work on

3   behalf of BBG Global outside of the United States.  [Fedier MSJ Decl. ¶ 5.]  These agents and

4   their staff have more than 50 offices outside of the United States (BBG Global reimburses them

5   for expenses associated with those offices), and provide services in more than 50 countries.  [*Id.*]

6   The local agents, who speak the local languages and are familiar with local telecommunications

7   practices, negotiate agreements on behalf of BBG Global and oversee BBG Global's operations by

8   region.  [*Id.*]  BBG Global does not have any officers, offices, or employees in California.  [*Id.*

9   ¶ 6.][2]

10         Moreover, BBG Global conducts the majority of its administrative and all of its corporate

11   functions out of its Swiss office.[3]  BBG Global's Board meets in Switzerland;  it has never met in

12   the United States, let alone in California.  [Fedier MSJ Decl. ¶ 7.]  BBG Global's Board ratifies

13   every services agreement into which BBG Global enters—which, as noted above, BBG Global's

14   agents negotiate locally—in Switzerland.  [Galicot MTD Decl. ¶ 12; Fedier MSJ Decl. ¶ 8.]  BBG

15   Global's Managing Director, Irene Fedier, executes BBG Global's agreements with third party

16   telecommunications providers and does so from BBG Global's Swiss offices.  [Fedier MSJ Decl.

17   ¶ 3.]  BBG Global's agreements with third parties typically provide that they are governed by

18   Swiss law, or the law of the jurisdiction in which services are to be provided.  [*Id.* ¶ 9.]

19         BBG Global does not provide any services in the United States, let alone in California.

20   [Fedier MSJ Decl. ¶ 6.]  It is not licensed to do business in California, nor does it solicit or engage

21   in business in California.  [*Id.*]  Similarly, it does not have a registered agent for service of process

22   here, nor does it pay or collect California taxes.  [*Id.*]  BBG Global's contacts with California—a

---

23   [2] By contrast, BBG Communications is a Delaware Corporation with its principal place of
24   business in California. [Declaration of Gregorio Galicot in support of BBG Communications'
    Motion For Summary Judgment ("**Galicot MSJ Decl.**") ¶ 3.]  It provides telecommunications
25   services exclusively in the United States, Canada, and Mexico.  [*Id.*]  It does not provide any
    telecommunications services outside of North America, and it certainly does not operate
26   payphones at the Frankfurt airport.  [*Id.*]

27   [3] BBG Global's office space in Switzerland is more than a shell in an apartment complex. [Fedier
    MSJ Decl. ¶ 4]  BBG Global conducts much of its corporate business and houses Ms. Fedier, BBG
28   Global's general manager, and its business records in its Swiss office.  [*Id.*]

1   director who resides in California and a contract with a California company, BBG

2   Communications—are minimal, at best.

3       First, Gregorio Galicot, a member of BBG Global's Board, lives in San Diego.  [Galicot

4   MTD Decl. ¶ 3.]  Mr. Galicot does not manage BBG Global from his home in California, and does

5   not maintain an office for BBG Global in California, nor does he use his home for that purpose.

6   [*Id.* ¶¶ 10-11.]    Rather, Mr. Galicot travels to Switzerland for BBG Global's Board meetings.

7   [*Id.*]

8       Second, BBG Global has entered into an agreement with BBG Communications, a

9   Delaware corporation with its principal place of business in California, pursuant to which BBG

10  Communications provides certain back office services, and licenses certain trademarks and

11  processes to BBG Global.  [Fedier MSJ Decl. ¶¶ 10, 11.]  The services that BBG Communications

12  provides, however, are not unique to it, and could be provided by multiple other entities and could

13  be provided from anywhere in the world.  There is no reason that BBG Global needs to contract

14  with a California entity.  [Declaration Of Irene Fedier In Support Of BBG Global's Motion To

15  Dismiss in the *Wood* Action ("**Fedier MTD Decl.**") ¶ 20.]

16      **B.    BBG Communications And BBG Global Are Not Alter Egos.**

17      Plaintiffs allege that BBG Communications operates through a series of alter ego shell

18  corporations, including BBG Global, and proposed to add additional allegations regarding the

19  alleged alter ego relationship between BBG Global and BBG Communications in the PAC.  [*See*

20  Complaint ¶¶ 11, 32, PAC ¶¶ 47-65.][4]  Plaintiffs' allegations—existing and proposed—have no

21  basis in fact.  BBG Global and BBG Communications operate in distinct geographic regions: BBG

22  Global worldwide except North America, and BBG Communications only in North America.

23  [Galicot MSJ Decl. ¶ 3; Fedier MSJ Decl. ¶¶ 5, 6.]  Moreover, while BBG Communications

24  provides certain limited back office administrative services and licenses to BBG Global, these

25  ---

[4] It appears that many of the "new" facts that Plaintiffs seek to allege in the PAC have been lifted
26  from the various pleadings—including briefing on this very alter ego issue—in the *Wood* matter.
    Those mere allegations have been refuted with extensive evidence submitted by BBG
27  Communications in its motion for summary judgment.  Conversely, Plaintiffs have no
    admissible, relevant evidence to the contrary.

28

services and licenses are pursuant to an arms' length contract and at prices that are commensurate with what BBG Communications charges other independent third party entities, such as Avantel, MCI's Mexican subsidiary, for the same services. [Galicot MSJ Decl. ¶¶ 4-5; Fedier MSJ Decl. ¶ 10.] Also, BBG Communications does not charge BBG Global's customers for any services provided by BBG Global. [Fedier MSJ Decl. ¶ 12.] Finally, BBG Communications did not determine the rates for the calls about which Plaintiffs complain or any disclosures associated therewith, and certainly did not do so from its San Diego offices. [*Id.* at *¶* 12, n.1.] It similarly did not have any role in the alleged recorded calls about which Plaintiffs complain. BBG Communications had no role whatsoever. [Galicot MSJ Decl. ¶ 22, Declaration Of Vania Monge In Support Of BBG Communications' Motion For Summary Judgment ("**Monge Decl.**") ¶¶ 3-6; Declaration Of Ferdinand Von Klocke In Support of BBG Communications' Motion For Summary Judgment ("**Von Klocke Decl.**") ¶ xxiv.] Simply, BBG Communications and BBG Global are separate businesses that happen to have entered into a contract for the provision of back office services. [Fedier MSJ Decl. ¶¶ 10-19.]

Plaintiffs make no attempt to allege that BBG Global was or is undercapitalized, that BBG Global and BBG Communications comingled funds and assets, or that BBG Global did not respect corporate formalities, all of which are necessary to prove the existence of an alter ego relationship. Lucas, Horsfall, Murphy & Pindroh, LLP ("**Lucas Horsfall**") has provided audit services for both BBG Global and BBG Communications, and has determined that BBG Global and BBG Communications keep separate books and records. [Declaration Of Guarav Malhotra In Support Of BBG Communications' Motion For Summary Judgment ("**Malhotra Decl.**") ¶¶ 5-6.] Lucas Horsfall further found that both BBG Communications and BBG Global respect the corporate formalities, are adequately capitalized, and do not comingle funds or assets. [*Id. ¶¶* 6-7.] Lucas Horsfall finally found that all transactions between BBG Communications and BBG Global were done at arms' length and properly accounted for. [*Id.* ¶ 7.] Moore Stephens Zug A.G. ("**Moore Stephens**"), a Swiss entity, provides auditing services for BBG Global using Swiss auditing standards, and has reached the same conclusions. [Declaration Of Moore Stephens In Support Of BBG Communications' Motion For Summary Judgment ("**Moore Stephens Decl.**") ¶¶ iv-viii.]

**C.** **The Conduct At Issue In Plaintiff's Complaint Took Place In Germany And In Mexico, And Involves BBG Global, Not BBG Communications**

BBG Global—not BBG Communications—provides operator assisted and swipe card calling long distance services at the Frankfurt airport pursuant to an agreement with Deutsche Telekom, A.G. ("**Deutsche Telekom**").  [Von Klocke Decl. ¶¶ iv-vi.]  Ferdinand Von Klocke ("**Klocke**"), BBG Global's independent agent, negotiated BBG Global's agreement with Deutsche Telekom in 2007, and manages BBG Global's operations in Frankfurt.  [*Id.*]  Klocke and Deutsche Telekom heavily negotiated the terms of the agreement over the course of several months. [*Id.*] Deutsche Telekom determined, reviewed, and approved almost every detail of the services provided by BBG Global, including the call flow design, prompts, and disclosures in Germany. [*Id.*]  Moreover, when customers have complaints about BBG Global's services at the Frankfurt Airport, they speak with customer service representatives provided by a Mexican entity in Mexico who act on behalf of BBG Global.  [Monge Decl. ¶¶ 4-5.]

**D.** **Procedural History**

**1.** **Plaintiff's Complaint And BBG Communications' Motion To Dismiss**

Based on a phone call that Sajfr made from Germany to the Czech Republic and customer services calls that were allegedly recorded in Mexico, on November 12, 2010, Plaintiffs filed this lawsuit against BBG Communications.  [ECF Doc. # 1.]  On January 12, 2011, BBG Communications moved to dismiss Plaintiffs' Complaint.  [*Id.* # 10.]  BBG Communications argued, among other things, that Plaintiffs had sued the wrong party because BBG Global—and not BBG  Communications—was involved in the services that form the basis of Plaintiffs' Complaint.  [*Id.*]  In opposition, Plaintiffs ignored BBG Communications' argument, asserting that BBG Global "is only a shell company with no real presence that is not responsible for the conduct in question."  [ECF Doc. # 22 at 4:12-13.]

On March 15, 2011, the Court issued its order on BBG Communications' Motion to Dismiss.  [ECF Doc. # 35.]  The Court denied BBG Communications' motion to dismiss because at least some of the conduct that formed the basis of Plaintiffs' Complaint was alleged to have occurred in California.  [*See*, *e.g.*, ECF Doc. # 35 (Order at 5:6-8, 11:22-26).]

1

## 2.   BBG Communications' Motion For Summary Judgment

2      BBG Communications answered the Complaint and denied the alter ego allegations on

3  March 29, 2011.  [ECF Doc. # 37.]  On June 30, 2011, BBG Communications filed a motion for

4  summary judgment.  [ECF Doc. # 45.]  In that motion, BBG Communications again raised the

5  issue that Plaintiffs have sued the wrong party and conclusively showed that none of the conduct

6  that forms the basis of Plaintiffs' Complaint occurred in California.  BBG Communications further

7  proved that it and BBG Global have no alter ego relationship.  [*Id.* 9:3-11:28.]  Although BBG

8  Communications requested an early date upon which to have its motion heard, it was told that the

9  earliest available date was December 16, 2011.

10

## 3.   The Magistrate Judge's Scheduling Order.

11      On July 8, 2011, the parties appeared before the Magistrate Judge for a Case Management

12  Conference.  At that conference, ***at Plaintiffs' insistence***, the Magistrate set a "deadline for

13  completion of discovery related to [BBG Communications'] summary judgment motion filed

14  June 30, 2011" on "__October 10, 2011__."  [ECF Doc. # 50 at 1:6-7 (emphasis in original).]  In other

15  words, Plaintiffs had ***three (3) months*** in which to seek information that they believed necessary

16  to defeat BBG Communications' motion for summary judgment.

17

## 4.   Plaintiff's Motion For Leave To Amend

18      After having been told ***for at least eight (8) months*** that they sued the wrong party, and

19  ***two (2) months*** after BBG Communications filed its motion for summary judgment, Plaintiffs

20  filed their motion for leave to amend, seeking to add BBG Global as a defendant on August 31,

21  2011.  [ECF Doc. # 53.]  Plaintiffs were able to obtain an earlier hearing date for their motion to

22  amend than BBG Communications was able to obtain for its motion for summary judgment, so

23  Plaintiffs' motion for leave to amend is now set to be heard on November 18, 2011, about a month

24  before BBG Communications' motion for summary judgment.

25

26

27

28

5.   **Oral Argument In The *Wood* Action**

As Plaintiffs are undoubtedly aware, BBG Global is a defendant in another action pending in this Court, *Wood v. BBG Communications*, Case No. 11-cv-0227 AJB (NLS).[5]  In that case, unlike here, the plaintiff sued BBG Global in his original complaint and purported to serve BBG Global.  BBG Global moved to dismiss for lack of personal jurisdiction and, in doing so, addressed the alter ego issue.  This Court heard oral argument on September 23, 2011.  [*Wood* ECF Doc. # 36.]  At that hearing, the Court stated the following:

> Overall, on this personal jurisdiction motion, I think the analysis that I have come
> to is this: that without pulling in Communications as the alter ego, it's extremely
> unlikely that Wood can show, under any pleading, general or specific jurisdiction
> in California, given the nature of this case:  Canadian plaintiff who made calls from
> Hong Kong to Canada, using a Swiss provider that contracted with the Hong Kong
> company. However, if Global and Communications are in fact alter egos, then
> personal jurisdiction may be plausible, although as noted above I think that it's
> problematic at best as to how the second prong has been alleged here.

[RJN Ex. A (Transcript at 12:6-16).  *See also* Transcript 6:23-7:5, 8:23-9:2. ][6]  That is as true here as it is in the *Wood* matter:  this case involves (1) calls made from Frankfurt to the Czech Republic, using a Swiss provider that contracted with a German company and (2) calls recorded in Mexico by a Mexican company providing customer service for a Swiss company.

---

[5] As noted in Footnote 3, *supra*, Plaintiffs are clearly aware of the pending *Wood* litigation, as it appears that they lifted their new alter ego allegations from various pleadings filed in the *Wood* matter.

[6] The Court in *Wood* ultimately denied BBG Global's motion to dismiss because it was a pleadings motion and the Court did not want to convert it to a motion for summary judgment.  Here, by contrast, BBG Communications has filed a motion for summary judgment addressing the alter ego issue.

1    **III.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED**

2          **A.    Legal Standard Governing A Motion For Leave To Amend.**

3          Generally speaking, FED. R. CIV. P. 15(a) provides for liberal amendment to the pleadings.

4    *See*, *e.g.*, *Foman v. Davis*, 371 U.S. 178 (1962).  There are, however, two notable exceptions to

5    this general policy.

6          First, a request to amend should be treated with heightened scrutiny where such a request

7    is made in the face of a pending motion for summary judgment.  In such a case, a district court

8    may require the plaintiff to provide "substantial and convincing evidence" to support the requested

9    amendment.  *Cowen v. Bank United of Texas, FSB*, 70 F3d 937, 944 (7th Cir. 1995);

10   *Tungjunyatham v. Johanns*, No. 1:06-cv-01764, 2011 WL 1363924 at *7 (E.D. Cal. Apr. 11,

11   2011).  *See also Schlacter-Jones v. Gen. Tel. of Cal*., 936 F.2d 435, 443 (9th Cir. 1991), *abrogated

12   on other grounds by Cramer v. Consol. Freightways, Inc*., 255 F.3d 683 (9th Cir. 2001) ("The

13   timing of the motion, after the parties had conducted discovery and a pending summary judgment

14   motion had been fully briefed, weighs heavily against allowing leave. A motion for leave to

15   amend is not a vehicle to circumvent summary judgment."); *Parish v. Frazier*, 195 F3d 761, 764

16   (5th Cir. 1999) ("we more carefully scrutinize a party's attempt to raise new theories of recovery

17   by amendment when the opposing party has filed a motion for summary judgment.").  This

18   exception exists because "[a] plaintiff who proposes to amend his complaint after the defendant

19   has moved for summary judgment may be maneuvering desperately to stave off the immediate

20   dismissal of the case. With this a possibility, district judges are not content with an allegation

21   sufficient in law; they want to see some evidence to back it up." *Cowen*, 70 F.3d at 944.

22         Second, a request to amend should be denied where the requested amendment would be

23   futile.  A proposed amendment to add an additional party should be denied as futile where there is

24   no personal jurisdiction over the putative additional party.  *See JJCO, Inc. v. Isuzu Motors

25   America, Inc.*, No. 08-00419, 2009 U.S. Dist. LEXIS 105643 at *14-17 (D. Haw. Nov. 12, 2009)

26   (upholding magistrate judge's order denying leave to amend complaint to add Isuzu Japan as a

27   defendant, based on futility of the amendment, because the court lacked personal jurisdiction over

28   Isuzu Japan); *Siskiyou Properties, L.L.C. v. Bennett Holdings L.C.,* No. 99-1062, 1999 WL

1038729, at *5 (D. Or. Nov. 15, 1999) (denying leave to amend "[g]iven that [plaintiff's] proposed amended complaint cannot provide this court with personal jurisdiction, it would be futile for [plaintiff] to amend its complaint.")  The same is true where a plaintiff attempts to use the alter ego doctrine to obtain personal jurisdiction over the putative additional party but has made an insufficient showing of alter ego.  *See JJCO, Inc.*, 2009 U.S. Dist. LEXIS 105643 at *14-17 (upholding magistrate judge's order denying leave to amend complaint to add Isuzu Japan as a defendant, based on futility of the amendment where plaintiff failed to "establish that Defendant was the alter ego of Isuzu Japan for purposes of personal jurisdiction over Isuzu Japan in this action."); *Ritzer v. Gerovicap Pharmaceutical Corp.*, 162 F.R.D. 642, 644-45 (D. Nev. 1995) (denying leave to amend complaint when amendment sought to allege alter ego theory but did not adequately allege alter because amendment would have been futile).

     Both of these exceptions to the liberal amendment rule apply here.

### B.    Plaintiffs Cannot Request To Amend Their Complaint In Order To Avoid Summary Judgment.

     Plaintiffs explicitly state in their motion for leave to amend that "[a]llowing the filing of the First Amended Complaint addresses some of the arguments in BBG's pending motion for summary judgment in part, where defendant claims BBG Global AG needs to be a defendant and thus furthers the efficient litigation of the underlying issues."  [Motion 3:22-25.  *See also* Motion 2:14-16 ("Upon a review of BBG's motion for summary judgment, Plaintiffs have determined that some of the arguments made therein could be addressed in part by amending the Complaint to add BBG Global AG as a DOE defendant.").]  In other words, Plaintiffs explicitly seek to amend their Complaint in order to stave off BBG Communications' motion for summary judgment.  Thus, Plaintiffs should be required to provide "substantial and convincing evidence" to support their request to add BBG Global as a party.  *Cowen*, 70 F3d at 944.  Plaintiffs have done no such thing here.  In fact, they have provided ***no evidence*** to support their requested amendment, and ***explicitly admit*** that the proposed amendment is merely a ploy to defeat summary judgment.  Thus, their motion should be denied.

1    Moreover, Plaintiffs provide no explanation as to how their proposed amendment will

2  impact BBG Communications' motion for summary judgment, other than stating in the vaguest of

3  terms that the proposed amendment could impact "some of the arguments" that BBG

4  Communications has made.  Plaintiffs' attempt to add BBG Global as a defendant does not in any

5  way impact BBG Communications' argument that *it* is entitled to summary judgment because it

6  had nothing to do with the conduct that forms the basis of Plaintiffs' claims,[7] nor does it impact

7  BBG Communications' arguments that the doctrines of extraterritoriality, international comity, and

8  the Dormant Commerce Clause bar Plaintiffs' claims.  Plaintiffs have thus not provided sufficient

9  evidence, let alone "substantial and convincing evidence," to justify their request to amend the

10  Complaint in the face of BBG Communications' motion for summary judgment.[8]

11

12

13

14  _____

[7] Plaintiffs do not even attempt to argue in their motion that the PAC would defeat BBG
15  Communications' evidentiary showing that there is no alter ego relationship between it and BBG
Global.  Plaintiffs merely claim that their proposed amendment "includes detailed allegations
16  about BBG Global's significant connections to California and its affiliated *and/or* alter ego
relationship with defendant BBG Communications, Inc."  [Motion 3:20-21 (emphasis added).]
17  Plaintiffs have done nothing to suggest that they can present sufficient evidence of alter ego to
defeat BBG Communications' motion for summary judgment. On the contrary, they have parroted
18  mere allegations made in the *Wood* matter, which, as noted in that case, are largely false or
irrelevant.  [*See* Supplemental Declarations Of Gregorio Galicot and Irene Fedier In Support Of
19  BBG Global's Motion To Dismiss in the *Wood* matter.]

[8] Moreover, Plaintiffs cannot provide such justification or such evidence on reply because to do so
20  would be impermissible sandbagging.  "Submitting the bulk of one's legal argument and evidence
only in reply deprives the opposing party of a fair opportunity to respond . . . . To permit plaintiff
21  to supplement the record further at this stage of the proceedings in order to correct deficiencies in
the original showing would simply prejudice defendants further and reward plaintiff's questionable
22  litigation strategy." *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 1005 n.4 (C.D. Cal. 2002);
*see also Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 2003) ("where new evidence is presented
23  in a reply to a motion for summary judgment, the district court should not consider the new
evidence without giving the [non-]movant an opportunity to respond."); *El Pollo Loco, Inc. v.*
24  *Hashim*, 316 F.3d 1032, 1040-41 (9th Cir. 2003) (applying *Provenz*); At the very least, where a
party submits new evidence on reply, the other party should be given an opportunity to respond. *El*
25  *Pollo Loco, Inc.*, 316 F.3d at 1040-41.

26

27

28

1

2

**C.**      <u>Amendment Would Be Futile Because There Is No Personal Jurisdiction Over</u>

<u>BBG Global.[9]</u>

3

Plaintiffs' attempt to add BBG Global as a defendant should be denied as futile because

4

there is no personal jurisdiction over BBG Global.  It is black letter law that the "plaintiff bears the

5

burden of establishing jurisdictional facts."  *Abrams Shell v. Shell Oil Co.*, 165 F.Supp.2d. 1096,

6

1103 (C.D. Cal. 2001).  *See also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th

7

Cir. 1996) (affirming the district court's dismissal for lack of personal jurisdiction and noting that

8

"[a]s the party seeking to invoke federal jurisdiction, AT&T has the burden of establishing its

9

existence.").  To exercise personal jurisdiction over a non-resident defendant, a court must

10

conclude that: (1) such jurisdiction is authorized under the long-arm statute of the forum state; and

11

(2) exercising such jurisdiction would comport with constitutional Due Process.  *Zeigler v. Indian*

12

*River County*, 64 F.3d 470, 473(9th Cir. 1995).  California's long-arm statute, California Code of

13

Civil Procedure § 410.10, extends to the limits of the Due Process Clause.  *Terracom v. Valley*

14

*Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995) ("We apply the long-arm statute of the state in which

15

the district court sits in this diversity case where no federal statute governing personal jurisdiction

16

is applicable.  California's long-arm statute allows the exercise of personal jurisdiction over

17

defendants to the fullest extent permitted by due process." (internal citations omitted)).  Thus, this

18

Court would have jurisdiction over BBG Global only if such jurisdiction were consistent with the

19

requirements of the Due Process Clause.

20

As the Ninth Circuit has explained, "[t]he Due Process Clause protects a defendant's

21

'liberty interest in not being subject to the binding judgments of a forum with which he has

22

established no meaningful contacts, ties or relations.'"  *Omeluk v. Langsten Slip & Batbyggeri A/S*,

23

52 F.3d 267, 269-270 (9th Cir. 1995)   (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

24

25

26

27

---

[9] BBG Communications apologizes to the Court for the duplication here of much of the argument that BBG Global made in connection with its motion to dismiss in the *Wood* matter.  BBG Communications makes those arguments again here in order establish the lack of either general or specific personal jurisdiction over BBG Global, which leads to the inevitable conclusion previously stated by this Court that it only has jurisdiction over BBG Global if it is the alter ego of BBG Communications.  This alter ego issue is the subject of BBG Communications' earlier filed motion for summary judgment.

28

-12-
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR LEAVE TO AMEND

471-72, 105 S. Ct. 2174, 2181, 85 L. Ed. 2d 528, 540 (1985) and (additional internal quotes omitted)).  Thus, a defendant must have "certain minimum contacts with [a forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154; 90 L. Ed. 95 (1945) (internal quotations omitted).  These "minimum contacts" are a jurisdictional prerequisite. *Cubbage v. Merchent*, 744 F.2d 665, 668 (9th Cir. 1984) (noting that the *Int'l Shoe* requirements "must be met as to each defendant over whom jurisdiction is to be exercised").

Applying the "minimum contacts" test, courts have exercised personal jurisdiction over non-resident defendants in two forms:  general jurisdiction and specific jurisdiction.  BBG Global does not have sufficient contacts with California to be subject to either type of jurisdiction.

### 1.   There Is No General Jurisdiction Over BBG Global Because It Does Not Have Continuous And Systematic Contacts With The State Of California.

General jurisdiction exists where the defendant engages in "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).  "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world," without regard for whether the plaintiff's allegations arise out of the defendant's activities in the forum state. *Id.  See also  Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) ("General jurisdiction applies where a defendant's activities in the state are 'substantial' or 'continuous and systematic,' even if the cause of action is unrelated to those activities.").

In determining whether a non-resident defendant's contacts are sufficiently "continuous and systematic" or "substantial" to confer general jurisdiction, courts "examine all of the defendant's activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated there." *Hirsch v. Blue Cross, Blue Shield Of Kans,* 800

1  F.2d 1474, 1478 (9th Cir. 1986).  Stated differently, "[l]ongevity, continuity, volume, economic

2  impact, physical presence, and integration into the state's regulatory or economic markets are

3  among the indicia of" whether a defendant has contacts in the forum state the mimic a physical

4  presence.  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006).

5  　　　Applying these standards here, there is no general jurisdiction over BBG Global.  BBG

6  Global does not provide any services in the United States, let alone in California.  [Fedier MSJ

7  Decl. ¶ 6.]  It does not have any offices or employees in California, nor is it licensed to do

8  business in California.  [*Id.*]  Similarly, it does not have a registered agent for service of process

9  here, nor does it pay or collect California taxes.  [*Id.*]  Plaintiffs claim that two contacts in

10  California—a director who resides in this state and a contract with a California entity—give rise to

11  jurisdiction over BBG Global, but neither of those contacts approximates a physical presence here

12  sufficient to confer general jurisdiction.

13  　　　First, the fact that a member of BBG Global's Board, Gregorio Galicot, resides in

14  California is insufficient to approximate a physical presence in California.  Mr. Galicot, however,

15  does not manage that entity from his home in California.  [Gregorio MTD Decl. ¶¶ 10-11.]

16  Rather, Mr. Galicot attends Board meetings for BBG Global in Switzerland.  [*Id.* ¶ 10.]

17  Moreover, Mr. Galicot does not maintain an office for BBG Global in his home.  [*Id.*]  The mere

18  fact that Mr. Galicot lives in California does not give rise to general jurisdiction over BBG Global.

19  *See*, *e.g.*, *Johnson v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 613 (5th Cir. 2008) (no

20  personal jurisdiction over a corporation based on the residence of a member of its board of

21  directors because "the business director . . . did not conduct board business in Texas. He merely

22  resided there"); *Gordon v. Greenview Hosp.*, 300 S.W.3d 635 (Tenn. 2009) ("In this age of

23  electronic communications, telecommuting, and distributed management, the fact that Greenview's

24  officers and directors maintain offices in Tennessee does not, by itself, lead to the conclusion that

25  the corporation has continuous and systematic contact with Tennessee or that the corporation is

26  conducting business within the state.").

27  　　　Second, BBG Global's contract with BBG Communications cannot give rise to general

28  jurisdiction over BBG Global in California.  BBG Communications provides back office services

3:10-CV-02341-AJB -NLS
-14-
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR LEAVE TO AMEND

1    to BBG Global—including completing the necessary paperwork to ensure that BBG Global gets

2    paid for its services and administering data related to BBG Global's privacy policy.  [Gregorio

3    MTD Decl. ¶¶ 6, 7; Fedier MSJ Decl. ¶ 10.]  These are the same types of services BBG

4    Communications provides to other entities such as Avantel (MCI's Mexican subsidiary), YAK,

5    AXTEL, S.A. de C.V., HOS Interest, Telus Communication Company, and Sprint Communication

6    Company, L.P., among others.  [Gregorio MTD Decl. ¶¶ 6, 7.]  Those services, however, are in no

7    way tied to California or unique to BBG Communications.  Rather, multiple other entities could

8    provide similar services from anywhere in the world.  [Fedier MTD Decl. ¶ 20.]  The mere fact

9    that BBG Global has entered into an agreement with BBG Communications, an entity

10   headquartered in California, does not give rise to general jurisdiction over BBG Global.  *See*, *e.g.*,

11   *Schwarzenegger*, 374 F.3d at 801 (no general jurisdiction where defendant had contracts with

12   California-based suppliers and "regularly retains the services of a California-based direct-mail

13   marketing company"); *Bancroft & Masters, Inc. v. Augusta National*, 223 F.3d 1082, 1086 (9th

14   Cir. 2000) ("ANI continues to have license agreements with two television networks and a handful

15   of California vendors. These agreements constitute doing business with California, but do not

16   constitute doing business in California.  This is because engaging in commerce with residents of

17   the forum state is not in and of itself the kind of activity that approximates physical presence

18   within the state's borders."); *Johnson*, 523 F.3d at 612 ("In reality, the contract represents nothing

19   more than another example of MDS purchasing goods and services from a Texas vendor — a

20   contact that is not sufficient to form the basis for general jurisdiction." (citing *Helicopteros*, 466

21   U.S. at 417)); *Arandell Corp. v. Xcel Energy, Inc.*, 605 F. Supp. 2d 1118, 1132 (D. Nev. 2009) ("A

22   single contact does not support general jurisdiction.").  Thus, there is no basis for asserting general

23   jurisdiction over BBG Global, meaning that even if Plaintiffs were to add BBG Global as a

24   defendant, such amendment would be futile.

25            **2.       There Is No Specific Jurisdiction Over BBG Global**

26            In the absence of general personal jurisdiction, this Court must grant BBG Global's motion

27   to dismiss unless Plaintiffs can establish that specific personal jurisdiction exists.  *Sher*, 911 F.2d

28   at 1361.  In making this determination, a court must consider whether "the defendant's conduct in

1   connection with the forum state is such that he should reasonably anticipate being haled into court

2   there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559; 62 L. Ed.

3   2d 490 (1980).  The defendant's contacts must result "from actions by the defendant himself that

4   create 'substantial connection' with the forum state." *Burger King Corp.*, 471 U.S. 462, 475

5   (1985).  Mere foreseeability of an injury or event in another state is not "a sufficient benchmark

6   for personal jurisdiction." *World-Wide Volkswagen*, 444 U.S. at 295.

7           Courts have implemented a three-prong test to determine the propriety of specific

8   jurisdiction:  "(1) The non-resident defendant must purposefully direct his activities or

9   consummate some transaction with the forum or resident thereof; or perform some act by which he

10  purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking

11  the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to

12  the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair

13  play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.

14  Plaintiffs cannot satisfy these criteria.

15                  **a.      BBG Global Has Not Purposefully Directed Any Activities At**

16                          **Forum Residents.**

17          A non-resident defendant must purposefully direct its activities at forum residents or

18  purposefully avail itself of the privilege of conducting business within the forum state to be

19  subject to specific jurisdiction.  *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228; 2 L. Ed. 2d

20  1283 (1958).  This prong of the specific jurisdiction test "includes both purposeful availment and

21  purposeful direction." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

22  1199, 1206 (9th Cir. 2006) (en banc).  In *Yahoo!*, the Ninth Circuit explained that "[i]n tort cases,

23  we typically inquire whether a defendant 'purposefully directs his activities' at the forum state,

24  applying an 'effects'  test that focuses on the forum in which the defendant's actions were felt,

25  whether or not the actions themselves occurred within the forum."  *Id.*

26          Application of the effects test is appropriate here because Plaintiffs' claims sound in tort, as

27  they claim that rates charged at the Frankfurt airport and alleged recording of customer service

28  calls in Mexico were not adequately disclosed.  Based on Plaintiffs' assertion of a tort theory of

liability, the *Calder* effects test applies.  *See Acree v. Gmac*, 92 Cal.App.4th 385, 396 (2001) ("an unfair business practice claim under section 17200  is more akin to a tort  than a contract claim").  Thus, to meet his burden, Plaintiffs must prove that BBG Global "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Yahoo!*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803).  Plaintiffs cannot meet that burden here.

As noted above, the thrust of Plaintiffs' claim is that BBG Global did not adequately disclose its rates in connection with calls that Sajfr placed from the Germany airport to the Czech Republic and did not disclose that customer service calls could be recorded in Mexico.  [Complaint ¶ 10(a).]  Even assuming *arguendo* that Plaintiffs can meet the first prong of the *Calder* test and prove that BBG Global's alleged non-disclosure was intentional, Plaintiffs cannot meet the second and third prongs.  BBG Global's conduct was in no way "expressly aimed" at California.  No harm was caused in California based on events that took place abroad, nor could BBG Global have predicted that such harm would have been felt here.

If anything, BBG Global's conduct was aimed at Germany, where the alleged non-disclosure took place.  BBG Global's agent negotiated an agreement with Deutsche Telekom on its behalf in Europe.  [Von Klocke Decl. ¶¶ iv-vi.]  BBG Global further provided the services at issue in Germany.  The disclosures at issue were determined in Germany, and are made in Germany.  [*Id*.]  Moreover, the agreement pursuant to which services are provided in Germany was ratified by BBG Global's Board in Switzerland.  [Fedier MSJ Decl. ¶ 8.]  Thus, it is entirely unclear how California is connected to this case, let alone how BBG Global could have anticipated that harm from its alleged non-disclosures abroad would have been felt in California and there is no specific jurisdiction.

### b.   Plaintiff's Claims Do Not Arise Out Of Defendants' Activity In California.

The "arising out of" requirement of the specific jurisdiction test is met if, "but for" the contacts between the defendant and the forum state, a cause of action would not have arisen.  *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).  To meet this

burden here, Plaintiffs must prove that but for BBG Global's purported contacts with California—most likely its contract with BBG Communications—BBG Global would not have engaged in the alleged non-disclosures and Plaintiffs would not have been damaged.  *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001) (no personal jurisdiction where "Plaintiffs present no evidence, and it seems impossible that they would uncover any, suggesting that the pipeline project would not have gone forward without Total's dealings with Unocal. . . . it appears from the evidence presented to date that Unocal's negotiations with Total and MOGE were not necessary to the initiation of the project.").

Plaintiffs' claims arise out of alleged non-disclosures that occurred in Germany and calls that were allegedly recorded in Mexico.  [Complaint ¶ 10.]   BBG Global's contract with BBG Communications—pursuant to which BBG Communications provided adminsitrative services—is not the but for cause of Plaintiffs' allegations.  BBG Global's contract with BBG Communications relates to back office administrative services, not to the provision of telecommunications services in Germany or customer service operations in Mexico.  [Gregorio MSJ Decl. ¶¶ 4-5; Fedier MSJ Decl. ¶ 10.]  Even if BBG Global had contracted with an entity other than BBG Communications to provide back office services, the disclosures that it made in Germany and customer services practices in Mexico would not have changed because BBG Communications had nothing to do with such services.  [*Id.*]  Simply, Plaintiffs would have suffered the same alleged injury regardless of BBG Global's contract with BBG Communications, and Plaintiffs thus cannot meet the "but for" test.  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 272 (9th Cir. 1995) ("but for" test not met where plaintiff "would have suffered the same injury even if none of the Washington contacts had taken place").

**c.**  **Exercise Of Personal Jurisdiction Over Defendants Would Be Unreasonable.**

Plaintiffs cannot  demonstrate the first two required elements for specific personal jurisdiction over BBG Global.  Thus, for the sake of brevity, BBG Communications does not address the reasonableness of asserting jurisdiction over BBG Global here, and respectfully requests that the Court deny Plaintiffs' request to amend the complaint as futile.

1    **3.      Alter Ego, The *Only* Basis That Could Give Rise To Jurisdiction Over**

2             **BBG Global, Does Not Exist Here.**

3            As this Court recognized in connection with the *Wood* matter, the alter ego doctrine

4    provides the ***only*** basis for the Court to assert jurisdiction over BBG Global.  For alter ego liability

5    to attach, Plaintiffs must show that (1) there is such a unity of interest between BBG Global and

6    BBG Communications that the separate personalities of the corporations no longer exists; and (2)

7    an inequitable result would follow if the court declines to find alter ego liability.  *Associated*

8    *Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).  Plaintiffs cannot meet

9    either element here, and permitting them to amend to add BBG Global would be futile.

10           **a.      No Unity Of Interest Between BBG Communications And BBG**

11                    **Global Exists.**

12           Where a plaintiff claims that two allegedly related corporations are alter egos, the

13   following factors should be considered:  (1) commingling of funds and other assets, (2) failure to

14   segregate funds of the separate entities, (3) the failure to maintain minutes or adequate corporate

15   records, (4) the confusion of the records of the separate entities; (5) undercapitalization; (6) the use

16   of a corporation as a mere shell for another corporation; (7) disregard of corporate formalities; and

17   (8) failure to maintain arms' length relationships.  *See Associated Vendors*, 210 Cal. App. 2d at

18   838-840; *Morrison Knudsen Corp. v. Hancock*, 69 Cal.App.4th 223, 251 (1999)

19   ("Undercapitalization, financial misrepresentation, commingling of assets and the like are

20   important in alter ego cases . . . ." (internal quotations omitted)); *Sammons Enterprises, Inc. v.*

21   *Superior Court*, 205 Cal.App.3d 1427, 1434 (1988) ("Where, as here, there is no showing the

22   subsidiary is undercapitalized, that corporate formalities are not maintained, or that the subsidiary

23   is held out as the agent of the parent, plaintiff has not met his burden to show personal jurisdiction

24   based upon the alter  ego theory.").  A court must find that "several" factors support the existence

25   of an alter ego relationship.  *Associated Vendors*, 210 Cal. App. 2d at 838-840.

26           Plaintiffs allege that BBG Communications is "part of a privately held company owned

27   and operated by the Galicot family, either directly or through alter ego shell corporations they

28   control," (Complaint ¶ 11), and that BBG Global is such a shell corporation  (*Id.* ¶ 32).

BBG Global and BBG Communications are separate entities and operations.  BBG Global runs an international telecommunications business using over 400 agents and employees who operate in 100 countries, but BBG Global does not operate any telecommunications services in North America.  [Fedier MSJ Decl. ¶¶ 5-6.]  Thus, contrary to Plaintiffs' claims, BBG Global is not a mere shell.  Moreover, BBG Global plays no role in BBG Communications' daily operations or vice versa. [Fedier MSJ Decl. ¶ 18.]  In fact, the companies serve distinct markets.  [Galicot MSJ Decl. ¶¶ 3; Fedier MSJ Decl. ¶ 5.]  BBG Global does not control BBG Communications or otherwise dictate how that entity operates.  [*Id.*]  Notably, the services that BBG Communications provides to BBG Global are similar to the services it provides to other entities, including Avantel (MCI's Mexican subsidiary), YAK, AXTEL, S.A. de C.V., HOS Interest, Telus Communication Company, and Sprint Communication Company, L.P., among others.  [Galicot MSJ Decl. ¶¶ 4-5.]  As auditors Lucas Horsfall and Moore Stephens attest, BBG Global and BBG Communications observe corporate formalities. [Malhotra Decl. ¶¶ 4-7; Moore Stephens Decl. ¶¶ iii-viii.]  Both are adequately capitalized, and they do not comingle funds.  [*Id.*]

Plaintiffs attempt, in the PAC, to allege additional facts in support of their alter ego theory.  Plaintiffs, however, provide no evidence to support their allegations.  On the contrary, they merely parrot allegations made in the *Wood* matter.  Those allegations fail because they are either irrelevant to an alter ego analysis, or rely on stale facts from a 2004 litigation that were rendered inoperative in a 2006 restructuring of BBG Communications and the creation of BBG Global.  [*See* Supplemental Declarations Of Gregorio Galicot and Irene Fedier In Support Of BBG Global's Motion To Dismiss in the *Wood* matter.][10]  Moreover, BBG Communications has already teed up the alter ego issue in its motion for summary judgment.  To the extent that Plaintiffs believe that they have evidence to support their alter ego claims, they should present that evidence in

---

[10] BBG Communications does not exhaustively rebut each of the allegations in Plaintiffs' proposed PAC because an opposition to Plaintiffs' motion for leave to amend is not the proper place to do so.  BBG Communications has filed a motion for summary judgment on this very issue.  Plaintiffs should be required to provide evidence to defeat BBG Communications' motion for summary judgment, and not merely parrot unsubstantiated allegations made in another case in their PAC.

1  opposition to BBG Communications' motion, and not attempt to bypass that motion relying on

2  mere allegations in the PAC.

3          **b.**      **<u>No Inequitable Result Would Follow Without An Alter Ego</u>**

4                  **<u>Finding.</u>**

5          To meet the second prong of the alter ego analysis—that an inequitable result would

6  follow from the failure to make an alter ego finding—a plaintiff must show that "some conduct

7  amounting to bad faith makes it inequitable . . . for the equitable owner of a corporation to hide

8  behind its corporate veil." *Associated Vendors*, 210 Cal.App.2d at 842.  The "kind of 'inequitable'

9  result that makes alter ego liability appropriate is an abuse of the corporate form, such as

10 undercapitalization or misrepresentation of the corporate structure to creditors." *Orloff v. Allman*,

11 819 F.2d 904, 909 (9th Cir. 1987), abrogated on other grounds, *Hollinger v. Titan Corp.*, 914 F.2d

12 1564 (9th Cir. 1990).  It is not enough "to merely show that a creditor will remain unsatisfied if the

13 corporate veil is not pierced." *Associated Vendors*, 210 Cal. App. 2d at 842.

14         Plaintiffs have alleged no facts to suggest that an inequitable result would follow from the

15 failure to find that BBG Communications and BBG Global are alter egos.  This alone is reason to

16 hold that there is no alter ego relationship.  *See  Wady v. Provident Life & Accident Ins. Co.*, 216

17 F. Supp.2d 1060, 1068 (C.D. Cal. 2002) (where plaintiff failed to plead or present any evidence

18 demonstrating an inequitable result, plaintiff's alter ego theory failed); *Pacific Maritime Freight,*

19 *Inc. v. Foster,* No. 10-0578, 2010 WL 3339432, *7-8 (S.D. Cal. Aug. 24, 2010) (same).[11]

20

21         Moreover, regardless of the Spartan allegations in Plaintiff's FAC, no inequitable result

22 would follow from a failure to find an alter ego relationship.  As noted above, both BBG Global

23 and BBG Communications are adequately capitalized.  [Malhotra Decl. ¶¶ 5-6; Moore Stephens

24 ───────────────

[11] Even if Plaintiffs had attempted to allege an inequitable result, none would follow.  Both BBG
25 Global and BBG Communications are adequately capitalized.  [Malhotra Decl. ¶¶ 5-6; Moore
Stephens Decl. ¶¶ vii-viii.]  Moreover, BBG Global and BBG Communications have consistently
26 observed corporate formalities.  [*Id*.]  Thus, there can be no inequitable result from requiring
Plaintiff to sue BBG Global in a forum in which jurisdiction would exist over BBG Global.  *Laird*
27 *v. Capital Cities/ABC Inc.*, 68 Cal.App.4th 727, 741-42 (1998) (no inequitable result when
plaintiff could sue the correct party in the correct locale).

28

3:10-CV-02341-AJB -NLS            -21-
W02-WEST:1VEA2\403998208.1        DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR LEAVE TO AMEND

1    Decl. ¶¶ vii-viii.]  Moreover, BBG Global and BBG Communications have consistently observed

2    corporate formalities.  [*Id*.]  Thus, there can be no inequitable result from requiring Plaintiffs to

3    sue BBG Global in a forum in which jurisdiction would exist over BBG Global.   *Laird v. Capital*

4    *Cities/ABC Inc.*, 68 Cal.App.4th 727, 741-42 (1998) (no inequitable result when plaintiff could

5    sue the correct party in the correct locale).

6    **IV.      CONCLUSION**

7         For the reasons explained above, BBG Communications respectfully requests that the

8    Court deny Plaintiffs' Motion For Leave To Amend, or, at the very least, put off decision on that

9    request until after it has heard BBG Communications' Motion For Summary Judgment on

10   December 16, 2011.

11   Dated:  June 30, 2011                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12                                       By    _____
                                                              s/Fred R. Puglisi
13                                                          FRED R. PUGLISI
                                                          Attorneys for Defendant,
14                                                        BBG Communications, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28