1   FRED R. PUGLISI, Cal. Bar No. 121822
    NORMA V. GARCIA, Cal. Bar No. 223512
2   VALERIE E. ALTER, Cal. Bar No. 239905
    ELIZABETH S. BERMAN, Cal. Bar No. 252377
3   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
4       Including Professional Corporations
    1901 Avenue of the Stars, Suite 1600
5   Los Angeles, California  90067-6017
    Telephone:      310-228-3700
6   Facsimile:      310-228-3701
    fpuglisi@sheppardmullin.com
7   ngarciaguillen@sheppardmullin.com
    valter@sheppardmullin.com
8   eberman@sheppardmullin.com

9   Attorneys for Defendant,
    BBG Communications, Inc.

10

11                  UNITED STATES DISTRICT COURT

12              SOUTHERN DISTRICT OF CALIFORNIA

13   VLASTIMIL SAJFR AND DAVID          Case No. 10-CV-02341-AJB (NLS)
     KEEPORTS, on behalf of themselves and all
14   others similarly situated,         The Honorable Anthony J. Battaglia

15                  Plaintiffs,

16          v.                           **REQUEST FOR JUDICIAL NOTICE IN
                                         SUPPORT OF DEFENDANT BBG
17   BBG COMMUNICATIONS, INC.,  a        COMMUNICATIONS, INC.'S
     Delaware CORPORATION, and DOES 1 - 10, MEMORANDUM OF POINTS AND
18                                       AUTHORITIES IN OPPOSITION TO
                    Defendant.           PLAINTIFF'S MOTION FOR LEAVE TO
19                                       AMEND**

20                                       Date:   December 16, 2011
                                         Time:  1:30 p.m.
21                                       Courtroom:  12

22                                       [Complaint Filed: November 12, 2010]
                                         Trial Date:  None Set
23

24

25

26

27

28

DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

TO THE ABOVE-CAPTIONED COURT AND TO PLAINTIFFS VLASTIMIL SAJFR, DAVID KEEPORTS, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that defendant BBG Communications, Inc. hereby requests that this Court take judicial notice of the following document pursuant to FEDERAL RULE OF EVIDENCE 201:

The transcript of the September 23, 2011 hearing on BBG Global, A.G.'s motion to dismiss for lack of personal jurisdiction in the matter captioned *Wood v. BBG Communications, Inc.*, Case No. 11-cv-0227 AJB (NLS).  This document is attached to and authenticated by the Declaration of Fred R. Puglisi, Ex. A

Pursuant to FED. R. EVID. 201(d), a court is mandated to take judicial notice of adjudicative facts if requested by a party and supplied with the necessary information.  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to source whose accuracy cannot reasonably be question."  FED. R. EVID. 201(b).

The Court may properly take judicial notice of the above-noted document because it is judicially noticeable pursuant to Rule 201 as a government document.  *See*, *e.g.*, *Kourtis v. Cameron*, 419 F.3d 989, 995 n.3 (9th Cir. 2005) (taking judicial notice of court records); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (taking judicial notice of court records); *Alvarez v. Unum Life Ins. Co. of Am.*, No. 07-00974, 2007 U.S. Dist. LEXIS 62719 (N.D. Cal. Aug. 14, 2007) (taking judicial notice of a settlement agreement between the defendant and a California government agency).  Thus, the fact of the existence of this document is not subject to reasonable dispute in that it is a government document capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, *i.e.*, this Court.

1    Dated:  October 7, 2011              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

2                                          By    _____
                                                         s/Fred R. Puglisi
3                                                       FRED R. PUGLISI
                                                     Attorneys for Defendant,
4                                                   BBG Communications, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF FRED R. PUGLISI

I, Fred R. Puglisi, declare as follows:

1.      I am an attorney duly admitted to practice before this Court.  I am a partner with SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, attorneys of record for BBG Communications, Inc.  If called as a witness, I could and would competently testify to all facts within my personal knowledge.

2.      This declaration is submitted in support of the Request For Judicial Notice In Support Of Defendant BBG Communications, Inc.'s Memorandum Of Points And Authorities In Opposition To Plaintiff's Motion For Leave To Amend.

3.      Attached hereto as **EXHIBIT A** is a true and correct copy of the transcript of the September 23, 2011 hearing on BBG Global, A.G.'s motion to dismiss for lack of personal jurisdiction in the matter captioned *Wood v. BBG Communications, Inc.*, Case No. 11-cv-0227 AJB (NLS), which my office received from the court reporter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed October 7, 2011, at Los Angeles, California.


 *Fred R. Puglisi*
Fred R. Puglisi

EXHIBIT A

AO44
(Rev. 11/07)

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

INVOICE NO:   00001061

**MAKE CHECKS PAYABLE TO:**

Fred Puglisi
Sheppard Mullin Richter & Hampton
1901 Avenue of the Stars
Suite 1600
Los Angeles, CA 90067

Phone:    (310) 228-2283

Jeannette Hill, CSR
Official Court Reporter
940 Front Street
Box 61
San Diego, CA 92101

Phone:      (619) 702-3905
FAX         (619) 515-6329
Tax ID:    26-2468546

| | CRIMINAL | X CIVIL | DATE ORDERED: 09-26-2011 | DATE DELIVERED: 10-03-2011 |

**Case Style:** 11CV0227-AJB, Wood v BBGCommunications
9/23/11 Defendant BBG's motions

| CATEGORY | ORIGINAL | | | 1ST COPY | | | 2ND COPY | | | TOTAL CHARGES |
|---|---|---|---|---|---|---|---|---|---|---|
| | PAGES | PRICE | SUBTOTAL | PAGES | PRICE | SUBTOTAL | PAGES | PRICE | SUBTOTAL | |
| Ordinary | | | | | | | | | | |
| 14-Day | | | | | | | | | | |
| Expedited | 36 | 4.85 | 174.60 | | | | | | | 174.60 |
| Daily | | | | | | | | | | |
| Hourly | | | | | | | | | | |
| Realtime | | | | | | | | | | |
| Misc. Desc. | | | | | | | MISC. CHARGES: | | | |
| | | | | | | | TOTAL: | | | 174.60 |
| | | | | | LESS DISCOUNT FOR LATE DELIVERY: | | | | | |
| | | | | | TAX (If Applicable): | | | | | |
| | | | | | LESS AMOUNT OF DEPOSIT: | | | | | |
| | | | | | TOTAL REFUND: | | | | | |
| | | | | | TOTAL DUE: | | | | | $174.60 |

## ADDITIONAL INFORMATION
   Full price may be charged only if the transcript is delivered within the required time frame.  For example, if an order for expedited transcript is not completed and delivered within seven (7) calendar days, payment would be at the ordinary delivery rate.

## CERTIFICATION
   I certify that the transcript fees charged and page format used comply with the requirements of this court and the Judicial Conference of the United States.

SIGNATURE:    Jeannette Hill          DATE   10-3-11

(All previous editions of this form are
cancelled and should be destroyed)

1

1  UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

2

BEFORE THE HONORABLE ANTHONY J. BATTAGLIA, JUDGE PRESIDING

3

4

|  |  |  |
|---|---|---|
| 5  NICOLAS WOOD, INDIVIDUALLY AND ON | ) | CASE NO. 11CV0227-AJB |
| 6  BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) | |
|    PLAINTIFF, | ) | |
| 7 | ) | |
|    -V- | ) | |
| 8 | ) | SAN DIEGO, CALIFORNIA |
|    BBG COMMUNICATIONS, INC., BBG | ) | |
| 9  GLOBAL, AG, AND BBG HOLDINGS, LTD., | ) | SEPTEMBER 23, 2011 |
|    | ) | 1:55 P.M. |
| 10 |    DEFENDANTS. | ) |

11 _____)

12

13

14  REPORTER'S TRANSCRIPT OF PROCEEDINGS

15

16

17

18

19  APPEARANCES:

20  FOR THE PLAINTIFF:    STUART EPPSTEINER, ESQ.
                          EPPSTEINER & FIORICA ATTORNEYS LLP
21                        12555 HIGH BLUFF DRIVE, SUITE 155
                          SAN DIEGO, CALIFORNIA 92130

22

23  FOR THE DEFENDANTS:   FRED R. PUGLISI, ESQ.
                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
                          1901 AVENUE OF THE STARS, SUITE 1600
24                        LOS ANGELES, CALIFORNIA 90067-6017

25  OFFICIAL REPORTER:    JEANNETTE N. HILL, C.S.R.
                          (619) 702-3905

SEPTEMBER 23, 2011

2

1    **SAN DIEGO, CALIFORNIA; FRIDAY, SEPTEMBER 23, 2011; 1:55 P.M.**

2         **DEPUTY CLERK:**  CALLING MATTER 22 ON CALENDAR, CASE

3    NUMBER 11CV0227.  WOOD VERSUS BBG COMMUNICATIONS, INCORPORATED,

4    ET AL, ON FOR MOTION HEARING.

5         **MR. EPPSTEINER:**  GOOD AFTERNOON, YOUR HONOR.  STUART

6    EPPSTEINER FOR THE PLAINTIFF.

7         **THE COURT:**  GOOD AFTERNOON.

8         **MR. PUGLISI:**  GOOD AFTERNOON, YOUR HONOR.  FRED

9    PUGLISI, SHEPPARD MULLIN RICHTER & HAMPTON, ON BEHALF OF THE

10   DEFENDANTS, AND SPECIALLY APPEARING FOR DEFENDANT BBG GLOBAL.

11        **THE COURT:**  ALL RIGHT.  THANK YOU.

12        SO WE ARE ON CALENDAR TODAY FOR TWO PENDING MOTIONS

13   TO DISMISS THE PLAINTIFF'S FIRST AMENDED COMPLAINT.  AND THE

14   FIRST IS THAT DEFENDANT BBG GLOBAL IS MOVING TO DISMISS FOR A

15   LACK OF PERSONAL JURISDICTION.  AND THEN BBG COMMUNICATIONS'

16   MOTION TO DISMISS ADDRESSES BOTH LACK OF SUBJECT-MATTER

17   JURISDICTION AND FAILURE TO STATE A CLAIM.

18        I HAVE ANALYZED THIS.  I AM GOING TO GIVE YOU A

19   FAIRLY COMPLETE ANALYSIS AND A TENTATIVE RULING AND THEN

20   CERTAINLY LET YOU FOLKS COMMENT OR ARGUE TO COMPLETE YOUR

21   RECORD.  I HAVE SOME QUESTIONS ALONG THE WAY THAT I WILL POSE

22   TO EITHER SIDE, TO TRY AND GET TO THE BOTTOM OF ALL THE

23   CONSIDERATIONS, AND THEN FINALIZE THE RULING BY THE END OF THE

24   HEARING, UNLESS YOU HAVE SOME CASES THAT WE HAVEN'T READ YET

25   THAT I HAVE TO GO OFF AND READ AND THEN GET BACK TO YOU ON.

3

1       BUT I HAVE NOTED THE MOTIONS NOW PENDING.  AND THE

2  BACKGROUND IS THAT MR. WOOD IS A CANADIAN CITIZEN WHO MADE THE

3  FIVE PAY-PHONE CALLS FROM THE HONG KONG AIRPORT TO CANADA FOR A

4  TOTAL OF 51 MINUTES, EXPECTING TO PAY ALMOST $7 BUT, INSTEAD,

5  BEING CHARGED, AS HE SAYS, ABOUT $261.

6       DEFENDANT BBG GLOBAL IS A SWISS COMPANY WITH A

7  PRINCIPAL PLACE OF BUSINESS IN SWITZERLAND, WHO OFFERED THE

8  PHONE SERVICES AT ISSUE.  WOOD IS ALLEGING THAT GLOBAL -- TO

9  GIVE IT A SHORTHAND NAME -- DID NOT ADEQUATELY DISCLOSE THE

10 CHARGES OR OTHER FEES ASSOCIATED WITH THOSE CALLS TO HIM IN

11 ENTERING THE CONTRACT.

12      WOOD GOES ON TO ALLEGE THAT BBG COMMUNICATIONS, THE

13 SECOND COMPANY, IS CONNECTED TO CALIFORNIA, IS THE ALTER EGO OF

14 BBG GLOBAL, AND COMMUNICATIONS ITSELF, AGAIN, TO HELP

15 DISTINGUISH THE TWO, IS A DELAWARE CORPORATION WITH ITS

16 PRINCIPAL PLACE OF BUSINESS IN CALIFORNIA.

17      NOW, ON THE LACK OF JURISDICTION FOR GLOBAL, WOOD IS

18 ASSERTING THE JURISDICTION OVER GLOBAL BASED ESSENTIALLY ON TWO

19 PURPORTED CONTACTS WITH CALIFORNIA.  FIRST, THAT GREGORIO

20 GALICOT, CHAIRMAN OF GLOBAL'S BOARD, LIVES IN CALIFORNIA.  HIS

21 BROTHER, RAFAEL, AN AUTHORIZED SIGNATORY OF GLOBAL, LIVES IN

22 CALIFORNIA, AS WELL.

23      SECOND, AND PROBABLY THE CORE OF THE WHOLE DISPUTE,

24 REALLY, AS I SEE IT, IS THAT GLOBAL IS AN ALTER EGO OF

25 COMMUNICATIONS AND, THEREFORE, CONDUCTS THE CORE OF ITS

SEPTEMBER 23, 2011

4

1    OPERATIONS OUT OF CALIFORNIA.

2         GLOBAL HAVING A CONTRACT WITH COMMUNICATIONS, WHICH

3    THE DEFENSE CLAIMS IS FOR BACK-OFFICE ADMINISTRATIVE SERVICES

4    AND LICENSING, TRADEMARKS AND SO FORTH.

5         MR. WOOD ASSERTS THAT THE TWO ENTITIES HAVE THIS

6    ALTER EGO RELATIONSHIP IN THAT THEY DOMINATE THE AFFAIRS OF ONE

7    ANOTHER, THEY SHARE SOME OFFICERS, DIRECTORS, EMPLOYEES, THAT

8    THERE IS A UNITY OF INTEREST IN OWNERSHIP BECAUSE THE GALICOT

9    BROTHERS OWN 95 PERCENT OF GLOBAL AND 100 PERCENT OF

10   COMMUNICATIONS.  THERE IS CONTACT E-MAILS PROVIDED ON GLOBAL'S

11   WEBSITE, AND GLOBAL HAS SERVERS IN CALIFORNIA.

12        GLOBAL'S PRIVACY POLICY DOES NOT DIFFERENTIATE ITSELF

13   BETWEEN ITSELF AND BBG COMMUNICATIONS.  GLOBAL HAS A BANK

14   ACCOUNT IN CALIFORNIA THAT USES COMMUNICATIONS' ADDRESS, USES

15   THE SAME ATTORNEYS AND SAME LOGO.  EACH IS A SHELL FOR THE

16   OTHER, EACH IS INADEQUATELY CAPITALIZED, INSOLVENT AND/OR

17   FAILED TO ABIDE BY THE FORMALITIES OF CORPORATE EXISTENCE, AND

18   EACH IS THE SUCCESSOR, PREDECESSOR IN INTEREST TO ONE ANOTHER.

19        GLOBAL, IN TURN, CLAIMS THAT ALL OF THESE FACTS

20   ALLEGED DATE BACK TO AN EARLIER TIME, 2004 TO BE SPECIFIC, AND

21   LONG BEFORE THE NOVEMBER 2010 PHONE CALLS WERE AT ISSUE, AND

22   ARE NO LONGER ACCURATE.  GLOBAL CLAIMS THAT WOOD GOT THE FACTS

23   FROM A 2004 LAWSUIT DISMISSED BACK IN 2005.  FURTHER, THAT

24   COMMUNICATIONS UNDERWENT A MAJOR REORGANIZATION IN 2006, AND

25   THESE FACTS DATE BACK TO A DAY BEFORE GLOBAL WAS FOUNDED.

5

1          MUCH OF THAT IS ALL IN DISPUTE.  APPARENTLY, WHAT IS

2     NOT DISPUTED IS THAT THERE ARE CERTAIN FACTS THAT DON'T SUPPORT

3     JURISDICTION, BUT THEY ARE UNDISPUTED.  AND THAT IS THAT

4     GLOBAL'S DIRECTORS AND AN AUTHORIZED SIGNATORY DO LIVE IN

5     CALIFORNIA.  GLOBAL HAS A CONTRACT WITH COMMUNICATIONS, WHICH

6     IS A CALIFORNIA ENTITY.  GLOBAL USES THE E-MAIL DOMAIN NAME AND

7     SERVERS IN CALIFORNIA.  GLOBAL HAS A BANK ACCOUNT IN

8     CALIFORNIA.  GLOBAL HAS ENTERED INTO CONTRACTS AND HAS A

9     PRIVACY POLICY IT SHARES WITH COMMUNICATIONS, WITH CHOICE OF

10    LAW CLAUSES FAVORING CALIFORNIA.

11          COMMUNICATIONS DOES ASSERT THAT MR. WOOD NAMED THE

12    WRONG DEFENDANT; THAT COMMUNICATIONS HAD NOTHING TO DO WITH THE

13    ALLEGED CONDUCT; THAT GLOBAL ENTERED INTO AN AGREEMENT WITH HK

14    BROADBAND TO PROVIDE THE LONG DISTANCE SERVICES AT HK

15    BROADBAND'S PAY PHONES LOCATED IN THE HONG KONG AIRPORT.

16          SO THAT IS THE FACTUAL BACKDROP AND THE ALLEGATIONS

17    ON THAT MOTION.  AND AS FAR AS THE MOTIONS IN GENERAL, EACH

18    SIDE HAS SUBMITTED VOLUMINOUS EVIDENCE HERE.  MUCH, IF NOT ALL

19    OF WHICH IS IN DISPUTE AND IS CONSTITUTED IN A SERIES OF

20    DOCUMENTS EITHER AS REQUESTS FOR JUDICIAL NOTICE OR AS

21    OBJECTIONS TO AND RESPONSES TO OBJECTIONS TO EACH OTHER'S

22    DOCUMENTS.

23          THEN WE HAVE GOT DOCUMENT 17, ATTACHMENT NINE,

24    DOCUMENT 26, ATTACHMENTS TWO AND THREE, DOCUMENT 33,

25    ATTACHMENTS ONE AND FIVE, AND GLOBAL'S REPLY ATTACHMENTS EIGHT

1   AND NINE IN THIS.

2          NOW, AS TO THE JUDICIAL NOTICE, THE COURT CAN TAKE

3   JUDICIAL NOTICE OF ADJUDICATED FACTS THAT ARE NOT SUBJECT TO

4   REASONABLE DISPUTE.  THAT IS EVIDENCE RULE 201.  AND FACTS

5   BECOME INDISPUTABLE AND SUBJECT TO NOTICE ONLY IF THEY ARE

6   GENERALLY KNOWN OR CAPABLE OF ACCURATE AND READY DETERMINATION

7   BY RESORT TO SOURCES WHOSE ACCURACY CANNOT BE REASONABLY

8   QUESTIONED.

9          HERE, THE FACTS IN ALL THESE DOCUMENTS ARE NOT

10  GENERALLY KNOWN AS DEFINED IN RULE 201, AND THEY ARE VERY

11  CERTAINLY DISPUTED BY THE PARTIES AND SUBJECT TO A PRESENTATION

12  REALLY APPROPRIATE FOR A TRIAL UNDER THE RULES OF EVIDENCE,

13  CROSS-EXAMINATION AND REVIEW.

14         SO THE COURT IS DENYING THE REQUEST TO TAKE JUDICIAL

15  NOTICE OF THESE DOCUMENTS.  AND I WILL GIVE YOU FURTHER REASONS

16  WHY, ULTIMATELY, THEY DO NOT FIGURE INTO THE RULINGS

17  TENTATIVELY THAT I'VE REACHED.

18         AND CLEARLY, THESE ARE DOCUMENTS THAT DEAL WITH

19  ISSUES WELL BEYOND THE PLEADINGS AND NOT TYPICALLY APPROPRIATE

20  FOR A MOTION TO DISMISS, IN ANY EVENT.  BUT I AM GOING TO DENY

21  THOSE REQUESTS AND DENY OR OVERRULE THE OBJECTIONS, FOR REASONS

22  I WILL MAKE MORE CLEAR.

23         ON GLOBAL'S LACK OF JURISDICTION, A PERSONAL

24  JURISDICTION MOTION, THERE IS THREE MAIN ARGUMENTS EACH SIDE

25  HAS ADDRESSED.  THEY ARE GENERAL JURISDICTION, SPECIFIC

1    JURISDICTION, AND ALTER EGO.  BUT IT DOES SEEM TO ME THAT THE

2    PLAINTIFF'S ISSUE IN THIS REGARD HINGES REALLY ENTIRELY ON THE

3    ALTER EGO ARGUMENT.  WITHOUT IT I DON'T THINK THAT THE ARGUMENT

4    IS MADE FOR GENERAL AND SPECIFIC JURISDICTION, OR SATISFACTORY.

5    I THINK THEY ARE EXTREMELY WEAK.

6           AND IT'S A LITTLE CONFUSING IN READING THE FIRST

7    AMENDED COMPLAINT BECAUSE AT POINTS, AND QUITE OFTEN, IN FACT,

8    THERE SEEMS TO BE A MERGER WHERE COMMUNICATIONS, ON THE ONE

9    HAND, AND GLOBAL, ON THE OTHER HAND, ARE REFERRED TO SIMPLY AS

10   BBG.  AND IT BECOMES PROBLEMATIC IN DETERMINING, AT LEAST FROM

11   THE COURT'S STANDPOINT, WHICH ENTITY DID WHAT.  I THINK THAT

12   SOME CLARIFICATION HERE IS CLEARLY NECESSARY.

13          MOVING ON AND BREAKING THESE DOWN.  GENERAL

14   JURISDICTION.  GLOBAL IS ARGUING NO GENERAL JURISDICTION

15   BECAUSE IT DOESN'T HAVE CONTINUOUS AND SYSTEMATIC CONTACTS WITH

16   CALIFORNIA.  SPECIFICALLY, THAT GLOBAL DOESN'T PROVIDE ANY

17   SERVICES IN THE UNITED STATES, LET ALONE CALIFORNIA, HAS NO

18   OFFICERS OR EMPLOYEES IN CALIFORNIA AND IS NOT LICENSED TO DO

19   BUSINESS HERE, HAS NO REGISTERED AGENT FOR SERVICE OF PROCESS,

20   DOESN'T PAY OR COLLECT CALIFORNIA TAX, AND THE SIMPLE FACT THAT

21   GALICOT LIVES IN CALIFORNIA OR THAT GLOBAL HAS ENTERED INTO A

22   CONTRACT WITH COMMUNICATIONS DOESN'T GIVE RISE TO JURISDICTION.

23          NOW, MR. WOOD, IN CONTRAST, ARGUES THAT GENERAL

24   JURISDICTION SHOULD EXIST BECAUSE THE GALICOT BROTHERS RESIDE

25   IN SAN DIEGO AND THEY COLLECTIVELY OWN 95 PERCENT SHARE OF

1   GLOBAL THROUGH THEIR FAMILY TRUSTS, AND CLAIMS THAT GLOBAL DOES

2   PROVIDE SERVICES IN NORTH AMERICA AND CONDUCTS BUSINESS IN

3   CALIFORNIA.

4            TENTATIVELY, I DON'T THINK THAT ABSENT THE ALTER EGO

5   THEORY THE RESIDENCE OR THE CONTRACTS STANDING ALONE ARE

6   SUFFICIENT TO CREATE GENERAL JURISDICTION.  AND ON THOSE BASES,

7   THE MOTION IS WELL TAKEN.

8            ON SPECIFIC JURISDICTION, GLOBAL ARGUES THAT THERE IS

9   NO SPECIFIC JURISDICTION BECAUSE THERE IS A FAILURE TO

10  ASSERT -- IT'S COUCHED IN THE MOTION AS PROVED, BUT REALLY IS

11  ASSERT -- THAT GLOBAL COMMITTED AN INTENTIONAL ACT THAT WAS

12  EXPRESSLY AIMED AT CALIFORNIA RESIDENTS.  THAT MR. WOOD'S

13  CLAIMS ARISE OUT OF GLOBAL'S ACTIVITY IN CALIFORNIA, AND THAT

14  EXERCISING JURISDICTION OVER GLOBAL WOULD BE REASONABLE.

15           NOW, MR. WOOD DOES ARGUE THAT THE THREE PRONGS ARE

16  MET.  BUT, AGAIN, THERE IS A LOT OF MESHING OR MELDING OF THE

17  TWO ENTITIES TOGETHER.  FOR EXAMPLE, IT SUGGESTED IT WOULDN'T

18  BE UNDULY BURDENSOME FOR GLOBAL TO DEFEND ITSELF IN CALIFORNIA

19  SINCE THE CONDUCT COMPLAINED OF PRIMARILY OCCURRED IN

20  CALIFORNIA AND THE WITNESSES AND MOST OF THE RELEVANT EVIDENCE

21  IS LOCATED IN CALIFORNIA.  BUT THIS IS BASELESS UNLESS WE ARE

22  ASSUMING GLOBAL AND COMMUNICATIONS ARE ONE AND THE SAME.

23           WITHOUT THIS ALTER EGO THEORY THAT IS ASSERTED AS

24  PART OF THE OVERALL CONSTELLATION OF FACTS, THE ARGUMENTS FOR

25  SPECIFIC JURISDICTION ARE VERY WEAK, GIVEN THE INTERNATIONAL

1    NATURE OF THE CASE.  ABSENT, AGAIN, ALTER EGO, THERE IS NO TIES

2    TO CALIFORNIA WITHOUT REFERENCE TO COMMUNICATIONS, AS I SEE IT.

3           SO I THINK THE MOTION IS WELL TAKEN AS TO THE

4    SPECIFIC JURISDICTIONAL GROUND, AGAIN, ABSENT THE ALTER EGO,

5    WHICH IS THE THIRD.  AND THIS IS WHERE SOME QUESTIONS WILL COME

6    UP.

7           ON THE ALTER EGO, GLOBAL IS ARGUING IT'S NOT

8    COMMUNICATIONS' ALTER EGO.  THERE IS A LACK OF UNITY OF

9    INTEREST BETWEEN THE TWO SUCH THAT THEIR SEPARATE PERSONALITIES

10   NO LONGER EXIST.  THEY SAY THAT GLOBAL RUNS AN INTERNATIONAL

11   TELECOMMUNICATION BUSINESS USING OVER 400 AGENTS AND EMPLOYEES

12   TO OPERATE IN 100 COUNTRIES, BUT OPERATES NO TELECOM SERVICES

13   IN NORTH AMERICA.  IT PROVIDES ONLY TELECOM SERVICES, WHILE BBG

14   COMMUNICATIONS PROVIDES BACKROOM OFFICE FUNCTIONS.  THERE IS NO

15   OVERLAP BETWEEN THE COUNTRIES THAT GLOBAL AND COMMUNICATIONS

16   SERVE.  COMMUNICATIONS PROVIDES THE SAME SERVICES TO OTHER

17   ENTITIES AS IT PROVIDES TO GLOBAL.

18          SECOND, AND I THINK CRITICALLY IMPORTANT IN THE

19   ANALYSIS, IS THAT NO INEQUITABLE RESULT WILL FOLLOW IN THE

20   ABSENCE OF AN ALTER EGO FINDING.

21          I THINK MR. WOOD'S ALLEGATIONS ARE CONCLUSORY AND

22   INSUFFICIENT AS A MATTER OF LAW ON THAT POINT.  REGARDLESS, NO

23   INEQUITABLE RESULT WOULD FOLLOW FROM REQUIRING WOOD TO SUE BBG

24   GLOBAL IN ANOTHER FORM.  ON THE CONTRARY, THE INEQUITABLE

25   RESULT WOULD BE ALLOWING WOOD'S FORUM-SHOPPING TO TAKE

10

1   ADVANTAGE OF CALIFORNIA'S MORE FAVORABLE CONSUMER LAWS,

2   ACCORDING TO GLOBAL.

3         MR. WOOD ARGUES THAT GLOBAL IS THE ALTER EGO, AS

4   SAID.  ARGUES THERE IS A UNITY OF INTEREST AND OWNERSHIP

5   BECAUSE THE GALICOT BROTHERS COLLECTIVELY OWN 95 PERCENT OF

6   GLOBAL AND 100 PERCENT OF COMMUNICATIONS.  AND, ADDITIONALLY,

7   THE TWO ENTITIES SHARE THE SAME OFFICERS, DIRECTORS AND

8   EMPLOYEES.  GLOBAL'S CALIFORNIA BANK ACCOUNT SHARES THE SAME

9   ADDRESS AS COMMUNICATIONS.  THEY SHARE ATTORNEYS, OFFICERS,

10  AGENTS, USE E-MAIL ADDRESSES WITH THE BBGCOMM.COM DOMAIN

11  EXTENSION.  AND THAT A FAILURE TO RECOGNIZE THE ALTER EGO WOULD

12  RESULT IN FRAUD OR INJUSTICE BECAUSE GLOBAL ENJOYS THE BENEFITS

13  AND REPRESENTATIONS OF BEING A CALIFORNIA COMPANY; AND,

14  THEREFORE, SHOULD NOT DISCLAIM CALIFORNIA LAW.

15        ON THE FIRST PRONG, THE UNITY OF INTEREST, YOU KNOW,

16  I LOOKED AT THE FIRST AMENDED COMPLAINT SEVERAL TIMES.  AND IT

17  SEEMS TO ALLEGE, IN MY MIND, OR AS I READ IT, THE 95 PERCENT

18  INTEREST OF GLOBAL.  BUT I DON'T SEE WHERE IT ACTUALLY PLEADS

19  THE 100 PERCENT INTEREST IN COMMUNICATIONS SUCH THAT BOTH

20  BROTHERS WOULD OWN THE ENTIRETY OF THAT.

21        NOW, MAYBE I MISSED IT.  I DON'T THINK THAT THAT IS

22  NECESSARILY FATAL, BUT IS THERE A PLACE IN THERE,

23  MR. EPPSTEINER, WHERE THAT IS ACTUALLY PLED IN THE FIRST

24  AMENDED COMPLAINT?  SINCE YOU DRAFTED IT, MAYBE YOU KNOW.  I

25  MISSED IT.

1    **MR. EPPSTEINER:**  YOUR HONOR, SITTING HERE TODAY, IT

2  WASN'T A MATTER THAT I FOCUSED ON.  SO THE COMPLAINT BEING

3  LENGTHY, I CAN'T, IN THIS MOMENT, DIRECT THE COURT TO IT.  I

4  WILL LOOK THROUGH IT DURING THE BALANCE OF THE HEARING.  I DO

5  SEE THE 95 PERCENT ALLEGATION.

6    **THE COURT:**  OKAY.  I DON'T THINK THAT IS FATAL, PER

7  SE, ALTHOUGH I THINK IT'S SOMETHING THAT NEEDS TO BE CLEANED

8  UP.  AND I THINK THAT THE FIRST AMENDED COMPLAINT ALLEGES AT

9  LEAST SUFFICIENT FACTS TO SURVIVE THE FIRST PRONG OF THE UNITY

10 OF INTEREST.  HOWEVER, I HAVE GOT STRONG QUESTIONS WITH REGARD

11 TO WHETHER WE HAVE ENOUGH IN HERE TO SATISFY THE SECOND PRONG,

12 AS GLOBAL ARGUES THAT THERE IS A FAILURE TO ALLEGE ANY FACTS TO

13 SUPPORT THE SECOND PRONG IN THE FIRST AMENDED COMPLAINT.

14    IN THE FIRST AMENDED COMPLAINT, WE HAVE GOT PARAGRAPH

15 37, WHICH IS THE OPERATIVE PARAGRAPH WHICH, FRANKLY, IS

16 CONCLUSORY, LACKS A LOT OF DETAIL THAT *IQBAL/TWOMBLY* NOW SEEM

17 TO REQUIRE.  AND THE COURT HAS BEEN FAITHFULLY FOLLOWING THAT

18 GUIDANCE IN OTHER CASES.  I THINK THESE ARE ALL CONCLUSIONS AND

19 WOULD NEED TO BE ADDRESSED.

20    I WILL SAY THAT MR. WOOD, IN THE PLEADINGS, AND

21 MR. EPPSTEINER ARGUE OUTSIDE OF THE ALTER EGO CONTEXT THAT

22 THERE IS JURISDICTION BECAUSE OF A GENERAL AGENCY BETWEEN

23 GLOBAL AND COMMUNICATIONS AND A SUCCESSOR-IN-INTEREST STATUS.

24 AND THERE IS A NEED -- I THINK MR. EPPSTEINER PRESENTS -- TO

25 CONDUCT JURISDICTIONAL DISCOVERY IN THAT REGARD.

1      GLOBAL, AGAIN, OPPOSES, SAYING THAT THERE IS NO

2   JURISDICTION BASED ON AGENCY BECAUSE GLOBAL IS NOT

3   COMMUNICATIONS' AGENT, DOES NOT PROVIDE ESSENTIAL SERVICES.

4   THERE IS NO JURISDICTION BASED ON SUCCESSORSHIP DOCTRINE HERE

5   BECAUSE GLOBAL, IN ITS CONDUCT, IS NOT THAT OF A SUCCESSOR.

6      OVERALL, ON THIS PERSONAL JURISDICTION MOTION, I

7   THINK THE ANALYSIS THAT I HAVE COME TO IS THIS:  THAT WITHOUT

8   PULLING IN COMMUNICATIONS AS THE ALTER EGO, IT'S EXTREMELY

9   UNLIKELY THAT WOOD CAN SHOW, UNDER ANY PLEADING, GENERAL OR

10  SPECIFIC JURISDICTION IN CALIFORNIA, GIVEN THE NATURE OF THIS

11  CASE:  CANADIAN PLAINTIFF WHO MADE CALLS FROM HONG KONG TO

12  CANADA, USING A SWISS PROVIDER THAT CONTRACTED WITH THE HONG

13  KONG COMPANY.  HOWEVER, IF GLOBAL AND COMMUNICATIONS ARE IN

14  FACT ALTER EGOS, THEN PERSONAL JURISDICTION MAY BE PLAUSIBLE,

15  ALTHOUGH AS NOTED ABOVE I THINK THAT IT'S PROBLEMATIC AT BEST

16  AS TO HOW THE SECOND PRONG HAS BEEN ALLEGED HERE.

17      AND I GUESS THE QUESTION, MR. EPPSTEINER, AT THIS

18  POINT IS IN TERMS OF THE SPECIFIC FACTS DEALING WITH THE

19  INEQUITABLE RESULT, WHAT COULD YOU OFFER BY WAY AN AMENDED

20  PLEADING?

21      **MR. EPPSTEINER:**  WELL, IN TERMS OF THE INEQUITABLE

22  RESULT, IT IS THAT AT THE PHONE IT WAS POSTED THAT THE CHARGE

23  FOR THE CALL TO CANADA OR THE U.S. WOULD BE THE HONG KONG

24  DOLLAR.  AND THE RATE TURNED OUT TO BE, I BELIEVE, $20 PER

25  MINUTE.

1          SO THE INEQUITY IS THE FAILURE TO DISCLOSE WHAT THE

2     TRUE RATE WAS.  AND THE INEQUITY IS THAT A TRANSACTION THAT

3     ULTIMATELY GETS CONCLUDED IN CALIFORNIA OVERCHARGES TARGETED

4     TRAVELERS FOR RATES HIGHER THAN -- CONTRARY TO WHAT IS STATED

5     AND UNDISCLOSED.

6          THE FOCUS OF THE COMPLAINT IS THE FAILURE TO

7     DISCLOSE.  AND THAT GIVEN THE LABEL THAT IS ON THE PHONE, THE

8     INFORMATION THAT A MUCH HIGHER RATE IS GOING TO BE CHARGED WHEN

9     YOU SWIPE THE PHONE IS MATERIAL; AND IS, THEREFORE, THE

10    OMISSION OF MATERIAL INFORMATION AT OR ABOUT THE TIME OF THE

11    TRANSACTION.

12         THAT IS THE INFORMATION WE HAVE.  SO IN TERMS OF

13    THAT, THERE IS A HARM CAUSED BY THE ACT.  I THINK WE CAN -- IF

14    THE COURT IS DISSATISFIED WITH THE LEVEL OF SPECIFICITY OR ITS

15    ABSENCE, THAT CAN BE CURED IF WE ARE GRANTED LEAVE TO AMEND.

16         **THE COURT:**  I THINK WHEN WE ARE TALKING THE INJUSTICE

17    HERE --

18         **MR. EPPSTEINER:**  RIGHT.

19         **THE COURT:**  -- WE'RE FOCUSING, REALLY, ON THE LACK --

20    I THINK WE ARE TALKING ABOUT IN A JURISDICTIONAL SENSE, NOT IN

21    A MERITS-BASED SENSE, OF NOT BRINGING THEM TO BEAR HERE IN

22    CALIFORNIA, WHICH WOULD SUGGEST THERE IS NOWHERE ELSE THAT

23    PLAINTIFF COULD SEEK AN APPROPRIATE REMEDY WHERE JURISDICTION

24    MIGHT BE MORE PROPER.  IN TERMS OF A PLEADING AND THOSE TYPES

25    OF FACTS, WHERE WOULD WE BE?

14

1        **MR. EPPSTEINER:**  WHERE WE WOULD BE IS THAT NEITHER

2   HONG KONG NOR SWISS LAW ALLOW FOR THE PROSECUTION OF THIS

3   MATTER AS A CLASS ACTION.  THERE HAS BEEN NO EVIDENCE THAT

4   SWISS LAW WOULD APPLY.  AND THERE IS NOT A HOSTILITY IN THE LAW

5   OF HONG KONG TOWARDS ASSERTING THESE CLAIMS.

6        SO, YOUR HONOR, TO NET NET, I THINK THE QUESTION THAT

7   YOU ARE ASKING, IF THIS MATTER IS NOT BROUGHT AS A CLASS

8   ACTION, NOBODY IS GOING TO PURSUE, YOU KNOW, A $200 OVERCHARGE

9   ON THEIR PHONE.

10        OUR POSITION IS, AND OUR UNDERSTANDING AND KNOWLEDGE

11   IS THAT THIS IS HOW THESE COMPANIES CONDUCT THEIR BUSINESS.

12   THEY RADICALLY OVERCHARGE CALIFORNIANS AND AMERICANS WHEN THEY

13   ARE OVERSEAS AND NEED TO MAKE LONG DISTANCE CALLS.  THE ONLY

14   WAY THAT YOU CAN GET THE STATED RATE IS IF YOU CARRY POCKETS

15   FULL OF THE LOCAL CURRENCY AND PUT THEM IN THE PHONE.

16        SO WHAT HAPPENED TO MR. WOOD IS WHEN HE MADE THE

17   CALL, THE OPTION OF MAKING THE CREDIT-CARD-BASED CALL WAS

18   PRESENTED.  HE DID IT, BUT THERE WAS NEVER A COMMUNICATION THAT

19   THE RATE WAS GOING TO BE RADICALLY DIFFERENT ONCE YOU SWIPE

20   YOUR CARD.

21        SO, JURISDICTIONALLY, IF WE ARE NOT ALLOWED TO PURSUE

22   THIS MATTER FOR MR. WOODS AS A REPRESENTATIVE FOR OTHERS -- AND

23   I WANT TO POINT OUT TO THE COURT THAT ALTHOUGH MR. WOOD IS THE

24   NAMED PLAINTIFF, LOCAL HONG KONG RESIDENTS DON'T USE THESE

25   PHONES.  IT'S TRAVELERS.  AND THERE ARE MANY TRAVELERS THAT

1   COME FROM CALIFORNIA AND THE UNITED STATES THAT TRAVEL IN HONG

2   KONG AND FOREIGN AIRPORTS AND TRAIN STATIONS WHERE BBG PROVIDES

3   THESE SERVICES.  SO, NUMBER ONE, THERE IS A PROTECTIVE ELEMENT

4   OF CALIFORNIANS, THE CITIZENS OF THE COUNTRY.  AND WITHOUT THE

5   ABILITY TO BRING THIS UNDER THE CLASS ACTIONS LAWS OF

6   CALIFORNIA AND THE UNITED STATES, THESE INJUSTICES WILL GO

7   WITHOUT THE POSSIBILITY OF REMEDY.

8       **THE COURT:**  OKAY.  AND THEN, SIR, WOULD YOU LIKE TO

9   RESPOND?

10      **MR. PUGLISI:**  IF I COULD, YOUR HONOR, AND IT WOULD BE

11  TWOFOLD.  FIRST, IF YOU LOOK AT THE CASE LAW WHEN IT TALKS

12  ABOUT THE INJUSTICE, WHAT MOST OF THOSE CASES TALK ABOUT IS

13  SOMEBODY WHO HAS COMMINGLED THEIR ASSETS, THEY DON'T OBEY THE

14  CORPORATE FORMALITIES, YOU HAVE AN UNDERCAPITALIZED CORPORATION

15  OUT THERE, THAT IF YOU SUED IT YOU WOULD NEVER GET ANY MONEY

16  BECAUSE IT'S UNDERCAPITALIZED.  THINGS OF THAT NATURE.  NONE OF

17  WHICH IS ALLEGED HERE.  AND WE HAVE SUBMITTED EVIDENCE, WHICH

18  YOU ARE ALLOWED TO DO IN A MOTION TO QUASH, FROM OUR AUDITORS,

19  FROM OUR OFFICERS, SAYING THAT WE DO FOLLOW CORPORATE

20  FORMALITIES.

21      YOU HAVE THE AUDITOR FROM SWITZERLAND AND THE AUDITOR

22  FROM THE UNITED STATES, BOTH SAYING THESE GUYS ARE BOTH AT

23  ARM'S LENGTH, THEY ARE BOTH ADEQUATELY CAPITALIZED, THEY OBEY

24  THE CORPORATE FORMALITIES.  THAT IS THE KIND OF INJUSTICE THEY

25  ARE TALKING ABOUT.

1      WHEN YOU GET INTO THESE CLAIMS ABOUT GEEZ, THESE
2  OTHER JURISDICTIONS WOULDN'T RECOGNIZE A CLASS ACTION OR IT MAY
3  NOT ACCEPT MY LAWSUIT, THEREFORE I HAVE TO SUE HERE, THAT IS
4  NOT THE KIND OF INJUSTICE YOU ARE LOOKING FOR FOR ALTER EGO.
5  THAT IS CLEAR FROM THE CASE LAW.
6      I WOULD ALSO POINT OUT THAT IT'S IMPORTANT -- AND
7  THERE ARE TWO DOCUMENTS.  AND THE ONE THAT EVERYBODY AGREES YOU
8  CAN TAKE JUDICIAL NOTICE OF IS THE EXHIBIT 1 TO THEIR
9  REQUEST -- TO THE PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE.  AND
10 I BROUGHT WITH ME TWO DOCUMENTS BECAUSE I THINK, REALLY, IN
11 ESSENCE, THESE TWO DOCUMENTS -- WHICH ARE BOTH UNDISPUTED.
12 THEY ARE PLAINTIFF'S RECORDS.  I CAN SHARE THEM WITH THE COURT
13 IF YOU WANT BECAUSE IT MAKES IT EASY, AND I HAVE AN EXTRA COPY,
14 AS WELL, FOR COUNSEL.
15      **THE COURT:**  SURE.  LET MR. EPPSTEINER HAVE HIS COPY
16 AND YOU CAN HAND UP ONE FOR ME.
17      **MR. PUGLISI:**  AND I HAVE A COUPLE EXTRAS BECAUSE I
18 FIGURED THERE ARE OTHER PEOPLE IN THE COURTROOM, IF SOMEBODY
19 WANTS TO LOOK AT THEM.
20      **THE COURT:**  SURE.  OKAY.  I HAVE GOT THESE.
21      **MR. PUGLISI:**  SO THE FIRST ONE I WOULD START WITH IS
22 THE REQUEST FOR JUDICIAL NOTICE, EXHIBIT 1, WHICH -- WE ALL
23 AGREE THERE IS NO DISPUTE HERE.  WE HAVEN'T OBJECTED TO IT.
24 THIS IS WHAT THE HONG KONG AUTHORITY THAT CONTROLS TELEPHONES
25 IN HONG KONG HAS SAID YOU NEED TO DO FOR DISCLOSURES AT PAY

1    PHONES.  AND IF YOU LOOK DOWN AT PARAGRAPH SIX, THEY'VE

2    UNDERLINED SOME MATERIAL.  THAT'S WHAT THEY UNDERLINE IN THEIR

3    PAPERS.  BUT I THINK IT'S IMPORTANT TO READ THE WHOLE THING.

4    IT STARTS OUT.  IT SAYS THE FOLLOWING INFORMATION MUST BE

5    DISPLAYED AT EACH OF THE PAY PHONES.  THE TARIFFS FOR LOCAL

6    CALLS.  THEN IS SAYS THE DISPLAY OF THE TARIFFS FOR EXTERNAL

7    CALLS, IE LONG DISTANCE/INTERNATIONAL, IS NOT COMPULSORY,

8    TAKING INTO ACCOUNT THE PHYSICAL CONSTRAINT AT THE PAY-PHONE

9    LOCATIONS.

10           SO IN OTHER WORDS, THE LEGISLATIVE GROUP IN HONG KONG

11   HAS SAID, YOU KNOW WHAT?  THERE IS NO WAY YOU CAN PUT ALL THOSE

12   RATE FILINGS UP THERE ON YOUR PAY PHONE BECAUSE OF THESE

13   CONSTRAINTS AND THE AMOUNT OF SPACE YOU HAVE.  THEY HAVE MADE

14   THAT DECISION.

15           SO THEN THEY SAY AS A SUBSTITUTE.  SO IN PLACE OF

16   THAT, AS A SUBSTITUTE TO THE DISPLAY OF THE TARIFFS FOR

17   EXTERNAL CALLS, THE FTNS LICENSEES AND PRIVATE PHONE SERVICE

18   PROVIDERS ARE REQUIRED TO DISPLAY A TOLL-FREE TELEPHONE NUMBER

19   FOR ACCESS TO THE RELEVANT FTNS LICENSEE SO THAT MEMBERS OF THE

20   PUBLIC MAY MAKE A FREE-OF-CHARGE TELEPHONE CALL TO THE RELEVANT

21   FTNS LICENSEE IN CASE THEY NEED TO MAKE INQUIRY ABOUT THE

22   TARIFFS INFORMATION FOR EXTERNAL CALLS.

23           SO HONG KONG HAS SAID YOU DON'T HAVE TO POST THEM,

24   BUT YOU DO HAVE TO GIVE US A TELEPHONE NUMBER THAT YOU CAN CALL

25   TO GET IT.  THAT LEADS US TO THE SECOND DOCUMENT.

1      THIS IS THEIR ALLEGATION.  THIS IS A PICTURE FROM

2  THEIR FIRST AMENDED COMPLAINT.  IT'S DOCUMENT 13, PAGE 15.  I

3  BELIEVE IT'S PART OF PARAGRAPH 503.  AND WHILE THE QUALITY

4  ISN'T GOOD -- I THINK IT'S BETTER, ACTUALLY, IN THE FILE -- IF

5  YOU LOOK AT THE ELECTRONIC FILE THROUGH THE PACER.  BUT IF YOU

6  LOOK AT TARIFF, YOU'LL SEE LOCAL CALLS.  HONG KONG, $1 FOR FIVE

7  MINUTES.  WELL, THAT IS CONSISTENT.  TARIFFS FOR LOCAL CALLS

8  ARE SUPPOSED TO BE PUBLISHED.  THEY DID THAT.

9      SECOND, INTERNATIONAL CALLS.  PLEASE CALL.  AND IT

10  LOOKS LIKE 1281566, OR 88, TO INQUIRE.  BY THEIR OWN COMPLAINT,

11  BY THE LAW IN HONG KONG, IT IS CLEAR THAT THIS RATE INFORMATION

12  WAS DISCLOSED.

13      SO TO SAY THAT WELL, YOU KNOW, BUT IF I HAVE TO RELY

14  ON HONG KONG LAW, IF I HAVE TO GO TO HONG KONG, THEY ARE GOING

15  TO LOOK AT THEIR LAW AND THEY ARE GOING TO SAY GEEZ, GUYS, THEY

16  HAVE COMPLIED WITH WHAT OUR AGENCY HAS SAID.  SO TO SAY WELL,

17  THAT IS NOT FAIR; I HAVE TO SUE IN CALIFORNIA, AS A CANADIAN

18  CITIZEN, FOR CONDUCT THAT INCURRED IN HONG KONG, BECAUSE IF I

19  GO TO THE PLACE WHERE IT OCCURRED, THEIR LAWS SAY THERE IS NO

20  CAUSE OF ACTION HERE, WOULDN'T SEEM TO BE UNJUST IN THE SENSE

21  OF THE ALTER EGO LAW.  IT BEARS TO MIND THAT THE LAWSUIT IN AND

22  OF ITSELF WOULD SEEM TO BE UNJUST.

23      SO THAT IS WHAT I WOULD HAVE TO SAY ABOUT THE ALTER

24  EGO UNJUST ARGUMENT, YOUR HONOR.

25      **THE COURT:**  OKAY.  THANKS.

1      MR. EPPSTEINER, YOU WANT TO RESPOND TO THAT, SIR?

2      **MR. EPPSTEINER:**  I'LL TAKE THE FIRST LAST.  IN THE

3  COMPLAINT, AT PARAGRAPH 103 --

4      **THE COURT:**  103?

5      **MR. EPPSTEINER:**  YES.

6      **THE COURT:**  THANKS.

7      **MR. EPPSTEINER:**  -- THE PLAINTIFFS ALLEGE THAT THE

8  AUTOMATED OPERATOR -- MEANING AT THIS 800 NUMBER -- STATES THAT

9  THE RATE FOR CALLS FROM HONG KONG TO CANADA OR THE UNITED

10  STATES IS EIGHT HONG KONG DOLLARS OR THE EQUIVALENT OF $1.04.

11  AND THAT WASN'T WHAT HE WAS CHARGED.

12      SO I BELIEVE ACTUALLY WHAT COUNSEL HAS DONE IS

13  HIGHLIGHT WHAT IT IS THAT IS ONE OF -- THE CRUX OF WHAT IT IS

14  THAT WE ARE COMPLAINING ABOUT IN THE LAWSUIT.

15      BUT THE SECOND IS -- THE ALTER EGO INJUSTICE IS THIS:

16  THE ANALOGY THAT I THINK IS MOST APT IS THIS CASE INVOLVES A

17  SINGLE PAIR OF PANTS.  AND THE GALICOTS ARE THE PAIR OF PANTS.

18  AND BBG GLOBAL IS THE RIGHT POCKET.  AND BBG COMMUNICATIONS IS

19  THE LEFT POCKET.  AND THEY GO TO GREAT LENGTHS TO TELL THE

20  COURT AND TO ARGUE THAT WHAT HAS BEEN LABELED AS AN ACRONYM,

21  THE TSRA, TELECOMMUNICATIONS SERVICE ROYALTY AGREEMENT, ENTERED

22  INTO BETWEEN THE TWO COMPANIES IN 2007 -- THAT THIS IS AN

23  ARMS-LENGTH AGREEMENT, THE POCKETS REALLY AREN'T IN THE SAME

24  PAIR OF PANTS, IT'S NO DIFFERENT THAN IF BBG GLOBAL ENTERED

25  INTO A CONTRACT WITH SPRINT OR ANOTHER PUBLICALLY TRADED LARGE

20

1   COMMUNICATIONS COMPANY.

2          BUT THIS COMPLETELY DISREGARDS THE FACT THAT THESE

3   POCKETS ARE ALL IN THE SAME PAIR OF PANTS.  SO THE IDEA THAT,

4   NUMBER ONE, THERE IS AN AGREEMENT AND THEREFORE IT BLESSES IT,

5   FORGETS THE FACT THAT THESE ARE POCKETS IN THE SAME PAIR OF

6   PANTS.  THE GALICOTS OWN BOTH SIDES OF THE EQUATION.  SO THE

7   INJUSTICE IS THAT THE GALICOTS CREATE AN ENTITY IN SWITZERLAND

8   AND CLAIM JUST WHAT THEY HAVE IN THIS CASE.  IT'S BEYOND THE

9   JURISDICTION OF THE UNITED STATES, AND BEYOND THE LAW OF

10  CALIFORNIA BECAUSE WE ARE GOING TO USE THE COMPANY THAT IS OUR

11  OTHER POCKET TO PROVIDE ALL THE SERVICES.

12         IN FACT, WE ARE GOING TO MEMORIALIZE THAT IN THE

13  TSRA.  WHEN YOU LOOK AT THE TSRA, THE QUESTION THAT COMES TO

14  MIND IS WHAT, IF ANYTHING, IS IT THAT BBG GLOBAL DOES.  BECAUSE

15  BBG COMMUNICATIONS HANDLES ALL BILLING AND COLLECTING.  THEY

16  DETERMINE THE RATE FOR SERVICES FOR TELEPHONE CALLS BILLED TO

17  CREDIT CARDS AND THE VALIDATION AND RATING OF CERTAIN CALLS

18  BILLED THROUGH LEC'S.  THEY HANDLE ALL ADMINISTRATIVE,

19  INCLUDING BOOKKEEPING, BILL PAYMENT, LEGAL SUPPORT, DATABASE

20  MANAGEMENT.  THEY PAY ALL OF THE BILLS FOR BBG, INCLUDING

21  COMMISSIONS TO SALES REPRESENTATIVES WHO FIND THESE NEW

22  CONTRACTS.  AS AN EXAMPLE, THE CONTRACT THAT WAS ENTERED INTO

23  WITH HONG KONG.  THEY ALSO INSTALL THE PHONES AND DO THE PBX

24  PROGRAMMING.

25         FURTHERMORE, THEY PROVIDE BBG COMMUNICATIONS THE

1  CUSTOMER SUPPORT.  BBG COMMUNICATIONS SHALL PROVIDE HIGH LEVEL

2  ON-SITE CUSTOMER SERVICES TO BBG GLOBAL.

3       WHEN YOU GO THROUGH THIS AND YOU LOOK AT ALL OF THE

4  THINGS THAT BBG COMMUNICATIONS IS DOING FOR GLOBAL, YOU SCRATCH

5  YOUR HEAD AND YOU SAY:  WHAT IS THERE LEFT FOR GLOBAL TO DO?

6  AND WHEN YOU CONSIDER THE FACT THAT IT SHARES -- THAT THE TWO

7  PAIR -- THE COMPANIES ARE THE TWO POCKETS ON A SINGLE PAIR OF

8  PANTS -- EG, THE GALICOTS OWN BOTH OF THEM -- THE INJUSTICE IS

9  THAT BY THE STRUCTURE THEY'VE CREATED THEY'VE OPERATED THEIR

10  COMPANY OUT OF CALIFORNIA THROUGH THE FUNCTIONAL PERFORMANCE OF

11  COMS EMPLOYEES, BUT YET ARE SEEKING THE PROTECTION OF BEING IN

12  A FOREIGN JURISDICTION -- EG, SWITZERLAND.

13       SO THE INJUSTICE IS THE VERY NATURE OF THAT THIS IS A

14  SHAM SEPARATION.  THEY ARE REALLY THE SAME.  WHEN BBG GLOBAL

15  PAYS COMMUNICATIONS, BUT -- I'M TAKING A DOLLAR FROM MY LEFT

16  POCKET AND PUTTING IT IN MY RIGHT POCKET, I'M NOT PAYING

17  MYSELF.  AND BBG COMMUNICATIONS -- GLOBAL IS NOT PAYING

18  COMMUNICATIONS.  THAT IS THE ESSENCE OF THE ALTER EGO SHAM, IS

19  THAT IT'S A SINGLE PAIR OF PANTS; EACH COMPANY IS A POCKET IN

20  THE PAIR OF PANTS.  NO MATTER IF THEY'RE SEPARATE POCKETS; THEY

21  ARE STILL OWNED BY THE GALICOTS.  THEY CREATED THE ENTITY IN

22  SWITZERLAND TO DO JUST WHAT THEY HAVE DONE:  TO BE ABLE TO FILE

23  A MOTION TO CONTEST THIS COURT'S POWER OVER THEM DESPITE THE

24  FACT THAT THEY RESIDE IN THE STATE AND USE THE EMPLOYEES THAT

25  ARE HERE, THEIR BANK ACCOUNT THAT IS HERE TO CARRY OUT THE

22

1   SERVICE PROVISION AND THE OBLIGATIONS THEY HAVE UNDER THEIR

2   CONTRACTS WITH AIRPORTS, TRAIN STATIONS AND HOTELS.  THAT IS

3   THE INJUSTICE.

4          **THE COURT:**  WHEN YOU WERE READING MOMENTS AGO ABOUT

5   THE RESPECTIVE DUTIES AND FUNCTIONS, YOU WERE READING FROM THE

6   2007 CONTRACT?

7          **MR. EPPSTEINER:**  YES.  AND THAT CONTRACT IS AN

8   EXHIBIT TO A DECLARATION PROFFERED BY BBG GLOBAL.  IT IS

9   MS. FEDIER'S DECLARATION.

10          **THE COURT:**  AND PART OF PROBLEM WITH THIS WHOLE

11   MOTION IS IT'S A MOTION TO DISMISS.  WE HAVE ALL THIS COMPETING

12   EVIDENCE.  I'M NOT INCLINED TO TURN IT INTO A SUMMARY JUDGMENT

13   AT THIS POINT.  AND THAT IS WHY SO MANY OF THE FACTS IN YOUR

14   JUDICIAL NOTICE REQUEST -- YOU HAVE A FEW HERE THAT APPARENTLY

15   AREN'T OBJECTED TO, BUT BY AND LARGE THE COURT WOULD BE

16   REQUIRED TO EVALUATE THE EVIDENCE AND MAKE FINAL FINDINGS,

17   WHICH I DON'T THINK IS APPROPRIATE.

18          **MR. EPPSTEINER:**  YOUR HONOR, COULD I POINT OUT GIVEN

19   THE COMMENT THAT YOU HAVE MADE ABOUT THE EVIDENCE, THAT I AM

20   NOT USING EVIDENCE THAT WAS PROFFERED BY THE PLAINTIFF.  THE

21   EVIDENCE, MEANING, THE TSRA, IS EVIDENCE THAT WAS PROFFERED BY

22   THE DEFENDANT.

23          **THE COURT:**  AND I AM NOT DISPUTING THAT.  YOU KNOW,

24   THE INTERPRETATION, THE QUALIFICATIONS, MUCH OF WHAT HAS BEEN

25   BROUGHT TO BEAR HERE, IS OVERWHELMING FOR THE EXERCISE OF THE

23

1   MOTION TO DISMISS.  AND I THINK, ULTIMATELY, THIS WHOLE

2   TRANSACTION IS THE SAME.  IT'S BOTH THE JURISDICTIONAL BASIS

3   AND THE MERITS BASIS OF THE CASE.

4           I THINK FROM WHAT WE HAVE NOW DISCUSSED, I WILL GIVE

5   YOU MY OBSERVATIONS AS TO THE SPECIFIC AND GENERAL

6   JURISDICTION.  I THINK IT RISES OR FALLS ON THE ALTER EGO.  I

7   WAS SAYING EARLIER THAT THE FIRST PRONG, I THINK, IS MET.  NOW

8   THAT WE HAVE TALKED ABOUT THE DECLARATION AS IT AMPLIFIES THE

9   TSRA AND WHATNOT, I THINK YOU HAVE SUFFICIENTLY PLED THE ALTER

10  EGO, AT LEAST FOR PURPOSES OF A MOTION TO DISMISS FOR PERSONAL

11  JURISDICTION.

12          WHETHER OR NOT YOU ARE GOING TO SURVIVE A SUMMARY

13  JUDGMENT IS ANOTHER STORY, AND SO I AM GOING TO DENY THE MOTION

14  ON THAT GROUND.  I MEAN, YOU GUYS CAN ARGUE IT FOR HOURS, BUT

15  I'M SIMPLY NOT GOING TO SAY YOUR EVIDENCE IS BETTER THAN

16  THEIRS.  THAT IS NOT WHAT WE DO AT THE MOTION TO DISMISS STAGE.

17  THE DECLARATION ITSELF, I THINK, FILLS IN THE BLANK AND WE CAN

18  DEAL WITH IT AT SUMMARY JUDGMENT AT A LATER TIME.

19          LET'S MOVE TO THE SUBJECT-MATTER JURISDICTION THAT

20  COMMUNICATIONS -- BBG COMMUNICATIONS HAS BROUGHT AS ONE OF TWO

21  OF ITS CHALLENGES -- OR THREE OF ITS CHALLENGES, INCLUDING THE

22  FAILURE TO STATE A CLAIM AND THE CLASS ACTION ALLEGATION.

23          HERE AS A 12(B)(1), WE AREN'T RESTRICTED AS WE ARE

24  WITH THE LATER 12(B)(6) TO THE PLEADINGS.  WE CAN LOOK AT THIS

25  EXTERNAL EVIDENCE AND WHATNOT.  THIS IS ONE OF TWO TYPES OF

1    12(B)(1) MOTIONS, THE FACTUAL ATTACK ON THE SUBJECT-MATTER

2    JURISDICTION AS OPPOSED TO MERELY THE FACIAL.

3         HERE IT IS COMMUNICATIONS' ARGUMENTS THAT THERE IS A

4    PRESUMPTION AGAINST EXTRATERRITORIALITY WHICH BARS THE CLAIMS,

5    SINCE WOOD IS ASKING THE COURT TO REACH EXTRATERRITORIALITY TO

6    CONDUCT OCCURRING ENTIRELY IN HONG KONG WITH A CANADIAN

7    CITIZEN, A HONG KONG PAY PHONE, AND A SWISS PROVIDER OF

8    CARD-SWIPE SERVICES; THAT INTERNATIONAL COMITY MANDATES

9    DISMISSAL OF THE COMPLAINT SINCE HONG KONG REGULATES THE

10   PAY-PHONE AND TELEPHONE SERVICES, MUCH LIKE WAS POINTED OUT

11   MOMENTS AGO ON THE OTHER MOTION; AND THAT THESE SERVICES WERE

12   ALL WITHIN HONG KONG'S JURISDICTION.

13        AND THIRD, THAT CALIFORNIA LAW DOES NOT APPLY BECAUSE

14   HONG KONG AND CALIFORNIA HAVE ALLEGEDLY CONFLICTING LAWS.  HONG

15   KONG'S INTEREST IN APPLYING ITS LAWS IS STRONGER THAN

16   CALIFORNIA'S ALLEGED INTEREST -- GIVEN THIS IS A CANADIAN

17   CITIZEN -- FOR ALLEGED DECEPTIVE PRACTICES IN HONG KONG.  AND

18   THE DECEPTIVE PRACTICES WOULD MOST LIKELY HARM OR IMPAIR THE

19   LAWS OF HONG KONG.

20        MR. WOOD, I KNOW, HAS COUNTERED HERE WITH SAYING THAT

21   THE CONDUCT AT ISSUE OCCURRED WITHIN THE UNITED STATES, AGAIN,

22   WITH THIS ALTER EGO DRIVING THE CASE.  SO THE PRESUMPTION

23   AGAINST EXTRATERRITORIALITY DOES NOT APPLY.

24        MR. WOOD CLAIMS COMITY IS DISTINCT FROM A FACTUAL

25   ATTACK ON SUBJECT-MATTER JURISDICTION, AND ALSO ARGUES THAT

1   CALIFORNIA HAS A STRONG INTEREST HERE IN REGULATING THE CONDUCT

2   OF COMPANIES THAT DO BUSINESS IN THE STATE; APPLYING CALIFORNIA

3   LAW IN THIS ACTION WOULD NOT BE A VIOLATION OF DUE PROCESS.

4        I DON'T THINK THAT WE HAVE DEMONSTRATED -- OR THE

5   PARTIES HAVE DEMONSTRATED THAT THE LAWS ARE MATERIALLY

6   DIFFERENT OR WE CAN WEIGH AT THIS POINT THE RELATIVE INTEREST

7   OF THESE DIFFERENT COUNTRIES.  THE ARGUMENTS THAT -- AND I SAID

8   THIS JUST MOMENTS AGO -- THE ARGUMENTS REGARDING SUBJECT-MATTER

9   JURISDICTION REALLY GO TO THE SAME ARGUMENTS THAT ARE THE

10  MERITS INFORMATION -- OR THE MERITS BASIS FOR THE CLAIM -- THAT

11  IS, THE CONDUCT HERE IN CALIFORNIA AND THE TYPE OF CONDUCT

12  INVOLVED.

13       YOU KNOW, IT'S TRUE THAT IN 12(B)(1) WE CAN GO

14  OUTSIDE THE PLEADINGS, CONSIDER EXTRINSIC EVIDENCE.  HOWEVER,

15  THERE IS A LIMITATION WHERE THE FACTS UNDERPINNING

16  SUBJECT-MATTER JURISDICTION ARE INEXTRICABLY INTERTWINED WITH

17  THE MERITS OF THE PLAINTIFF'S CASE OR CLAIM.  IN SUCH A CASE,

18  IT IS TYPICAL FOR THE COURTS TO DENY THE 12(B)(1) AND ALLOW THE

19  MATTER TO BE RESOLVED LATER ON AT SUMMARY JUDGMENT.

20       FOR A COURT TO RESOLVE THE RELEVANT FACTUAL DISPUTES

21  ONLY AFTER APPROPRIATE DISCOVERY IS REALLY MORE THE STANDARD

22  HERE.  THERE IS A LOT OF CONFLICTING EVIDENCE, AS I SAID.  THAT

23  IS WHY I AM NOT GOING TO FIND THE FACTS OR TO CALL WHOSE

24  EVIDENCE REIGNS SUPREME.  BECAUSE HERE TO DECIDE THAT WOULD BE

25  DECIDING THE MERITS, AND THE PLAINTIFF ULTIMATELY, IF THEY GET

1    THAT FAR, WOULD BE ENTITLED TO HAVE A JURY FIND THE FACTS IN

2    THIS CASE.

3          I THINK THAT THEY ARE SO INTERTWINED AT THIS POINT

4    THAT AT THE MOTION TO DISMISS STAGE IT WOULD BE INAPPROPRIATE

5    TO MAKE THE FACTUAL FINDINGS, AS URGED BY THE PARTIES.  I AM

6    GOING TO DENY THE MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER

7    JURISDICTION AT THIS STAGE, RECOGNIZING THE INTERTWINEMENT THAT

8    IS NOT RECONCILABLE IN THIS FORM OR ON THIS RECORD, EVEN IF I

9    WERE TO ACCEPT ALL OF THE DISPUTED FACTS THAT WERE ALLEGEDLY

10   SUBMITTED FOR JUDICIAL NOTICE AS MATTERS THAT EFFECTIVELY HAD

11   NO DISPUTE.  SO THAT MOTION IS DENIED.

12         FAILURE TO STATE A CLAIM IS THE 12(B)(6) PORTION OF

13   COMMUNICATIONS' CLAIM.  THEY ATTACK -- THIS ATTACKS THE THREE

14   CAUSES OF ACTIONS -- OR, ACTUALLY, MISNUMBERED.  WE HAVE A

15   FIRST, SECOND AND A FOURTH CAUSE OF ACTION.  THE FIRST,

16   VIOLATION OF B&P CODE 17200.  THE SECOND, VIOLATION OF THE

17   CALIFORNIA CONSUMER LEGAL REMEDIES.  AND THE THIRD IN SEQUENCE,

18   BUT LABELED FOURTH, IS MONEY HAD AND RECEIVED, MONEY PAID,

19   RESTITUTION, AND UNJUST ENRICHMENT.

20         AND IN THE 12(B)(6) SETTING, WE'RE LOOKING AT THE

21   LEGAL SUFFICIENCY OF THE PLEADINGS.  AND THE COURT CAN DISMISS

22   WHERE THE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH

23   RELIEF CAN BE GRANTED.

24         LET ME REVIEW THE ARGUMENTS FOR THE RECORD, SINCE

25   THIS RECORD IS GOING TO SUFFICE FOR THE REASONS FOR A DECISION

1  HERE WITHOUT FURTHER SIGNIFICANT ORDER.  COMMUNICATIONS IS

2  ARGUING AS FOLLOWS:  IT DID NOT MAKE THE PURPORTED

3  NONDISCLOSURE ABOUT WHICH THE PLAINTIFF COMPLAINS.  INSTEAD, IT

4  WAS HK BROADBAND THAT MADE THE ALLEGED NONDISCLOSURE.  THE

5  CLAIMS ARE BARRED UNDER THE DORMANT COMMERCE CLAUSE WHICH

6  LIMITS THE AUTHORITY OF STATES TO ENACT LEGISLATION AFFECTING

7  INTERSTATE COMMERCE.  THE CLAIMS ARE BARRED UNDER THE SAFE

8  HARBOR DOCTRINE BECAUSE THE CONDUCT ALLEGED HERE IS LEGAL IN

9  HONG KONG AND UNDER HONG KONG LAW.  THE SAFE HARBOR DOCTRINE

10  APPLIES TO BAR BOTH THE UCL AND CLRA CLAIM, SINCE THEY ARE

11  BASED ON THE SAME CONDUCT.

12          THE UCL CLAIM FOR UNLAWFUL CONDUCT FAILS IN THE

13  DEFENDANTS' EYES, BECAUSE THE PLAINTIFF HAS TO ALLEGE THAT THE

14  DEFENDANTS VIOLATED A PREDICATE LAW.  HERE, WOOD IDENTIFYING

15  THE CLRA AND THE FCA STATUTES AS PREDICATES.  HOWEVER, THE FCA

16  APPLIES ONLY TO COMMUNICATIONS THAT ORIGINATE OR TERMINATE IN

17  THE U.S., AND THE CLRA DOES NOT APPLY TO EITHER, GIVEN THE

18  JURISDICTIONAL ARGUMENT THAT HAS BEEN ASSERTED.

19          THE CLRA CLAIM FOR UNCONSCIONABILITY ALLEGEDLY FAILS

20  BECAUSE THE ACTS HERE OR THE RESULTS WOULD NOT SHOCK THE

21  CONSCIOUS.  WOOD KNOWING THAT HE WOULD PAY SOMETHING FOR THE

22  CALLS, AND THAT HE COULD HAVE FOUND OUT MUCH MORE, IT'S

23  CLAIMED, BY PRESSING ZERO.  I RECOGNIZE, AGAIN, THAT IS IN

24  DISPUTE.

25          ALSO, THAT NO REASONABLE PERSON WOULD EXPECT A

1   ONE-HOUR-LONG CALL OR THEREABOUTS, FULL OF TALK TIME FOR THE

2   FIVE CALLS MADE, TO BE SOMETHING OF $7 OR LESS.

3          IT'S CLAIMED THAT THE MONEY HAD AND RECEIVED CLAIM,

4   THE MONEY PAID, RESTITUTION AND UNJUST ENRICHMENT FAILS BECAUSE

5   WOOD DID NOT ALLEGE THE ESSENTIAL ELEMENTS AND HAD, IN FACT,

6   RECEIVED EXACTLY WHAT HE PAID FOR:  51 MINUTES OF CALLS FROM

7   HONG KONG TO CANADA.

8          NOW, WOOD'S COUNTER TO ALL OF THIS IS THAT BBG IS

9   RESPONSIBLE FOR THE NONDISCLOSURES.  AND, OF COURSE, THE

10  ALLEGATION, AGAIN, IS NOT SPECIFIC AS TO WHICH.  AND THERE IS A

11  FACTUAL DISPUTE THAT HAS BEEN RAISED BY THE VARYING EVIDENCE

12  THAT HAS BEEN BROUGHT BEFORE THE COURT -- OR ATTEMPTED TO BE

13  BROUGHT BEFORE THE COURT.

14         SECOND, THE DORMANT COMMERCE CLAUSE IS INAPPLICABLE

15  BECAUSE THE WRONGFUL CONDUCT EMANATED FROM CALIFORNIA.  AGAIN,

16  HOTLY, FACTUALLY DISPUTED CLAIM.  HONG KONG LAW DOES NOT

17  PROVIDE A SAFE HARBOR AGAINST THE UCL.  THIS IS SUPPORTED BY

18  THE REFERENCE TO JUDGE HUFF'S SIMILAR FINDING IN THE *SAFIR*

19  CASE, S-A-F-I-R, IN A MOTION TO DISMISS ORDER, WHERE SHE SAID

20  SHE WASN'T AWARE OF ANY BINDING CASE THAT HOLDS A FOREIGN

21  STATUTE CAN PROVIDE A SAFE HARBOR.

22         WOOD ALSO CLAIMS THEY HAVE SUFFICIENTLY PLED THE UCL

23  UNLAWFUL CLAIM.  AND THE CALIFORNIA SUPREME COURT HAS REJECTED

24  THE NEED FOR A PREDICATE STATUTE TO PROVIDE A RIGHT OF ACTION.

25  MOREOVER, THAT THE FCA APPLIES TO BBG SINCE BBG IS A U.S.-BASED

1    CARRIER.  AGAIN, HOTLY, FACTUALLY DISPUTED.

2            WOOD'S CLRA CLAIM, HE ASSERTS, BASED ON

3    UNCONSCIONABILITY, IS SUFFICIENTLY PLED SINCE IT'S PLED THAT HE

4    WOULD NOT HAVE USED THE SERVICES HAD HE KNOWN THE TERMS OF THE

5    SERVICE.  AGAIN, ALL OF WHICH IS FACTUALLY DISPUTED.  ONCE

6    AGAIN, THE PARTIES ARE ESSENTIALLY LOOKING FOR MORE OF A

7    SUMMARY JUDGMENT THAN A MOTION TO DISMISS, WHERE WE ARE LOOKING

8    AT THE QUALITY OF THE PLEADINGS UNDER 12(B)(6) AND THE

9    ESSENTIAL ALLEGATIONS, NOT DETERMINING THEIR MERIT AT THIS

10   POINT.

11           I DO CONCLUDE THAT MR. WOOD HAS SUFFICIENTLY PLED THE

12   CAUSES OF ACTIONS.  NOT THAT HE IS RIGHT OR HE IS GOING TO WIN,

13   BUT HE SAID ALL THE RIGHT THINGS.  AS WITH THE SUBJECT-MATTER

14   JURISDICTION DETERMINATION, THE PARTIES' ARGUMENTS STEM FROM

15   QUESTIONS OF FACT THAT ARE NOT RESOLVABLE HERE PROPERLY AND

16   SHOULD BE SUBJECT TO DISCOVERY AND THEN ADDRESSING IN AN

17   APPROPRIATE FORM LIKE A SUMMARY JUDGMENT.

18           SO I AM GOING TO DENY THE MOTIONS FOR FAILURE TO

19   STATE A CLAIM, AND MOVE TO THE CLASS ACTION ALLEGATIONS.  HERE,

20   BBG COMMUNICATIONS IS SAYING THAT THE CLASS ALLEGATIONS SHOULD

21   BE DISMISSED UNDER RULE 23(C)(1).

22           SECOND, WOOD'S CLASS DEFINITION IS OVERBROAD AND

23   UNMANAGEABLE.

24           AND THIRD, THE COMMON ISSUES OF LAW AND FACT

25   PREDOMINATE.  AND I FIND THAT WOOD SUFFICIENTLY PLED THE CLASS

1   ACTION ALLEGATIONS.  THE REQUEST FOR DISMISSAL, BASED ON

2   QUESTIONS OF FACT WITH REGARD TO THE DEFINITION BEING OVERBROAD

3   OR UNMANAGEABLE, THE QUESTIONS OF WHETHER LAW OR FACT

4   PREDOMINATE ARE BEST SUITED FOR A CLASS CERTIFICATION MOTION.

5   AT THE PLEADING STAGE MR. WOOD PLED THE NECESSARY RECIPE OR

6   INGREDIENTS.  WE'LL TEST THE BONA FIDES OF THOSE AT THE CLASS

7   CERTIFICATION HEARING AT SOME POINT DOWN THE ROAD.

8        AND SO IN A VERY LONG SUMMARY FASHION, THE MOTIONS

9   ARE DENIED FOR THE REASONS STATED.  THE RECORD WILL REFLECT THE

10  COURT'S REASONING AND ANALYSIS.  WE'LL ISSUE A BRIEF ORDER JUST

11  TO CONFIRM THE ULTIMATE FINDINGS, BUT THE MATTER CAN NOW GO

12  FORWARD TO THE NEXT STEP.

13       AND I AM SENSITIVE TO THE DEFENSE'S MANY ARGUMENTS

14  AND SO FORTH, AND I APPRECIATE THAT.  THIS IS JUST NOT THE

15  RIGHT FORUM OR THE RIGHT TIME IN THE CASE TO ASSERT THOSE ON

16  THE PLEADINGS BASIS.  AND FOR THE REASONS INDICATED, THE

17  MOTIONS ARE DENIED.

18       SO THANK YOU, FOLKS, VERY MUCH.  WE'LL ISSUE A BRIEF

19  ORDER CONCLUDING THE FINAL RESULT HERE.  THE RECORD WILL

20  SUFFICE FOR THE EXPLANATION, AND THEN WE'LL LOOK FORWARD TO

21  SEEING YOU AGAIN ON ANOTHER STEP IN THE EQUATION HERE DOWN THE

22  ROAD.  I CAN RETURN TO YOU THE COURTESY COPIES OF THE EXHIBITS,

23  SIR -- YOLI, HERE THEY ARE -- SO THAT YOU HAVE THOSE.

24       **MR. PUGLISI:**  YOUR HONOR, MAY I BE HEARD BRIEFLY ON

25  THAT MOTION TO DISMISS?

1     **THE COURT:**  IF THERE IS SOMETHING YOU WANT TO ADD FOR

2  THE RECORD, SURE.

3     **MR. PUGLISI:**  I WOULD, IF I COULD, YOUR HONOR.

4     YOU HAD MENTIONED THAT THERE WERE DISPUTED ISSUES

5  WITH RESPECT TO OUR CHALLENGE TO THE JURISDICTION OF THIS

6  COURT.  I WOULD POINT OUT TO YOU THAT THEY NEVER SUBMITTED ANY

7  EVIDENCE IN THAT REGARD SO THERE IS NO DISPUTE.

8     PLUS, THE DOCUMENTS I SHOWED YOU EARLIER DO ESTABLISH

9  CONCLUSIVELY THAT THE LAWS OF HONG KONG SPECIFICALLY APPLY TO

10  THIS SITUATION, WERE FOLLOWED IN THIS SITUATION.  THEY TALK

11  ABOUT WELL, YEAH, BUT IF YOU CALL THE NUMBER -- YOU KNOW, HE IS

12  CLAIMING, WELL, I CALLED THE NUMBER AND I DIDN'T GET ACCURATE

13  INFORMATION.

14     WHAT HE FAILED TO TELL YOU IS IN PARAGRAPH 103, THAT

15  THAT WASN'T OUR CLIENT THAT GAVE HIM THE INFORMATION.  THAT IS

16  THE FTNS LICENSEE, WHICH IS HONG KONG BROADBAND.  WE DIDN'T DO

17  ANYTHING WRONG.

18     WHEN YOU LOOK AT A STATUTE AND YOU HAVE A STATUTE

19  RIGHT ON POINT FROM THE HONG KONG JURISDICTION, AND YOU SEE

20  FROM THEIR OWN ALLEGATIONS OF THE COMPLAINT THAT IT WAS

21  SPECIFICALLY TO THE LETTER OF THE LAW COMPLIED WITH, TO ALL OF

22  A SUDDEN TO ALLOW A CANADIAN CITIZEN TO FORUM SHOP AND COME

23  INTO CALIFORNIA AND SAY, YOU KNOW, WE ARE GOING TO USE YOUR

24  GENERAL CONSUMER PROTECTION LAWS THAT SAY NOTHING MORE THAN YOU

25  CAN'T DO ANYTHING UNLAWFUL, UNFAIR OR FRAUDULENT, TO ALL OF A

1   SUDDEN SAY, YOU KNOW WHAT, WE DON'T CARE ABOUT

2   EXTRATERRITORIALITY ANYMORE.  YOU KNOW, THE FACT THAT -- YOU

3   KNOW, ONLY CONGRESS CAN REACH INTERNATIONAL AFFAIRS AND THEN

4   EVEN ONLY IF IT'S CLEARLY EXPRESSED.  WE DON'T CARE ABOUT

5   COMITY.  WE DON'T CARE ABOUT GIVING THE PEOPLE IN HONG KONG THE

6   ABILITY TO REGULATE THEIR OWN PHONES.  WE DON'T CARE ABOUT

7   CHOICE OF LAW.  WE ARE GOING TO SAY CALIFORNIA MAY HAVE AS MUCH

8   OF AN INTEREST IN REGULATING WHAT IS DISCLOSED AT THE PHONES IN

9   HONG KONG AS THE HONG KONG GOVERNMENT.  THERE IS NO CASE, NOT

10  IN ANY OF THESE PAPERS, THAT HAS EVER ALLOWED THIS TYPE OF

11  THING WHEN IT IS UNCONTRADICTED.  THERE IS NO DISPUTE WHAT THE

12  HONG KONG LAW IS AND THAT IT WAS COMPLIED WITH.

13         THAT ALSO BRINGS UP THE DORMANT COMMERCE CLAUSE AND

14  THE SAFE HARBOR CLAUSE.  YOU CAN'T HAVE A CLEARER EXAMPLE OF A

15  SAFE HARBOR.  THE WHOLE CONCEPT BEHIND THE *CELLTECH* SAFE HARBOR

16  IS NOT LIMITED TO THAT IT HAS TO BE A CALIFORNIA LAW OR ANOTHER

17  STATE'S LAW.  THERE IS NO SUCH LIMITATION IN THAT.  WE'VE NEVER

18  HAD AN OPPORTUNITY TO ADDRESS THAT BECAUSE THAT CAME OUT IN A

19  MINUTE ORDER, ISSUED BY ANOTHER JUDGE, WHICH ISN'T COMPELLING

20  ON THIS COURT OR BINDING ON THIS COURT.  IT IS THE ESSENCE OF

21  WHAT THE SUPREME COURT OF CALIFORNIA HAS SAID SHOULD HAPPEN.

22         AND LET ME TELL YOU WHY.  BECAUSE IF YOU DON'T DO IT,

23  YOU AREN'T GOING TO HAVE BUSINESSES IN CALIFORNIA.  WHO IN

24  THEIR RIGHT MIND WOULD WANT TO COME INTO CALIFORNIA KNOWING

25  THAT, YOU KNOW WHAT, WE CAN DO EXACTLY WHAT WE ARE REQUIRED TO

1   DO IN OTHER JURISDICTIONS -- FOLLOW THE LAW TO THE TEE -- BUT

2   BECAUSE WE WERE IN CALIFORNIA, CALIFORNIA IS GOING TO SAY THIS

3   GENERAL STATUTE MAKES ME GO THROUGH NOT ONLY THESE MOTIONS WE

4   FILED NOW, BUT NOW WHAT COMES NEXT?  YOU SAID IT YOURSELF.

5   CLASS ACTION DISCOVERY.  YOU KNOW HOW EXPENSIVE THAT IS, AND

6   TIME-CONSUMING AND BURDENSOME TO MANAGEMENT?  ALL BECAUSE WHAT?

7   WE FOLLOWED THE LAWS OF THE JURISDICTION AT ISSUE.

8        AND HE CLAIMS THAT WELL, WHEN I CALLED HONG KONG

9   BROADBAND, AS I SHOULD HAVE, THEY DIDN'T GIVE ME THE RIGHT

10  INFORMATION.  NOT THAT WE DIDN'T, BUT THAT HONG KONG BROADBAND.

11  THAT IS IN PARAGRAPH 103.  I CAN EVEN GIVE YOU A LINE

12  REFERENCE.  THAT IS IN PARAGRAPH 103, PAGE 14, LINE 22.  I'M

13  NOT MAKING IT UP, UNLIKE HIM WHEN HE IS PARAPHRASING AN

14  AGREEMENT.  I NEVER GOT AN INTERNAL CITE TO THAT AGREEMENT THAT

15  HE WAS READING IN CONNECTION WITH THE ALTER EGO ARGUMENT.  HE

16  NEVER GAVE US A PAGE WHERE HE WAS SUPPOSEDLY READING THAT.  I

17  AM GIVING YOU SPECIFIC LINES.  I AM GIVING YOU SPECIFIC PAGES.

18  I'M GIVING YOU SPECIFIC DOCUMENTS.

19       AND I AM JUST SAYING I UNDERSTAND YOUR CONCERN WITH

20  REGARD TO WHETHER THERE ARE DISPUTED ISSUES.  HERE, WHEN IT

21  COMES TO THOSE ISSUES OF JURISDICTION, THERE IS NO DISPUTE.

22  AND THERE IS NO CASE IN ANY JURISDICTION THAT THEY HAVE CITED

23  OR THAT ANYBODY HAS CITED -- BECAUSE THERE IS NONE -- THAT SAYS

24  WELL, WE ARE GOING TO ALLOW A GENERAL CALIFORNIA STATUTE TO

25  DICTATE DISCLOSURES THAT THE HONG KONG JURISDICTION -- OR ANY

1   OTHER JURISDICTION ANYWHERE IN THE WORLD SAYS IS PROPER.  THAT

2   IS A HARSH PENALTY TO MAKE SOMEBODY SUFFER BECAUSE THEY HAVE A

3   CALIFORNIA SISTER CORPORATION AND A CANADIAN -- I MEAN, IT IS

4   FORUM-SHOPPING AT ITS FINEST.  AND I APPRECIATE YOUR HONOR

5   GIVING ME A CHANCE TO SPEAK.

6          **THE COURT:**  AND I APPRECIATE THAT.  AND IF THERE IS

7   ALTER EGO, THAT WHOLE EQUATION AND THAT WHOLE ARGUMENT FAILS.

8   IF THERE IS NOT, YOU ARE ABSOLUTELY RIGHT.  THIS MIGHT HAVE

9   BEEN BEST BROUGHT AS AN EARLY SUMMARY JUDGMENT, NOT A MOTION TO

10  CHALLENGE THE PLEADINGS.  BECAUSE I THINK THERE IT'S A

11  DIFFERENT EQUATION.

12          I DON'T KNOW.  MR. EPPSTEINER, IF YOU WANT TO HAVE

13  SOME RESPONSE TO THAT OR COMPLETE YOUR RECORD, YOU CERTAINLY

14  MAY.  I APPRECIATE THE COMMENTS.  I STILL THINK AT THIS

15  PLEADING STAGE THE PLEADINGS ARE SUFFICIENT TO MOVE FORWARD,

16  BUT I WILL HEAR YOU OUT SO EVERYBODY GETS A FAIR CHANCE.

17          **MR. EPPSTEINER:**  AND I WILL KEEP IT BRIEF, YOUR

18  HONOR.  AND MY APPRECIATION TO THE COURT BECAUSE I KNOW THESE

19  WERE VERY THICK PAPERS AND IT'S OBVIOUS FROM THE RECORD THAT

20  YOU HAVE READ THEM THOROUGHLY.  SO MY THANKS AND MY CLIENT'S.

21          TWO THINGS.  ONE, CALIFORNIA DOES HAVE AN INTEREST IN

22  MAKING SURE THAT COMPANIES THAT OPERATE OUT OF CALIFORNIA --

23  AND THERE ARE GREAT BENEFITS.  WE HAVE ALMOST 40 MILLION

24  PEOPLE.  WE HAVE A WEALTHY POPULATION.  WE HAVE A GREAT

25  CLIMATE.  WE HAVE A GREAT EDUCATION SYSTEM.  SO THERE ARE

1   BENEFITS WHEN A COMPANY SETS A PLACE HERE.  AND THERE ARE

2   REASONS WHY THEY DO IT.  AND WE HAVE A TALENTED EMPLOYEE POOL

3   BASE.  SO WHEN THEY DO THAT, THEY HAVE TO COMPLY WITH THESE

4   LAWS.

5          AND IF THEY CONDUCT PART OF THEIR BUSINESS THROUGH AN

6   OVERSEAS CONNECTION, BUT THEY ARE MAKING DECISIONS, THEY HAVE

7   SERVERS, THEY OPERATE OUT OF HERE, THEN THEY HAVE TO ABIDE BY

8   THE LAW OF THIS STATE.

9          **THE COURT:**  AND THAT IS THE WHOLE FACTUAL ARGUMENT.

10  IF YOU DON'T PROVE THE ALTER EGO AND YOU DON'T PROVE THE

11  CONNECTION TO CALIFORNIA, YOU'RE OUT THE DOOR.  YOU PLED IT

12  SUFFICIENTLY.  WHETHER YOU COULD PROVE IT IS A WHOLE OTHER

13  STORY.  AND, REGRETTABLY, THE DEFENSE WILL HAVE TO GO THROUGH

14  THAT EFFORT TO DEAL WITH THAT, BUT GO AHEAD.

15         **MR. EPPSTEINER:**  I RESPECT THE COURT'S COMMENTS THAT

16  IT'S NOW OUR CHARGE TO PROVE WHAT WE HAVE ALLEGED.  WITH REGARD

17  TO THE TSRA, IF THE IMPLICATION IS I SOMEHOW MISLED THE COURT

18  ABOUT IT, I AM REFERRING TO WHAT IS ARTICLE ONE, SECTION 1.1,

19  SUBPARAGRAPHS A, B, C AND 2.1.

20         **THE COURT:**  THAT WAS ATTACHED TO THE DECLARATION

21  OF --

22         **MR. EPPSTEINER:**  MS. FEDIER'S.

23         **THE COURT:**  AND I RECALL GOING THROUGH THAT.  YOU

24  TRIGGERED MY MEMORY.  ALL RIGHT.  I APPRECIATE THE COMMENT OF

25  COUNSEL.  I KNOW IT'S A HARD-FOUGHT ISSUE, AND THE COURT'S

1   RULING STANDS.  WE'LL LOOK FORWARD TO HELPING YOU THROUGH THIS

2   MORASS AS WE GO FURTHER FORWARD.  I APPRECIATE YOUR TIME AND

3   THE CONVICTION THAT EACH SIDE BEARS HERE.

4           THE COURT HAS RULED.  WE'LL BE IN RECESS, AND WE'LL

5   TALK TO YOU FOLKS DOWN THE ROAD AS NEED BE.  SO HAVE A GOOD

6   AFTERNOON.

7           **MR. EPPSTEINER:**  THANK YOU, YOUR HONOR.

8           **MR. PUGLISI:**  THANK YOU, YOUR HONOR.  HAVE A GOOD

9   WEEKEND, YOUR HONOR.

10          **THE COURT:**  YOU, TOO.

11   (PROCEEDINGS CONCLUDED AT 2:53 P.M.)

12                      CERTIFICATION

13          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
     QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
14   STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
     TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE
15   ON SEPTEMBER 23, 2011; THAT SAID TRANSCRIPT IS A TRUE AND
     CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE
16   FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF
     THE UNITED STATES JUDICIAL CONFERENCE.

17

18   DATED:        10/3/11, AT SAN DIEGO, CALIFORNIA.

19          S/N _____
            JEANNETTE N. HILL, OFFICIAL REPORTER, CSR NO. 11148
20

21

22

23

24

25