1  FRED R. PUGLISI, Cal. Bar No. 121822
   NORMA V. GARCIA, Cal. Bar No. 223512
2  VALERIE E. ALTER, Cal. Bar No. 239905
   ELIZABETH S. BERMAN, Cal. Bar No. 252377
3  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
4    Including Professional Corporations
   1901 Avenue of the Stars, Suite 1600
5  Los Angeles, California  90067-6017
   Telephone:    310-228-3700
6  Facsimile:    310-228-3701
   fpuglisi@sheppardmullin.com
7  ngarciaguillen@sheppardmullin.com
   valter@sheppardmullin.com
8  eberman@sheppardmullin.com

9  Attorneys for Specially Appearing Non-Party,
   BBG Global, A.G.

10

11                    UNITED STATES DISTRICT COURT

12                    SOUTHERN DISTRICT OF CALIFORNIA

13 | VLASTIMIL SAJFR AND DAVID | Case No. 10-CV-02341-AJB (NLS)
   | KEEPORTS, on behalf of themselves and all
14 | others similarly situated, | The Honorable Anthony J. Battaglia
   |                            | *Before The Honorable Nita L. Stormes,*
15 |        Plaintiffs,          | *Magistrate*

16 |        v.                   | **JOINT MOTION FOR DETERMINATION
                                    OF DISCOVERY DISPUTE**
17 | BBG COMMUNICATIONS, INC., a
   | Delaware CORPORATION, and DOES 1 - 10,
18 |
   |        Defendant.
19
                                   [Complaint Filed: November 12, 2010]
20                                 Trial Date:  None Set

I.      **INTRODUCTION**

On September 28, 2011, Plaintiffs issued a Rule 30(b)(6) deposition subpoena for non-party BBG Global, A.G.  BBG Global, A.G. seeks to quash the subpoena.

This joint motion presents the following issues relating to this third party subpoena:

1.      Does this Court have personal jurisdiction over BBG Global, A.G., so as to compel its attendance at deposition;

2.      Was the subpoena properly served on BBG Global, A.G.;

3.      Is the subpoena of BBG Global, A.G., effective given it was noticed after, and not served before, the date set by this Court for completion of discovery pursuant to its order dated July 8, 2011 (Dkt. No. 50); and

4.      Assuming the first three issues are resolved against BBG Global, A.G., where should the deposition of BBG Global, A.G.'s designee be noticed – in Switzerland or San Diego, California.

**NON PARTY BBG GLOBAL, A.G.'s ARGUMENT**

1.      **This Court Lacks Personal Jurisdiction Over BBG Global A.G.**

It is hornbook law that a nonparty cannot be compelled to respond to discovery if the Court that issued the subpoena is without personal jurisdiction over the nonparty.  *See Elder-Beerman Stores Corp. g. Federated Department Stores, Inc.*, 45 F.R.D. 515, 516-17 (S.D.N.Y. 1968); *In re Jee*, 104 B.R. 289, n.1, 293 (C.D. Cal. 1989).  *See also Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 533-36 (1987).  Here, BBG Global A.G. ("**BBG Global**") is not subject to personal jurisdiction in California, and thus cannot be compelled to respond to a subpoena issued by the District Court of the Southern District of California.  BBG Global is a Swiss corporation with its principal place of business in Baar, Switzerland.  As this Court has recently stated in connection with another proceeding, this Court has no personal jurisdiction over BBG Global unless it is the alter ego of defendant BBG Communications, Inc.  *See* ECF Doc. # 58-1 (Transcript of proceedings on September 23, 2011 in *Wood v. BBG Communications*, Can.

1  No. 11-cv-0227 AJB (NLS)).  That issue is presently the subject of a summary judgment motion
2  scheduled to be heard in this matter on December 16, 2011.  (ECF Doc #45.)
3       The evidence submitted in connection with BBG Communications' motion for summary
4  judgment is compelling.  (ECF Doc. # 45 at 9:3 – 11:28.)  Plaintiffs have no relevant admissible
5  evidence to the contrary.  Rather, all of Plaintiffs "evidence" can be summarized as an attack on
6  the very corporate structures that every multi-level corporation has and that attorneys and
7  accountants get paid to set up and maintain.  Stated differently, if the types of things Plaintiffs
8  contend were sufficient to show alter ego, every multi-level corporation in America would be
9  subject to attack no matter how well capitalized or whether it follows corporate formalities.
10      That this Court may have found the *allegations* set forth in another action were sufficient
11 to defeat BBG Global's motion to dismiss, does not mean that this Court may simply disregard the
12 personal jurisdiction issue presented in this motion, which is to be made based on admissible
13 evidence, not mere allegations.  Also, answering a complaint in another matter does not equate to
14 an admission of jurisdiction in another matter.  *Frosty Bites, Inc. v. Dippin' Dots, Inc.*, 2002 WL
15 1359704, at *4-*5 (N.D. Tex. 2002) (holding that defendant does not waive its right to challenge
16 personal jurisdiction in one action merely by actively participating in other actions in the same
17 forum).  *See also S.E.C. v. Ross*, 504 F.3d 1130, 1150 (9th Cir. 2007).
18      Because this Court has no personal jurisdiction over BBG Global, Plaintiff must proceed
19 either under the Hague Convention or through letters rogatory (pursuant to Fed. R. Civ. Proc.
20 28(b)) if it desires to conduct discovery.  *See* Fed. R. Civ. Proc. 28(b); 28 U.S.C. 1781; *In re*
21 *Urethane Antitrust Litigation*, 267 F.R.D. 361, 363-64 (D.Kan. Feb. 18, 2010); *Societe Nationale*
22 *Industrielle Aerospatiale v. United States District Court*, 482 U.S. 533, 542-43 (1987).  Plaintiff
23 has not done so.  Instead, plaintiff has merely issued a subpoena from the United States District
24 Court, Southern District of California.  That is not enough to compel BBG Global's submission to
25 discovery.  Thus, Plaintiff's subpoena of BBG Communications should be quashed.
26     **2.**    **BBG Global A.G. Was Not Properly Served With Plaintiff's Subpoena**
27      Rule 45(b)(1) provides: "Service of subpoena upon a person named therein shall be made
28 by ***delivering a copy thereof to such person***…."  Fed. R. Civ. P. 45(b)(1) (emphasis added).

Although "not explicit in the rule… the longstanding interpretation of Rule 45 has been that personal service of subpoenas is required." *Alexander v. California Department of Corrections*, No. 2:08-cv-2733. 2011 WL 1047647, at *6 (E.D. Cal. March 18, 2011).  As a result, mail service or substituted service is not appropriate under Rule 45.  *Id.  See also Rutter Group*, Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch.11(IV), § F(3)(d)(2)(c) [11:2275] (2011) ("In any event, the FRCP 4(e)(2) substituted service provisions (leaving copy of complaint at dwelling or serving authorized agent) do not apply to [Rule 45] subpoenas....").

Here, BBG Global was not served personally.  Nor did Plaintiffs personally serve any individual capable of accepting service on BBG Global's behalf.  Plaintiffs purportedly attempted to personally serve Mr. Gregorio Galicot — BBG Global's "President of the Administrative Board," or in American terms, the Chairman of the Board of Directors.[1]  Allegedly unable to personally serve Mr. Galicot, Plaintiffs' process server left the Rule 45 subpoena issued to BBG Global at Mr. Galicot's residence with an individual he believed to be Mr. Galicott's wife, and "thereafter mailed a copy of the Subpoena on October 6th, 2011 to the residence [of Mr. Galicott]."  Pursuant to the authorities cited above, this is not enough under Rule 45.

### 3. **Plaintiffs' Subpoena To BBG Global Is Ineffective As It Was Noticed And Purportedly Served After The Discovery Cut Off Date.**

Even if the subpoena were proper and was properly served, the subpoena cannot be enforced because it violates the Court's scheduling order and provides inadequate time for BBG Global to respond.  The subpoena commands BBG Global to appear for deposition on October 11, 2011 – one day after "the deadline for completion of discovery," which the Court set for "October 10, 2011."  *See* Order, July 8, 2011, Dkt. No. 50, at ¶ 3.  For this reason, Plaintiffs' deposition subpoena is untimely, and the Court should thus grant BBG Global's Motion to Quash. *See, e.g.*, *Integra Lifesciences I, Ltd. v. Merck KgaA*, 190 F.R.D. 556, 561 (S.D. Cal. 1999) ("Case

---

[1] Plaintiffs argue that Mr. Galicot is the President of BBG Global.  A review of the documents relied on by Plaintiffs, however, reveal that Mr. Galicot is actually what the Swiss refer to as the "President of the Administrative Board." (Dkt. No. 66, Exh. 4 and 5.)  In American corporate terms, this is the Chairman of the Board.  Ms. Irene Fedier, the Managing Director of BBG Global, is the American equivalent of the President of BBG Global.

-3-

1  law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time
2  period permitted for discovery in a case.").

3  Worse, to the extent Plaintiffs argue that BBG Global – a corporation – can be served
4  according to California Code Civil Procedure §§ 415.20(a) and 415.95(a) (i.e., by leaving a copy
5  at an individual's home or business and following it with a mailed copy), service "***is deemed***
6  ***complete on the 10th day after the mailing***."  Thus, service was not effected on BBG Global until
7  October 16th – a full six days after the discovery completion date of October 10 and ***five days***
8  ***after the noticed date of the deposition of October 11, 2011***.

9  Plaintiffs' claim that BBG Global waived this deficiency by discussing, *as part of the meet*
10 *and confer process*, alternative dates and places where it was willing to compromise and produce a
11 witness (*i.e.*, in this case, October 26 in Switzerland or a date to be agreed upon in London), is
12 lacking in merit.  The whole idea behind the Court's meet and confer requirements is to see if the
13 parties can reach a resolution of their differences without Court intervention.  It does not constitute
14 a waiver of one's rights or objections.  To hold otherwise would render parties incapable of
15 meeting and conferring to see if they could comprise on a controversy for fear that suggesting a
16 possible resolution would constitute a waiver of its rights.

17 Also, while the Court is within its power to modify the scheduling order and to allow
18 Plaintiffs' belated deposition to proceed, this can only be done upon a showing of "good cause."
19 *See* Fed. R. Civ. Proc. 16(b).  This "good cause" standard "primarily considers the diligence of the
20 party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th
21 Cir. 1992).  Here, Plaintiffs has provided no justification for his delay in attempting to depose
22 BBG Global.  No such justification exists: (1) Plaintiffs have known for over eight months that
23 BBG Global—and not BBG Communications—was involved in the services that form the basis of
24 Plaintiff's Complaint; and (2) Plaintiffs have had three months, starting on July 8, 2011, in which
25 to seek information that it believed necessary to defeat BBG Communications' motion for
26 summary judgment.  Similarly, any claim by Plaintiffs that BBG Communications has failed to
27 comply with its discovery objections is false, which is why Plaintiff has not produced any
28 evidence to the contrary.  BBG Communications has complied to the letter of the law.

-4-

### 4. The Subpoena Is Unduly Burdensome Because It Requires BBG Global And Its Designee To Travel More Than One Hundred Miles

Even if this Court were to forgive the three deficiencies set forth above, the subpoena is unduly burdensome and must be quashed because it requires BBG Global and its designee to travel more than 100 miles to comply.  Rule 45(b)(3)(A)(ii) provides that "the issuing court *must* quash or modify a subpoena that… requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person…."  *Id.* (emphasis added).  Under this rule, the "general presumption is that depositions of a corporation through its agent should be taken at the corporation's principal place of business."  *In re Subpoena Issues to Nissan North America, Inc.*, No. 02 C8538, 2003 WL 25778944, at *2 (N.D.Ill. January 22, 2003) *citing Custom Form Manufacturing, Inc. v. Omron Corporation*, 196 F.R.D. 33 (N.D. Indy. 2002).

Here, BBG Global's principal place of business is in Baar, Switzerland, and its corporate designee, Ms. Irene Fedier, who is the Managing Director (American equivalent of President) of BBG Global, resides in Switzerland and manages BBG Global's office in Baar, Switzerland.  Plaintiffs' subpoena, which sets the deposition in San Diego, California, thus requires BBG Global and its designee to travel more than 100-miles.  As a result, Plaintiffs' subpoena is unduly burdensome and is in violation of the Federal Rules.

In response, Plaintiffs present two arguments, both of which lack merit.  First, Plaintiffs cite to ten cases in opposition, implying that Courts regularly require *non-party*, foreign corporations to designate and produce a witness at a location other than their principal place of business.  This is simply not true.  Each of Plaintiffs' cases involves the deposition of a *party,* or of *a party's officer, director, or 30(b)(6) designee.*  Not one involves the circumstances here – *i.e.*, the deposition of a *non-party*, foreign corporation.  Indeed, one of Plaintiffs' cases expressly recognizes that a Court's power to compel a *party's* deposition in a place other than its principal place of business is severely curtailed, if not completely eliminated, when it comes to *non-party* depositions.  *See Kasper v. Cooper Canada Ltd.*, 120 F.R.D. 58, 58-59 (N.D. Ill. 1988) ("In the case of depositions of witnesses who are parties to the action… the limitations upon compelling

-5-

1 attendance under Rule 45(d)(2) do not apply.").  Also, each of Plaintiffs' cases recognizes the
2 general rule that the deposition of a corporation should take place at the corporation's principal
3 place of business.  This is true when the deponent is a party, and even more so when it is not.

4   Second, Plaintiffs argue that Mr. Galicot, and not Ms. Fedier, should be BBG Global's
5 designee, and as a result, the deposition should go forward in California.  Plaintiffs however, do
6 not have the right to chose who BBG Global designates in response to the categories listed in
7 Plaintiffs' Rule 45 deposition subpoena.  *See, e.g.*, *Rodrigues v. Pataki*, 293 F. Supp. 2d 305, 311
8 (S.D.N.Y. 2003) (finding that a party cannot compel a particular corporate designee merely
9 because one witness "may [be] a better witness" than another).  BBG Global's obligation in
10 response to a 30(b)(6) deposition is to designate a person "with knowledge" about the listed
11 subjects.  *Id.*; *F.C.C. v. Mizuho Medy Co. Ltd.*, 257 F.R.D. 679, 681 (S.D. Cal. 2009).  That person
12 is Ms. Fedier, BBG Global's Managing Director.  If Plaintiff wanted Mr. Galicot, who is BBG
13 Global's "President of the Administrative Board," to testify, Plaintiffs should have served a
14 personal subpoena on Mr. Galicot as an individual.  Having not done so, Plaintiffs cannot now
15 usurp BBG Global's right to designate a witness just so that Plaintiffs can take BBG Global's
16 deposition in California.

17

18 **<u>PLAINTIFFS' ARGUMENT</u>**

19   Before addressing the crux of the dispute raised in the joint motion, it is necessary to
20 address several threshold issues raised by BBG Global AG.  First, this is a jointly submitted
21 discovery dispute, not a motion to quash for lack of personal jurisdiction.  Moreover, personal
22 jurisdiction is a non-issue since Judge Battaglia ruled just two weeks ago in *Wood v. BBG*
23 *Communications, Inc.*, Case No. 11-cv-0227 AJB(NLS), Dkt. No. 37 ("*Wood* Dkt. No."), that
24 BBG Global AG could be named as a defendant and denied a motion to dismiss on that ground,
25 and on October 13, 2011 BBG Global AG filed an Answer to that Complaint.  *Id*., Dkt. No. 40.
26   Second, the President of BBG Global AG is Gregorio Galicot -- who does not live in
27 Switzerland, but in fact lives in La Jolla, California.  Mr. Galicot has a difficult time claiming he
28 is not the President of BBG Global AG, since in government filings with both the Federal

-6-

1  Communications Commission and in Switzerland that he signed, he is publicly represented to be
2  the President of BBG Global AG.  *See* ¶3, 5 and Exs. 1, 4 and 5 to the Mansfield Reply
3  Declaration in Support of Motion for Leave to File Amended Complaint, Dkt. No. 66.  However,
4  whether he is the "Chairman" or "President" (BBG Global AG cites no authority to the contrary),
5  as an officer or director of the company who lives in the United States, service of the subpeona
6  on him in that capacity on behalf of BBG Global AG was proper as it was served in accordance
7  with Fed. R. Civ. Proc. 4(h)(1)(B) and 4(e)(2)(B).  Service was only effectuated at Mr. Galicot's
8  dwelling when he consistently avoided service at this office in San Diego, even though he
9  supposedly is regularly there, then his wife tried to avoid service.  *See* Affidavit of Service of
10 BBG Global AG, Dkt. 66. If this becomes relevant, plaintiffs can show service of the subpeona
11 on BBG Global AG was accomplished in a manner similar to service of the *Wood* action, and
12 BBG Global AG did not move to quash on that ground and has filed an Answer in that case.
13       Third, the timing of this deposition was necessitated because, despite claims that
14 documents were forthcoming, BBG Communications Inc. has refused to produce *any* documents
15 or answer a single Interrogatory since the discovery window opened two months ago (if there is
16 any dispute over this, plaintiffs can provide the responses to the court).  In addition, even though
17 BBG Communications Inc. states in its privacy policy (*see* www.bbgusa.com/bbg/privacy
18 policy1.php) that it only shares certain information with its "affiliates" (which is defined under
19 California law as a company that is controlled by or under common control with the other
20 company, *see* Cal. Corp. Code §150) and thus should include BBG Global AG, it refuses to
21 respond to discovery that asks for information from both companies.  This is the case even
22 though BBG Global AG and BBG Communications Inc. are owned by the same Galicot family
23 trusts based here, and Mr. Galicot is the President of both BBG Global AG and of BBG
24 Communications Inc.  *See* Plaintiffs' Reply In Support of Motion for Leave to File Amended
25 Complaint, Docket No. 65, at 5-6, and supporting Mansfield Reply Declaration, Paragraph 2 and
26 Exs. 1, 4 and 5, Docket No. 66.  Thus, this deposition was set as it appears to be the only way to
27 get timely information in connection with the pending motion for summary judgment, if at all,
28 from BBG Global AG.  In addition, since October 10, 2011 was a Court holiday (Columbus

-7-

Day), any deadlines set by the Court to set the deposition of BBG Global AG carried over to the next business day that is not a court holiday pursuant to Fed. R. Civ. Proc. 6(a)(1)(C). BBG Global AG's counsel Mr. Puglisi (the same counsel for BBG Communications Inc.) also waived any further argument about timeliness when he requested the BBG Global AG deposition be moved to October 26, 2011 in order to accommodate his schedule, which as a matter of professional courtesy we did.  Considering all the relevant circumstances, plaintiffs timely served the deposition notice and it should have been completed.

The only relevant issue presented by this motion is whether setting the deposition of BBG Global AG in this District is proper. BBG Global AG's discussion omits or ignores both key facts and law that explain why its deposition is properly set and should go forward this Wednesday.

First, the appropriate corporate designee for these four listed topics is not Ms. Fedier, but rather Mr. Galicot. There are 4 topics for this deposition: (1) Corporate structure and office locations of BBG Global AG; (2) Corporate and contractual relationships between BBG Global AG, B-Tel Comunicacion S.A. de C.V., BBG Financial Services S.ar.L, and BBG Communications, Inc. or other successor or affiliated companies of either BBG Global AG or BBG Communications, Inc., (3) Governmental filings submitted by BBG Global AG, and (4) Creation and dissemination of advertisements, pay phone art work, and pricing charts for pay telephones where the operator service or interconnection arrangements are allegedly provided by BBG Global AG. As the president/chairman of BBG Global AG he should be most knowledgeable about its corporate structure, location, and government filings (topics 1 and 3).

He has further demonstrated his knowledge on topics (2) and (4) by filing not one, but three, separate Declarations attesting to the corporate structure of BBG Global AG and its relationship to BBG Communications Inc. In his Declaration dated June 30, 2011 filed in this action in connection with the pending motion for summary judgment (part of what this deposition goes to), Mr. Galicot executed a Declaration in San Diego where he indicated he had personal knowledge about the contractual and corporate relationships between BBG Communications, Inc. and BBG Global AG, as well as the location and dissemination of certain payphone advertisements and art work. In *Wood*, Mr. Galicot filed a Declaration dated May 31, 2011, also

-8-

1  signed in San Diego (*Wood* Dkt. No. 24-6), discussing contractual relationships with affiliated
2  companies and location of board meetings.  And on September 15, 2011, Mr. Galicot signed in
3  San Diego and submitted a second Declaration in that case (*Wood* Dkt. No. 34-3) providing a
4  description of BBG Global's 2006 restructuring, contractual relationships, and employees, and
5  asserting BBG Global AG has no employees or operations in the United States.

6  Ms. Fedier, on the other hand, claims to have only worked for BBG Global AG since July
7  2009 -- only 18 months prior to the filing of this action. *See* Declaration of Irene Fedier dated May
8  31, 2011, Dkt. No. 58-2.  Thus, she would not have full knowledge of the prior corporate re-
9  structuring and organization of BBG Global AG to be discussed in topic No. 1.  In fact, the
10 "Telecommunications and Services Royalty Agreement" upon which BBG Global AG so heavily
11 relies in its motion for summary judgment was signed in February 2007 and renewed in February
12 2008 -- *before Ms. Fedier was an employee of BBG Global AG*.  She clearly is not the person most
13 qualified to discuss that agreement if she was not even at the company at the time. See Dkt. 58-2,
14 at 1, and Exs. B and C. Thus, for each of the 4 designated topics, Mr. Galicot has demonstrated in
15 Declarations filed with this Court he is the appropriate corporate designee.   If he can claim under
16 oath he does not know the answer to such questions, the parties can then discuss if another person
17 should answer particular questions and where that deposition should be taken. However, in the
18 first instance, BBG Global AG should not be able to use its improper deponent designation as a
19 basis for avoiding a deposition here, when the President of the company who has submitted three
20 Declarations it intended the Court to rely on about the company lives and works in this District.

21 Second, while a Rule 30(b)(6) deposition may ordinarily be set in the district of the
22 corporation's principal place of business, officers and agents of corporations "are frequently
23 deposed in places other than the location of the principal place of business, especially in the forum
24 [where the action is pending], for the convenience of all parties and in the general interests of
25 judicial economy." *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005);
26 *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 338 (N.D. Ind. 2000) (corporations are
27 "frequently deposed in places other than the location of their principal place of business,
28 especially when the deposition site is the forum most convenient to all parties and that which best

-9-

serves the general interests of judicial economy"); *Sugarhill Records, Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985) (30(b)(6) deposition should not be held in California, the principal place of business of the corporation, but in New York where deposition noticed).

Third, a foreign corporation can be ordered under Rule 30(b)(6) to produce its officers, directors or managing agents in the United States to give deposition testimony. *Work v. Bier*, 106 F.R.D. 45, 52 (D.D.C. 1985). Such persons have frequently been compelled for deposition on American soil. *Roberts v. Heim*, 130 F.R.D. 430, 439-40 (N.D.Cal. 1990)(compelling the appearance of a Swiss defendant for deposition in San Francisco); *In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535, 541-42 (D.Md. 1996)(agents of a Japanese corporate defendant ordered deposed in Maryland); *M & C Corporation v. Erwin Behr GMBH & Co.*, 165 F.R.D. 65, 68 (E.D.Mich.1996)(requiring a German corporate defendant's agents to appear for depositions in Detroit); *R.F. Barron Corp. v. Nuclear Fields (Australia) Pty., Ltd.*, 1992 U.S. Dist. LEXIS 19857,*2 (N.D.Ill. 1992) (requiring depositions of Dutch and Australian defendants in Chicago).

Fourth, several factors need to be considered in determining where such a deposition should be taken, including: "(1) location of counsel for parties in the forum district, (2) the number of corporate representatives sought to be deposed, (3) the likelihood of significant discovery disputes that would necessitate resolution by the court, (4) whether the person to be deposed often travels for business purposes, and (5) the equities with respect to the claim and the parties' relationship." *Cadent Ltd.*, 232 F.R.D. at 628-29. Moreover, "the matter of expense" to the parties is also an important inquiry. *Id.* Weighing these factors this deposition should go forward here. This case was filed in this District because BBG Communications Inc.'s principal place of business is here. Mr. Galicot, the represented president of BBG Global AG who has already submitted three Declarations on these issues, lives here. Mr. Galicot should be in this District as he regularly works here. Plaintiffs' counsel's offices are in this District. Counsel for BBG Global AG has offices in this District, and Mr. Puglisi is in Los Angeles. One corporate representative needs be deposed; even if two were designated, only one would need to travel.

-10-

If the deposition is taken here, costs would be minimized for all parties. Even if Ms. Fedier were designated, it would be the cost of one person travelling here as compared to three or four travelling to Europe. *Kasper v. Cooper Canada Ltd.*, 120 F.R.D. 58, 60 (N.D. Ill. 1988)(court ordered deposition of Canadian designee to go forward in Chicago, considering defense counsel was located in Chicago, reasoning expenses would be the same for the defendant whether it brought its corporate officers to Chicago or its Chicago lawyers to Canada). This is the forum most convenient for all parties, including for the person demonstrated to be the proper designee. *Custom Form Mfg., Inc.*, 196 F.R.D at 338 ("granting plaintiff's motion to compel [deponents located in Japan] at the Indiana or Illinois location would require fewer of the participants involved on both sides of this matter to travel; this, in turn, would cut costs and provide an economic benefit to all."); *Baker v. Standard Ins. Inc.,* 55 F.R.D. 178, 179 (D.P.R 1972) (denying motion for protective order; no showing officer "being put to unnecessary trouble and expense by being required to travel a great distance to give his deposition"). Finally, if the Court needed to be involved to answer disputes during the deposition, if it was in Switzerland or even an alternate location such as London, the Court likely could not do so due to the 8-hour time difference between here and Switzerland. If the deposition goes forward in California, this would not be an issue. Weighing the equities establish that BBG Global AG's motion to quash should be denied.[2]

---

[2] Alternatively, while for all the above reasons the deposition should go forward as set, plaintiffs would not oppose an Order that this deposition go forward in New York, as it would only involve a 3 hour time difference and still permit the parties to contact the Court and be subject to any orders it may need to impose. "If a federal court compels discovery on foreign soil, foreign judicial sovereignty may be infringed, but when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated." *In re Honda American Motors Co., Inc.,* 168 F.R.D. at 538(citing *In re Anschuetz & Co.,* 754 F.2d 602 at 608 n. 13). Plaintiffs have proposed this as a solution, but so far BBG Global has refused.

| | | |
|---|---|---|
| 1 | Dated: October 25, 2011 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| 2 | | By            s/Fred R. Puglisi |
| 3 | | FRED R. PUGLISI |
| | | Attorneys for Nonparty, |
| 4 | | BBG Global, A.G. |

Dated: October 24, 2011        CONSUMER LAW GROUP OF CALIFORNIA

By:   /s/Alan M. Mansfield
        Alan M. Mansfield
        alan@clgca.com
10200 Willow Creek Road, Suite 160
San Diego, CA 92131
Tel: (619) 308-5034
Fax: (888) 341-5048

WHATLEY DRAKE & KALLAS LLC
Joe R. Whatley, Jr.
jwhatley@wdklaw.com
Patrick J. Sheehan (Admitted *Pro Hac Vice*)
psheehan@wdklaw.com
380 Madison Avenue, 23rd Floor
New York, NY  10017
Tel: (212) 447-7070
Fax: (212) 447-7077

Attorneys for Plaintiffs

-12-