THE CONSUMER LAW GROUP
Alan M. Mansfield (SBN 125998)
alan@clgca.com
10200 Willow Creek Rd., Suite 160
San Diego, CA 92131
Tel: (619) 308-5034
Fax: (888) 341-5048

WHATLEY DRAKE & KALLAS LLC
Joe R. Whatley, Jr., Esq.
Patrick J. Sheehan, Esq.
psheehan@wdklaw.com
380 Madison Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 447-7070
Fax: (212) 447-7077

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLASTIMIL SAJFR and DAVID KEEPORTS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BBG COMMUNICATIONS, INC., and DOES 1-10 INCLUSIVE,<br><br>Defendants. | CASE NO.: 10-cv- 2341-AJB (NLS)<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT BBG COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' COUNTERSTATEMENT OF UNCONTROVERTED FACTS**<br><br>Hearing Date: December 16, 2011<br>Time: 1:30 p.m.<br>Courtroom: 12<br>Judge: Hon. Anthony J. Battaglia<br><br>Complaint Filed: November 12, 2010 |

Plaintiffs submit the following Response to Defendant's Separate Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment.

/ / /

/ / /

| Defendant's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| 1. BBG Communications, Inc. ("BBG Communications") is a Delaware corporation.<br><br>Gregorio Galicot Declaration ("Galicot Decl."), ¶ 3. | 1. Admit. |
| 2. BBG Communications is headquartered in San Diego, California.<br><br>Galicot Decl., ¶ 3. | 2. Admit. |
| 3. BBG Communications is, among other things, a reseller of telecommunications services.<br><br>Galicot Decl., ¶ 3. | 3. Admit. |
| 4. BBG Communications provides reseller telecommunications services exclusively in North America, i.e., in the United States, Mexico and Canada.<br><br>Galicot Decl. ¶ 3. | 4. Disputed.  On payphones throughout Europe, either the BBG logo or BBG Communications Inc. is listed as the name that appears as providing such service.  Mansfield Decl., Ex. 5.  BBG publicly represents on its website that "BBG Communications, Inc. is an industry leader in Operator Assisted Services. . . .  BBG has interconnect and billing arrangements that enable it to *directly carry and deliver telecommunications traffic and bill customers in Canada, Germany, Japan, UK and US and in every other country with credit card transactions.*" (Keeports Decl., Exs. 1 and 2); and in its Privacy Policy that "BBG provides international telecommunications services, including public telephony, calling card, long distance operator assistance, credit card processing, billing, collection and wireless telecommunications services.  BBG processes casual-use voice services from European Union ("EU") or Swiss telephone users making long distance calls from payphones or hotels".  Mansfield Decl., Ex. 6. |
| 5. BBG Communications does not provide operate [sic] payphones in Frankfurt, Germany.<br><br>Galicot Decl., ¶ 3. | 5. Disputed.  See Response to No. 4.  Objection as to what "provide operate" means. |

| | | | |
|---|---|---|---|
| 1 2 3 4 5 6 | 6. | Plaintiff Vlastimil Sajfr placed a call to the Czech Republic using a BBG Global, AG serviced public payphone in Frankfurt, Germany to place a call to the Czech Republic on June 12, 2010.<br><br>Galicot Decl., ¶ 7, Ex. "D." | 6. Disputed.  Based on the signage on the phone, there is no indication on the telephone in the Frankfurt Germany airport that it was a "BBG Global, AG serviced public payphone" as it only shows the BBG logo.   Mansfield Decl., Ex. 4.  Moreover, the billing for the call was from a company called Telecom Germany, which BBG Communications was unable to identify.  Sajfr Decl. Ex. 1; Mansfield Decl., Ex. 7. |
| 7 8 9 10 | 7. | BBG Communications does not process or provide calling service for calls that originate in Frankfurt, Germany.<br><br>Galicot Decl., ¶¶ 3, 5.<br><br>Declaration of Brian Rhys ("Rhys Decl."), ¶ 6. | 7. Disputed.  See Response to No. 4.  All calls are "processed" through the same servers in the United States through an agreement negotiated by BBG Communications and are "rated" or priced and billed by BBG Communications in California.  Mansfield Decl., Exs. 21 and 22. |
| 11 12 13 14 15 | 8. | BBG Communications did not provide the telecommunication services for the calls made by Mr. Sajfr as alleged in the Complaint.<br><br>Galicot Decl., ¶¶ 3, 5.<br><br>Declaration of Ferdinand Von Klocke Decl. ("Von Klocke Decl."), ¶¶ iii-xxiv. | 8. Disputed.  See responses to Nos. 4, 6 and 7.  Such processes are a key aspect of  the telecommunications services at issue. |
| 16 17 18 19 | 9. | BBG Global, A.G. ("BBG Global") is a Swiss corporation headquartered in Baar, Switzerland.<br><br>Von Klocke Decl., ¶¶ iv.<br><br>Declaration of Irene Fedier ("Fedier Decl."), ¶ 4. | 9. Admitted. |
| 20 21 22 23 24 25 26 27 28 | 10. | BBG Global and BBG Communications are a separate and distinct legal entities.<br><br>Von Klocke Decl., ¶¶ iv.<br><br>Fedier, ¶ 4.<br><br>Galicot Decl., ¶ 3. | 10. Disputed. In filings with the Federal Communications Commission, BBG Global AG states Mr. Gregorio Galicot is its president and that BBG Global AG is not a foreign carrier.  Mansfield Decl., Ex. 8 at 6-7.  Both companies are owned by the same Galicot family trusts, operated as trustee by Gregorio Galicot's brother-in-law. *Id*., Ex. 7.  Both companies operate using bank accounts at Wells Fargo Bank in San Diego.  *Id*., Ex. 7.  While BBG claims BBG Global AG has no employees in California, its former general counsel who signed the 2007 letter indicating BBG Global AG was succeeding BBG Holdings' contract with NOS and at several employees independently state they have worked for BBG Global AG in |

| | | |
|---|---|---|
| | | San Diego. *Id.*, Exs. 9 and 10. Pilar Urbino Morales, the former "managing director" of BBG Global AG who signed agreements between BBG and BBG Global AG was not based in Switzerland but apparently lived in San Diego and worked out of BBG's San Diego offices. *Id.*, Ex. 21. Call routing is all conducted through the same servers operated by the same company, and agreements for both BBG and BBG Global AG with NOS and Centris were negotiated at the same time by Bryan Rhys, who claims to work for BBG. *Id.*, Ex. 22. All call billing is actually performed by BBG here. It then sends the customer billing for international calls for processing through its wholly-owned subsidiary in Luxembourg, BBG Financial Services s.a.r.l., in which Raphael and Gregorio Galicot are officers. *Id.*, Exs. 6, 7, 11 and 13. While agents and other operational expenses may be paid out of BBG Global's California bank account, all commissions are calculated by BBG and such funds are transferred by BBG's accounting department. *Id.*, Exs. 19, 21 and 23. |
| 11. | BBG Global provides operator assisted and swipe card calling long distance services at the Frankfurt airport, pursuant to an agreement with Deutsche Telekom, AG.<br><br>Von Klocke Decl., ¶¶ iv-vi. | 11. Disputed. See Response to Nos. 4 and 7. |
| 12. | Deutsche Telekom is a German corporation headquartered in Germany.<br><br>Von Klocke Decl., ¶ iii, Ex. "A." | 12. Admit. |
| 13. | Deutsche Telekom is the principal telephone carrier in Germany.<br><br>Von Klocke Decl., ¶ iii, Ex. "A." | 13. Admit. |
| 14. | The Federal Republic of Germany owns part of Deutsche Telekom.<br><br>Von Klocke Decl., ¶ iii, Ex. "A." | 14. Admit. |
| 15. | In or about 2007, Von Klocke was responsible for establishing and managing BBG Global's long distance payphone card swipe operator-assisted calling services at the Frankfurt, Germany airport. | 15. Disputed. BBG submits no evidence that as an agent Mr. Von Klocke is the ultimately responsible person, as compared to Mr. Gregorio Galicot as an officer or director of BBG Global. See No. 9. |

| | | |
|---|---|---|
| 1 | Von Klocke Decl., ¶ v. | |
| 2–7 | 16. BBG Global's agreement with Deutsche Telekom was heavily negotiated over the course of several months and almost every detail in connection with the services provided by BBG Global, including the details and specifications of the call flow design, prompts, and disclosures, was determined by, reviewed by and subject to the approval of Deutsche Telekom.<br><br>Von Klocke Decl., ¶ vi. | 16. Objection. No agreement produced, and irrelevant as statement says nothing about negotiation of the rates charged consumers. Also the rates actually charged Mr. Sajfr and Ms. Keeports were multiple times greater than provided in the rate sheets on BBG Global's website. Sajfr Decl. at ¶3; Irina Keeports Decl. at ¶3; Mansfield Decl. ¶9, Ex. 5. |
| 8–18 | 17. BBG Global now provides card swipe operator-assisted payphone services at the Frankfurt, Germany airport pursuant to the terms dictated by Deutsche Telekom.<br><br>Von Klocke Decl., ¶ vi, xvii Exhibit "B." | 17. Disputed. Rating or pricing of such calls takes place by BBG after the telephone call is made, which is an integral part of such services. Mansfield Decl., Exs. 21 and 22. In addition, the services are not "operator-assisted" in that they are fully automated and do not actually connect through an operator but rather through an automated server process. Mr. Sajfr and Ms. Keeports explain that is not how the system operated. See Sajfr Decl. at ¶3-5; Irina Keeports Decl. at ¶3, 4, 7, 8. Even if disclosed the rates actually charged to Plaintiffs by BBG are substantially inconsistent with internal call records and rate charts contained on BBG Global AG's own website for calls from Frankfurt, Germany. Mansfield Decl., ¶9, Exs. 5 and 22. |
| 19–23 | 18. BBG Global follows the same call flow design that Deutsche Telekom follows.<br><br>Von Klocke Decl., ¶ viii, Exhibit "B." | 18. Disputed. All payphone calls from both BBG Global AG and BBG Communications, Inc. are routed through a server in Longview, Texas and then rated, priced and billed by BBG Communications in California. See Response No. 16. There is no evidence all Deutsche Telecom calls are so routed, rated and billed. |
| 24–28 | 19. The call flow design provides at least two opportunities for a caller to dial either "1" or "9" to obtain rates before connecting his or her call.<br><br>Von Klocke Decl., ¶ viii-xi. | 19. Disputed. While Mr. Von Klocke attempts to explain how the BBG operator call system is supposed to work, Mr. Sajfr and Ms. Keeports explain that is not how the system operated, as well as detail what the disclosures that exist stated, as well as what material facts were hidden from consumers. See Sajfr Decl. at ¶3-5; Irina |

| | | |
|---|---|---|
| | | Keeports Decl. at ¶3, 4, 7, 8. Critically, even if disclosed, the rates actually charged to Plaintiffs by BBG are substantially inconsistent with internal call records and rate charts contained on BBG Global AG's own website for calls from Frankfurt, Germany. Mansfield Decl., ¶9, Exs. 5 and 22. This is because BBG has provided instructions that operators specifically not to rate a call unless a customer specifically asks for such data to avoid losing revenue. Mansfield Decl., Exs. 20 and 22. Such charges were not affirmatively disclosed by BBG's operators at any time during the telephone call process, such as typically occurs when a consumer uses a coin operated pay phone or speaks with an operator. Sajfr Decl. at ¶3; Irina Keeports Decl. at ¶3. Rather, the process is entirely automated or operators are instructed by BBG not to provide such information unless they are specifically and directly asked for it. |
| 20. | The specific prompts referenced above, and in the call flow design, were dictated and required by Deutsche Telekom. Von Klocke Decl., ¶ xvii. | 20. Objection as to relevance. See. No. 19 |
| 21. | Mr. Sajfr placed his call to the Czech Republic from Frankfurt, Germany using BBG Global's swipe credit card long distance calling services. Von Klocke Decl., ¶¶ iii-xvii. Freeman Decl., ¶¶ 3-9. Galicot Decl., ¶7, Ex. "D." | 21. Disputed. See Nos. 4, 7, 17, 19. |
| 22. | Mr. Sajfr had at least two opportunities to follow the prompts and obtain rate information before his call to the Czech Republic was connected. Von Klocke Decl., ¶¶ vii-xvii. Freeman Decl., ¶¶ 8-9. | 22. Disputed. See Nos. 17 and 19. |
| 23. | Mr. Sajfr failed to dial the appropriate number when prompted to do so to obtain rates before his call to the Czech Republic, and the basis of his Complaint, was connected. Von Klocke Decl., ¶¶ vii-xvii. Freeman Decl., ¶¶ 8-9. | 23. Objection irrelevant as if the rates charged were unconscionable, disclosure method would be irrelevant. Disputed. See Nos. 16, 17 and 19. |

| | | |
|---|---|---|
| 1 | Complaint, ¶ 10(a). | |
| 2, 3, 4 | 24. Mr. Sajfr admits the payphone he used at the Frankfurt airport contained a disclosure on the payphone advising him to call to get rate information.<br><br>Complaint ¶ 5. | 24. Disputed. Sajfr Decl., ¶3-5. |
| 5, 6, 7 | 25. Mr. Sajfr failed to follow the instructions on the sticker on the payphone to dial for rate information.<br><br>Complaint ¶ 5. | 25. Disputed. See No. 23, above. |
| 8, 9, 10, 11, 12 | 26. B-Tel is headquartered in Tijuana, Baja California, Mexico.<br><br>Vania Monge Declaration ("Monge Decl."), ¶ 3. | 26. Disputed. B-Tel representatives claim either are located in or provide customer support services in California.<br><br>Keeports Decl., ¶ 8-18, Exs. 3-4. During most of the relevant time period, B-Tel was a fictitious business name registered to BBG Communications. Mansfield Decl., Ex. 18. |
| 13, 14 | 27. B-Tel operates a single call center in Tijuana, Mexico.<br><br>Monge Decl., ¶ 3. | 27. Disputed. See No. 26. |
| 15, 16, 17, 18 | 28. In or about 2002, BBG Global entered into an agreement with B-Tel, in which B-Tel agreed to provide call center services to BBG Global.<br><br>Monge Decl., ¶ 4. | 28. Objection. No agreement was submitted with Ms. Monge's Declaration to verify assertion. *See* also No. 26. Disputed as BBG Global was not formed until at least 2006 as a successor in interest to BBG Holdings, Ltd.<br><br>Fedier Decl., Ex. B. |
| 19, 20, 21, 22, 23, 24, 25, 26, 27 | 29. The customer services inquiries received by B-Tel for BBG Global are routed in Mexico and answered in Mexico by a Mexican call center representative.<br><br>Monge Decl., ¶ 5. | 29. Disputed. customer service calls are made to domestic 1-800 numbers and to 619-661-6661; and the operators claim to be in Los Angeles. Mr. Keeports was told to contact BBG at a 619 area code number to speak with Alma Perez, who is publicly represented to be a customer care specialist with BBG Communications, and Mr. Sajfr and Mr. and Mrs. Keeports called a 1-800 number, which could reasonably be expected to only operate domestically and not internationally. *See* Sajfr Decl. at ¶6-7, Irina Keeports Decl. at ¶9 and the Keeports Decl. at ¶8-18 and Exs. 3 and 4; Mansfield Decl., Ex. 17. |
| 28 | | |

| | | |
|---|---|---|
| 1<br>2<br>3 | 30. B-Tel does not have any presence in California, nor does it provide any services in California.<br>Monge Decl., ¶ 5. | 30. Disputed. *See* Nos. 26 and 29. Also B-Tel is owned by a series of family trusts for the benefit of Galicot family members. Mansfield Decl. Ex. 21. |
| 4<br>5<br>6<br>7<br>8 | 31. To the extent customer service calls made into B-Tel are recorded, they are recorded in Mexico, by a Mexican customer service representative.<br>Monge Decl., ¶ 6. | 31. Disputed. See Nos. 26 and 29. Objection – relevance, since even if calls were recorded there, still illegal under California law to do so.<br>*See Kearny v. Salomon Smith Barney* 39 Cal.4th 95, 125 (2006); Order Denying Motion to Dismiss, entered March 15, 2011 (Dkt. No. 35). |
| 9<br>10<br>11 | 32. To the extent Mssrs. Sajfr's and Keeports' customer service calls were recorded by B-Tel, they were recorded in Mexico.<br>Monge Decl., ¶¶ 3-6. | 32. Disputed. See No. 31. |
| 12<br>13<br>14<br>15 | 33. BBG Communications did not record Mssrs. Sajfr's and Keeports' customer service calls to B-Tel.<br>Monge Decl., ¶¶ 3-6.<br>Galicot Decl., ¶ 22. | 33. Disputed. See Nos. 26 and 29. BBG Communications controls such services or actually provides them as it states in its privacy policy customer call and credit card data is only to be shared with its affiliates. Mansfield Decl. Ex. 6. |
| 16<br>17<br>18<br>19<br>20<br>21 | 34. To provide an operator call center and the necessary infrastructure to provide long distance operator assisted calling services, BBG Global has a contract with Network Operator Services, Inc. dba Centris Information Services ("NOS"). (the "NOS Operator Services Agreement")<br>Declaration of Susan Freeman ("Freeman Declaration"), ¶¶ 3-6, Exhibits "B" and "C." | 34. Admit. |
| 22<br>23 | 35. NOS is a Texas corporation.<br>Freeman Decl., ¶ 6. | 35. Admit. |
| 24<br>25<br>26 | 36. NOS does not operate in California.<br>Freeman Decl., ¶ 6. | 36. Disputed in terms of what is meant by the term "operate", since the actual call rating is done by BBG Communications in California by accessing NOS' call detail records. Mansfield Decl., Ex. 22. |
| 27 | | |

28

| | | |
|---|---|---|
| PLTFS' STATEMENT OF GENUINE ISSUES IN OPP. TO SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS OF DEFT. BBG ISO MTN FOR SUM. JUDGMENT | 8 | CASE NO.: 10-CV-2341-AJB (NLSx) |

| | | |
|---|---|---|
| 37. | Pursuant to the NOS Operator Services Agreement, NOS provides automated and live operator call services for all calls that are routed by BBG Global to NOS' platform.<br><br>Freeman Decl., ¶¶ 6-7. | 37. Admit. |
| 38. | NOS automated call services are performed at NOS' headquarters in Longview, Texas, and live operator call services are performed in Monterrey, Mexico.<br><br>Freeman Decl., ¶ 6. | 38. Admit. |
| 39. | All users of a BBG Global-serviced payphone for operator assisted long distance calling have the option of speaking with a live operator, from whom rate information can be obtained by request before the call is connected and before any charge is incurred by the caller.<br><br>Freeman Decl., ¶ 8. | 39. Disputed. See No. 17. |
| 40. | For the call Mr. Sajfr made from Germany to the Czech Republic that form the basis of his Complaint, the automated services were provided to him by NOS.<br><br>Freeman Decl., ¶¶ 8, 9.<br>Galicot Decl., ¶¶ 3, 5. | 40. Disputed in that such automated services were provided at the direction and limitations of either BBG Communications, Inc. or BBG Global. Mansfield Decl., Exs. 20 and 22. |
| 41. | For the call Mr. Sajfr made from Germany to the Czech Republic during which he was provided automated operator assistance, the service was provided to Mr. Sajfr in Germany from the switch located in Longview, Texas.<br><br>Freeman Decl., ¶¶ 8, 9. | 41. Objection and disputed. Mr. Sajfr was never provided "automated operator assistance" as his call was automatically connected without any assistance. Sajfr Decl. ¶3-5. This is confirmed by NOS' own records. The "service" provided in Longview, Texas is that the connection switch is located there, as it is for all calls where BBG Global AG or BBG Communications, Inc. operates the payphone. This is an automated process where all calls where either BBG or BBG Global AG is the alleged service provider, whether foreign or domestic, are automatically routed through a server located in Longview, Texas. The call detail information for each call is then routed to BBG in San Diego, who is then responsible for "rating" (pricing) and billing the call from here. Mansfield |

| | | |
|---|---|---|
| | | Decl., Exs. 21 and 22. |
| 42. | BBG Communications did not process or provide operator-assisted calling service for the call made by Mr. Sajfr that originated in Germany referenced in his Complaint.<br><br>Freeman Decl., ¶¶ 3-6, 9<br><br>Galicot Declaration, ¶¶ 3, 5. | 42. Disputed. BBG Communications rated, priced and billed Mr. Sajfr's call and NOS acted pursuant to an agreement negotiated by BBG Communications. See Nos. 40-41, Mansfield Decl. Exs. 21 and 22. |
| 43. | The books and records of BBG Communications are kept separate from the books and records of BBG Global.<br><br>Declaration of Gaurav Malhotra ("Malhotra Decl."), ¶ 6.<br><br>Declaration of Urs Manetsch and Anton Mueller ("Manetsch and Mueller Decl."), ¶ v. | 43. Objection and disputed. Both companies are owned by the same Galicot family trusts, operated as trustee by Gregorio Galicot's brother-in-law. Mansfield Decl. Ex. 7. Both companies operate using bank accounts at Wells Fargo Bank in San Diego. Mansfield Decl., Ex. 7. While BBG claims BBG Global AG has no employees in California, its former general counsel who signed the 2007 letter indicating BBG Global AG was succeeding BBG Holdings' contract with NOS and at least one other employee independently state they have worked for BBG Global AG in San Diego. *Id.*, Exs. 9 and 10. Pilar Urbino Morales, the former "managing director" of BBG Global AG who signed agreements between BBG and BBG Global AG on behalf of that company in 2006 that were submitted by BBG in support of its motion, also was not based in Switzerland but apparently lived in San Diego and worked out of BBG's San Diego offices. *Id.*, Ex. 21. Call routing is all conducted through the same servers operated by the same company, and agreements for both BBG and BBG Global AG with NOS and Centris were negotiated at the same time by Bryan Rhys, who claims to work for BBG. *Id.*, Ex. 22. All call billing is actually performed by BBG here. It then sends the customer billing for international calls for processing through its wholly-owned subsidiary in Luxembourg, BBG Financial Services s.a.r.l., in which Raphael and Gregorio Galicot are officers. *Id.*, Exs. 6, 7, 11 and 13. While agents and other operational expenses may be paid out of BBG Global's California bank account, all commissions are calculated by BBG and such funds are transferred by BBG's accounting department out of that account, establishing BBG Communications has access to BBG Global AGs bank accounts. |

| | | |
|---|---|---|
| | | *Id.*, Exs. 19, 21 and 23.  These same companies also use the same computer servers in Texas to process calls wherever they come from (or use the affiliated company G-Tel's servers), BBG Global claims in its privacy policy to also store data "in our sites located in San Diego, Ca. and Las Vegas",  and they use the same domain extensions for e-mails and the same toll-free 1-800 numbers for consumers to contact them.  Mansfield Decl., Exs. 7, 11, 14-16, 22.  They both use the same call center operators who receive instructions on how to answer customer inquiries from BBG, the same website address extensions for contact information and to use in their business operations, the same training manuals, the same logos, the same customer dispute domestic 1-800 numbers and dispute call center personnel.  *Id*. Even when bills are sent to consumers, they do not refer to BBG Global AG but rather a undetermined entity called BBG Germany or German Telecom that even BBG was unable to identify, even though it makes the billing arrangements.  *See Id.* Ex. 7; Keeports Decl., Ex. 1; Sajfr Decl. Ex.1The companies thus are affiliates of each other, have the same ownership, overlapping employees, have access to BBG Global's operating accounts, and use the same contracts and services. |
| 44. | In the course of LUCAS, HORSFALL, MURPHY & PINDROH, LLP's audits, it has found no evidence of any comingling of funds or assets between BBG Communications and BBG Global, and that both companies respect their corporate formalities and are adequately capitalized.<br><br>Malhotra Decl., ¶ 6. | 44. Objection and disputed.  See No. 43. |
| 45. | Based on independent transfer pricing studies, all related party transactions between BBG Communications and BBG Global are on an arm's length basis and properly accounted for.<br><br>Malhotra Decl., ¶ 7. | 45. Objection and disputed.  See No. 43. |
| | | |

| | | |
|---|---|---|
| 1 2 3 4 5 6 | 46. In connection with this examination in MOORE STEPHENS SUZ AG's audit of BBG Global, it determined that BBG Global does not comingle funds or assets with any other company. It also found that it does not pay for third party expenses. Nor do third parties improperly pay for BBG Global's expenses.<br><br>Manetsch and Mueller Decl., ¶ viii. | 46. Objection and disputed. See No. 43. |
| 7 8 9 10 11 | 47. German law does not require that rates for domestic and/or international calls be displayed at public payphones located in Germany.<br><br>Declaration of Prof. Dr. Bernd Holznagel, LLM ("Prof. Holznagel Decl."), ¶ 1. | 47. Objection. This is not what the Holznagel Declaration states. All Mr. Holznagel states is that in his opinion there are no detailed rules regulating the use of public payphones, or that it is his opinion that the rules relating to certain disclosures do not apply to pay phones. That is fundamentally different than saying BBG's conduct is expressly permitted under the law. |
| 12 13 14 15 | 48. German law does not require that rates for domestic and/or international calls be published or announced prior to connecting such call regardless of method of payment.<br><br>Prof. Holznagel Decl., ¶ 2. | 48. See No. 47. |
| 16 17 18 | 49. Mexican law does not bar a party to a call to record said call without first obtaining the other caller's consent.<br><br>Declaration of Isaac Guakil-Chaiyo ("Guakil-Chaiyo Decl."), ¶ ix. | 49. Objection - irrelevant. See No. 31. |
| 19 20 21 22 23 24 25 | 50. The legislative history of Penal Code section 632 reveals that "service-observing" calls, *i.e.*, calls to businesses that are recorded to quality assurance purposes, were never intended to be covered by the Penal Code.<br><br>Request for Judicial Notice ("RJN"), Ex. E, pp. 15-19, 192-193, 200-202, 310-312 and 321-322. | 50. Objection - irrelevant, as the express language of the statute applies, prescribing the types of calls where customers are asked for confidential information in connection with a dispute over telephone bills are covered, and therefore are controlled by the express language of section 632. Moreover, these statements relate to monitoring, not the actual recording of such calls.<br><br>P.C. § 632; *Kearny v. Salomon Smith Barney*, 39 Ca. 4th 95 (2006). |
| 26 27 28 | | |

| | | |
|---|---|---|
| 1 2 3 4 | 51. The Digest of Senate Amendments to AB860 make clear that "service-observing" was to be unimpeded by section 632.<br><br>RJN, Ex. "E," Digest of Senate Amendments to Bill.] | 51. Objection, irrelevant. See No. 50. |
| 5 6 7 8 9 | 52. Then-Speaker of the Assembly, Jesse M. Unruh—the author of the Bill—explained that "under my bill, it would continue to be perfectly legal to monitor business calls, to insure proper service of customers by employees."<br><br>RJN Ex. "E." | 52. Disputed and objection, irrelevant. See No. 50. The calls in question were to dispute bills. In addition, the relevant fact is that the calls were recorded, *which BBG Communications does not dispute took place* even though they submitted Ms. Monge's Declaration, rather than monitored. Sajfr Decl. at ¶6-7, Irina Keeports Decl. at ¶9 Keeports Decl. at ¶8-18. |
| 10 11 12 13 14 15 | 53. Mr. Unruh also wrote, "[i]t should be mentioned that Assembly Bill 860 has been written carefully so as to avoid any hardship upon law enforcement officers . . . . Likewise, we have exempted from coverage under the measure, normal business telephone monitoring, and known as 'service-observing', which is essential in modern business practices to insure employee efficiency."<br><br>RJN Ex. "E." | 53. Disputed and irrelevant. See Nos. 50-52. |

## **PLAINTIFFS' COUNTERSTATEMENT OF FACTS**

| **Plaintiffs' Additional Undisputed Material Facts** | **Plaintiffs' Supporting Evidence** |
|---|---|
| 1. Even if they could be accessed and disclosed, the rates actually charged to Plaintiffs by BBG are substantially inconsistent with internal call records and rate charts contained on BBG Global AG's own website for calls from Frankfurt, Germany. | Mansfield Decl., ¶9, Exs. 5 and 22. |
| 2. The corporate designee of NOS and Centris Information Services, the Texas companies that provide such operator services, testified that BBG prepared the portion of the operator instruction manual that states the opposite. The process is entirely automated or operators are instructed by BBG not to provide such information unless they are specifically and | Mansfield Decl., Exs. 20 and 21 |

| | | |
|---|---|---|
| 1 | directly asked for it. | |
| 2 | 3. BBG billed the Keeports over $172.00 for 7 minutes worth of international calls, and Mr. Sajfr $55.00 for a one to two minute international call. | Declarations Irina Keeports, Ex. 1; Sajfr Decl., Ex. 1. |
| 3 | | |
| 4 | 4. In addition to the photos attached as Ex. 1 to the Complaint, the photographs attached to the Von Klocke Decl. (Dkt. No. 45-3) show that nowhere on the phone is there any disclosure of any minimum connection times, fees or costs disclosed for making such calls, even though the phones prominently state a coin operated call only costs a couple Euros, or less than $4.00. Such lack of disclosure is consistent with other signage in Europe, all of which fail to give consumers any rate information but say service is provided by BBG, or list BBG Communications Inc. or the BBG logo on the payphone artwork. | Complaint, Ex. 1, Von Klocke Decl., Ex. C; Mansfield Decl., Ex. 5 |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | 5. The charges imposed on Mr. Sajfr or Ms. Keeports were not affirmatively disclosed by BBG's operators at any time during the telephone call process, such as typically occurs when a consumer uses a coin operated pay phone or speaks with an operator. | Sajfr Decl. at ¶3; Irina Keeports Decl. at ¶3 |
| 13 | | |
| 14 | | |
| 15 | 6. BBG claims on its website that "BBG Communications, Inc. is an industry leader in Operator Assisted Services. . . . BBG has interconnect and billing arrangements that enable it to directly carry and deliver telecommunications traffic and bill customers in Canada, Germany, Japan, UK and US and in every other country with credit card transactions." | Keeports Decl., Exs. 1 and 2 |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | 7. BBG's Privacy Policy states that "BBG provides international telecommunications services, including public telephony, calling card, long distance operator assistance, credit card processing, billing, collection and wireless telecommunications services. BBG processes casual-use voice services from European Union ("EU") or Swiss telephone users making long distance calls from payphones or hotels". | Mansfield Decl., Ex. 6. |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | 8. In filings with the Federal Communications Commission, BBG Global AG states Mr. Gregorio Galicot is its president and that BBG Global AG is not a foreign carrier. | Mansfield Decl., Ex. 8 at 6-7 |
| 26 | | |
| 27 | | |
| 28 | 9. Both BBG and BBG Global AG are owned | Mansfield Decl., Ex. 7. |

| | | |
|---|---|---|
| | by the same Galicot family trusts, operated as a trustee by Gregorio Galicot's brother-in-law. | |
| | 10.  Both BBG and BBG Global AG operate using bank accounts at Wells Fargo Bank in San Diego. | Mansfield Decl., Ex. 7. |
| | 11.  BBG Global AG's former general counsel who signed the 2007 letter indicating BBG Global AG was succeeding BBG Holdings' contract with NOS and at least other employees independently state they have worked for BBG Global AG in San Diego. | Mansfield Decl., Ex. 9 and 10. |
| | 12.  Pilar Urbino Morales, the former "managing director" of BBG Global AG who signed agreements between BBG and BBG Global AG on behalf of that company in 2006 that were submitted by BBG in support of its motion and listed as the Secretary of BBG Global AG, also was not based in Switzerland but apparently lived in San Diego and worked out of BBG's San Diego offices. | Mansfield Decl., Ex. 21. |
| | 13.  Agreements for both BBG and BBG Global AG with NOS and Centris were negotiated at the same time by Bryan Rhys of BBG. | Mansfield Decl., Ex. 22 |
| | 14.  All call billing for BBG Global AG is performed by BBG here, and it then sends the customer billing for international calls for processing through its wholly-owned subsidiary in Luxembourg, BBG Financial Services s.a.r.l., in which Raphael and Gregorio Galicot are officers. | Mansfield Decl., Exs. 6, 7, 11 and 13 |
| | 15.  While agents and other operational expenses may be paid out of BBG Global's California bank account, all commissions are calculated by BBG and such funds are transferred for payment by BBG's accounting department, which has access to such accounts. | Mansfield Decl., Exs. 19, 21 and 23 |
| | 16.  BBG's privacy policy, BBG and BBG Global AG's (or its subsidiary's and predecessor's BBG Holdings') agreements between themselves and their agents apply California law and/or select the forum for resolving any disputes between them as being San Diego, California. | Mansfield Decl., Exs. 6, 7, 11 and 12 |
| | 17.  BBG Global claims in its privacy policy to also store data "in our sites located in San | Mansfield Decl., Ex. 14. |

| | | |
|---|---|---|
| 1 | Diego, Ca. and Las Vegas. | |
| 2 | 18. BBG Global AG and BBG Communications both use the same call center operators who receive the same instructions on how to answer customer inquiries from BBG, the same website address extensions for contact information and to use in their business operations, the same training manuals, the same logos, the same customer dispute domestic 1-800 numbers and the same dispute call center personnel. | Mansfield Decl., Exs. 7, 11, 14, 15, 16, 22 |
| 7 | 19. When bills are sent to consumers for calls from Germany, they do not refer to BBG Global AG but rather a undetermined entity called BBG Germany or German Telecom that even BBG was unable to identify, even though it makes the billing arrangements. | Mansfield Decl., Ex. 7; Keeports Decl., Ex. 1; Sajfr Decl. Ex.1. |
| 11 | 20. Both BBG and BBG Global AG in their privacy policies state they collect and only share billing information with their "affiliates". | Mansfield Decl., Exs. 6 and 14. |
| 13 | 21. The "worldwide headquarters" of BBG Global AG in Switzerland appear to at best be sparse, not always open on business days, has the wrong company name on its mailbox, and only identifiable by a sign taped to the door. | Mansfield Decl., ¶¶2-7 and Exs. 1-3 |
| 16 | 22. As to calls that originate in the United States, BBG Communications claims it is the responsible entity for such calls from beginning to end and is at least partially responsible for setting the rates for such calls that are billed to consumers. | Mansfield Decl., Ex. 7 |
| 19 | 23. BBG Communications admits it has received over 1,000 calls from irate consumers complaining about excessive charges and is responsible for processing refund requests. | Mansfield Decl., Exs. 15 and 21 |
| 22 | 24. BBG has received an "F" rating for BBG from the San Diego Better Business Bureau based on several factors, including 471 complaints filed against it that "consumers are being charged extremely high rates for international phone calls and not being properly informed about the rates prior to making the phone call" and "business has failed to resolve underlying cause(s) of a pattern of complaints" | Mansfield Decl., Ex. 17 |
| 27 | 25. During the past 4 years B-Tel Communicacion or G-Tel Communicacion | Mansfield Decl., Exs. 7, 18 and 21 |

| | | |
|---|---|---|
| 1 2 | either was operating as a fictitious business name for BBG Communications Inc., or was an affiliate of BBG Communications as part of the set of Galicot family-owned companies. | |
| 3 4 5 6 7 | 26. Based on the information and 800-numbers provided to them on their billing statements, Mr. Sajfr and Mr. and Mrs. Keeports reasonably believed they were talking to customer service representatives in the United States or who worked for BBG.  BBG operators, if pressed say, that they work for BBG or are in California. | Sajfr Decl. at ¶6-7, Irina Keeports Decl. at ¶9; Keeports Decl. at ¶8-18 and Exs. 3 and 4 |
| 8 9 10 | 27. Mr. Keeports was provided a 619 area code phone number to contact a BBG customer service representative, Alma Perez.  While BBG now claims she is not one of its employees, she is listed by the BBB as the customer care specialist for BBG. | Keeports Decl., Exs. 3-4.  Mansfield Decl., Exs. 16 and 17 |
| 11 12 13 14 15 | 28.  Ms. Monge in her Declaration does not dispute that any of the affiliates who work for BBG  surreptitiously record all customer communications, even though its representatives admittedly immediately ask for and must be provided confidential information such as a credit card number at the initiation of every call. | Mansfield Decl., Ex. 15. |
| 16 17 18 19 20 | 29.   Plaintiffs reasonably believed their communications with customer service representatives of BBG would be treated as confidential based on the fact credit card information was being demanded from them . They received no advance advisory such calls were being monitored or recorded, let alone were recorded outside California, and did not consent to such recording. | Sajfr Decl., ¶6-7, Irina Keeports Decl., ¶9; Keeports Decl., ¶8-18. |

Dated:  November 10, 2011                    CONSUMER LAW GROUP OF CALIFORNIA

By:   /s/Alan M. Mansfield
      Alan M. Mansfield
      alan@clgca.com

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

10200 Willow Creek Road, Suite 160
San Diego, CA 92131
Tel: (619) 308-5034
Fax: (888) 341-5048

WHATLEY DRAKE & KALLAS LLC
Joe R. Whatley, Jr., Esq.
Patrick J. Sheehan, Esq.
380 Madison Avenue, 23rd Floor
New York, NY  10017
Tel: (212) 447-7070
Fax: (212) 447-7077

Attorneys for Plaintiffs Vlastimil Sajfr and David Keeports