FRED R. PUGLISI, Cal. Bar No. 121822
NORMA V. GARCIA, Cal. Bar No. 223512
VALERIE E. ALTER, Cal. Bar No. 239905
ELIZABETH S. BERMAN, Cal. Bar No. 252377
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:    310-228-3700
Facsimile:    310-228-3701
fpuglisi@sheppardmullin.com
ngarciaguillen@sheppardmullin.com
valter@sheppardmullin.com
eberman@sheppardmullin.com

Attorneys for Defendant,
BBG Communications, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLASTIMIL SAJFR AND DAVID KEEPORTS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BBG COMMUNICATIONS, INC., a Delaware CORPORATION, and DOES 1 - 10,<br><br>Defendant. | Case No. 10-CV-02341-AJB (NLS)<br><br>The Honorable Anthony J. Battaglia<br><br>**DEFENDANT BBG COMMUNICATIONS, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>[*Reply Separate Statement of Undisputed Facts, Evidentiary Objections, Response To Plaintiffs' Evidentiary Objections; and Certificate of Service Filed Concurrently herewith*]<br><br>Date:   December 16, 2011<br>Time:   1:30 p.m.<br>Courtroom:  12<br><br>[Complaint Filed: November 12, 2010]<br>Trial Date:  None Set |

TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................... 1

II.  COMM IS ENTITLED TO SUMMARY JUDGMENT ........................................... 1

    A.   Comm's Motion Is Not A Mere "Rehash." ...................................................... 1

    B.   The Fact That Plaintiffs Assert A Class Of Domestic Consumers Is Irrelevant. ........................................................................................................ 2

    C.   The Doctrine Of International Comity Bars Plaintiffs' Claims. ..................... 2

    D.   The Presumption Against Extraterritoriality Bars Plaintiffs' Claims. ............. 3

        1.   Plaintiffs' Evidence Does Not Create An Issue Of Material Fact. ......................................................................................................... 3

        2.   The Presumption Against Extraterritoriality Applies. ......................... 4

    E.   The Dormant Commerce Clause Bars Plaintiff's Claims ................................ 4

    F.   Plaintiffs' Claims Also Fail Under Choice-Of-Law Principles. ...................... 5

    G.   Comm And Global Are Not Alter Egos. ......................................................... 6

    H.   The Safe Harbor Doctrine Bars Each Of Plaintiffs' Claims. .......................... 7

    I.   Plaintiffs' Penal Code Section 632 Claim Fails. .............................................. 8

    J.   Comm Has Complied With Its Discovery Obligations. ................................ 10

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Alvarez v. Chevron Corp.*
  No. CV 09-3343-GHK (CWx), 2009 WL 5552497 (C.D. Cal. Sept. 30, 2009) ....................... 7

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................................... 7

*BMW of North American, Inc. v. Gore*
  517 U.S. 559 (1996) ............................................................................................................... 2

*Consol. Data Term. v. Applied Digital Data Sys*
  708 F.2d 385 (9th Cir. 1983) .................................................................................................. 6

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970, 2011 U.S. App. LEXIS 19060 (9th Cir. 2011) ................................................ 2

*Environmental Defense Fund, Inc. v. Massey*
  986 F.2d 528 (D.C. Cir. 1993) ............................................................................................... 4

*Faulkner v. ADT Security Services, Inc.*
  No. 11-00968, 2011 WL 1812744 (N.D. Cal. May 12, 2011) ................................................ 9

*H.K. & Shanghai Banking Corp. v. Simon*
  153 F.3d 991 (9th Cir. 1998) .................................................................................................. 4

*Hollinger v. Titan Corp.*
  914 F.2d 1564 (9th Cir. 1990) ................................................................................................ 6

*Orloff v. Allman*
  819 F.2d 904 (9th Cir. 1987) .................................................................................................. 6

*Pakootas v. Teck Cominco Metals, Ltd.*
  452 F.3d 1066 (9th Cir. 2006) ................................................................................................ 4

*Pfingson v. Ronan Engineering Co.*
  284 F.3d 999 (9th Cir. 2002) ................................................................................................ 10

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985) ............................................................................................................... 6

*Sakamoto v. Duty Free Shoppers, Ltd.*
  764 F.2d 1285 (9th Cir. 1985) ........................................................................................... 8, 9

*Shanks v. Dressel*
  540 F.3d 1082 (9th Cir. 2008) ................................................................................................ 1

*Sowell v. County of Santa Clara*
    No. 07-5394, 2008 WL 5377645 (N.D. Cal. Dec. 17, 2008) .................................................. 10

*United States v. L.A. Tucker Truck Lines*
    344 U.S. 33 (1952) ............................................................................................................. 8, 9

*Wady v. Provident Life & Accident Ins. Co.*
    216 F. Supp.2d 1060 (C.D. Cal. 2002) ..................................................................................... 6

*Wasco Prods v. Southwall Tech.*
    435 F.3d 989 (9th Cir. 2006) ............................................................................................... 2, 7

*Weinberg v. Whatcom County*
    241 F.3d 746 (9th Cir. 2001) .................................................................................................. 10

State Cases

*Associated Vendors, Inc. v. Oakland Meat Co.*
    210 Cal. App. 2d 825 (1962) .................................................................................................... 6

*Bluestein v. State Bar*
    13 Cal.3d 162 (1974) ................................................................................................................ 8

*Californians for Population Stabilization v. Hewlett-Packard*
    58 Cal. App. 4th 273 (1997) ..................................................................................................... 8

*Cel-Tech Com. Inc. v. L.A. Cellular Tel. Co.*
    20 Cal.4th 163 (1999) ............................................................................................................... 8

*Diamond Multimedia Systems, Inc. v. Superior Court*
    19 Cal.4th 1036 (1999) ............................................................................................................. 5

*Estate of Griswold* (2001)
    25 Cal.4th 904 ........................................................................................................................ 10

*Kearny v. Salmon Smith Barney, Inc.*
    39 Cal.4th 95 (2006) ................................................................................................................. 9

*Morrison Knudsen Corp. v. Hancock*
    69 Cal.App.4th 223 (1999) ....................................................................................................... 6

*Moyer v. Workmen's Comp. Appeals Bd.* (1973)
    10 Cal.3d 222 .......................................................................................................................... 10

*Norwest Mortgage, Inc. v. Superior Court*
    72 Cal.App.4th 214 (1999) ....................................................................................................... 4

*Parnell v. Adventist Health System/West*
    35 Cal.4th 595 (2005) .................................................................................................. 8

*People v. Casper*
    33 Cal. 4th 38 (2004) ................................................................................................... 9

*Swanson v. St. John's Regional Medical Center*
    97 Cal.App.4th 245 (2002) .......................................................................................... 7

*Yu v. Signet Bank/Virginia*
    69 Cal.App.4th 1377 (1999) ........................................................................................ 4

*Woo v. Superior Court (Zarabi)*
    75 Cal. App. 4th 169 (1999) ........................................................................................ 7


Federal: Statutes, Rules, Regulations, Constitutional Provisions

Fed. R. Civ. P. 26(d) ............................................................................................................. 10

Fed. R. Civ. P. 30(b)(6) ........................................................................................................ 10

Fed. R. Civ. P. 56(d) ...................................................................................................... 10, 11

47 C.F.R. 864.703(a)(3)(i) ..................................................................................................... 2


State: Statutes, Rules, Regulations, Constitutional Provisions

California Corporations Code § 24500 ................................................................................... 5

Penal Code § 632 .................................................................................................................... 9


Other Authorities

Mex. Constitution, Article 16, ¶ 12 ........................................................................................ 7

## I. INTRODUCTION

Plaintiffs Vlastimil Sajfr and David Keeports (collectively "**Plaintiffs**") attempt to defeat BBG Communications, Inc.'s ("**Comm**") motion for summary judgment primarily based on their claim that Comm is jointly responsible for the conduct alleged in their Complaint with non-party BBG Global, A.G. ("**Global**") based on theories of alter ego, conspiracy, agency, and aiding and abetting.  [Oppo. 1:12-28.]  Even ignoring Plaintiffs' evidence does not create a triable issue of fact as to these issues, Plaintiffs' evidence is besides the point.

Plaintiffs cannot assert claims arising under California law for conduct that occurred wholly in Germany, regardless of whether Comm or Global is the responsible party.  There is no evidence to dispute the fact that (1) this case involves disclosures of rates in connection with calls made at an airport in Germany and (2) consumers could press "9" to obtain rate information in compliance with German law.  While Plaintiffs argue the contrary, their arguments are based on a misguided belief this Court will not look at the real evidence, but rather blindly accept Plaintiffs' distorted characterization of the same.  Stripped of its faulty description, the evidence Plaintiffs cite actually *confirms* that (1) rates will be provided when "the customer specifically asked for the data" and (2) the quoted rates will be the per-minute rate of the call to be made (*i.e.*, not the rate for a 10-minute call, which is "for test calls only" – a procedure set up so that BBG Global can verify that the price quoting systems are working properly).   [Oppo. 4:18-22.]  In other words, the evidence that Plaintiff cites makes Comm's point that rates are disclosed in complete compliance with the law.  There is thus no basis for California to reach well beyond its territory to govern activity in foreign lands, and Comm's motion for summary judgment should be granted.

## II. COMM IS ENTITLED TO SUMMARY JUDGMENT

### A. Comm's Motion Is Not A Mere "Rehash."

Plaintiffs suggest that Comm's motion should be denied because Judge Huff denied Comm's previous motion to dismiss.  A motion to dismiss and a motion for summary judgment are subject to different standards, and a loss in connection with the former does not preclude success in connection with the latter.  See, *Shanks v. Dressel*, 540 F.3d 1082, 1084 n. 1 (9th Cir. 2008). Moreover, the Court denied Comm's motion to dismiss because it found that factual issues existed

1  as to whether the conduct at issue took place abroad based on a photograph submitted with the
2  Complaint.  Plaintiffs knew the photograph had been taken in Colorado, not Germany, but did not
3  correct the Court's misconception.  [ECF Doc. # 35 at 4:24-25, Rhys Decl., ¶ 9.]  Neither do they
4  deny in their Opposition that the photograph was taken in Colorado. [*See* Oppo. at 1-9.] Thus, a
5  motion for summary judgment was warranted, and, in fact, invited.  [ECF Doc. # 35 at 5:26-28.]

### B.  The Fact That Plaintiffs Assert A Class Of Domestic Consumers Is Irrelevant.

Plaintiffs assert that Comm's motion should be denied because "the class includes both domestic and international calls" and Comm "is responsible for handling domestic calls." [Oppo. 1:14-16.]  However, Plaintiffs did not make domestic calls; they accordingly lack standing to bring a claim based on such calls.  *See*, *e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, __, 2011 U.S. App. LEXIS 19060 at *14-15 (9th Cir. 2011).  The only thing at issue here are Plaintiff Sajfr's calls made from Germany to the Czech Republic.

### C.  The Doctrine Of International Comity Bars Plaintiffs' Claims.

Plaintiffs claim that principles of comity do not apply here because they "are residents of California, BBG is headquartered in California, is owned by California residents, and . . . the conduct in question occurred primarily in California." [Oppo. 15:8-10.]  For purposes of a comity analysis, only the last issue Plaintiffs raise—where the activity occurred—is relevant because the doctrine of comity aims to avoid intrusion of United States law into the affairs of other sovereign states. *See*, *e.g.*, *BMW of North American, Inc. v. Gore*, 517 U.S. 559, 572 (1996).  As noted above, Plaintiffs' evidence does not create a triable issue as to whether (1) Sajfr made a call from Germany, (2) the payphone notified him that he could press "9" for rate information, and (3) the notice to press "9" complies with German law.  In this circumstance, California must give way to Germany's right to govern within its own borders.[1]

---

[1] Moreover, German law is commensurate with the Federal Communications Commissions' disclosure requirements, which require only that a "provider of operated services [to]… disclose immediately to the consumer, ***upon request*** and at no charge to the consumer… a quotation of its rates or charges for the call."  47 C.F.R. § 64.703(a)(3)(i) (emphasis added).  The FCC's disclosure requirements also require, "in the case of a pay telephone, the local coin rate for the pay telephone location." *Id.* at § 64.703(b)(3).  The FCC requirements, like German law, do not require disclosure of every potential long-distance phone call.  This rule makes sense as a practical

1  **D.     The Presumption Against Extraterritoriality Bars Plaintiffs' Claims.**

Plaintiffs attempt to defeat Comm's argument based on the presumption against extraterritoriality claiming that (1) they have created an issue of material fact and (2) California law applies even if the conduct at issue occurred abroad.  Plaintiffs are wrong.

**1.     Plaintiffs' Evidence Does Not Create An Issue Of Material Fact.**

Comm submitted evidence that (1) the call flow design, prompts, and disclosures that are used at the Frankfurt airport were determined by non-party Deutsche Telekom, an entity that is partially owned by the German government [Von Klocke Decl. ¶¶ iv-vi], and (2) non-party B-Tel provided customer service for Global in Mexico [Monge Decl. ¶ 5].  Plaintiffs do not dispute these facts.  Instead, they contend that "[t]here are numerous disputed issues of material fact whether the 'services' in question -- which, from the consumers' perspective stretch from advertising at the payphone, connecting the call, billing the call and customer service -- are at a minimum conducted in concert under agreements between BBG Global AG and BBG" Communications.  [Oppo. 8:17-20.]  Plaintiffs point to various purported facts generally suggesting that (1) Comm and Global have common ownership, (2) NOS performs routing services for both Comm and Global, and (3) Comm performs services, including rating services, for Global.  [*See* Oppo. 5:25-8:16.]  The Complaint, however, *is based on alleged nondisclosures at the point of sale* (*i.e.*, in Germany), and calls that were record in Mexico, and on not connecting or billing a call.  [ECF Doc. #1 ¶¶ 10.]  None of these purported facts establish that BBG Global and Comm work in concert to either determine the disclosures at payphones located in Germany or record phone calls in Mexico. More importantly, none of these purported facts establish that such disclosures were determined in California.  Thus, the facts that Plaintiffs submit regarding Comm's general practices and relation to Global do not create an issue of material fact with respect to the *relevant* issues.[2]  Billing and termination are not at issue at all to the presumption against extraterritoriality.

---

matter given that rates (1) vary by location and call destination, and (2) change frequently, making it impossible to post up-to-date rates at a payphone for every possible place that one could call. This precisely why the rules require only that a caller be able to press "9" to obtain a rate quote.

[2] Plaintiffs argue that the declaration from Vania Monge, B-Tel Comunicacion's representative, does not assert that customer service calls "were not recorded in San Diego." [Oppo. 2:15-17.]

### 2. The Presumption Against Extraterritoriality Applies.

Plaintiffs present no authority permitting the application of California law to disclosures made in Germany or calls recorded in Mexico. Instead, Plaintiffs cite general authority that they claim stands for the proposition "that courts may apply various laws and statutes to conduct that has occurred beyond the borders of the United States." [Oppo. 14:3-4.] The cases that Plaintiffs cite are easily distinguishable. *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1075 (9th Cir. 2006), applied United States environmental law to the "entirely domestic" conduct of releasing toxic substances into a United States river. *H.K. & Shanghai Banking Corp. v. Simon*, 153 F.3d 991, 996 (9th Cir. 1998), involved the application of United States bankruptcy law, where, unlike the California law at issue here, "Congress clearly intended extraterritorial application." Finally, in *Environmental Defense Fund, Inc. v. Massey*, 986 F.2d 528, 529 (D.C. Cir. 1993), the presumption against extraterritoriality did not apply because "the conduct regulated by the statute occurs primarily, if not exclusively, in the United States."[3] Here, by contrast, the conduct at issue occurred abroad, and thus the presumption applies. [*See* ECF Doc. # 45-1 at 12.].

### E. The Dormant Commerce Clause Bars Plaintiff's Claims

Plaintiffs claim that the Dormant Commerce Clause does not bar their claims because Comm did "not specify which laws are subjected to the Dormant Commerce Clause, or how they discriminate in favor of California business." [Oppo. 17:10-18:1.] Plaintiffs misconstrue Comm's argument, which asserts that Plaintiffs' intended use of California law in connection with each claim alleged in the Complaint would violate the Dormant Commerce Clause because it would apply California law to conduct occurring in sovereign nations, not because the laws at issue are

---

Ms. Monge, however, is clear that all of B-Tel's operations, including customer service, take place in Mexico and that B-Tel does not provide any services in California. [Monge ¶ 5.]

[3] California courts have not, as Plaintiffs claim, held that California laws "presumptively apply extraterritorially in cases where the plaintiff is a resident of California." [Oppo. 14:15-17.] Mere California residency is not enough. *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 217 (1999), involved "California residents for whom FPI was purchased by Norwest Mortgage under security instruments encumbering California real estate." Similarly, in *Yu v. Signet Bank/Virginia*, 69 Cal.App.4th 1377, 1381 (1999), the plaintiff California residents' claims arose out of "pre-approved solicitation they received in the mail" in California. In other words, California law applied because the conduct at issue in both *Norwest* and *Yu* was clearly connected to California, not simply because the plaintiffs were residents.

1  discriminatory.  There is no disputed issue as to whether the conduct that forms the basis of
2  Plaintiffs' Complaint—namely, alleged nondisclosures in Germany and recorded calls in
3  Mexico—occurred wholly outside the United States, implicating the Dormant Commerce Clause.[4]
4         Plaintiffs also contend that the Dormant Commerce Clause does not bar their claim
5  because Comm's argument "rests on the false factual premise that "their claims seek to "regulate[]
6  conduct occurring wholly outside of California."  [Oppo. 16:26-27.]  Plaintiffs Complaint,
7  however, seeks to use California law to regulate activity occurring exclusively at an airport in
8  Germany and a call center in Mexico;  Plaintiffs' claims as pled are not based on any of the
9  California-based conduct alleged in their Opposition papers.  Thus, this case is easily
10 distinguishable from *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036
11 (1999).  There, the court permitted out-of-state plaintiffs to recover damages for injuries sustained
12 a result of violations of California Corporations Code § 24500 over a Dormant Commerce Clause
13 objection because "section 24500 regulates only manipulative conduct in California."  *Id.* at 1062.
14 There was no violation of the Dormant Commerce Clause because the statute, by definition, did
15 not apply extraterritorially.  Here, by contrast, Plaintiffs seek to apply California law to allegedly
16 deceptive conduct occurring abroad.  Thus, neither *Diamond* nor their improper attempts to amend
17 their Complaint via the Opposition can help them, and their proposed use of California law
18 violates the Dormant Commerce Clause.
19        **F.     Plaintiffs' Claims Also Fail Under Choice-Of-Law Principles.**
20        Plaintiffs argue that California law should apply because (1) they live in and Comm is
21 headquartered in California, (2) Comm has agreements with third parties in which it elects to use
22 California law, and (3) Global is allegedly Comm's "affiliate" and has common ownership.
23 [Oppo. 15:18-28.]  In other words, Plaintiffs argue that California law should apply because this
24 Court has jurisdiction over Comm.  Mere jurisdiction, however, is insufficient.  *Phillips Petroleum*

---

[4] The conduct at issue does not, as Plaintiffs claim, emanate from California.  [Oppo. 17:22-18:1.] On the contrary, Comm presented ***undisputed*** evidence that Deutsche Telekom determined the call flow design, prompts, and disclosures that BBG Global uses at the Frankfurt airport, meaning that the alleged nondisclosures emanate from Germany. [Von Klocke Decl. ¶¶ iv-vi]

*Co. v. Shutts*, 472 U.S. 797, 837 (1985).  Moreover, the fact that Comm agreed to apply California law in certain circumstances does not mean that it applies in all circumstances.  *See*, *e.g.*, *Consol. Data Term. v. Applied Digital Data Sys*, 708 F.2d 385, n. 390 (9th Cir. 1983) (choice of law clause only applies to claims governed by specific contract that contains it).  Thus, German and Mexican law apply for the reasons explained in Comm's moving papers.  [*See* ECF Doc. # 45-1 at 16-19.]

### G.     Comm And Global Are Not Alter Egos.

Comm submitted direct, admissible evidence that it and Global observe corporate formalities and are adequately capitalized, among other things.  Plaintiffs do not specifically contradict that evidence at all.  Rather, Plaintiffs attempt—based on innuendo, generalizations, mischaracterizations and inadmissible "evidence," as explained in Comm's Reply Separate Statement and Evidentiary Objections, filed concurrently herewith—to argue that Comm and Global are alter egos essentially because they have common leadership and common ownership.  [Oppo. 12:1-13.]  Common ownership without more is not enough.  *See*, *e.g.*, *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).  This is especially true because Plaintiffs have produced no evidence that Comm is undercapitalized.  *Morrison Knudsen Corp. v. Hancock*, 69 Cal.App.4th 223, 251 (1999).

Moreover, Plaintiffs do not address the second prong of an alter ego analysis, that an inequitable result would follow from the failure to make an alter ego finding.  They have presented no evidence, let alone "an abuse of the corporate form, such as undercapitalization or misrepresentation of the corporate structure to creditors."  *Orloff v. Allman*, 819 F.2d 904, 909 (9th Cir. 1987), abrogated on other grounds, *Hollinger v. Titan Corp.*, 914 F.2d 1564 (9th Cir. 1990).  Thus, Plaintiffs have not created a disputed issue of material fact as to alter ego.  *See Wady v. Provident Life & Accident Ins. Co.*, 216 F. Supp.2d 1060, 1068 (C.D. Cal. 2002).

Plaintiffs finally argue that "a party can also be held liable for the acts of another based on various theories, such as aiding and abetting, agency and conspiracy."  [Oppo. 12:21-23.]  Plaintiffs, however, did not plead these theories in their Complaint to meet the requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  On the contrary, Plaintiffs' Complaint references an alleged "conspiracy" or "agency" relationship *only* with respect to "DOES 1-10" and in the most

conclusory of terms, and ***never*** alleges aiding and abetting. [ECF Docket #1, ¶¶ 12, 13.] This is insufficient to meet Plaintiff's obligation to plead "each material element of the underlying legal theory." *Wasco Prods*, 435 F.3d at 992.[5]

### H. The Safe Harbor Doctrine Bars Each Of Plaintiffs' Claims.

Plaintiffs first argue—without citing any authority—that the safe harbor doctrine "only applies to the 'unfair' prong of the UCL" and claims that Comm did not address the unlawful or fraudulent prongs. [Oppo. at 19:25-27.] Not so. The safe harbor doctrine applies to UCL claims under ***any*** of the three prongs; indeed, it even applies to non-UCL causes of action based on the same facts. *See, e.g., Alvarez v. Chevron Corp.*, No. CV 09-3343-GHK (CWx), 2009 WL 5552497 at *6 (C.D. Cal. Sept. 30, 2009).[6]

Plaintiffs next argue that there is no safe harbor because Comm does not cite to any law that specifically permits the conduct at issue (*i.e.*, nondisclosure of rates in Germany and recording calls in Mexico). Plaintiff has it reversed – it is Plaintiff that has failed to cite a single case holding that the disclosures it desires are mandated by California's general consumer protection laws, even though Comm has cited German and Mexican laws that ***expressly exclude*** their application to the conduct alleged in the Complaint. [Holznagel Decl. ¶ 1, Annex (excluding long distance calls from requirement that rates be disclosed); Mex. Constitution, Art. 16, ¶ 12; Guakil-Chaiyo Decl., ¶ 3; RJN, Ex. F (excluding recording of calls with one individual's consent from prohibition against invasion of private communications).] This becomes all the more true when one realizes that German law is consistent with American law on the issue of payphone disclosures. *See* 47 C.F.R. § 64.703(a)(3)(i). Where, as here, a legislative body has considered

---

[5] Global has not—and cannot—be substituted into this lawsuit for a DOE defendant. The DOE defendant procedure is available ***only*** where a party is unaware of the identity of a defendant or its role prior to filing a lawsuit. *Woo v. Superior Court (Zarabi)*, 75 Cal. App. 4th 169, 177 (1999). Not only were Plaintiffs aware of Global, ***they pled in their Complaint*** that Comm informed them that Global was the proper party before they filed this suit. [Complaint ¶ 32.]

[6] Plaintiffs also claim that Comm did not make any argument other than the safe harbor to address the other two prongs of the UCL. Comm, however, explained that that Sajfr cannot state ***any*** claim to the extent that it flows from the alleged non-disclosure of rates because California law does not require rates to be disclosed in a particular manner. [*See* ECF. Doc. # 45-1 at n. 10, n. 16.] Similarly, Comm established Plaintiffs cannot state a claim based on the alleged recording of their calls, as discussed in Section II(I), *infra*.

specific conduct and then expressly excluded it from legislation which otherwise may have applied to it, the safe harbor applies. *Swanson v. St. John's Regional Medical Center*, 97 Cal.App.4th 245 (2002) (safe harbor applies where the legislature specifically excluded the complained of conduct from a statute), *disapproved on other grounds by Parnell v. Adventist Health System/West*, 35 Cal.4th 595 (2005). Accordingly, the alleged failure to disclose rates for Sajfr's alleged calls in Germany and the alleged recording of Plaintiffs' calls in Mexico cannot form the basis of a UCL claim because the German and Mexican legislative bodies, respectively, have determined such acts to be lawful. *See Cel-Tech Com. Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 182-84 (1999).

Plaintiffs do not argue that the safe harbor does not encompass foreign law. Comm, however, acknowledges that Judge Huff in ruling on Comm's Motion to Dismiss declined to apply the safe harbor based on foreign law because of a perceived lack of authority. [ECF Doc. # 35 at 7:18-8:1.] Not so. Before *Cel-Tech*, which coined the phrase "safe harbor," was decided, California courts specifically recognized that there is no cause of action under the UCL where a practice is legal under a foreign law. *See Californians for Population Stabilization v. Hewlett-Packard*, 58 Cal. App. 4th 273, 292-293 (1997) ("In this instance action, it was stipulated that the Tata documents were legal under Indian law. The mere fact that certain provisions [of the contract] were unenforceable in California does not render the use of the documents an unfair business practice."). Moreover, in *Bluestein v. State Bar,* 13 Cal.3d 162, 174 (1974), the California Supreme Court considered what the word "law" meant in the statute prohibiting the unauthorized practice of law, gave it the broadest possible definition, and included "foreign law." To read the UCL safe harbor narrowly to exclude foreign law would defy this established precedent, ignore the very rational behind *Cel Tech*, and ***unfairly*** hinder the ability of California corporations to compete in Germany because —based on the alleged, but unproven law of a jurisdiction nearly 6,000 miles away— they could not comply with Deutche Telekom's mandated call flow and disclosure requirements, even though every competitors could do so.

### I.     Plaintiffs' Penal Code Section 632 Claim Fails.

Plaintiffs' Penal Code Section 632 claim fails because (1) B-Tel, not Comm, recorded their

phone calls in Mexico, not California; (2) the legislature in passing the statute did not intend to prohibit "service-observing" because it deemed that practice to be in the public's best interest; and (3) there is no reasonable expectation of privacy in calls regarding billing disputes to a service provider and they therefore are not covered by the statute. [*See* ECF Doc. # 45-1 at 24-25.]

In opposition, Plaintiffs argue that these are the same arguments that were raised and rejected in connection with Comm's Motion to Dismiss. [Oppo. at 20-18-20.] The Court, however, was bound then to accept Plaintiffs' allegations that Comm recorded the calls in California and that Comm controlled the call center, wherever it was located. [*See* ECF Doc. # 35 at 6:10-13; 11:7-12:3.] However, those allegations are false: B-Tel (not Comm) handled the calls in Mexico (not California) pursuant to an agreement with Global (not Comm) governed by Mexican (not Californian) law.[7] [ECF Doc. # 45-1 at 5:16 – 6:2.] Moreover, *Faulkner v. ADT Security Services, Inc.*, No. 11-00968, 2011 WL 1812744 (N.D. Cal. May 12, 2011) was decided two months *after* Judge Huff issued the order on Comm's Motion to Dismiss. [*See* ECF Doc. # 35 at 12:10.] There, the Northern District held that a California consumer does not have a reasonable expectation that calls regarding billing disputes—just like the calls Plaintiffs' allegedly made— would not be recorded. *Id.* at *3-4. Plaintiffs, notably, make no effort to distinguish *Faulkner*.[8]

This Court should follow *Faulkner* because the Legislature clearly did not intend to cover the recording or monitoring of calls made to customer service representatives when it enacted the statute. [*See* ECF Doc. # 45-1 at 24:20 – 25:5, n. 17.] This issue – whether the Legislature intended to outlaw "service-observing" when it enacted Section 632 – is one of first impression. Thus, the Court must ascertain the Legislature's purpose, and then give effect to that purpose when

---

[7] Plaintiffs try to create a disputed fact where none exists by challenging Ms. Monge's statements regarding the date the B-Tel—Global contract was entered in to. [*See* Oppo. at 20-22.] Plaintiffs do not introduce contravening evidence that shows this contract is in fact not the contract that was in force at the time Plaintiffs allegedly made the calls to the call center, however.

[8] *Kearnv v. Salmon Smith Barney, Inc.*, 39 Cal.4th 95 (2006), upon which Plaintiffs rely, is not to the contrary. It did not reach the issue that Comm raises here—namely, whether the Legislature intended to exclude "service observing" from Section 632's purview—and thus does not preclude Comm's argument here. *Sakamoto*, 764 F.2d at 1288; *U.S. v. L.A. Tucker Truck Lines*, 344 U.S. at 37-38; *People v. Casper*, 33 Cal. 4th 38, 43 (2004) ("It is axiomatic that cases are not authority for propositions not considered.").

interpreting the statute. *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230; *Estate of Griswold* (2001) 25 Cal.4th 904, 910. Here, as explained in Comm's moving papers, there can be no doubt that the Legislature intended to exclude "service-observing" from the statute's purview, and there is no dispute that Plaintiffs calls were recorded for customer service observing purposes. [*See* RJN, Ex. E at pp. 192-193, 197, 200-202, 310-312, 321-325.] This intended exclusion must be given effect, not ignored or interpreted out of the statute altogether.

### J. Comm Has Complied With Its Discovery Obligations.

Plaintiffs claim that Comm has not complied with its discovery obligations and attempt to invoke Fed. R. Civ. P. 56(d). [Oppo. 25:5-22.] "[A] party requesting a continuance pursuant to Rule 56([d]) must do so by formal motion: a 'request in [a] memorandum in opposition to [a] motion for summary judgment . . . [i]s plainly inadequate' to justify a continuance." *Sowell v. County of Santa Clara*, No. 07-5394, 2008 WL 5377645 at *3 (N.D. Cal. Dec. 17, 2008) (quoting *Weinberg v. Whatcom County*, 241 F.3d 746, 751 (9th Cir. 2001) (ellipses in original)). "References in memoranda and declarations. . . do not qualify as motions under Rule 56([d])." *Weinberg*, 241 F.3d at 751. Plaintiffs have not filed a separate motion.

Moreover, Rule 56(d) applies only where a plaintiff could not previously obtain the information that he claims prevents him from opposing a motion for summary judgment. Plaintiffs complain that (1) Comm did not respond to certain document requests and requests for admission and (2) Global, in response to a Rule 30(b)(6) deposition, designated Irene Fedier instead of Rafael or Gregorio Galicot. As to the first issue, Judge Stormes ***denied*** all of Plaintiffs' motions to compel in connection with their document requests and request for admission because the requests were defective. [ECF Doc. # 93.] Plaintiffs' failure to serve effective discovery cannot justify a Rule 26(d) request. *Pfingson v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) (request for relief denied where he had opportunity to obtain discovery but "filed a defective request"). As to the second issue, Global is entitled to select its corporate designee. If Plaintiffs wanted to depose Rafael or Gregorio Galicot, they should have noticed their depositions. Plaintiffs agreed to a discovery cut-off of October 10, 2011. The fact that they did not ask the right questions of the right people in their allotted time does not justify applying Rule 56(d).

| | | |
|---|---|---|
| 1 | Dated:  November 23, 2011 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| 2 | | By           *s/Fred R. Puglisi* |
| 3 | | FRED R. PUGLISI |
| | | Attorneys for Defendant, |
| 4 | | BBG Communications, Inc. |