FRED R. PUGLISI, Cal. Bar No. 121822
VALERIE E. ALTER, Cal. Bar No. 239905
ELIZABETH S. BERMAN, Cal. Bar No. 252377
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:      310-228-3700
Facsimile:       310-228-3701
fpuglisi@sheppardmullin.com
valter@sheppardmullin.com
eberman@sheppardmullin.com

Attorneys for Defendant
BBG COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLASTIMIL SAJFR AND DAVID KEEPORTS, on behalf of themselves and all others similarly situated,<br><br>               Plaintiff,<br><br>     v.<br><br>BBG COMMUNICATIONS, INC., and DOES 1-10 INCLUSIVE,<br><br>           Defendant. | Case No. 10CV2341-AJB (NLS)<br><br>The Honorable Anthony J. Battaglia<br><br>**DEFENDANT BBG COMMUNICATIONS, INC.'S REPLY TO PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT**<br><br>[*Reply Memorandum of Points of Authorities, Evidentiary Objections, Response To Plaintiffs' Evidentiary Objections; and Certificate of Service Filed Concurrently herewith*]<br><br>Date:   December 16, 2011<br>Time:  1:30 p.m.<br>Courtroom:  12<br><br>[Complaint Filed: November 12, 2010]<br>Trial Date:  None Set |

-1-

DEFENDANT BBG COMMUNICATIONS, INC.'S
OPPOSITION TO PLAINTIFFS' RESPONSE TO
SEPARATE STATEMENT OF UNDISPUTED FACTS

## DEFENDANT'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant BBG Communications, Inc. ("**Comm**" or "**Defendant**") submits the following Reply to Plaintiffs Vlastimil Sajfr and David Keeports' ("**Plaintiffs**") Response to its Separate Statement in support of its Motion for Summary Judgment, and its Response to Plaintiffs' Counterstatement of Facts.

**A.    BBG Communications' Responses To Plaintiffs' Response to Its Undisputed Facts**

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 1.  BBG Communications, Inc. ("BBG Communications") is a Delaware corporation.<br>Gregorio Galicot Declaration (Galicot Decl.,")  ¶ 3 | 1.  Admit. |
| 2.  BBG Communications is headquartered in San Diego, California.<br>Galicot Decl., ¶ 3. | 2.  Admit. |
| 3.  BBG Communications is, among other things, a reseller of telecommunications services.<br>Galicot Decl., ¶ 3. | 3.  Admit. |
| 4.  BBG Communications provides reseller telecommunications services exclusively in North America, i.e., in the United States, Mexico and Canada.<br>Galicot Decl. ¶ 3. | 4.  Disputed.  On payphones throughout Europe, either the BBG logo or BBG Communications Inc. is listed as the name that appears as providing such service.  Mansfield Decl.,  Ex. 5.  BBG publicly represents on its website that "BBG Communications, Inc. is an industry leader in Operator Assisted Services  . . . BBG has interconnect and billing arrangements that enable it to directly carry and deliver telecommunications traffic and bill customers in Canada, Germany, Japan, UK and in every other country with credit card transactions."  (Keeports Decl., Ex. 1 and 2); and in its Privacy Policy that "BBG provides international telecommunications services, including public telephony, calling card, long distance operator assistance, credit card processing, billing, collection and wireless telecommunications services.  BBG processes casual-use voice services from European Union ("EU") or Swiss telephone users making long-distance calls from payphones or hotels."  Mansfield Decl., Ex. 6. |

DEFENDANT BBG COMMUNICATIONS, INC.'S OPPOSITION TO PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

**Comm's Reply:  Fact established.**  Plaintiffs do not present any (1) admissible evidence, *see* Evidentiary Objections filed concurrently herewith or (2) relevant evidence to controvert this fact.  The fact that Comm and Global use the same logo pursuant to a written license agreement does not mean that Comm is providing telecommunications services outside of North America.  Plaintiffs' citation to a statement on a website that Comm can bill customers in Germany, among others, and a general statement in a privacy policy that Comm has the ability to provides various services does not mean that Comm actually provides telecommunications services outside the territories it has identified (i.e., the fact that Comm can handle an international call from the United States to foreign countries does not mean it is providing telecommunication services in Germany).  Moreover, for purposes of this motion, the primary issue is whether Comm or Global provided services at the Frankfurt Airport in Germany;  none of Plaintiffs' evidence suggests that Comm, and not Global, provided services at the Frankfurt Airport.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 5.  BBG Communications does not provide operate [sic] payphones in Frankfurt, Germany.  Galicot Decl., ¶ 3. | 5.  Disputed. See Response to No. 4. Objection as to what "provide operate" means. |

**Comm's Reply:  Fact established.**  *See* Response To No. 4.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 6.  Plaintiff Vlastimil Sajfr placed a call to the Czech Republic using a BBG Global, AG serviced public payphone in Frankfurt, Germany to place a call to the Czech Republic on June 12, 2010. Galicot Decl., ¶7, Ex. "D." | 6.  Disputed. Based on the signage on the phone, there is no indication on the telephone in the Frankfurt Germany airport that it was a "BBG Global, AG serviced public payphone" as it only shows the BBG logo. Mansfield Decl., Ex. 4. Moreover, the billing for the call was from a company called Telecom Germany, which BBG Communications was unable to identify. Sajfr Decl. Ex. 1; Mansfield Decl., Ex. 7. |

DEFENDANT BBG COMMUNICATIONS, INC.'S
OPPOSITION TO PLAINTIFFS' RESPONSE TO
SEPARATE STATEMENT OF UNDISPUTED FACTS

**Comm's Reply:  Fact established.**  Plaintiffs' purported evidence does not contradict Comm's evidence or create a disputed issue of material fact, and is not based on admissible evidence.  *See* Evidentiary Objections, submitted concurrently herewith.  More specifically, the fact that the payphone Sajfr used in Frankfurt allegedly did not itself identify Global—or any other entity—as the service provider does not controvert the fact that Global provided the services at issue.  At most, Plaintiffs' fact shows that Global provided services without identifying itself to Plaintiff.  Similarly, the fact that the services Sajfr used were billed as "Telecom Germany," which *Comm* was unable to identify, does not mean that the services at issue were not provided by Global.  At most, it shows the description used by Global to inform the consumer of the nature of the charge.

| **DEFENDANT'S UNDISPUTED FACTS** | **PLAINTIFFS' RESPONSE** |
|---|---|
| 7.  BBG Communications does not process or provide calling service for calls that originate in Frankfurt, Germany.<br>Galicot Decl., ¶¶ 3, 5<br>Declaration of Brian Rhys ("Rhys Decl."), ¶ 6. | 7.  Disputed.  See Response to No. 4.  All calls are "processed" through the same servers in the United States through an agreement negotiated by BBG Communications and are "rated" or priced and billed by BBG Communications in California. Mansfield Decl., Ex. 21 and 22. |

**Comm's Reply:  Fact established.**  *See* Reply To No. 4.  Further, Plaintiffs' claims that (1) calls from Germany are "processed" on NOS's servers in Texas and (2) Comm "rated" or "priced and billed" calls from Frankfurt are irrelevant to the claims at issue in this lawsuit.  Nor does the evidence relied on by Plaintiffs support any conclusion other than Comm provides back office administrative services for Global.  Outsourcing administrative functions is common today.  The only claims in this case center around the disclosure of Global's rates at the Frankfurt Airport, and the relevant issues center around where those disclosures were determined and made, not how or where outsourced administrative functions were provided.  Thus, it is undisputed that Global provided the only services that are at issue in this lawsuit.

DEFENDANT BBG COMMUNICATIONS, INC.'S
OPPOSITION TO PLAINTIFFS' RESPONSE TO
SEPARATE STATEMENT OF UNDISPUTED FACTS

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 8. BBG Communications did not provide the telecommunication services for the calls made by Mr. Sajfr as alleged in the Complaint. Galicot Decl., ¶¶ 3, 5.<br><br>Declaration of Ferdinand Von Klocke Decl. ("Von Klocke Decl."), ¶¶iii-xxiv | 8.  Disputed.  See responses to Nos. 4, 6, and 7. Such processes are a key aspect of the telecommunications services at issue. |

**Comm's Reply:  Fact established.**  See responses to Nos. 4, 6, and 7, infra.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 9.  BBG Global, A.G. ("BBG Global") is a Swiss corporation headquartered in BAAR, Switzerland. Von Klocke Decl., ¶¶iv.<br><br>Declaration of Irene Fedier ("Fedier Decl.") ¶ 4. | 9.  Admitted. |
| 10.  BBG Global and BBG Communications are a separate and distinct legal entities. Von Klocke Decl. ¶¶iv<br><br>Fedier, ¶4.<br><br>Galicot, Decl. ¶ 3. | 10.  Disputed. In filings with the Federal Communications Commission, BBG Global AG states Mr. Gregorio Galicot is its president and that BBG Global AG is not a foreign carrier. Mansfield Decl., Ex. 8 at 6-7. Both companies are owned by the same Galicot family trusts, operated as trustee by Gregorio Galicot's brother-in-law. Id., Ex. 7. Both companies operate using bank accounts at Wells Fargo Bank in San Diego. Id., Ex. 7. While BBG claims BBG Global AG has no employees in California, its former general counsel who signed the 2007 letter indicating BBG Global AG was succeeding BBG Holdings' contract with NOS and at several employees independently state they have worked for BBG Global AG in San Diego. Id., Exs. 9 and 10. Pilar Urbino Morales, the former "managing director" of BBG Global AG who signed agreements between BBG and BBG Global AG was not based in Switzerland but apparently lived in San Diego and worked out of BBG's San Diego |

DEFENDANT BBG COMMUNICATIONS, INC.'S OPPOSITION TO PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

2e5db32a083ea354

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| | offices. Id., Ex. 21. Call routing is all conducted through the same servers operated by the same company, and agreements for both BBG and BBG Global AG with NOS and Centris were negotiated at the same time by Bryan Rhys, who claims to work for BBG. Id., Ex. 22. All call billing is actually performed by BBG here. It then sends the customer billing for international calls for processing through its wholly-owned subsidiary in Luxembourg, BBG Financial Services s.a.r.1., in which Raphael and Gregorio Galicot are officers. Id., Exs. 6, 7, 11 and 13. While agents and other operational expenses may be paid out of BBG Global's California bank account, all commissions are calculated by BBG and such funds are transferred by BBG's accounting department. Id., Exs. 19, 21 and 23. |

**Comm's Reply:  Fact established.**  Plaintiffs do not present any (1) admissible evidence, (*see* Evidentiary Objections filed concurrently herewith) or (2) relevant evidence to controvert this fact.  Rather, Plaintiffs rely on misconstruction and misdirection, and in so doing materially overstate the documents submitted with their opposition.  Whether or not Comm and Global are owned by the same family trusts, or whether they hold separate accounts with the same banks, or whether Global used the services at some point of people who resided in California does not establish that Global and Comm are not separate and distinct legal entities.  Additionally, whether or not Comm and Global have independent agreements with NOS, whether or not Global outsources back-office administrative work to Comm does not establish that Comm and Global are not separate and distinct legal entities.  None of this evidence suggests Comm and Global (1) comingle assets or (2) do not observe corporate formalities, which is necessary to controvert this fact.  *See, e.g., Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962); *Morrison Knudsen Corp. v. Hancock*, 69 Cal.App.4th 223, 251 (1999).  Nor does it establish any inequitable result from honoring the separateness of these two distinct entities.  If Plaintiffs' arguments were enough to prove alter ego, then the rule of corporate separateness would cease to exist and all the attorneys, accountants and economists whose livelihood it is to administer and

1 maintain such things is worthless as the very fact they do what they do would defeat the very

2 purpose their services exist.  This has never been the law.

3

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 11.  BBG Global provides operator assisted and swipe card calling long distance services at the Frankfurt airport, pursuant to an agreement with Deutsche Telekom, AG.<br>Von Klocke Decl. ¶¶iv-vi. | 11.  Disputed.  See Response to Nos. 4 and 7. |

**Comm's Reply: Fact established.**  See Reply to Nos. 4 and 7.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 12.  Deutsche Telekom is a German corporation headquartered in Germany.<br>Von Klocke Decl., ¶ iii, Ex. "A." | Admit. |
| 13.Deutsche Telekom is the principal telephone carrier in Germany.<br>Von Klocke Decl., ¶ iii, Ex. "A." | Admit. |
| 14. The Federal Republic of Germany owns part of Deutsche Telekom.<br>Von Klocke Decl. ¶ iii, Ex. "A." | Admit. |
| 15.  In or about 2007, Von Klocke was responsible for establishing and managing BBG Global's long distance payphone card swipe operator-assisted calling services at the Frankfurt, German airport. | Disputed. BBG submits no evidence that as an agent Mr. Von Klocke is the ultimately responsible person, as compared to Mr. Gregorio Galicot as an officer or director of BBG Global. See No. 9. |

**Comm's Reply: Fact established.**  Mr. Von Klocke's declaration establishes that he was "personally responsible for negotiating with Deutsche Telekom on behalf of BBG Global to provide long distance card swipe operator-assisted calling services to payphones located in the Frankfurt airport in Germany."  [Von Klocke Decl. ¶ vi.]  Plaintiffs do not submit any evidence to dispute this fact, and their complaint that Gregorio Galicot did not submit a declaration on this

-6-

topic is not *evidence* that creates a genuine issue of material fact as to the statements in Mr. Von Klocke's declaration.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 16.  BBG Global's agreement with Deutsche Telekom was heavily negotiated over the course of several months and almost every detail in connection with the services provided by BBG Global, including the details and specifications of the call flow design, prompts, and disclosures, was determined by, reviewed by and subject to the approval of Deutsche Telekom. Von Klocke Decl., ¶ vi. | 16.  Objection. No agreement produced, and irrelevant as statement says nothing about negotiation of the rates charged consumers. Also the rates actually charged Mr. Sajfr and Ms. Keeports were multiple times greater than provided in the rate sheets on BBG Global's website. Sajfr Decl. at ¶3; Irina Keeports Decl. at ¶3; Mansfield Decl. ¶9, Ex. 5. |

**Comm's Reply:  Fact established.**  Mr. Von Klocke's declaration clearly establishes this fact, and Plaintiffs do not provide any evidence to dispute it.  Mr. Von Klocke was permitted to testify about his experience negotiating the agreement between Global and Deutsche Telekom without appending the agreement to his declaration, and Plaintiffs' provide no authority that he cannot.  Moreover, this fact is not, as Plaintiffs' claim, irrelevant.  Comm raises issues of (1) extraterritorial application of California law, (2) international comity, and (3) the Dormant Commerce Clause in its motion for summary judgment.  The fact that Deustche Telekom dictated the disclosures to be used as the Frankfurt airport is directly relevant to those issues.  Finally, Plaintiffs' complaint that the "rates actually charged were greater than the rate sheets on BBG Global's website" is (1) based on inadmissible evidence, *see* Evidentiary Objections, filed concurrently herewith, and (2) irrelevant.  Rates change constantly, as do exchange rates.  Plaintiffs use of a current rate sheet to complain about the calculation of a call placed more than a year earlier is meritless.  Even so, the issue in this case is the disclosures that were made at the Frankfurt Airport, not Global's rates.  In fact, any claim based on rates would be preempted by the

DEFENDANT BBG COMMUNICATIONS, INC.'S
OPPOSITION TO PLAINTIFFS' RESPONSE TO
SEPARATE STATEMENT OF UNDISPUTED FACTS

Federal Communications Act. *North County Communications v. California Catalog & Technology*, 594 F.3d 1149, 1155 (9th Cir. 2010).

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 17.  BBG Global now provides card swipe operator-assisted payphone services at the Frankfurt, Germany airport pursuant to the terms dictated by Deutsche Telekom.<br>Von Klocke Decl., ¶ vi, xvii Exhibit "B." | 17.  Disputed. Rating or pricing of such calls takes place by BBG after the telephone call is made, which is an integral part of such services. Mansfield Decl., Exs. 21 and 22. In addition, the services are not "operator-assisted" in that they are fully automated and do not actually connect through an operator but rather through an automated server process. Mr. Sajfr and Ms. Keeports explain that is not how the system operated. See Sajfr Decl. at ¶3-5; Irina Keeports Decl. at ¶3, 4, 7, 8. Even if disclosed the rates actually charged to Plaintiffs by BBG are substantially inconsistent with internal call records and rate charts contained on BBG Global AG's own website for calls from Frankfurt, Germany<br>Mansfield Decl., ¶9, Exs. 5 and 22. |

    **Comm's Reply:  Fact established.**  This fact is clearly established by the declaration of Ferdinand Von Klocke, and Plaintiffs do not provide any evidence that disputes it.  *See* Evidentiary Objections, filed concurrently herewith.  Plaintiffs' purported evidence does not dispute that Deutsche Telekom dictated the terms pursuant to which Global provides services at the Frankfurt airport, including its disclosures of rates, the ***only*** relevant issue in this case.  The fact that (1) Comm provided back office administrative services for Global pursuant to a written outsourcing agreement, including Global calls placed at the Frankfurt airport, (2) calls at the Frankfurt airport may be automated, and (3) the rates charged over a year ago to Sajfr are allegedly inconsistent with today's rate information on Global's website is irrelevant to Global's disclosure of rates at the Frankfurt Airport.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 18.  BBG Global follows the same call flow design that Deutsche Telekom follows.<br>Von Klocke Decl., ¶ viii, Exhibit "B." | 18.  Disputed. All payphone calls from both BBG Global AG and BBG Communications, Inc. are routed through a server in Longview, Texas and then rated, priced and billed by BBG Communications in California. See Response No. 16. There is no evidence all Deutsche Telecom calls are so routed, rated and billed. |

  **Comm's Reply:  Fact established.**  This fact is clearly established by the declaration of Ferdinand Von Klocke, and Plaintiffs do not provide any evidence that disputes it.  The fact that calls made from the Frankfurt Airport are routed through a server in Longview, Texas does not dispute the fact that Deutsche Telekom dictated the call flow, and specifically the disclosures, to be used as the Frankfurt airport, which is the **only** thing at issue in this case.  *See* Reply To No. 16.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 19.  The call flow design provides at least two opportunities for a caller to dial either "1" or "9" to obtain rates before connecting his or her call.<br>Von Klocke Decl., ¶ viii-xi. | 19.  Disputed.  Keeports Decl. at ¶3, 4, 7, 8. Critically, even if disclosed, the rates actually charged to Plaintiffs by BBG are substantially inconsistent with internal call records and rate charts contained on BBG Global AG's own website for calls from Frankfurt, Germany Mansfield Decl., ¶9, Exs. 5 and 22. This is because BBG has provided instructions that operators specifically not to rate a call unless a customer specifically asks for such data to avoid losing revenue. Mansfield Decl., Exs. 20 and 22. Such charges were not affirmatively disclosed by BBG's operators at any time during the telephone call process, such as typically occurs when a consumer uses a coin operated pay phone or speaks with an operator. Sajfr Decl. at ¶3; Irina Keeports Decl. at ¶3. Rather, the process is entirely automated or operators are instructed by BBG not to provide such information unless they are specifically and directly asked for it. |

  **Comm's Reply:  Fact established.**  This fact is clearly established by the declaration of Ferdinand Von Klocke.  Plaintiffs submit no evidence that any person who pushed "1" or "9" to obtain rate information was not given rate information.  In fact, Plaintiffs' evidence supports this fact.  Exhibits 20 and 22, contrary to Plaintiffs' mischaracterization thereof, establish that Global

-9-

discloses its rates to customers when "asked for the data."  The remainder of Plaintiffs' purported evidence is irrelevant to this fact.  Whether rates are "affirmatively disclosed" by an operator or via an "automated process" does not dispute the fact that a customer can obtain rate information simply by pressing "1" or "9".  Finally, Plaintiffs' claim that the rates they were charged more than a year ago are different than the rates currently published on Global's website is (1) based on inadmissible evidence, *see* Evidentiary Objections filed concurrently herewith, and (2) irrelevant.  Global's rate sheet at one point in time says nothing about the disclosures that Plaintiffs would have gotten had they actually pushed "1" or "9" when they placed the calls at issue.  Moreover, the issue in this case concerns the disclosures that were made at the Frankfurt Airport, not Global's rates.  In fact, any claim based on rates would be preempted by the Federal Communications Act.  *North County Communications v. California Catalog & Technology*, 594 F.3d 1149, 1155 (9th Cir. 2010).

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 20.  The specific prompts referenced above, and in the call flow design, were dictated and required by Deutsche Telekom.  Von Klocke Decl., ¶ xvii. | 20.  Objection as to relevance.  See No. 19. |

**Comm's Reply:  Fact established.**  *See* Reply To No. 19.

W02-WEST:3NVG1\404151593.3

DEFENDANT BBG COMMUNICATIONS, INC.'S OPPOSITION TO PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 21.  Mr. Sajfr placed his call to the Czech Republic from Frankfurt, Germany using BBG Global's swipe credit card long distance calling services.<br>Von Klocke Decl., ¶¶ iii-xvii<br><br>Freeman Decl.,  ¶¶ 3-9<br><br>Galicot Decl., ¶7, Ex. "D." | 21.  Disputed.  See Nos. 4, 7, 17, 19. |

**Comm's Reply:  Fact established.**  *See* Reply To Nos. 4, 7, 17, and 19.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 22.  Mr. Sajfr had at least two opportunities to follow the prompts and obtain rate information before his call to the Czech Republic was connected.<br>Von Klocke Decl.  ¶¶ vii-xvii<br><br>Freeman Decl., ¶¶ 8-9 | 22.  Disputed.  See Nos. 17 and 19. |

**Comm's Reply:  Fact established.**  *See* Reply To Nos. 17 and 19.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 23.  Mr. Sajfr failed to dial the appropriate number when prompted to do so to obtain rates before his call to the Czech Republic, and the basis of his Complaint, was connected.<br>Von Klocke Decl., ¶¶  vii-xvii.<br><br>Freeman Decl., ¶¶  8-9.<br><br>Complaint, ¶ 10(a). | 23.  Objection irrelevant as if the rates charged were unconscionable, disclosure method would be irrelevant.  Disputed.  See Nos. 16, 17 and 19. |

-11-

DEFENDANT BBG COMMUNICATIONS, INC.'S OPPOSITION TO PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

**Comm's Reply:  Fact established.**  *See* Reply To Nos. 16, 17 and 19.  Moreover, Plaintiffs' claim is based entirely on the disclosures made in Frankfurt.  Plaintiffs cannot base a claim on the alleged unconscionability of the rates charged because such a claim would be preempted by the Federal Communications Act.  *North County Communications v. California Catalog & Technology*, 594 F.3d 1149, 1155 (9th Cir. 2010).  Thus, the fact that Safjr did not press "9" to obtain rates cannot possibly be irrelevant to Plaintiffs' claims.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 24.  Mr. Sajfr admits the payphone he used at the Frankfurt airport contained a disclosure on the payphone advising him to call to get rate information. Complaint ¶5. | 24.  Disputed.  Sajfr Decl. ¶ 3-5. |

**Comm's Reply:  Fact established.**  Sajfr admits in the Complaint that the telephone from which he made the phone calls giving rise to this lawsuit had a "disclosure saying to call for. . . rates."  [Complaint ¶ 2.]   Sajfr's declaration does not controvert this admission that the payphone instructed him to call for rates.  His declaration merely asserts that the payphone itself did not disclose the rates and, upon placing a call, he was not automatically provided with rate information.  He simply does not dispute that he could have called or pressed "9" to obtain rate information.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 25.  Mr. Sajfr failed to follow the instructions on the sticker on the payphone to dial for rate information. Complaint ¶ 5. | 25.  Disputed. See No. 23 above. |

**Comm's Reply:  Fact established.**  *See* Responses To No. 23.

-12-

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 26.  B-Tel is in Tijuana, Baja California, Mexico. Vania Monge Declaration ("Monge Decl."), ¶ 3. | 26.  Disputed. B-Tel representatives claim either are located in or provide customer support services in California. Keeports Decl., ¶ 8-18, Exs. 3-4.   During most of the relevant time period, B-Tel was a fictitious business name registered to BBG Communications. Mansfield Decl., Ex. 18. |

Comm's Reply:  Fact established.  The Monge Declaration clearly establishes that B-Tel is in Tijuana, Mexico.  Plaintiffs' claim that Keeports was allegedly told something different (i.e., hearsay) does not change this fact.  Moreover, whether or not a fictitious business name existed at some point in time in the past in San Diego is insufficient to dispute the fact that the Mexican corporation B-Tel is located and headquartered in Tijuana.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 27.  B-Tel operates a single call center in Tijuana, Mexico. Monge Decl., ¶ 3 | 27.  Disputed.  See No. 26. |

Comm's Reply:  Fact established.  *See* Reply To No. 26.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 28.  In or about 2002, BBG Global entered into an agreement with B-Tel, in which B-Tel agreed to provide call center services to BBG Global. Monge Decl., ¶ 4. | 28.  Objection. No agreement was submitted with Ms. Monge's Declaration to verify assertion. See also No. 26. Disputed as BBG Global was not formed until at least 2006 as a successor in interest to BBG Holdings, Ltd. Fedier Decl., Ex. B. |

Comm's Reply:  Fact established.  Plaintiff offers no admissible evidence to dispute the existence of the agreement between BBG Global and B-Tel.  On the contrary, Plaintiffs merely complain, without citing any authority, that Ms. Monge cannot state that an agreement exists between Global and B-Tel without attaching the agreement to her declaration.  Additionally, it is undisputed that Global succeeded BBG Holdings, Ltd., including its agreements with third parties, such as B-Tel.  Plaintiffs' objection is thus without merit.  *See also* Reply To No. 26.

-13-

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 29.  The customer services inquiries received by B-Tel for BBG Global are routed in Mexico and answered in Mexico by a Mexican call center representative. Monge Decl., ¶ 5. | 29.  Disputed. customer service calls are made to domestic 1-800 numbers and to 619-661-6661; and the operators claim to be in Los Angeles. Mr. Keeports was told to contact BBG at a 619 area code number to speak with Alma Perez, who is publicly represented to be a customer care specialist with BBG Communications, and Mr. Sajfr and Mr. and Mrs. Keeports called a 1-800 number, which could reasonably be expected to only operate domestically and not internationally.  See Sajfr Decl. at ¶6-7, Irina Keeports Decl. at ¶9 and the Keeports Decl. at ¶8-18 and Exs. 3 and 4; Mansfield Decl., Ex. 17. |

**Comm's Reply:  Fact established.**  Plaintiff's purported evidence is inadmissible, as explained in Comm's Evidentiary Objections, filed concurrently herewith.  Moreover, this inadmissible evidence does not create a disputed issue of material fact as to whether B-Tel's customer service representatives answer calls in Mexico.  First, Plaintiffs purposefully mislead this Court by having had Plaintiff Keeports do a random search for Comm's numbers, not Global's numbers.  Plaintiff Keeports allegedly dialed a Comm customer service number after searching randomly for "BBG" telephone numbers, without specifically searching for Global customer service numbers, which is why he allegedly reached Alma Perez, and not a B-Tel employee in Tijuana.  Moreover, whether or not a 1-800 number ultimately connects to a domestic or international destination does not change the fact that B-Tel and its customer service representatives are located in Tijuana, Mexico.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 30.  B-Tel does not have any presence in California, nor does it provide any services in California. Monge Decl., ¶5. | 30.  Disputed. See Nos. 26 and 29.  Also B Tel is owned by a series of family trusts for the benefit of Galicot family members. Mansfield Decl. Ex. 21. |

**Comm's Reply:  Fact established.**  Plaintiffs' purported evidence, much of which is inadmissible (*see* Evidentiary Objections, filed concurrently herewith) does not dispute this fact.

-14-

DEFENDANT BBG COMMUNICATIONS, INC.'S
OPPOSITION TO PLAINTIFFS' RESPONSE TO
SEPARATE STATEMENT OF UNDISPUTED FACTS

1   Whether or not B-Tel is owned by other members of the Galicot family is irrelevant to dispute the

2   fact that B-Tel does not have any presence in California.  *See also* BBG Communications'

3   Response to No. 26.

4

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 31.  To the extent customer service calls made into B-Tel are recorded, they are recorded in Mexico, by a Mexican customer service representative.<br>Monge Decl., ¶ 6. | 31.  Disputed. See Nos. 26 and 29. Objection - relevance, since even if calls were recorded there, still illegal under California law to do so.<br>See *Kearny v. Salomon Smith Barney* 39 Ca1. 4th 95, 125 (2006); Order Denying Motion to Dismiss, entered March 15, 2011 (Dkt. No. 35). |

**Comm's Reply:  Fact established.**  *See* Responses To Nos. 26 and 29.  Moreover, as

explained in Comm's reply in support of its motion for summary judgment, the fact that the calls

were allegedly recorded in Mexico is not irrelevant because Penal Code section 632 does not

apply to conduct occurring in another country that is legal in that country.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 32.  To the extent Messrs. Sajfr's and Keeports' customer service calls were recorded by B-Tel, they were recorded in Mexico.<br>Monge Decl., ¶¶ 3-6. | 32.  Disputed.  See No. 31. |

**Comm's Reply:  Fact established.**  *See* Responses To No. 31.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 33.  BBG Communications did not record Messrs. Sajfr's and Keeports' customer service calls to B-Tel.<br>Monge Decl., ¶¶ 3-6.<br>Galicot Decl., ¶ 22. | 33.  Disputed. See Nos. 26 and 29. BBG Communications controls such services or actually provides them as it states in its privacy policy customer call and credit<br>card data is only to be shared with its affiliates.<br>Mansfield Decl. Ex. 6. |

-15-

DEFENDANT BBG COMMUNICATIONS, INC.'S
OPPOSITION TO PLAINTIFFS' RESPONSE TO
SEPARATE STATEMENT OF UNDISPUTED FACTS

**Comm's Reply:  Fact established.**  Plaintiffs' purported evidence is (1) inadmissible, *see* Evidentiary Objections, filed concurrently herewith, (2) irrelevant, and (3) completely misconstrues the actual inadmissible documents on which it is based.  Comm's Privacy Policy does not in any way suggest that Comm controls Global's customer service representatives such that it can be held accountable for calls allegedly recorded by Global's representatives in Mexico.  Plaintiffs simply present no evidence to suggest that Comm was responsible for the alleged recording of phone calls in Mexico.   The mere use of the word "affiliate" in the privacy policy does not change this.  Plaintiffs apparently contend that the use of the word "affiliate" means that Comm has "control" over any unidentified entity Plaintiffs' wish to say it has control over, including Global pursuant to California Corporations Code section 150 and 47 U.S.C. section 153(1).  Plaintiffs are wrong.  While it is true that these statutes define an "affiliate" of a corporation as any two or more entities that are "under common control" *or* "under common ownership," respectively, that is not the analysis undertaken under California law for purposes of determining an alter ego relationship.  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).

| **DEFENDANT'S UNDISPUTED FACTS** | **PLAINTIFFS' RESPONSE** |
|---|---|
| 34.  To provide an operator call center and the necessary *i*nfrastructure to provide long distance operator assisted calling services, BBG Global has a contract with Network Operator Services, Inc. dba Centris Information Services ("NOS") (the "NOS Operator Services Agreement")  *Declaration of Susan Freeman ("Freeman Declaration"), ¶¶  3-6, Exhibits "B".* | 34.  Admit. |
| 35.  NOS is a Texas corporation.  Freeman Decl., ¶ 6. | 35.  Admit. |

DEFENDANT BBG COMMUNICATIONS, INC.'S OPPOSITION TO PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 36.  NOS does not operate in California. Freeman Decl. ¶6. | 36.  Disputed in terms of what is meant by the term "operate", since the actual call rating is done by BBG Communications in California by accessing NOS' call detail records. Mansfield Decl., Ex. 22. |

Comm's Reply:  Fact established.  Comm submitted evidence that NOS has no California presence.  Plaintiffs offer no admissible evidence to dispute this fact, but rather, take issue with the use of the word "operate."  This does not create a disputed issue because whether or not Comm has access to "NOS's call detail records" is insufficient to dispute that NOS does not have a presence in California.


| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 37.  Pursuant to the NOS Operator Services Agreement, NOS provides automated and live  operator call services for all calls that are routed by BBG Global to NOS' platform. Freeman Decl., ¶¶  6-7. | 37.  Admit. |
| 38.  NOS automated call services are performed at NOS' headquarters in Longview, Texas, and live operator call services are performed in Monterrey, Mexico. Freeman Decl., ¶¶ 6. | 38.  Admit. |
| 39.  All users of a BBG Global-serviced payphone for operator assisted long distance calling have the option of speaking with a live operator, from whom rate information can be obtained by request before the call is connected and before any charge is incurred by the caller. Freeman Decl., ¶ 8. | 39.  Disputed.  See No. 17. |

Comm's Reply:  Fact established.  See Reply to No. 17.

-17-

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 40. For the call Mr. Sajfr made from Germany to the Czech Republic that form the basis of his Complaint, the automated services were provided to him by NOS.<br>Freeman Decl., ¶¶ 8, 9. Galicot Decl., ¶¶ 3, 5. | 40. Disputed in that such automated services were provided at the direction  limitations of either BBG Communications, Inc. or BBG Global.<br>Mansfield Decl., Exs. 20 and 22. |

**Comm's Reply:  Fact established.**  The evidence that Plaintiffs cite does not dispute this fact.  That Global had some input into the services that NOS provided to its customers—particularly in a training manual—does not established that Comm, and not NOS, performed the services at issue.  *See also* Evidentiary Objections, filed concurrently herewith.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 41. For the call Mr. Sajfr made from Germany to the Czech Republic during which he was provided automated operator assistance, the service was provided to Mr. Sajfr in Germany from the switch located in Longview, Texas.<br>Freeman Decl., ¶¶8, 9. | 41. Objection and disputed. Mr. Sajfr was never provided "automated operator assistance" as his call was automatically connected without any assistance. Sajfr  Decl. ¶3-5. This is confirmed by NOS' own records. The "service" provided in Longview, Texas is that the connection switch is located there, as it is for all calls where BBG Global AG or BBG Communications, Inc. operates the payphone. This is an automated process where all calls where either BBG or BBG Global AG is the alleged service provider, whether foreign or domestic, are automatically routed through a server located in Longview, Texas. The call detail information for each call is then routed to BBG in San Diego, who is then responsible for "rating" (pricing) and billing the call from here.  Mansfield Decl., Exs. 21 and 22. |

**Comm's Reply:  Fact established.**  Plaintiffs fail to offer admissible evidence to dispute the fact that NOS processed the Germany call from its switch in Texas.  In fact, Sajfr admits that NOS processed the call he made from Germany to the Czech Republic in Texas.  Moreover, the fact that Comm processes billing for Global subject to a third-party agreement is insufficient to dispute the fact that NOS processed the call in Texas.

-18-

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 42.  BBG Communications did not process or provide operator-assisted calling service for the call made by Mr. Sajfr that originated in Germany referenced in his Complaint. Freeman Decl., ¶¶¶ 3-6, 9 Galicot Declaration, 3, 5. | 42.  Disputed. BBG Communications rated, priced and billed Mr. Sajfr's call and NOS acted pursuant to an agreement negotiated by BBG Communications. See Nos. 40- 41, Mansfield Decl. Exs. 21 and 22. |

**Comm's Reply:**  Plaintiffs fail to offer admissible evidence to dispute this fact.  *See* Evidentiary Objections, filed concurrently herewith.  Plaintiffs' claim that Comm "rated, priced, and billed" Safjr's call is a mischaracterization of the inadmissible documents relied on and irrelevant to the claims at issue in this lawsuit.  Plaintiffs' claims involve the disclosure of Global's rates at the Frankfurt Airport, and the relevant issues center around where those disclosures were determined and made, not how or where calls were allegedly "rated, priced, or billed" after a call has been placed.  *See also* BBG Communications' Response to Nos. 40-41.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 43.  The books and records of BBG Communications are kept separate from the books and records of BBG Global. Declaration of Gaurav Malhotra ("Malhotra Decl."), ¶ 6. Declaration of Urs Manetsch and Anton Mueller ("Manetsch and Mueller Decl."), ¶ v• | 43.  Objection and disputed. Both companies are owned by the same Galicot family trusts, operated as trustee by Gregorio Galicot's brother-in-law.  Mansfield Decl. Ex. 7. Both companies operate using bank accounts at Wells Fargo Bank in San Diego. Mansfield Decl., Ex. 7. While BBG claims BBG Global AG has noemployees in California, its former general counsel who signed the 2007 letter indicating BBG Global AG was succeeding BBG Holdings' contract with NOS and at least one other employee independently state they have worked for BBG Global AG in San Diego. Id., Exs. 9 and 10. Pilar Urbino Morales, the former "managing director" of BBG Global AG who signed agreements between BBG and BBG Global AG on behalf of that company in 2006 that were submitted by BBG in support of its motion, also was not based in Switzerland but apparently lived in San Diego and worked out of BBG's San Diego offices. Id., Ex. 21. Call routing is all conducted through the same servers |

-19-

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| | operated by the same company, and agreements for both BBG and BBG Global AG with NOS and Centris were negotiated at the same time by Bryan Rhys, who claims to work for BBG. Id., Ex. 22.  All call billing is actually performed by BBG here. It then sends the customer billing for international calls for processing through its wholly-owned subsidiary in Luxembourg, BBG Financial Services s.a.r.l., in which Raphael and Gregorio Galicot are officers. Id., Exs. 6, 7, 11 and 13. While agents and other operational expenses may be paid out of BBG Global's California bank account, all commissions are calculated by BBG and such funds are transferred by BBG's accounting department out of that account, establishing BBG Communications has access to BBG Global AGs bank accounts.  Id., Exs. 19, 21 and 23. These same companies also use the same computer servers in Texas to process calls wherever they come from (or use the affiliated company G-Tel's servers), BBG Global claims in its privacy policy to also store data "in our sites located in San Diego, Ca. and Las Vegas", and they use the same domain extensions for e-mails and the same toll-free 1-800 numbers for consumers to contact them. Mansfield Decl., Exs. 7, 11, 14-16, 22. They both use the same call center operators who receive instructions on how to answer customer inquiries from BBG, the same website address extensions for contact information and to use in their business operations, the same training manuals, the same logos, the same customer dispute domestic 1-800 numbers and dispute call center personnel. Id. Even when bills are sent consumers, they do not refer to BBG Global AG but rather a undetermined entity called BBG Germany or Gelman Telecom that even BBG was unable to identify, even though it makes the billing arrangements. See Id. Ex. 7; Keeports Decl., Ex. 1; Sajfr Decl. Ex. 1.  The  companies thus are affiliates of each other, have the same ownership, overlapping employees, have access to BBG Global's operating accounts, and use the same contracts and services. |

**Comm's Reply:  Fact established.**   Plaintiffs do not offer any admissible evidence to dispute the fact that the corporate books and records are kept separately.  *See* Evidentiary Objections, filed concurrently herewith.  Indeed, none of the evidence that they cite in an attempt

-20-

to dispute this fact has any bearing on whether Comm's books are kept separately from Global's. More specifically, whether or not the Galicot family trusts own the corporations, whether both corporations maintain separate bank accounts with the same bank is insufficient to dispute the fact that the corporate books and records are kept separately.  Similarly, whether the companies hire the same lawyers, or whether people who provided services to BBG Global may have at some point resided in San Diego, or whether the companies hire the same third parties to provide customer service services, etc., is irrelevant to dispute that the two companies maintain separate books and records.  Further, whether or not Comm processes billing as a third-party under an agreement between it and Global, and whether Comm provides other back-office administrative services to BBG Global under an agreement is also irrelevant to dispute that they maintain separate books and records as found by independent third parties.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 44.  In the course of LUCAS, HORSFALL, MURPHY & PINDROH, LLP's audits, it has found no evidence of any comingling of funds or assets between BBG Communications and BBG Global, and that both companies respect their corporate formalities and are adequately capitalized. Malhotra Decl.,  ¶ 6. | 44.  Objection and disputed.  See No. 43. |

    **Comm's Reply:  Fact established.**  *See* Reply To No. 43.  None of Plaintiffs' purported facts created any disputed issue of fact as to whether Global and Comm comingle assets, observe corporate formalities, or are adequately capitalized. They merely assert that Global and Comm have common ownership, that Comm provides certain services for Global, and that Comm and Global use some of the same vendors.  Such facts do not suggest undercapitalization.

-21-

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 45.  Based on independent transfer studies, all related party transactions between BBG Communications and BBG Global are on an arm's length basis and properly accounted for. Malhotra Decl. ¶7 | 45. Objection and disputed.  See No. 43. |

**Comm's Reply:  Fact established.**  *See* Reply To No. 43.  None of Plaintiffs' purported facts created any disputed issue of fact as to whether Global and Comm conduct arm's length transactions.  They merely assert that Global and Comm have common ownership, that Comm provides certain services for Global, and that Comm and Global use some of the same vendors. Such facts do not suggest improper accounting.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 46.  In connection with this examination in MOORE STEPHENS SUZ AG's audit of BBG Global, it determined that BBG Global does not comingle funds or assets with any other company. It also found that it does not pay for third party expenses. Nor do third parties improperly pay for BBG Global's expenses. Manetsch and Mueller Decl., ¶ viii. | 46.  Objection and disputed.  See No. 43. |

**Comm's Reply:  Fact established.**  *See* Reply To No. 43.  None of Plaintiffs' purported facts created any disputed issue of fact as to whether Global and Comm comingle assets or improperly pay one another's expenses. They merely assert that Global and Comm have common ownership, that Comm provides certain services for Global, and that Comm and Global use some of the same vendors.  Such facts do not suggest comingling, undercapitalization or any other inequitable result.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 47.  German law does not require that rates for domestic and/or international calls be displayed at public payphones located in Germany. Decl. of Prof. Dr. Bernd Holznagel, LLM ("Prof. Holznagel Decl."), ¶ 1. | 47.  Objection. This is not what the Holznagel Declaration states.  All Mr. Holznagel states is that in his opinion there are no detailed rules regulating the use of public payphones, or that it is his opinion that the rules relating to certain disclosures do not apply to pay phones. That is fundamentally different than saying BBG's conduct is expressly permitted under the law. |

**Comm's Reply:  Fact established.**  Plaintiffs do not present any evidence to dispute the statements in Prof. Holznagel's declaration, which states: "Under German law there is no obligation that the rates for domestic and/or international voice telephony calls are displayed at a public payphone."  On the contrary, Plaintiffs make a legal argument about the German law that Prof. Holznagel cites, *i.e.*, Plaintiffs' contend that Global's conduct is not expressly permitted under German law because there is no statute that specifically states that a company need not disclose rates on a payphone.  Plaintiffs, however, ignore that the German government (1) regulates payphones but chose not regulate rates and (2) in 2007, adopted the German Telecommunications Act, which specifically requires that rates be disclosed for certain services, without including payphones.  "The canon of construction *expressio unius est exclusio alterius* stands for the proposition that, when the legislature provides a list of related items, it impliedly means to exclude other items not listed."  *Carver v. Lehman*, 558 F.3d 869, 876 n.13 (9th Cir. 2009).  Thus, by leaving out payphones from rate disclosure requirements, the German government intended to exclude payphones from that requirement.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 48.  German law does not require that rates for domestic and/or international calls be published or announced prior to connecting such call regardless of method of payment.  Prof. Holznagel Decl., ¶ 2. | 48.  See No. 47. |

**Comm's Reply:  Fact established.**  *See* Reply To No. 47.

-23-

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 49. ¶ Mexican law does not bar -a party to a call to record said call without first obtaining the other caller's consent.  Declaration of Isaac Guakil Chaiyo ("Guakil-Chaiyo Decl."), ix.¶ix. | 49.  Objection – irrelevant.  See No. 31 |

**Comm's Reply:  Fact established.** *See* Reply To No. 31.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
|---|---|
| 50.  The legislative history of Penal Code section 632 reveals that "service-observing" calls, i.e., calls to businesses that are recorded to quality assurance purposes, were never intended to be covered by the Penal Code.<br>Request for Judicial Notice ("RJN"), Ex. E, pp. 15-19, 192-193, 200-202, 310-312 and 321-322. | 50.  Objection - irrelevant, as the express language of the statute applies, prescribing the types of calls where customers are asked for confidential information in connection with a dispute over telephone bills are covered, and therefore are controlled by the express language of section 632.  Moreover, these statements relate to monitoring, not the actual recording of such calls.   P.C. § 632; *Kearny v. Salomon Smith Barney*, 39 Ca. (2006). |

**Comm's Reply:  Fact established.**  Plaintiffs fail to offer any evidence disputing the language in the legislative history set forth in this fact.  Rather, they make a legal argument that, importantly, does not address  *Faulkner v. ADT Security Services, Inc.*, No. 11-00968, 2011 WL 1812744 at *3-4 (N.D. Cal. May 12, 2011), which held that a California consumer does not have a reasonable expectation that calls regarding billing disputes—just like the calls Plaintiffs' allegedly made—would not be recorded.

W02-WEST:3NVG1\404151593.3

DEFENDANT BBG COMMUNICATIONS, INC.'S OPPOSITION TO PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
| --- | --- |
| 51. The Digest of Senate Amendments to AB860 make clear that "service-observing" was to be unimpeded by section 632. RJN, Ex. "E," Digest of Senate Amendments to Bill. | 51. Objection, irrelevant. See No. 50. |

**Comm's Reply:  Fact established.**  *See* Reply To No. 50.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
| --- | --- |
| 52. Then-Speaker of the Assembly, Jesse M. Unruh—the author of the Bill explained that "under my bill, it would continue to be perfectly legal to monitor business calls, to insure proper service of customers by employees." RJN Ex. "E." | 52. Disputed and objection, irrelevant. See No. 50. The calls in question were to dispute bills. In addition, the relevant fact is that the calls were recorded, which BBG Communications does not dispute took place even though they submitted Ms. Monge's Declaration, rather than monitored. Sajfr Decl. at ¶6-7, Irina Keeports Decl. at' ¶ 9 Keeports Decl. at ¶¶8-18. |

**Comm's Reply:  Fact established.**  Plaintiffs do not present any evidence to dispute Mr. Unruh's statements, which are clearly relevant in ascertaining the Legislature's purpose in enacting § 632.  *See* Reply To No. 50.  Plaintiffs' characterizations of the calls at issue in this lawsuit cannot contradict a statement in the legislative history.

| DEFENDANT'S UNDISPUTED FACTS | PLAINTIFFS' RESPONSE |
| --- | --- |
| 53. Mr. Unruh also wrote, "[i]t should be mentioned that Assembly Bill 860 has been written carefully so as to avoid any hardship upon law enforcement officers  . . . Likewise, we have exempted from coverage under the measure, normal business telephone monitoring, and known as "service-observing", which is essential in modern business practices to insure employee efficiency." RJN Ex. "E." | 53. Disputed and irrelevant.  See Nos. 50-52. |

-25-

**Comm's Reply:  Fact established.**  *See* Reply To Nos. 50-52.

**D.**     **BBG Communications Response to Plaintiffs' Alleged Counterstatement of Facts.**

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S    REPLY |
|---|---|---|
| 1.  Even if they could be accessed and disclosed, the rates actually charged to Plaintiffs by BBG are substantially inconsistent with internal call records and rate charts contained on BBG Global AG's own website for calls from Frankfurt, Germany. | 1.  Mansfield Decl., ¶9, Ex. 5 and 22. | 1.  This purported fact is immaterial to Defendants Motion.  Plaintiff's self-serving calculation based on rates listed on BBG Global's website more than a year after the phone call at issue was placed does not establish any fact material to this case. |
| 2.  The corporate designee of NOS and Centris Information Services, the Texas companies that provide such operator services, testified that BBG prepared the portion of the operator instruction manual that states the opposite. The process is entirely automated or operators are instructed by BBG not to provide such information unless they are specifically and directly asked for it. | 2.  Mansfield Decl., Ex. 20 and 21. | 2.  This purported fact is immaterial.  The exhibits that Plaintiffs' cite  actually ***confirm*** that rates will be provided when "the customer specifically asked for the data," meaning that customers are able to obtain rate information. The issue in this case is whether customers can easily obtain rate information by pressing "9" and this purported fact merely confirms that rate information is available.  *See* U.F. # 19. |
| 3.  BBG billed the Keeports over $172.00 for 7 minutes worth of  international calls, and Mr. Sajfr $55.00 for a one to two minute international call. | 3.  Declarations Irina Keeports, Ex. 1; Sajfr Decl., Ex. 1 | 3.  Undisputed that BBG Global charged Irina Keeports and Plaintiff David Keeports the said amount.  This Court has already determined that Plaintiff David Keeports lacks standing to bring a claim based on the disclosures made at the Frankfurt Airport.  [ECF # 35.] |
| 4.  In addition to the photos attached as Ex. 1 to the Complaint, the photographs attached to the Von Klocke | 4.  Complaint, Ex. 1, Von Klocke Decl., Ex. C; Mansfield Decl., Ex. 5 | 4.  This fact is not supported by the evidence cited and relies on inadmissible evidence.  *See* Evidentiary Objections, filed |

-26-

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S REPLY |
|---|---|---|
| Decl. (Dkt. No. 45-3) show that nowhere on the phone is there any disclosure of any minimum connection times, fees or costs disclosed for making such calls, even though the phones prominently state a coin operated call only costs a couple Euros, or less than $4.00. Such lack of disclosure is consistent with other signage in Europe, all of which fail to give consumers any rate information but say service is provided by BBG, or list BBG Communications Inc. or the BBG logo on the payphone artwork. | | concurrently herewith.  None of the photographs in Exhibit 1 to the Complaint are from Germany.  Moreover, this fact is immaterial.  Global still complies with German law even though it does not disclose rates and fees on the payphones themselves because it provides customers with a number to call to get rates and enables them to get rates by pressing "9."  This seems far superior to posting the multiple pages of voluminous rate information Plaintiffs themselves say are Global's rates, which is why jurisdictions like Germany and the United States do not require such postings as a matter of law.  *See* 47 C.F.R. § 64.703(a)(3)(i).  Finally, what may be done in other locales is irrelevant to the issues in this case, which concern the Frankfurt Airport. |
| 5.  The charges imposed on Mr. Sajfr or Ms. Keeports were not  affirmatively disclosed by BBG's operators at any time during the telephone call process, such as typically occurs when a consumer uses a coin operated pay phone or speaks with an operator. | 5.  Sajfr Decl. at ¶3; Irina Keeports Decl. at ¶3 | 5.  It is undisputed that Comm did not disclose rates to Sajfr or Irina Keeports.  However, it is equally undisputed that they could have obtained rate information by pressing "9".  *See* U.F. # 19.  Such disclosure would even comply with United States disclosure laws.  *See* 47 C.F.R. §64.703(a)(3)(i).  Moreover, the cited evidence does not support the fact that it is "typical" to affirmatively disclose rates. |

-27-

| | PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S REPLY |
|---|---|---|---|
| 1 2 3 | 6.  BBG claims on its website that "BBG Communications, Inc. is an industry leader in Operator Assisted Services BBG has interconnect and billing arrangements that enable it to directly carry and deliver telecommunications traffic and bill customers in Canada, Germany, Japan, UK and US and in every other country with credit card transactions." | 6.  Keeports Decl., Exs. 1 and 2 | 6.  This purported fact is immaterial.  The issue in this case centers around services performed and disclosures made at the Frankfurt Airport.  The fact that a website generally says that Comm has "interconnect and billing arrangements that enable it to directly carry and deliver telecommunications traffic and bill customers in Canada, Germany, Japan, UK and US and in every other country with credit card transactions" does not suggest that Comm had anything to do with the calls or disclosures at issue in this lawsuit. |
| | 7.  BBG's Privacy Policy states that "BBG provides international telecommunications services, including public telephony, calling card, long distance operator assistance, credit card processing, billing, collection and wireless telecommunications services.  BBG processes casual-use voice services from European Union ("EU") or Swiss telephone users making long distance calls from  payphones or hotels". | 7.  Mansfield Decl., Ex. 6 | 7.  This purported fact is immaterial.  The issue in this case centers around services performed and disclosures made at the Frankfurt Airport.  The fact that Comm's privacy policy broadly describes its services to include "processes[ing] casual-use voice services from European Union ('EU')"  does not suggest that Comm had anything to do with the calls or disclosures at issue in this lawsuit. |
| | 8.  In filings with the Federal Communications Commission, BBG Global AG states Mr. Gregorio Galicot is its president and that BBG Global AG is not a foreign carrier. | 8.  Mansfield Decl., Ex. 8 at 6-7 | 8.  Immaterial.  That BBG Global stated in a historical filing with the Federal Communications Commission that Mr. Gregorio Galicot is its president, which is short for "President of the Administrative Board," as |

-28-

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S REPLY |
|---|---|---|
| | | Swiss corporations do not have officers like American corporations, is completely irrelevant.  Also, nothing in the document affirmatively states that BBG Global AG is not a foreign corporation or carrier. It is completely irrelevant to the issues in this case, including alter ego.  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). |
| 9.  Both BBG and BBG Global AG are owned by the same Galicot family trusts, operated as a trustee by Gregorio Galicot's brother-in-law. | 9.  Mansfield Decl., Ex. 7 | 9.  This purported fact is immaterial.  The fact that Comm and Global have common ownership does not establish any fact that is material in this case, including alter ego.  Common ownership alone does not give rise to a claim for alter ego.  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962) |
| 10.  Both BBG and BBG Global AG operate using bank accounts at Wells Fargo Bank in San Diego. | 10.  Mansfield Decl. Ex. 7 | 10.  This purported fact is immaterial.  The fact that Comm and Global both have separate bank accounts at Wells Fargo Bank in San Diego does not establish any material fact in this case, including alter ego.  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962) |
| 11.  BBG Global AG's former general counsel who signed the 2007 letter indicating BBG Global AG was succeeding BBG Holdings' contract with NOS and at least other | 11.  Mansfield Decl., Ex. 9 and 10 | 11.  This purported fact is based on inadmissible evidence, namely a hearsay statement on a third-party website.  *See* Evidentiary Objections, filed concurrently |

-29-

| | PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S REPLY |
|---|---|---|---|
| 1 2 3 4 | employees independently state they have worked for BBG Global AG in San Diego. | | herewith. |
| 5 6 7 8 9 10 11 12 13 14 15 16 | 12.  Pilar Urbino Morales, the former "managing director" of BBG Global  AG who signed agreements between BBG and BBG Global AG on behalf of that company in 2006 that were submitted by BBG in support of its motion and listed as the Secretary of BBG Global AG, also was not based in Switzerland but apparently lived in San Diego and worked out of BBG's San Diego offices. | 12.  Mansfield Decl., Ex. 21. | 12.  This purported fact is immaterial and is based on inadmissible evidence.  The fact that a former employee of BBG Global at some point in time may have "apparently" worked in San Diego does not establish any material fact in this case, including alter ego. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). Moreover, the fact is based on inadmissible evidence; it mischaracterizes the testimony, assumes facts not in evidence, and lacks foundation. *See also* Defendants Evidentiary Objections. |
| 17 18 19 20 21 22 23 | 13.  Agreements for both BBG and BBG Global AG with NOS and Centris were negotiated at the same time by Bryan Rhys of BBG. | 13.  Mansfield Decl. Ex. 22 | 13.   This purported fact is immaterial and not supported by the testimony on which it is based.  The fact that Comm and Global both have separate agreements with NOS, and that Global's agreement is similar to Comm's, does not establish any material fact in this case, including alter ego.  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962) |
| 24 25 26 27 | 14.  All call billing for BBG Global AG is performed by BBG here, and it then sends the customer billing for international calls for processing through its wholly-owned subsidiary in | 14.  Mansfield Decl., Exs. 6, 7,11 and 13. | 14. This purported fact is immaterial.  The fact that Comm performs services for Global pursuant to a written agreement between them does not establish any material fact in this case, including alter |

28

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S REPLY |
|---|---|---|
| Luxembourg, BBG Financial Services s.a.r.1., in which Raphael and Gregorio Galicot are officers. | | ego. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). Most small business outsource such services (see payroll as an example). |
| 15.  While agents and other operational expenses may be paid out of BBG Global's California bank account, all commissions are calculated by BBG and such funds are transferred for payment by BBG's accounting department, which has access to such accounts. | 15.  Mansfield Decl., Exs. 19, 21 and 23 | 15.  This purported fact is immaterial.  The fact that Comm performs services for Global pursuant to a written agreement between them does not establish any material fact in this case, including alter ego. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). Most small business outsource such services (see payroll as an example). |

-31-

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S REPLY |
|---|---|---|
| 16.  BBG's privacy policy, BBG and BBG Global AG's (or its subsidiary's and predecessor's BBG Holdings') agreements between themselves and their agents apply California law and/or select the forum for resolving any disputes between them as being San Diego, California. | 16.  Mansfield Decl., Exs., 6, 7, 11 and 12, | 16.  This purported fact is immaterial.  The fact that Comm, Global, and some of their agents have agreements with choice of law and forum clauses favoring California is does not establish any material fact in this case, including alter ego.  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).  The fact that Global agreed to apply California law in some circumstances does not mean that it applies in all circumstances.  *Consol. Data Term. v. Applied Digital Data Sys*, 708 F.2d 385, n. 390 (9th Cir. 1983) (choice of law clause only applies to claims governed by specific contract that contains it). |
| 17.  BBG Global claims in its privacy policy to also store data "in our sites located in San Diego, Ca. and Las Vegas. | 17.  Mansfield Decl. Ex. 14. | 17.  This purported fact is immaterial.  The fact that Global stores some data in San Diego does not establish any material fact in this case, including alter ego.  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962) |

-32-

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S   REPLY |
|---|---|---|
| 18.  BBG Global AG and BBG Communications both use the same call center operators who receive the same instructions on how to answer customer inquiries from BBG, the same website address extensions for contact information and to use in their business operations, the same training manuals, the same logos, the same customer dispute domestic 1-800 numbers and the same dispute call center personnel. | 18.  Mansfield Decl. Exs. 7,11, 14, 15, 16 , 22 | 18.  This purported fact is immaterial and is based on inadmissible evidence.  That BBG Global and BBG Communications use the same call center operators does not establish any material fact in this case, including alter ego. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). Moreover, the fact is based on inadmissible evidence; it mischaracterizes the testimony, assumes facts not in evidence, and lacks foundation.  *See also* Defendants Evidentiary Objections. |
| 19.  When bills are sent to consumers for calls from Germany, they do not refer to BBG Global AG but rather a undetermined entity called BBG Germany or German Telecom that even BBG was unable to identify, even though it makes the billing arrangements. | 19.  Mansfield Decl., Ex. 7; Keeports Decl., Ex. 1; Sajfr Decl. Ex. 1. | 19.  This purported fact is immaterial and is based on inadmissible evidence.  The identification of charges that appears on a billing statement is not material to any fact in this case, including alter ego. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). Moreover, the fact is based on inadmissible evidence; it includes inadmissible hearsay, it mischaracterizes the testimony, it assumes facts not in evidence, and it lacks foundation.  *See also* Defendants Evidentiary Objections. |

-33-

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S REPLY |
|---|---|---|
| 20.  Both BBG and BBG Global AG in their privacy policies state they collect and only share billing information with their "affiliates" | 20.  Mansfield Decl. Exs. 6 and 14. | 20.  This purported fact is immaterial and is based on inadmissible evidence.  It is also used to support a gross mischaracterization of the underlying statement – that somehow being an affiliate means you are under common control as opposed to common ownership.  Even so, that BBG Comm has access to certain Global information in order to perform its obligations under their written contract is immaterial to any fact in this case, including alter ego. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). Moreover, the fact is based on inadmissible evidence because it relies on inadmissible hearsay. *See* Defendants Evidentiary Objections. |
| 21.  The "worldwide headquarters" of BBG Global AG in Switzerland appear to at best be sparse, not always open on business days, has the wrong company name on its mailbox, and only identifiable by a sign taped to the door. | 21.  Mansfield Decl., ¶¶ 2-7 and Exs. 1-3 | 21.  This purported fact is immaterial and is based on inadmissible evidence.  That BBG Global's office is, by Plaintiff's description "sparse," is not material to any fact in this case, including alter ego. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). Moreover, the fact is based on inadmissible evidence. *See* Defendants Evidentiary Objections. |

-34-

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S REPLY |
|---|---|---|
| 22.  As to calls that originate in the United States, BBG Communications claims it is the responsible entity for such calls from beginning to end and is at least partially responsible for setting the rates for such calls that are billed to consumers. | 22.  Mansfield Decl. Ex. 7 | 22.  This fact is immaterial. Whether BBG Communications is responsible for calls originating in the United States is not material to any fact in this case.  This case centers on whether disclosures made by Global in Germany; thus, what may be done in other locales is irrelevant to the issues in this case, which concern the Frankfurt Airport. |
| 23.  BBG Communications admits it has received over 1,000 calls from irate consumers complaining about excessive charges and is responsible for processing refund requests. | 23.  Mansfield Decl. Exs. 15 and 21 | 23. This fact is immaterial and misstates the exhibits on which it is based.  hat BBG Communications has received more than 1000 inquires from customers over the course of more than 10 years is not material to any fact in this case.  This case centers on whether disclosures made by Global in Germany.  Moreover, because Plaintiffs are pre-empted under Federal law from challenging the rates charged, this evidence is irrelevant and immaterial to the facts of this case. *See North County Communications v. California Catalog & Technology*, 594 F.3d 1149, 1155 (9th Cir. 2010). |

-35-

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S REPLY |
|---|---|---|
| 24.  BBG has received an "F" rating for BBG from the San Diego Better Business Bureau Mansfield Decl., Ex. 17 23 based on several factors, including 471 complaints filed against it that "consumers are being charged extremely high rates for international phone calls and not being properly informed about the rates prior to making the phone call" and "business has failed to resolve underlying cause(s) of a pattern of complaints". | 24.  Mansfield Decl. Ex. 17 | 24.  This purported fact is immaterial and based upon inadmissible evidence.  That BBG Communications received a rating from an unofficial, non-governmental website, is not material to any fact in this case.  Moreover, the fact is based on inadmissible hearsay.  *See* Defendants Evidentiary Objections. |
| 25.  During the past 4 years B-Tel Communicacion or G-Tel Communicacion either was operating as a fictitious business name for BBG Communications Inc., or was an affiliate of BBG Communications as part of the set of Galicot family-owned companies. | 25.  Mansfield Decl., Exs. 7, 18 and 21 | 25.  This purported fact is immaterial and not supported by admissible evidence.  That BBG Communications previously registered B-Tel as a fictitious business name (which registration has expired), does not mean that it ever operated under such a name.  In fact, it never did so and plaintiff has no admissible evidence to the contrary.  As such, this issue is not material to any fact in this case, including alter ego.  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).  Moreover, the evidence cited does not establish the purported fact. |

W02-WEST:3NVG1\404151593.3

DEFENDANT BBG COMMUNICATIONS, INC.'S
OPPOSITION TO PLAINTIFFS' RESPONSE TO
SEPARATE STATEMENT OF UNDISPUTED FACTS

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S REPLY |
|---|---|---|
| 26.  Based on the information and 800-numbers provided to them on their billing statements, Mr. Sajfr and Mr. and Mrs. Keeports reasonably believed they were talking to customer service representatives in the United States or who worked for BBG. BBG operators, if pressed say, that they work for BBG or are in California. | 26.  Sajfr Decl. at ¶6-7, Irina Keeports Decl. at ¶9; Keeports Decl. at T8-18 and Exs. 3 and 4. | 26.  This purported fact is immaterial and is based on inadmissible evidence.  First, what Mr. Sajfr and Mr. and Mrs. Keeports reasonably believed is a legal conclusion, and not a fact to be established. Second, that those individuals believed the customer service representatives to be located in the United States or in California is not material to any fact in this case, including alter ego.  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962).  Moreover, the fact relies on evidence that is inadmissible.  *See* Defendant's Evidentiary Objections. |
| 27.  Mr. Keeports was provided a 619 area code phone number to contact a BBG customer service representative, Alma Perez. While BBG now claims she is not one of its employees, she is listed by the BBB as the customer care specialist for BBG. | 27.  Keeports Decl., Exs. 3-4. Mansfield Decl., Exs. 16 and 17 | 27.  This purported fact is immaterial and is based on inadmissible evidence.  That Mr. Keeports was provide a 619 area code is not material to any fact in this case, including alter ego.  *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 837 (1962). Moreover, the purported fact relies on evidence that is inadmissible as hearsay or because the evidence has not been properly authenticated. *See* Defendant's Evidentiary Objections. |

-37-

| PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE | DEFENDANT'S   REPLY |
|---|---|---|
| 28.  Ms. Monge in her Declaration does not dispute that any of the affiliates who work for BBG surreptitiously record all customer communications, even though its representatives admittedly immediately ask for and must be provided confidential information such as a credit card number at the initiation of every call. | 28.  Mansfield Decl. Ex. 15 | 28.  This purported fact is immaterial.  That the Mexican corporation B-Tel records customer calls does not mean that any other company records calls.  To that end, it is undisputed that the calls, if recorded, were recorded in Mexico.  *See* UF ## 26-27, 29, and 31. |
| 29.  Plaintiffs reasonably believed their communications with customer service representatives of BBG would be treated as confidential based on the fact credit card information was being demanded from them They received no advance advisory such calls were being monitored or   recorded, let alone were recorded outside California, and did not consent to such recording. | 29.  Sajfr Decl. ¶6-7, Irina Keeports Decl., ¶9; Keeports Decl., ¶ 8-18. | 29. This purported fact is immaterial and is based on inadmissible evidence.  First, what Plaintiffs "reasonably believed" is a legal conclusion, and not a fact to be established.  Second, that Plaintiffs believed their communications to be confidential and what Plaintiffs believed regarding where those phone calls were purportedly recorded is not material to any fact in this case, including whether California or Mexican law applies.  Finally, the purported fact relies on evidence that is inadmissible. *See* Defendant's Evidentiary Objections. |

-38-

Dated:  November 23, 2011

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

*s/Fred R. Puglisi*

By _____

FRED R. PUGLISI
Attorneys for Defendant,
BBG Communications, Inc.

-39-

DEFENDANT BBG COMMUNICATIONS, INC.'S
OPPOSITION TO PLAINTIFFS' RESPONSE TO
SEPARATE STATEMENT OF UNDISPUTED FACTS