1  FRED R. PUGLISI, Cal. Bar No. 121822
   NORMA V. GARCIA, Cal. Bar No. 223512
2  VALERIE E. ALTER, Cal. Bar No. 239905
   ELIZABETH S. BERMAN, Cal. Bar No. 252377
3  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
4     Including Professional Corporations
   1901 Avenue of the Stars, Suite 1600
5  Los Angeles, California  90067-6017
   Telephone:     310-228-3700
6  Facsimile:      310-228-3701
   fpuglisi@sheppardmullin.com
7  ngarciaguillen@sheppardmullin.com
   valter@sheppardmullin.com
8  eberman@sheppardmullin.com

9  Attorneys for Defendant,
   BBG Communications, Inc.

10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13 VLASTIMIL SAJFR AND DAVID KEEPORTS, on behalf of themselves and all 14 others similarly situated, | Case No. 10-CV-02341-AJB (NLS) The Honorable Anthony J. Battaglia |
| 15                         Plaintiffs, | **DEFENDANT BBG COMMUNICATIONS, INC.'S RESPONSES TO PLAINTIFFS'** |
| 16         v. | **OBJECTIONS TO DEFENDANT'S EVIDENCE SUBMITTED IN SUPPORT** |
| 17 BBG COMMUNICATIONS, INC.,  a Delaware CORPORATION, and DOES 1 - 10, | **OF BBG COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| 18                         Defendant. | [*Reply Memorandum of Points and Authorities; Reply Separate Statement of* |
| 19 | *Undisputed Facts, Objections to Plaintiffs'* |
| 20 | *Evidence; and Certificate of Service Filed Concurrently herewith*] |
| 21 | Date:   December 16, 2011 |
| 22 | Time:  1:30 p.m. Courtroom:  12 |
| 23 | [Complaint Filed: November 12, 2010] |
| 24 | Trial Date:  None Set |
| 25 | |

26

27

28

3:10-CV-02341-AJB –NLS
W02-WEST:6JTR1\404148477.2

1    Defendants BBG Communications, Inc. ("BBG Communications" or "Defendant") hereby

2    submits these Responses to Plaintiffs' Objections to Evidence ("Objections") submitted by

3    Plaintiffs Vlastimil Sajfr and David Keeports (collectively "Plaintiffs") in opposition to

4    Defendant's Motion for Summary Judgment.

5    **I.    THE EVIDENCE SUBMITTED BY BBG COMMUNICATIONS IS ADMISSIBLE**

6         **A.    The Declaration Of Mr. Guakil-Chaiyo Is Admissible**

7         The Declaration of Mr. Guakil-Chaiyo is submitted to aid the Court in interpreting

8    Mexican law.  It is submitted with a portion of the Mexican Constitution and portions of certain

9    publicly available opinions or rulings from Mexican courts all in Spanish. (Guakil Decl., ¶¶ ix-xv.)

10   The copy in Spanish is then translated into English, and the translation is certified as accurate by a

11   professional translator, under penalties of perjury.  In short, the declaration and the law it describes

12   in admissible.

13        Plaintiffs first assert that Mr. Guakil-Chaiyo's statements about Mexican law constitute

14   improper expert opinions.  (Objections 2:2-8.)  In the declaration, however, Mr. Guakil-Chaiyo

15   establishes his qualifications as an expert in the area of Mexican law: Mr. Guakil-Chaiyo is

16   licensed to practiced law in Mexico, obtained a law degree from the *Universidad Tecnologica de*

17   *Mexico*, and has practice law in Mexico City for 13 years.  (Guakil Decl., ¶¶ i-iv.)  *See United*

18   *States v. Laurienti*, 611 F.3d 530 (9th Cir. 2010) (finding that an individuals general knowledge

19   and experience with an area of law made him both an expert and able to testify on that area of

20   law).  As a result, Mr. Guakil-Chaiyo's declaration is admissible.

21        Plaintiffs next argue that the declaration and accompanying translation is inadmissible

22   because it was not properly authenticated, the translation was not certified, and the documents

23   constitute inadmissible hearsay.  (Objections at 2:8-22.)  Plaintiffs are wrong.  First, the Spanish

24   versions of the official Court Opinions and Mexican Constitution are self-authenticating under the

25   Federal Rules because they are public documents found in official publications.  FED. R. EVID.

26   902(5) (advisory committee notes specifically state that "statutes" and "court reports" are the

27   prototypical self-authenticating publication).  Thus, the Spanish version itself is properly

28   authenticated.

Second, contrary to Plaintiff's allegations, the translation was certified and attached as Exhibit F to Defendants' Request for Judicial Notice, ECF Dkt. No. 46-4.  That translation includes a declaration from Joseph Zelasko, a professional translator, whereby Mr. Zelasko swore under penalties of perjury that the English version was "a true and accurate translation" of the Spanish version.  Under FEDERAL RULE OF EVIDENCE 901(9), certified translations by a professional translator are authentic, and thus proper for judicial notice and admissible.  FED. R. EVID. § 901(9).  Moreover, a translation, when accompanied by the original, is assumed accurate unless the opposing party contests its accuracy.  *See United States v. Armijo*, 5 F.3d 1229, 1234-35 (9th Cir. 1993) (holding transcript of an audio recording valid when other side had opportunity to review and contest its validity).  Here, Plaintiffs have failed to explain how the submitted translation is inaccurate – something they could have easily done if it were true.  As such, this Court may properly take the translation as accurate, especially when it is accompanied by a certification from a professional translator.  *Id.*

Third,  Plaintiffs allege that BBG Communications cited to the wrong paragraphs in the Mexican Constitution and that the precedent cited by BBG Communications as issued by the Supreme Court of Mexico is merely "a case summary," and on that basis objects. (Objections at 2:12-15.)  BBG Communications submits that Plaintiffs are incorrect.  [Guakil Decl., ¶¶ xv-xvi.] With regard to the Mexican Constitution, while it, and in particular, the Article referenced has been amended many times in recent history, the language cited, and the Article cited, is accurate and the current version of the relevant Article in the Mexican Constitution. [Guakil Decl., ¶¶ ix-xvi.]  Similarly, Plaintiffs allegation that the precedent cited by BBG Communications appears to be "a case summary" is erroneous—in fact, it is the official Mexican authority issued by the Mexican Supreme Court interpreting the relevant Article in the Mexican Constitution.  [Guakil Decl., ¶ xvi-xvii.]

Finally, Plaintiff suggests that the entire translation is hearsay.  However, this document is merely the text of the Mexican Constitution and two Mexican court decisions. (Guakil Decl., ¶¶ ix-xii.)  The text of the Mexican Constitution is no more hearsay than the text of a the California Constitution or the United States Constitution.  Plaintiffs do not seriously contend that

1   the translations are inaccurate, and, as noted above, they are properly authenticated.  Thus, this

2   objection is meritless, and the Court should consider Mr. Guakil-Chaiyo's declaration and the

3   constitutional provisions and decisions referenced therein.

4          **B.**      **The Declaration Of Professor Holznagel Is Admissible.**

5         The declaration of Professor Holznagel contains both a series of statements about German

6   telecommunications law and a translation of the actual German statutes bearing on the issues.

7   Plaintiff first takes issue with the authenticity of the translation.  [Objections to Evidence 2:25-28]

8   Admittedly, the translation is neither certified nor supplied with a German language version for

9   comparison purposes, but that alone does not necessarily negate its authenticity.  *United States v.*

10  *Nazemian*, 948 F.2d 522, 527-28 (9th Cir. 1991).  Indeed, circumstantial evidence may

11  authenticate a lay translation, especially where the individual who made the translation had no

12  motive to falsify the translation and the opposing party never objected to its accuracy.  *Id.* (holding

13  lay person's translation acceptable because she had no motive to falsify it).  Here, Professor

14  Holznagel is the "Director of the Institute of Information, Telecommunications and Media Law" at

15  the University of Munster in Germany.  He is connected to neither the facts of this case nor the

16  parties, and as such, has no motive to falsify his translation.  Moreover, Plaintiffs have not

17  objected to the accuracy of the translation, but only call into question Professor Holznagel's

18  qualifications as a translator.  For these reasons, the Court should accept the translation as

19  authentic.

20        Plaintiffs also assert that Professor Holznagel's statements about German law and its

21  requirements are improper expert opinions.  [Objections 3:1-16]  With the declaration, however,

22  Professor Holznagel submitted a Curriculum Vitae (C.V.) establishing his qualifications as an

23  expert in the area of German Law, and more specifically, German telecommunications law:

24  Professor Holznagel holds a postgraduate degree in law from the University of Hamburg in

25  Germany, is a professor of Constitutional and Administrative law in Germany, and is the Director

26  of the Institute for Information, Telecommunications and Media Law at the University of Munster

27  in Germany.  *See United States v. Laurienti*, 611 F.3d 530 (9th Cir. 2010) (finding that an

28  individuals general knowledge and experience with an area of law made him both an expert and

3:10-CV-02341-AJB -NLS          -3-

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S
CONFIDENTIAL EVIDENCE

1   able to testify on that area of law).  Finally, Plaintiffs' claim that Professor's Holznagel's opinions

2   should be disregarded because they are based on disputed facts falls short.  By nature of the

3   question/answer format found in the declaration, the exact facts relied on by the expert can be

4   determined.  As such, the Court may judge those facts itself and chose whether to accept the

5   Professor's conclusions or not.  *See Obrey v. Johnson*, 400 F.3d 691, 696-97 (9th Cir. 2005)

6   (allowing expert testimony even if underlying facts may have been invalid, so long as the

7   underlying facts and assumptions were known to the trier-of-fact).  Thus, Professor Holznagel's

8   declaration is admissible, and Plaintiffs' objections thereto should be overruled.

9     **C.     Court May Properly Take Judicial Notice Of The Legislative History of Penal**

10          **Code § 632**

11          The legislative history of California Penal Code § 632 is clearly within the confines of

12   Fed. R. Evid. 201, and may be judicially noticed.  *See, e.g., Chaker v. Crogan*, 428 F.3d 1215,

13   1223 n. 8 (9th Cir. 2005) (taking judicial notice of the legislative history of Cal. Penal Code §

14   148.6); *Sprint PCS Assets v. City of La Canada*, 435 F.3d 993, 998, n.1 (9th Cir. 2006) (taking

15   judicial notice of legislative history of sections of the California Utilities Code).  Plaintiffs did not

16   and cannot submit authority to the contrary; thus, BBG Communications' request for judicial

17   notice should be granted.

18          In response, Plaintiffs argue that the legislative history of Penal Code § 632 should be

19   inadmissible because it cannot be relied upon to contradict the actual language of a statute.  First,

20   this is not a reason to preclude the Court from taking judicial notice of the legislative history.

21   Indeed, whether legislative history can be relied upon to support a legal conclusion does not

22   determine whether it can be admitted in the first instance.  Second, Plaintiffs' premise is incorrect.

23   A statute's legislative history is relevant when the statute's language is ambiguous.  But even in

24   cases where the language of the statute may be unambiguous, courts must still look to the

25   legislative history to determine the objective of the statute, and then apply that objective to the

26   facts of the present case.  *Silver v. Brown* (1966) 63 Cal. 2d 841, 845 ("The literal meaning of the

27   words of a statute may be disregarded to avoid absurd results or to give effect to the manifest

28   purposes that, in light of the statute's legislative history, appear from its provisions considered as a

1   whole."); *Great Lake Properties, Inc. v. City of El Segundo* (1977) 19 Cal. 3d 152, 163 (the intent

2   of the Legislature prevails over the strict letter of the statute and the letter will, if possible, be read

3   to conform to the spirit of the act and to effectuate the purpose of the law).  *See also Kono v.*

4   *Meeker* (2011) 196 Cal. App. 4th 81, 88; *Arnall v. Superior Court* (2010) 190 Cal. App. 4th 360,

5   368; *Rehman v. Dept. of Motor Vehicles* (2009) 178 Cal. App. 4th 581, 587.  Moreover, Plaintiffs

6   suggestion that the legislative history discusses only monitoring and not recording is false.  The

7   legislative history expressly demonstrates that the California legislature intended to permit service

8   observing, and did not make any distinction between service observing conducted live or by

9   recording the call and observing later.   In any event, Plaintiffs' objection as to the content of the

10  legislative history is not a valid argument in opposition to the Court taking judicial notice of the

11  legislative history – which, as shown above, is entirely proper.

12          For these reasons, the Court may properly take judicial notice of and rely upon the

13  legislative history of Penal Code § 632.

14

15  **II.     CONCLUSION**

16          For the reasons explained above, BBG Communications respectfully requests that the

17  Court overrule Plaintiffs' Evidentiary Objections and admit the evidence presented by BBG

18  Communications in support of its Motion for Summary Judgment.

19

20  Dated:  November 23, 2011          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

21                                              By          *s/Fred R. Puglisi*

22                                                          FRED R. PUGLISI
                                                            Attorneys for Defendant,
23                                                          BBG Communications, Inc.

24

25

26

27

28